**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| WILLIAM L. SLOAN, EUGENE J. WINNINGHAM, BOB L. BERTRAM, JAMES L. KELLEY, on behalf of themselves and a similarly situated class, | Civil Case Number: 09-CV-10918 |
| Plaintiffs, | PAUL D. BORMAN<br>UNITED STATES DISTRICT COURT |
| v. | |
| BORGWARNER, INC., BORGWARNER DIVERSIFIED TRANSMISSION PRODUCTS, INC. and BORGWARNER FLEXIBLE BENEFITS PLANS, | |
| Defendants.<br>_____ / | |

**OPINION AND ORDER**
**(1) DENYING DEFENDANTS' MOTION TO TRANSFER AND**
**(2) DENYING DEFENDANTS' MOTION TO STAY**

Now before the Court is Defendants Borgwarner, Inc.'s, BorgWarner Diversified Transmission Products Inc.'s ("DTP"), and Borgwarner Flexible Benefit Plans' (collectively, "Defendants") Motion to Transfer. (Dkt. No. 8). Plaintiffs responded to the Motion on April 20, 2009. Also before the Court is Defendants' Motion to Stay Proceedings Pending Ruling on Motion to Transfer.[1]

---

[1] While the parties have implemented an informal stay of proceedings, which delays the date upon which Defendants must file their Answer and their brief in response to Plaintiffs' Motion for Class Certification until after this Court issues a decision on Defendants' Motion to Transfer, Defendant argues that Plaintiffs could still file a preliminary injunction, seeking to prevent any changes in the retiree health benefits. As of yet, Plaintiffs have not filed any such motion for injunctive relief, even though the changes to the retiree health benefits presumably are in effect.

1

Upon review of the parties' submissions, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in the materials and that oral argument would not significantly aid the decisional process. Accordingly, the Court will decide Defendants' Motions "on the briefs." *See* Local Rule 7.1(e)(3).

For the following reasons, the Court DENIES Defendants' Motion to Transfer. Because the Court has ruled on Defendants' Motion to Transfer, Defendants' Motion to Stay is now moot and therefore is DENIED.

I.      BACKGROUND

This is the second time that plaintiffs Willard L. Sloan, Eugene J. Winningham, Bob L. Bertram, and James L. Kelley (collectively, "Plaintiffs") have filed an action in this Court. On February 27, 2006, the exact same plaintiffs (and putative plaintiff class) filed a complaint, which involved similar legal and factual issues, against one of the Defendants in this case: DTP. Upon a motion to transfer by the Defendant, this Court transferred the case to the U.S. District Court for the Southern District of Indiana, Indianapolis Division on June 9, 2006. *See Sloan v. BorgWarner Diversified Transmission Products Inc.*, Case No. 2:06-cv-10861, 2006 U.S. Dist. LEXIS 42857 (E.D. Mich. June 9, 2006) [hereinafter *Sloan I*]. Following the transfer of the case to the Southern District of Indiana, Plaintiffs immediately dismissed the suit.

Since this Court issued its June 9, 2006 decision, a fair amount has transpired. Therefore, a review of the facts, including the most recent developments, are necessary to determine whether to transfer the instant action to the Southern District of Indiana as Defendant requests.

A.      **Plaintiffs' Relationship with DTP**

Plaintiffs are former employees of Defendant DTP. DTP is a tier-one automotive supplier. Up until April 24, 2009, its principal place of business and only production facility was in Muncie, Indiana. (Def.'s Br. Ex. 1, Czerwonka Aff. ¶ 3). The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America and its Local No. 287 (collectively, "UAW") represents DTP's hourly non-management workforce (except for plant guards and certain clerical employees). (*Id.* ¶ 4).

DTP negotiated collective bargaining agreements ("CBAs") with the UAW in 1989, 1995, 1998, 2000, and 2005. (*Id.* ¶ 5). In conjunction with the CBAs, DTP and the UAW also negotiated health care benefits, which were to be provided to both DTP's active hourly workers and its retirees. (*Id.*) The negotiations were memorialized in separate Health Insurance Agreements ("HIAs") in 1989, 1992 and 1995.

### B.  Prior Litigation

On January 10, 2006, Defendant DTP sent letters to 823 retirees and surviving spouses of retirees who retired from its employ on or after October 27, 1989, announcing changes in retiree health care benefits involving payment of monthly premiums, deductible increases, and increases in prescription drug co-pays. (Def.'s Br. Ex. 3, Banton Aff. ¶ 9). In response, employees and retires picketed at the Muncie plant and threatened to take legal action against DTP. (*Id.* ¶ 10).

