# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

WILLIAM L. SLOAN, EUGENE J.
WINNINGHAM, BOB L. BERTRAM, JAMES
L. KELLEY, on behalf of themselves and a
similarly situated class,

                                Plaintiffs,

v.

BORGWARNER, INC., BORGWARNER
DIVERSIFIED TRANSMISSION PRODUCTS,
INC. and BORGWARNER FLEXIBLE
BENEFITS PLANS,

                                Defendants.
_____ /

Civil Case Number: 09-CV-10918

PAUL D. BORMAN
UNITED STATES DISTRICT COURT

## OPINION AND ORDER
## (1) GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION,
## (2) CERTIFYING THE CLASS,
## (3) NAMING WILLARD L. SLOAN, EUGENE J. WINNINGHAM, AND JAMES L. KELLEY AS CLASS REPRESENTATIVES, AND
## (4) APPOINTING KLIMIST, MCKNIGHT, SALE, MCCLOW & CANZANO, P.C. CLASS COUNSEL

Now before the Court is plaintiffs Willard L. Sloan's, Eugene J. Winningham's, Bob L.

Bertram's, and James L. Kelley's (collectively, "Plaintiffs") Motion for Class Certification.

Defendants BorgWarner, Inc., BorgWarner Diversified Transmission Products Inc. ("DTP"), and

BorgWarner Flexible Benefit Plans (collectively, "Defendants") responded to the Motion on August

19, 2009.  The Court held a hearing on the matter on August 24, 2009.

For the following reasons, the Court GRANTS Plaintiffs' Motion for Class Certification,

CERTIFIES the class as defined by Plaintiffs in their Motion, and APPOINTS Klimist, McKnight,

Sale, McClow & Canzano, P.C. as class counsel.

## I.    BACKGROUND

Plaintiffs filed this lawsuit on March 11, 2009 pursuant to section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Plaintiffs, on behalf of themselves and a class of similarly situated persons ("Class"), seek a declaratory judgment that they and their spouses are entitled to lifetime health benefits from Defendants.  Plaintiffs also seek injunctive relief, requiring Defendants to preliminarily and permanently maintain the level of retiree health care benefits they enjoyed before Defendants reduced their benefits as well as damages as a result of that reduction in benefits.[1]

Plaintiffs seek to certify a class consisting of approximately 1,750 retirees and surviving spouses of retirees who retired from Defendants' recently shuttered manufacturing facility in Muncie, Indiana on or after October 27, 1989 and before February 23, 2009, and who were represented by International Union, United Automobile, Aerospace & Agricultural Implement Workers of America ("UAW") in collective bargaining.

## II.    ANALYSIS

### A.    Legal Standard

Plaintiffs brings the instant motion to certify the (now Amended) Complaint as a class action pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").  Before it may certify a class, the Court must conduct a "rigorous analysis" of the requirements of Rule 23.  *General Telephone Co. v.*

---

[1] Plaintiff had sought monetary relief for mental distress and anguish incurred as a result of Defendants' modification of their retiree health care benefits, but Plaintiff amended their Complaint on September 1, 2009 to remove this claim for relief.  (Dkt. No. 55).

*Falcon*, 457 U.S. 147, 161 (1982).  As the proponent of class certification, Plaintiffs bear the burden of proving that all of Rule 23's requirements have been satisfied.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *In re Am. Medical Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("[T]he party seeking the class certification bears the burden of proof.") (citations omitted).

### B.    Class Action Prerequisites - Rule 23(a)

Federal Rule of Civil Procedure 23(a) sets out the following prerequisites for certifying a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Before addressing whether Plaintiffs have established each of the four prerequisites listed above, it is important to note that Defendant DTP stated in its Amended Complaint for Declaratory Judgment Against Defendant Class filed on March 13, 2009 in the Southern District of Indiana, that Plaintiffs and the putative class satisfied all four of the prerequisites listed in Rule 23(a).  (*See* Dkt. No. 35 Ex. B, Am. Compl. for Decl. Judg. Against Def. Class ¶¶ 46-53).

