UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLARD L. SLOAN, EUGENE J.
WINNINGHAM, and JAMES L. KELLEY,
on behalf of themselves and a similarly
situated class,

                Plaintiffs,

v.

BORGWARNER, INC., BORGWARNER
FLEXIBLE BENEFITS PLANS and
BORGWARNER DIVERSIFIED
TRANSMISSION PRODUCTS, INC.,

                Defendants.
_____/

Case No. 09-cv-10918
Hon. Paul D. Borman
Magistrate Mona K. Majzoub

**Class Action**

# EXHIBIT 13

# TO

# PLAINTIFFS' MOTION
# FOR SUMMARY JUDGMENT
# AS TO LIABILITY

## CLARIFICATIONS OF TENTATIVE AGREEMENT REACHED BETWEEN BWDTPC AND UAW LOCAL 287
### APRIL 8, 2005

1. The agreed to medical care options are not the same as those provided to Muncie Salaried employees. The dates in #1 will be changed to reflect the contract dates for beginning and ending "years". Requirement to change plans will be effective 7/1/05 (not 6/1/05). Other than the highlighted changes in the tentative agreement, the details and provisions of the Health Insurance Agreement (the "Plan") will govern all coverages or exclusion provisions. The Cardinal PPO will be maintained for current retirees.
2. The annual major medical increase of up to 10% can affect stop loss or deductible but cannot be more than a maximum of 10% total out of pocket.
3. The total out of pocket includes stop loss, deductible and contribution.
4. The underlying plan will not be changed from the agreed to 80/20 plan.
5. Medically Necessary Non-Formulary drugs will be considered Formulary for coverage/cost purposes. If the doctor does not pre-approve the medical necessity, the Non-Formulary, you pay the Non-Formulary price and use the Appeal Process. To appeal, you or doctor may contact Express Scripts and provide the medical necessity letter and then you will be reimbursed the difference in cost.
6. If In-Network Cardinal doctor is Out of Network in the Cigna plan, employee has until 1/1/06 to change doctors before being charged out of network rates.
7. If employee does not choose a new plan, they will default to the PPO plan.
8. The printing cost of the contract will be paid by the Company and will be printed by a Union Shop.
9. The changes highlighted and agreed to are the only modifications to the CBA. All other negotiated agreements remain in effect for the duration of this agreement.
10. The duration of the contract will begin upon the ratification date and expire four years from that date.
11. COLA frozen at current rate and the current $0.08 will roll-in 3/1/06. The retiree deferral balance is $0.37 and frozen at that rate for the duration of the agreement. The retiree bonus will continue to be paid each year for the duration of the agreement.
12. The 2nd tier of wages is as follows increasing at $0.50 increments every 12 months:
    a. Production: $15 to $17
    b. Non-Production: $13 to $15
    c. Skilled Trades: $20.46 to $22.46
13. Non-worked time that applies toward 40 hours include: Holiday, Vacation, Bereavement, Temporary Layoff, Vendor Shortage/Quality Issue, Acts of Nature, Jury Duty, Pallbearer, Short Term Military Duty, and Union Business (every reasonable effort will be made for prior notification).



EXHIBIT 46

DTP012976

14. Overtime charging will be agreed to between the Company and Union prior to the Special Meeting.
15. Group Leaders paid $0.70, jobs posted in group, selected based on test/interview/seniority/attendance/discipline record, interview team includes hourly reps, score stays on file for one year.
16. No changes to any of the defined retirement benefits (i.e. 60 & 10, etc)
17. Grace Period for those eligible to retire open to 5/1/06 under benefits of current agreement.
18. Those currently on layoff don't change to the new benefit plan until recalled.
19. The Union will have input on the plant performance plan that replaces profit sharing.
20. Year End Bonus earnings accrued up to the date of ratification will be paid out to the employees as soon as possible, but no later than July 2005.
21. Holidays and Sundays will continue to be paid at double time.

DTP012977