On January 13, 2006, DTP filed a declaratory judgment against UAW local 287 and retiree Gerald Poor in the Southern District of Indiana. *BorgWarner Diversified Transmission Prods. Inc. v. UAW*, No. 1:06-cv-058-LJM-TAB, 2008 U.S. Dist LEXIS 69294 (S.D. Ind. Sept. 12, 2008). DTP sought a declaration that it was permitted to amend its health insurance plans prior to the expiration of their term in order to reduce the level of benefits provided to retirees.

3

Roughly six weeks later, on February 27, 2006, Plaintiffs, on behalf of themselves and a similarly situated class, filed a lawsuit in the Eastern District of Michigan against DTP—*Sloan I*. In that case, Plaintiffs alleged that DTP's "threat to reduce the health care benefits is a breach of its contractual obligation to provide vested lifetime retiree health care benefits to the Class Representative and other members of the putative Class."

Although the plaintiffs voluntarily dismissed their suit (*Sloan I*) after this Court transferred it to the Southern District of Indiana, DTP's declaratory judgment action proceeded in that district. In that case, the parties apparently conducted significant discovery, including five depositions and the production of over 26,000 pages of documents. (Def.'s Br. Ex. 7, Siepman Aff. ¶ 4). On March 31, 2008, the Indiana court denied the parties' cross motions for summary judgment, finding that genuine issues of material fact remained as to whether DTP could unilaterally change the retiree health insurance during the term of the CBA and HIA. *BorgWarner*, 2008 U.S. Dist. LEXIS 30224 (S.D. Ind. March 31, 2008).

After DTP rested its case in chief at a bench trial held before the court on September 9, 2008, the UAW filed a Motion for Judgment on Partial Findings under Rule 52(c), which the court subsequently granted. *BorgWarner*, 2008 U.S. Dist. LEXIS 69294 (S.D. Ind. Sept. 12, 2008). At the bench trial, DTP had argued that the Court should first decide whether the various agreements conferred lifetime benefits and then after it made that determination, the Court should decide whether DTP had the right to unilaterally change the retirees' benefits under the CBAs. The court declined to rule on the lifetime benefits issue, finding that it was not yet ripe

for adjudication.[2] Nonetheless, the court concluded that DTP did not have the right to unilaterally modify the retirees' health insurance benefits under the CBAs.

### C. Recent Developments

Sometime before April 24, 2009, the UAW and DTP entered into a Plant Shutdown Agreement. The Plant Shutdown Agreement called for (1) DTP's Muncie, Indiana plant to close permanently at midnight on April 24, 2009; (2) the CBA effective on or about April 25, 2005 ("2005 Agreement") to expire at midnight on April 24, 2009; and (3) all active employees in the bargaining unit represented by the UAW to be laid off permanently on or before the permanent closing of the Muncie plant. (Compl. ¶¶ 27–29).

On February 13, 2009, DTP notified its post-October 27, 1989 hourly retirees of unilateral changes to their health insurance benefits effective May 1, 2009, which follows the April 24, 2009 expiration of the CBA and HIA.

On February 25, 2009, DTP filed a complaint for declaratory judgment in the Southern District of Indiana against fifteen retirees and all other retirees similarly situated. According to Defendants, that lawsuit involves not only the same parties but also the identical factual and legal issues. (Def.'s Br. at 18). On March 13, 2009, DTP amended its complaint to include the plaintiffs named here and on March 23, 2009, the UAW filed a motion to dismiss.

## II. ANALYSIS

### A. Legal Standard

---

[2] The court found that the lifetime benefits issue was not properly before the court "because the retirees ha[d] a contractual guarantee of benefits, until the current [CBAs] expire and [because] the retirees d[id] not seek a declaration of their rights to lifelong benefits." *BorgWarner*, 2008 U.S. Dist. LEXIS 90158 (S.D. Ind. Oct. 24, 2008).

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In making the decision to transfer, the Court should consider private interests such as whether: "(1) the action could have been brought in the proposed transferee-court; (2) a transfer would promote the interests of justice; and (3) a transfer would serve the parties' and the witnesses' convenience." *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001) (citing *United States v. P.J. Dick, Inc.*, 79 F. Supp. 2d 803, 805-06 (E.D. Mich. 2000)). District courts have wide discretion to transfer an action under 28 U.S.C. § 1404(a) in order to "prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Helder v. Hitachi Power Tools, USA Ltd.*, 764 F. Supp. 93, 95-96 (E.D. Mich. 1991) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)).