### 1.    Numerosity

As the putative class is believed to be more than 1,700 members, Defendants do no contest that the numerosity requirement has been met.  In *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997), the Sixth Circuit held the that the joinder of 1,100 retirees would be impracticable.  Accordingly, the Court finds that Plaintiffs have satisfied the first prerequisite under Rule 23(a): the class is so numerous that joinder of all members is impracticable.

3

### 2.      Commonality

The second precondition under Rule 23(a)(2) requires the presence of common questions of law or fact that are common to the class.  Fed. R. Civ. P. 23(a).

Defendants do not dispute that the Class is claiming common rights to continuing fully paid lifetime health care benefits arising from promises contained in collectively bargaining Health Insurance Agreements.  Instead, Defendants contend that commonality is lacking because only fifty of the total 1,752 putative class members reside in the Sixth Circuit, which is in the minority among circuit courts in an inter-circuit split regarding the controlling issue of law.   Defendants argue that commonality "would more readily exist in [the] Southern District of Indiana, where 1647 of the 1752 putative class members would have the appropriate legal standard applied to their claims." (Defs.' Resp. Br. 4 n.4).  Thus, according to Defendants, applying a minority rule to a plaintiff class in one circuit where a majority of the class resides in another circuit, which applies the majority rule, destroys commonality.

In support of their argument that an intra-circuit split destroys commonality, Defendants cite *Henry v. Assocs. Home Equity Servs., Inc.*, 69 Fed. App'x 394 (9th Cir. July 3, 2003) (unpublished), *affirming* 272 B.R. 266, 275 (C.D. Cal. 2002), where the Ninth Circuit affirmed a district court's refusal to certify a class for lack of commonality because of an inter-circuit split on the so called "ride through" option available to debtors in Chapter 7 bankruptcies.   That case, however, involved an added layer of litigation that is not present here—an underlying bankruptcy action.  That is, in denying the plaintiffs' motion to certify the class, the district court took special notice that the bankruptcy courts in "ride through" jurisdictions would have handled the underlying bankruptcy actions differently than bankruptcy courts in the non-"ride-through" jurisdictions.  Thus, unlike here

4

where there is no underlying layer where differing laws could have been applied to each member of the Class, in *Henry*, it was the differing applications in the underlying bankruptcy actions that destroyed commonality.

As noted by Plaintiffs, the district court in *Reece v. CNH America LLC*, 227 F.R.D. 483, 489 (E.D. Mich. 2005) rejected this very line of reasoning:

> [C]ommon issues of law predominate regardless of the fact that the proposed class members reside in three different judicial districts. While there may be a split in certain aspects of the law among those districts, the issues in this case only will be decided according to the federal common law as interpreted under Supreme Court and Sixth Circuit precedent. *See Rossetto* [*v. Pabst Brewing Co.*], 217 F.3d [539, 541-42 (7th Cir. 2000)] (stating that the issue of whether retiree health care benefits vest must be decided as a matter of federal common law developed under the authority of ERISA and the LMRA as interpreted by the law governing the Circuit in which the court sits). As Plaintiffs point out, district courts routinely apply the law of the Circuit in which they sit in retiree health care cases despite the fact that the plaintiff-retirees worked and/or live in other Circuits. *See UAW v. Aluminum Co. of Am.*, 932 F. Supp. 997, 1000 n.1 (N.D. Ohio 1996); *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. [653, 659 n.8 (E.D. Mich. 1995)]; *Golden v. Kelsey-Hayes*, 845 F. Supp. 410, 411 (E.D. Mich. 1994). . . .

The Court adopts the *Reese* court's analysis and finds that Plaintiffs have satisfied the commonality prerequisite.