> Eastern District of Michigan courts have considered the following factors:
>
> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E. D. Mich. 2000) (citation omitted); *Hord v. Recchio*, Case No. 05-73387, 2006 U.S. Dist. LEXIS 14887, at *7 (E. D. Mich. Mar. 31, 2006) (unpublished).

The Court also takes into account public interests, such as "court docket congestion;

burden on the community if no connection with the case; local interest in having localized controversies decided at home; and the court's familiarity with governing law." *Penwest Dev. Corp. v. Dow Chemical Co.*, 667 F. Supp. 436, 439 (E.D. Mich. 1987).

The movant bears the burden of demonstrating that "fairness and practicality strongly favor the forum to which transfer is sought." *Id.* (quoting *Rowe v. Chrysler Corp.,* 520 F. Supp. 15, 16 (E.D. Mich. 1981). The movant must make this showing by a preponderance of the evidence. *Id.* (citing *International Union, U.A.W. v. Aluminum Co. of Am.*, 875 F. Supp. 430, 433 (N.D. Ohio 1995)).

   **B.**  **Motion to Transfer under 28 U.S.C. § 1404(a)**

Defendant has moved to transfer this case to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a), arguing that (1) the first-to-file rule supports such a transfer, and (2) private and public interest factors weigh in favor of transfer. Plaintiffs dispute the propriety of transfer, arguing that: (1) the first-to-file rule is inapplicable in declaratory judgment actions, and (2) Defendant has failed to carry its burden of proving that the relevant factors strongly favor transfer.

These arguments essentially are identical to those made by the parties in *Sloan I*, where this Court determined that the first-to-file rule did not bar Plaintiff's claims in this Court but that the private and public interests at play favored transfer to the Southern District of Indiana. After finding that the first-to-file rule was inapplicable, this Court weighed several factors: the convenience of the parties, the convenience of the witnesses, the locus of operative facts, access to sources of proof, the availability of process to compel unwilling witnesses, the cost of obtaining willing witnesses, the interests of justice, and the public interest. This Court found

that the locus of operative facts, cost of obtaining willing witnesses, the interests of justice, and the public interest favored a transfer; the convenience of the parties, the convenience of the witnesses, and the availability of process to compel witnesses did not strongly favor transfer—a more neutral finding; and the access of sources of proof weighed against transfer.

Since this Court's June 2006 order in *Sloan I*, a few important things have occurred. First, Plaintiffs voluntarily, and without prejudice, dismissed their claims against Defendants in *Sloan I*. Second, Defendants pursued their declaratory judgment action against the UAW and many of the plaintiffs in this case in the Indiana litigation. There, after a bench trial two day long bench trial, the district court found that (1) the lifetime benefits issue was not yet ripe for review and (2) regardless, DTP did not have the right to unilaterally modify the retirees' health insurance benefits. Third, the parties entered into a Plant Shutdown Agreement, under which, on April 24, 2009, the Muncie plant was to close permanently and the 2005 Agreement was to terminated. (Compl. ¶¶ 26–28). The Muncie plant closed on April 24, 2009.

The effect of these recent events drives the determination of whether Defendants have again carried their burden of proving that the relevant factors strongly favor transfer. Essentially, the inquiry is shaped by effect of the Indiana litigation and the Muncie plant closing. On the one hand, the Muncie plant closing significantly diminishes Defendants' presence in Indiana, thereby shifting the convenience of the parties and witnesses factors against transfer. But, on the other hand, the extent and depth of the Indiana litigation, as well as the Plaintiffs' failure to pursue its claim in Indiana after this Court transferred it there the first time, strongly supports transferring this case to the Indiana court a second time.

The Court concludes that, this time, the Defendants have not carried their burden of

showing that fairness and practicality *strongly* favor a transfer to the Southern District of Indiana.

### 1. First-to-File Rule

Defendants argue that the first-to-file rule supports a transfer to the Southern District of Indiana. Just as it did in *Sloan I*, the Court rejects Defendants' contention.

The first-to-file rule provides that in suits involving virtually identical parties and issues are pending in separate federal courts, "the entire action should be decided by the court in which [the] action was first filed." *Smith v. SEC*, 129 F.3d 356 (6th Cir. 1997). But, "[d]istrict courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc., Inc.*, 16 Fed. Appx. 433, 437 (6th Cir. July 31, 2001) (unpublished); *see also AmSouth Bank v. Dale*, 386 F.3d 763, 784-91 & n.8 (6th Cir. 2004) ("[T]he first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory action.").