### 3.      Typicality

Typicality means that Plaintiffs' claims arise from the same event or course of conduct that give rise to the claims of other class members and are based on the same legal theory. *In re Am. Medical Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citations omitted). Defendants do not contend that Plaintiffs' claims do not arise out the same event or course of conduct or even the same legal theory. Rather, they assert that Plaintiffs' damages require individualized determinations, which thereby defeats typicality. Defendants cite to Plaintiffs' Complaint, where Plaintiffs' request not

5

only injunctive relief but also money damages for "any losses incurred" as a result of Defendants' modification of Plaintiffs' retiree health benefit plans.   Thus, according to Defendants, Plaintiffs' claims for relief would not be typical to that of the Class because they seek differing levels of damages.

Plaintiffs' request for individualized damages does not defeat typicality; otherwise, no class action could be maintained where the putative class sought damages for mental distress or some other highly-fact specific claim for damages.   As will be addressed at length below, though, a plaintiff class' request for individualized damages may affect their ability to maintain a class action under Rule 23(b).

### 4.      Adequacy of Representation

The Sixth Circuit has articulated two criteria for determining the adequacy of representation: "'[1] the representative must have common interests with unnamed members of the class, and [2] it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Am. Medical Sys.*, 75 F.3d at 1083 (*quoting Senter v. General Motors*, 532 F.2d 511, 525 (6th Cir. 1976)).

Defendants do not contest the Class as defined by Plaintiffs in their Motion, and they concede that they have no basis on which to question Plaintiffs' counsel's qualifications to represent the class.   Defendants challenge only the adequacy of Plaintiffs to carry out their role as class representatives.   Defendants sought and were denied preliminary discovery into the adequacy of the class representatives.   In denying Defendants preliminary discovery, Magistrate Judge Majzoub reasoned

that Defendants have already deposed each Plaintiff on their qualifications to be class

6

representatives in a prior related action and that Defendant DTP acknowledged in its Amended

Complaint for Declaratory Judgment against Defendant [here, Plaintiff] Class filed in the Southern

District of Indiana that Plaintiffs "will fairly and adequately protect the interests of the [putative

class]." (Dkt. 50 *citing* Dkt. No. 35 Ex. 11 at ¶ 49).

Plaintiffs have provided the Court with recent affidavits from each Plaintiff attesting that

they have agreed to serve as a class representative in this suit. (Pls.' Br. Exs. B-E). In response,

Defendants provide the 2006 deposition testimony of Plaintiff Bob Bertram, who testified that he

was in "bad health," "can't hardly handle" traveling long distances, and was "not able to" serve as

a class representative in a prior related case in 2006 due to a heart condition. (Dkt. No. 41 Ex. 3,

Bertram Dep. 8, 52).

Even though at least one Defendant concedes that Mr. Bertram is an adequate representative

of the Class, the Court concludes that Mr. Bertram is not an adequate representative of the class.

Mr. Bertram's 2006 deposition testimony clearly provides that he is in bad health and that although

he would like to represent the class, his heart condition prevents him from doing so. Further, while

Plaintiffs provide a recent affidavit from Mr. Bertram, the affidavit only provides that he *agreed* to

serve as a class representative, not that he is *able* to serve as a class representative.

The other class representatives appear to be currently able to represent the class adequately.

Therefore, Willard L. Sloan, Eugene J. Winningham, and James L. Kelley have satisfied the fourth

prerequisite under Rule 23(a).

### C.    Maintaining a Class Action - Rule 23(b)

With the exception of Mr. Bertram, Plaintiffs have succeeded in establishing the existence

of the Rule 23(a) prerequisites. They now must meet one of the three criteria set out in Rule 23(b).

7

In this case, Plaintiffs seek class certification under either Rule 23(b)(1) or (b)(2).

At the onset, Defendants caution that Rule 23(b)(1) and (b)(2) authorize only "mandatory" class actions under which "potential members do not have an automatic right to notice or a right to opt out of the class," but are still bound by the judgment, *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 645 (6th Cir. 2006), and that the Sixth Circuit has "repeatedly expressed concern over the constitutionality of certifying a mandatory class action that includes claims for money damages" because of a fear that the individual class members' Seventh Amendment and due process rights might be violated. *Coleman v. GMAC*, 296 F.3d 443, 447 (6th Cir. 2002).   Therefore, they argue that this Court must exercise "close scrutiny."  *See id.* at 448; *Reeb*, 435 F.3d at 649-50.