Here, just like in *Sloan I*, DTP filed a preemptive declaratory judgment action in the Southern District of Indiana a short time after it notified its post-October 27, 1989 hourly retirees of unilateral changes to their health insurance benefits. There appears to be no additional reasons here that were not present in *Sloan I* that otherwise support an application of the first-to-file rule in this case. Therefore, the first-to-file rule does not bar Plaintiff's claims in this Court.

### 2. Transfer under 28 U.S.C. § 1404(a)

#### a. Convenience of the Parties

In *Sloan I*, this court found that the convenience of the parties factor favored neither

party. It reasoned that none of the named Plaintiffs reside in either Indiana or within the Eastern District of Michigan, that not even one member of the putative class resides in this district, that ninety percent of putative class members reside in Indiana, and that several potential party-witnesses listed by DTP are located in Indiana. The court emphasized that while Plaintiffs may have chosen this forum, because they have no connection to this district other than their attorneys, their choice of forum was not entitled to great deference.[3]

Since then, the Muncie, Indiana plant has closed, which, according to Plaintiffs, leaves the Defendants with no presence in Indiana. Because Defendants appear to no longer have any substantial ongoing presence in Indiana,[4] the Court finds that the convenience of the parties factor now weighs against transfer.

In previously determining that the convenience of the parties factor favored neither party, this Court placed some emphasis on Defendants' plant being located in Indiana. After acknowledging that DTP's officers and key decision makers were located in the Eastern District

---

[3] Generally, when analyzing party convenience, a court gives substantial deference to the plaintiff's choice of forum. *Audi AG & Volkswagen of America, Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1023 (E.D. Mich. 2002) (citing *Grand Kensington LLC v. Burger King Corp.,* 81 F. Supp. 2d 834, 836 (E.D. Mich. 2000)). But this substantial deference ' "applies with less force' where, as here, the plaintiff is foreign." *Penwest Dev. Corp. v. Dow Chemical Co.*, 667 F. Supp. 436, 439 (E.D. Mich. 1987) (citation omitted). In addition, where, as here, the plaintiff has little or no connection to the chosen forum, his or her choice of forum is given even less deference. *See WatsonWatson v. Bortz Health Care of Rose City*, 2006 U.S. Dist. LEXIS 4852 (citation omitted) (finding that plaintiff's lack of connection to the forum weighed *in favor* of transfer, even though the defendant had offices in the forum).

[4] Defendants argue that they continue to maintain a presence in Muncie, even now that the plant is closed. Apparently, the BorgWarner Family Pharmacy, a pharmacy where former employees and retirees have their prescriptions filled, continues to operate in Muncie through a subsidiary of DTP. This is a *de minimis* presence, at best (Def.'s Reply Ex. 4, Czerwonka Aff. ¶ 4).

of Michgan, the Court noted that several potential party-witnesses listed for DTP were located in Indiana. While these party-witnesses may still be located in Indiana, Defendant has not provided the Court with any updated information as the present location of the party-witnesses, nor clarified whether they are essential to this litigation. In fact, as discussed below, of the thirteen witnesses that Defendants identify in their brief, only four still reside in Indiana—the rest reside in the Eastern District of Michigan or other states. Accordingly, the convenience of the parties factor now tilts against transfer.

### b. Convenience of the Witnesses

Federal courts have considered convenience of the witnesses to be "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C. § 1404(a)." *McNic Oil & Gas Co. v. Ibex Resources Co.*, 23 F. Supp. 2d 729, 739 (E.D. Mich. 1998) (quoting 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d §* 3851 (2d ed. 1986)). In weighing the convenience of the witnesses, residence of the key witnesses is more important than the raw number of witnesses living in a particular jurisdiction. *Id.* (citations omitted); *see also Raymond Danto, Associates, Inc. v. Arthur Little, Inc,* 316 F. Supp. 1350, 1357 (E.D. Mich 1970) ("[I]n determining whether witness inconvenience warrants a change of venue, a court should not be persuaded merely by the number of prospective witnesses residing in a particular location, but rather by the materiality of their anticipated testimony.").

"To substantiate a claim of inconvenience to witnesses, a party should provide each witness's name and a summary of the anticipated testimony to enable the court to assess the significance of the testimony." *Steelcase, Inc. v. Mar-Mol Co.*, 210 F. Supp. 2d 920, 940 (W.D.