Rule 23(b)(1) provides that an action may be maintained as a class action if the prosecution of separate actions by or against individual members of the class creates a risk of either one of the following:

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]

Under Rule 23(b)(2), a class action is appropriate if  "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Defendants' opposition of Plaintiffs' attempt to certify under Rules 23(b)(1) and (b)(2) focuses on Plaintiffs' request for monetary damages.  Defendants contend that the need for individualized damage calculations in the instant case make certification under either Rule 23(b)(1)

8

or (b)(2) improper.  To the extent that Plaintiffs seek damages for the amounts they must now pay for health care to the reduction of their health benefits, the Court finds that such a request does not defeat certification under Rule 23(b)(1) and (b)(2).

In *Reeb*, the Sixth Circuit vacated the district court's certification of the class under Rule 23(b)(2) and remanded the case to the district court for further proceedings.  The court held that "because of the individualized nature of damages calculations for Title VII plaintiffs and the ability of those plaintiffs to bring individual actions, the claims for individual compensatory damages of members of a Title VII class necessarily predominate over requested declaratory or injunctive relief, and individual compensatory damages are not recoverable by a Rule 23(b)(2) class."  435 F.3d at 651.  In so holding, the Court cited extensively and approvingly from the Fifth Circuit's decision in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) and the court's earlier decision in *Coleman*, which had also relied extensively on *Allison*.  *Id.* at 646-50.  As the Fifth Circuit explained in *Allison*:

> monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief.  By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief . . . such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex determinations.

*Allison*, 151 F.3d at 415 (internal citations omitted) (emphasis added).

In this case, to the extent that Plaintiffs' request for monetary relief does not go beyond the reduction in benefits amount, such relief is incidental to, and does not predominate over, their requested injunctive and declaratory relief.  Unlike in *Coleman* and *Reeb* where the requested

9

compensatory damages "'undermined the assumption of homogeneity" of the class because each individual member has a stake in the outcome of the litigation but would not have the opportunity to opt out in order to protect that interest," *Reeb*, 435 F.3d at 650 (*citing Coleman*, 296 F.3d at 449), the individual members of the Class have a much more homogenous stake in the outcome. Essentially, they want their benefits restored permanently as well as any monetary relief for the amounts that they have had to pay for health care because of the reduction of health benefits. Furthermore, the monetary relief requested appears to be "at least . . . capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each [C]lass members' circumstances." *Allison*, 151 F.3d at 415. At the hearing, Defendants conceded as much by stating that Plaintiffs' request for monetary relief for the reduction in benefits may be subject to a mathematic or formulaic calculation.

It is also important to note that the Sixth Circuit allowed a monetary recovery for "back pay" under Rule 23(b)(2) in *Reeb* and *Coleman*. The Sixth Circuit reasoned that while a claim for "back pay implicates some of the same efficiency concerns we have cited today as part of our reasoning for excluding compensatory damages from a Rule 23(b)(2) class, back pay is qualitatively different from compensatory damages . . . because calculation of back pay involves less complicated factual determination and fewer individualized issues." *Coleman*, 296 F.3d at 449. Similar to back pay under the ECOA and Title VII, the Court finds it reasonable to allow a recovery for "back benefits" under the LMRA or ERISA class action under Rule 23(b)(2).

The *Reeb* and *Coleman* courts also considered whether the individual class members would bring suit in the absence of a class action as a factor in determining whether or not the compensatory damages claims defeated the plaintiff's request for certification under Rule 23(b)(2). In *Coleman*,

10

the Sixth Circuit held that "the primary justification for class treatment of these claims [i.e., economic feasability] is largely absent in this case because the [Equal Credit Opportunity Act's ("ECOA")] provision for the award of attorney's fees and costs to successful plaintiffs eliminates any potential financial bar to pursuing individual claims."  296 F.3d at 449 (*citing* 15 U.S.C. § 1691e(d)).  Likewise, in *Reeb*, the Sixth Circuit noted Title VII's fee shifting provision, 42 U.S.C. § 2000e-5(k),  *inter alia*, as similar inducement to that in *Coleman* for plaintiffs to bring individual actions.  435 F.3d at 651.