Mich. 2002).  One chief witness's convenience, in fact, may outweigh the convenience of additional, less significant witnesses.  *McNic Oil*, 23 F. Supp. 2d at 739.  "[C]onvenience of witnesses who are also employees is considered as part of a motion to transfer and is not discounted."  *Verve, L.L.C. v. Becton Dickinson & Co.*, No. 01-CV-74134, 2002 U.S. Dist. LEXIS 6483, at *7–8 (E.D. Mich. Mar. 29, 2002) (unpublished) (citing *Thomas*, 131 F. Supp. 2d at 938–39).

Similar to the convenience of the parties factor, the Court in *Sloan I* found that the convenience of the witnesses factor did not strongly favor transfer.  At that time, only one of the forty-four witnesses that DTP intended to call at trial resided in the Eastern District of Michigan.  The Court also considered affidavits provided by the plaintiffs of numerous potential witnesses, who reside in Indiana but who state that they will not be inconvenienced by traveling to Michigan to testify in *Sloan I*.

As to the instant action, Defendants have not provided the Court with a list of the names and testimonies of the witnesses that they intend to call at trial.  Instead, they merely reference DTP's witness list from the Indiana litigation.  (Def.'s Br. Ex. 10).  Of the thirteen witnesses on that list, four live in this district, four live in Indiana, two live in North Carolina, and the remaining three live in Ohio, Arizona, and Illinois.  (See Pl.'s Resp. Exs. 12, 15, 26, 27, 28, 32).  In addition, of the four witnesses DTP actually called to testify in the Indiana litigation, one lives in Michigan, one lives in Indiana, and  the others live in Illinois and North Carolina.  (Pl.'s Resp at 12).  Finally, Plaintiffs again have provided the Court with numerous affidavits this time from UAW officials—who live in Indiana and who the Defendants describe as key witness for all parties—stating that it would not be an inconvenience for them to testify in this Court.  (See

12

Def.'s Br. Ex. 9; Pl.'s Resp. Br. Exs. 3, 32–39). Therefore, similar to the convenience of the parties factor, the convenience of the witnesses factor now counsels against transfer.

### c. Locus of Operative Facts

This factor favors transfer to the Southern District of Indiana, as most of the facts concerning this case took place in Indiana, not Michigan.

DTP negotiated CBAs with the UAW, in 1989, 1995, 1998, 2000, and 2005. These negotiations all took place in Indiana. DTP also negotiated with the UAW over health care benefits provided to both DTP's active hourly workers and its retirees, and these negotiations also took place in Muncie, Indiana. In addition, all of the retirees affected by the health care changes were employed at the Muncie plant. Furthermore, as indicated above, over ninety percent of the retirees affected by the impending changes continue to reside in Indiana, and the DTP retiree association has monthly meetings in Muncie, Indiana. (Czerwonka Aff. ¶¶ 4, 9). In fact, Plaintiffs' counsel traveled to Muncie, Indiana on March 24, 2009 to meet with retirees. (Def.'s Br. Ex. C, 03/17/09 Letter). In the letter announcing the March 24, 2009 meeting, Plaintiffs' counsel asked the retirees to bring copies of any documents that it did not provide to them in the Indiana litigation and even asked them to fill out a questionnaire, pertaining to any financial or medical hardships they may suffer if their health coverage is reduced. (*Id*.)

### d. Access to Sources of Proof

A "fundamental principle" guiding the Court's analysis is that litigation should proceed "in that place where the case finds its 'center of gravity.'" *Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 609 (E.D. La. 2000) (citation omitted). While "the location of physical evidence such as the wreckage of a crashed plane ought to be given more weight in the

balancing analysis under § 1404(a)," "the location of documentary evidence is a minor consideration." *Cinemark*, 66 F. Supp. 2d at 890 (quoting *Picker Intern., Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 574 (N.D. Ohio 1998)).

Here, the access to sources of proof factor does not strongly support a transfer because, as addressed above, many of the individuals involved in the labor negotiations have agreed to travel to this district and because all the relevant collective bargaining and health insurance agreements at issue here are maintained in the UAW headquarters and Defendants' headquarters—both of which are located in this district. In addition, to the extent that any documents are not located within this district, they easily could be photocopied or emailed to this district. This covers the 26,000 pages of documents that were produced in discovery in the prior Indianapolis litigation. Some of these documents may pertain to issues that are no longer in dispute; some of these documents may no longer be in the possession of the Southern District of Indiana; while the others easily can be transferred to this Court.