The LMRA and ERISA, however, are not as welcoming as the ECOA and Title VII to suits from individual plaintiffs.  For instance, Section 301 of the LMRA does not include a statutory provision for granting attorneys' fees, and the Sixth Circuit has held that "attorneys' fees are recoverable as damages against union defendants in Section 301 actions," *only* when the union defendants have either willfully disobeyed a court order or acted in bad faith.  *Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 753-54 (6th Cir. 1996).  As to Plaintiff's ERISA claims, similar to Title VII in *Reeb* or the ECOA in *Coleman*, ERISA does allow a court to grant reasonable attorney's fees and costs of an action to prevailing  plaintiffs.  *See* 29 U.S.C. § 1132(g).  But unlike under the ECOA, where the grant of attorney's fees is automatic to the prevailing party and unlike under Title VII, where the statute specifically limits the award of fees to the prevailing party and includes expert fees, 29 U.S.C. § 1132(g) allows for fees to be awarded to either party and makes no reference to expert fees.  In fact, the Sixth Circuit has rejected a presumption that attorney's fees should ordinarily be awarded to the prevailing plaintiff under 29 U.S.C. § 1132(g).  *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005).  Thus, while it is possible for a losing ERISA plaintiff to recover attorney's fees, a successful ERISA plaintiff may not end up receiving attorney's fees and

11

may even have to pay the attorney's fees of the other party. Furthermore, any monetary recovery in a suit by an individual member of the Class would likely be very small. In light of the foregoing, there is a good possibility that absent class certification, the individual class members would not pursue their claims.

Accordingly, the Court grants Plaintiffs' request to certify the Class under Rule 23(b)(2).

As to class certification under Rule 23(b)(1), the Court finds that it too is not defeated by Plaintiff's request for "back benefit" damages. Separate adjudication of Plaintiffs' claims for injunctive or declaratory relief clearly presents a risk of incompatible standards being applied to different members of the Class. For the reasons above with respect to Rule 23(b)(2), that risk predominates over any monetary relief that Plaintiffs seek for their reduction in benefits.

The Court's conclusion comports with the various district court cases from this Circuit cited by Plaintiffs, where the court certified retiree class actions, which included claims for damages, under Rule 23(b)(1) and (b)(2). *See Fox v. Massey-Ferguson*, 172 F.R.D. 653, 665 (E.D. Mich. 1995) (finding that separate adjudication of claims for health care benefits, by retirees of different states, would inevitably lead to different results and that the defendant's decision to terminate benefits affects the entire proposed class, making injunctive and declaratory relief facially appropriate); *Reese*, 227 F.R.D. at 489 (finding certification under either subsection appropriate because of the risk of inconsistent results and because of the clear appropriateness of injunctive and declaratory relief for the class as a whole); *Kerns v. Caterpillar, Inc.*, No. 3:06-cv-01113, 2007 WL 2044092, at *8-9 (M.D. Tenn. 2007) (July 12, 2007) (citing Massey-Ferguson in finding that certification under either Rule 23(b)(1) or (b)(2) is appropriate because the Plaintiffs' primary request for relief is injunctive and declaratory in nature and predominates over any monetary relief

12

that would be available).

**III.    CONCLUSION**

For the reasons stated, the Court:

**(1)    GRANTS** Plaintiff's Motion for Class Certification (Dkt. No.14);

**(2)    CERTIFIES** the Class;

**(3)    NAMES** Willard L. Sloan, Eugene J. Winningham, and James L. Kelley as class

representatives; and

**(4)    APPOINTS** Klimist, McKnight, Sale, McClow & Canzano, P.C. as class counsel.

**SO ORDERED.**


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 3, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
September 3, 2009.


S/Denise Goodine
Case Manager