### e. Availability of Process to Compel Unwilling Witnesses

Just as it failed to do in *Sloan I*, Defendant has failed to identify any witness who resides outside of the 100-mile subpoena limit of this Court and who is unwilling to incur the burden of traveling to Michigan to testify. Plaintiff, on the other hand, has provided the Court with signed affidavits from approximately 200 of the 1,751 potential class members, each one stating that if needed, the affiant will appear voluntarily in the this Court to testify or otherwise participate in this case. (Pl.'s Br., Ex. 7). The 200 affidavits are indicative of a general willingness of witnesses to testify in this Court. For that reason, this factor supports transfer.

### f. Cost of Obtaining Willing Witnesses

Similar to *Sloan I*, Plaintiffs cannot deny that the cost of bringing all witnesses that the parties intend to call at trial to Michigan will be significantly higher than if this case were pursued in Indiana. While Defendants' potential witnesses appear to be fairly split between Michigan and Indiana, with the remainder residing in neither state, most of Plaintiffs' witnesses, including the UAW officials and potentially the putative class members, live in Indiana. Instead of arguing that the costs of obtaining willing witnesses will not be significantly higher than if this case was tried in Indiana, Plaintiffs argue that it is their cost to bear, not Defendants. In their Complaint, however, Plaintiffs seek an award of costs incurred in this action. Thus, their potentially significant cost burden of obtaining willing witnesses from Indiana could befall on Defendants. That is, Plaintiffs may be choosing the expensive out-of-town restaurant, but Defendants may end up footing the bill. Therefore, this factor favors transfer to the Southern District of Indiana.

### g. Interests of Justice

After considering the competing arguments as to the various locations of the entities and the force of the ERISA venue provisions, this Court held in *Sloan I* that the interests of justice favored a transfer to the Southern District of Indiana because "a virtually identical claim [was] already pending in [that district], which [had] already ruled on a dispositive motion in the case." *Sloan I*, 2006 U.S. Dist LEXIS 42857, at *23. As to the instant action, yes, there were, at one time, two very closely related cases pending in Indiana, with yet a third currently pending. *Sloan I* involved a transfer from this Court that was ultimately dismissed by the Plaintiffs, and the initial declaratory action filed by DTP in 2006 ended in a two day bench trial that resolved an issue other than that pending in the instant case. Also, while DTP filed a second declaratory

action on February 26, 2009, it is unclear whether the Indiana district court has ruled on a motion to dismiss filed by the defendants in that case on March 23, 2009. Given that the Indiana district court chose not to reach the instant issue,[5] the interests of justice do not favor transferring the case to the Southern District of Indiana.

### g. Public Interest Factors

In finding in *Sloan I* that the public interest weighed in favor of transferring this case to the Southern District of Indiana, this Court analyzed the parties arguments pertaining to court docket congestion, the burden on this community, the Muncie community's interest, and the both court's familiarity with the law governing this dispute. The Court focused on the relevant community's interest in the litigation since docket congestion and familiarity with the law governing the dispute were on balance. However, the "elephant in the room" at that time was that the Defendants' plant was in operation, thereby requiring the presence of UAW officials and employees of DTP in Muncie, Indiana. Since the plant has closed, the public interest is no longer compelling a transfer. While a large percentage of the proposed plaintiff class still resides in the Southern District of Indiana, the Plaintiffs wish to travel to Detroit. Further, Defendants are located here. Thus, the unlike in Sloan I, the public interest no longer weighs in favor of transferring the case to the Southern District of Indiana where the plant is located.

## III. CONCLUSION

---

[5] In determining that the lifetime benefits issue was not yet ripe for review, the Indiana district court specifically distinguished DTP's suit from *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603 (7th Cir. 1993) (en banc) and *Diehl v. Twin Disc, Inc.*, 102 F.3d 301 (7th Cir. 1996) because the retirees (or the union on behalf of the retirees) in those cases were the parties seeking a declaration of their rights to lifetime benefits, not the company, as was the case in the Indiana litigation

16

After balancing all of the factors analyzed above, the Court **DENIES** Defendants' Motion to Transfer this case to the Southern District of Indiana because Defendants have not met their burden of showing that the relative equities strongly favor transfer. As a result, the Court also **DENIES** Defendants' Motion to Stay as moot.

**SO ORDERED.**

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: June 17, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 17, 2009.

S/Denise Goodine
Case Manager