UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLARD L. SLOAN, EUGENE J.
WINNINGHAM, and JAMES L. KELLEY,
on behalf of themselves and a similarly
situated class,

                       Plaintiffs,

v.

BORGWARNER, INC., BORGWARNER
FLEXIBLE BENEFITS PLANS and
BORGWARNER DIVERSIFIED
TRANSMISSION PRODUCTS, INC.,

                       Defendants.

Case No. 09-cv-10918
Hon. Paul D. Borman
Magistrate Mona K. Majzoub

**Class Action**

_____/

# EXHIBIT 22

## TO

## PLAINTIFFS' MOTION
## FOR SUMMARY JUDGMENT
## AS TO LIABILITY

4/13/92

BORG-WARNER AUTOMOTIVE DIVERSIFIED TRANSMISSION PRODUCTS
CORPORATION, MUNCIE PLANT

RETIREMENT INCOME

PROGRAM

GUIDE BOOKLET

October 27, 1989

PENGAD 800-631-6989

EXHIBIT

8

Covering employees in the bargaining unit represented by the
International Union, United Automobile, Aerospace and Agricultural
Implement Workers of America (UAW) and its Local 287.

DTP006295

TABLE OF CONTENTS

Page

A.  The Summary

    1.  Employees Retired or Terminated before
       September 7, 1989                  3 Highlights
    2.  Highlights of the Plan           3 Highlights
    3.  Participation in the Plan         3 Highlights
    4.  Qualifying for a Benefit         4 Highlights
    5.  Credited Service and Vested Service   4 Highlights
    6.  Breaks in Service              5 Highlights
    7.  Types of Benefits            5 Highlights
    8.  Calculation of Benefits        8 Highlights
    9.  Supplemental Allowances      10 Highlights
   10.  Loss or Reduction of Benefits or
       Supplemental Allowances       10 Highlights
   11.  Social Security             12 Highlights
   12.  Examples of Benefits at Retirement   12 Highlights
   13.  Application for Benefits       17 Highlights
   14.  Group Insurance at Retirement     17 Highlights
   15.  Benefit upon Plan Termination    17 Highlights
   16.  Financing the Plan          18 Highlights
   17.  Rights under ERISA          19 Highlights
   18.  Other Information          20 Highlights

B.  The Official Agreement

    1.  Article One                 1
    2.  Article Two                 5
    3.  Article Three               5
    4.  Article Four               6
    5.  Article Five              10
    6.  Article Six               18
    7.  Article Seven              21
    8.  Article Eight             24
    9.  Article Nine              29
   10.  Article Ten              32
   11.  Article Eleven            35
   12.  Article Twelve            38
   13.  Article Thirteen          42

C.  Supplemental Retirement Income Program Agreement   44

D.  Rate Schedule Table A   46

E.  Letters of Understanding:
    1. Retiree Bonus             47
    2. Earnings Test           49

F.  Agreement on Extension of the Retirement Income
    Program Agreement            50

DTP006296

RETIREMENT INCOME PROGRAM

OF

Borg-Warner Automotive Diversified Transmission Products
Corporation, Muncie Plant.

The first twenty pages of this booklet provide a summary of the
Retirement Income Program of Borg-Warner Automotive Diversified
Transmission Products Corporation, Muncie Plant (the "Plan") and are
intended to answer questions most often asked. Also, there are examples
of various types of retirement benefits and schedules provided for your
convenience. The balance of the booklet is a complete copy of the
official agreement and Plan as it has been agreed upon between Borg-
Warner Automotive Diversified Transmission Products Corporation, Muncie
Plant and the International Union, United Automobile, Aerospace and
Agricultural Implement Workers of America, UAW, and its Local 287 (the
"Agreement"). Your eligibility to participate in this defined benefit
plan and the benefits you will receive will be determined by this
Agreement. You should refer to it to fully understand your benefits.

These highlights reflect the Plan as it was amended effective as of
September 7, 1989.

Employees retired or terminated before September 7, 1989

If you have retired or terminated employment before September 7, 1989,
your benefits will be determined under the Plan as it existed at the
time of your retirement or termination.

Highlights of the Plan

The purpose of the Plan, which is a defined benefit plan, is to provide
you with a source of income that begins at retirement. When you retire,
you may receive benefits from this Plan.

Participation in the Plan

To participate in this Plan you must be a person employed by Borg-Warner
Automotive Diversified Transmission Products Corporation, Muncie Plant
(the "Company") on September 7, 1989 in the bargaining unit which is
defined in the applicable collective bargaining agreement between the
Company and the Union, attained the age of 21 and received pay for 1,000
hours during a twelve consecutive month period beginning on the date you
were hired or in any succeeding twelve month period. You will not be
eligible to participate in the Plan if:

. you were not employed by the Company in the Bargaining Unit on
  September 7, 1989, or

. you were hired for employment by the Company in the Bargaining Unit
  on September 7, 1989 or thereafter, or

. you elect to participate in the Borg-Warner Automotive Diversified
  Transmission Products Corporation, Muncie Plant Retirement Savings
  Plan (the "Muncie RSP").

In the event you are a Participant in the Plan, but quit, are discharged
or have your seniority broken for any other reason and at some later
date you are rehired by the Company, you will not be eligible to accrue
further Credited Service in this Plan.

DTP006297

Qualifying for a Benefit

You may qualify for:

- A Normal Retirement Benefit at or after age 65; provided however, you meet the eligibility requirements and you were hired prior to age 60 and you continue working through your 65th birthday. If you were hired after having attained age 60, you will become eligible for a Normal Retirement Benefit after you complete five years of participation in the Plan.

- An Early Retirement Regular Benefit, either:

  .. at or after age 60 but before age 65, if you have at least ten years of Credited Service, or

  .. at or after age 55, but before age 60, if the sum of your age and your years of Credited Service total at least 85, or

  .. at anytime after you have thirty years of Credited Service.

- A Special Early Retirement Benefit beginning at or after age 55 but before age 65, if you have at least ten years of Credited Service and you are retired at the option of the Company or under mutually satisfactory conditions as explained in the Plan and you are not discharged for cause.

- A Disability Retirement Benefit, if, your employment ends because you become totally and permanently disabled and you have at least ten years of Credited Service. To be eligible for this benefit, you must fulfill all the requirements as defined in the Plan. These requirements state the length of time you must have been disabled and also the type of disability which this benefit covers.

- A Deferred Vested Retirement Benefit if you have at least five years of Vested Service or ten years of Credited Service. This benefit begins at age 65, or, upon your election, a reduced benefit either after age 60 or after age 55 if the sum of your age and years of Credited Service total at least 85.

Credited Service and Vested Service

Eligibility for benefits and the amount of benefits are determined by the amount of Credited Service which you have at the time you terminate your employment. Your eligibility for a Deferred Vested Retirement Benefit is determined by whether you have five years of Vested Service or ten years of Credited Service at the time you terminate your employment. Credited Service and Vested Service is counted as follows:

Credited Service:

For years of employment before October 1, 1950. You will receive Credited Service in an amount equal to the greater of the years of seniority you have on October 1, 1950 or the actual years of employment.

For years of employment on or after October 1, 1950. You will receive Credited Service in an amount equal to one year for each calendar year you work at least 1,600 hours for which you are paid, or a fractional year's credit, if you work fewer than 1,600 hours.

DTP006298

Vested Service:

> You will receive one year of Vested Service for each year of
> Credited Service you had before January 1, 1976, and, one year of
> Vested Service for each calendar year beginning January 1, 1976
> during which you worked 1,000 hours.  There are no fractional
> years of Vested Service.

Types of Hours Counted for Credited and Vested Service:

> The hours counted for Credited Service and Vested Service are the
> hours you actually work, but they may also include limited
> periods during which you do not work or receive pay; they are
> described in the Plan, and you should refer to it to determine
> the amount of hours you have.

Breaks in Service

You will incur a break in service if you quit, or are discharged, or
seniority is broken for any other reason, and after January 1, 1976 if
you also work fewer than 500 hours during a calendar year.  If, you
incur a break in service, you will lose credit for all of your previous
Credited Service and Vested Service, unless you were eligible for a
Deferred Vested Retirement Benefit when you incurred the break in
service.

Your previous Credited Service and Vested Service will be restored as
soon as you return to work, but you will not be eligible to Participate
in this Plan and you will not be credited with further Credited Service
in this Plan.

Types of Benefits

When you retire, you may be eligible for one or more of the Benefits*
listed below.  To determine whether you fulfill all of the requirements,
you must review the Plan.  Do not assume that you are eligible for a
Benefit.

- Normal Retirement*

    .. The Normal Retirement Benefit plus the Special Age 65 Benefit.

- Early Retirement Regular*

    .. Thirty or more years of Credited Service:  The Normal Retirement
       Benefit reduced until age 62 and one month, plus the Early
       Retirement Supplement until age 62 and one month, plus the
       Special Age 65 Benefit beginning at age 65.

    .. Less than thirty years of Credited Service and retired before
       age 62:  The Normal Retirement Benefit reduced until age 62 and
       one month, plus the Interim Supplement until age 62 and one
       month, plus the Special Age 65 Benefit beginning at age 65.

    .. Less than thirty years of Credited Service and retired on or
       after age 62:  The Normal Retirement Benefit plus the Special
       Age 65 Benefit beginning at age 65.

- Special Early Retirement* or Disability Retirement*

    .. Thirty or more years of Credited Service:  The Normal Retirement
       Benefit, plus if not eligible for an Unreduced Social Security
       Benefit, a Temporary Benefit until age 62 and one month, plus
       the Early Retirement Supplement until age 62 and one month, plus
       the Special Age 65 Benefit beginning at age 65, or, if under
       voluntary Medicare coverage, before age 65.                DTP006299

Page 5 Highlights

.. Less than thirty years of Credited Service and retired before
   age 62: The Normal Retirement Benefit, plus the Special Age 65
   Benefit beginning at age 65, or, if under voluntary Medicare
   coverage, before age 65, plus if not eligible for an Unreduced
   Social Security Benefit, the Temporary Benefit until age 62 and
   one month.

.. Less than thirty years of Credited Service and over age 62 when
   retired:  The Normal Retirement Benefit, plus the Special Age 65
   Benefit beginning at age 65, or, if under voluntary Medicare
   coverage, before age 65.

. Deferred Vested Retirement*

.. Five years of Vested Service or Ten years of Credited Service:
   The Deferred Vested Retirement Benefit.

. Survivor Benefit

There are two types of survivor benefit protection available under
this Plan. One is in effect while you are still employed, and the
other comes into effect when you begin retirement.  There are
several conditions for you and your spouse to satisfy before you
qualify for the protection.  Also, the election of the survivor
protection will reduce the amount of your monthly retirement
benefit so please read the following carefully.

.. Pre-Retirement Survivor Benefit

While you are still working, your eligible spouse may be
entitled to a Survivor Benefit if you die at a time at which
you have either:

...reached age sixty and have ten years of Credited Service; or

...reached age fifty-five and your age and number of
   years of Credited Service total at least 85; or

...have at least thirty years of Credited Service; or

...Vested in accordance with the "Vesting" provisions (5
   years), although the benefit payments are delayed until the
   earliest date you could have retired.

The amount of the Survivor Benefit will be 60% of the Normal
Retirement Benefit which you would have received on or after
age 62 years and one (1) month if you had retired on the day
before your death, reduced in accordance with the Plan.

In order to qualify for this Survivor Benefit, you must have
fulfilled the requirements above and your surviving eligible
spouse must have been married to you for at least one full year
immediately before your death.

.. Post-Retirement Automatic Survivor Benefit

Unless you elect otherwise before you retire (see following
paragraphs), your Benefit will automatically be reduced from
the amount calculated under the formula to provide automatic
survivor benefit protection after your normal retirement, early
retirement, special early retirement, disability, or deferred
vested retirement.

DTP006300

An eligible spouse is a spouse to whom you are married for at least one year as of the date your Benefit commences or, if you are married to your spouse for less than one year at the time your Benefit commences, then the survivor benefit will go into effect the first day of the month following the day in which you have been married to that spouse for one year.

Under the automatic Survivor Benefit, except as provided in the next paragraph, you will receive a reduced Benefit for life and upon your death, your surviving eligible spouse will receive 60% of the reduced Benefit for his or her lifetime. Your Benefit will be further reduced for age, if you retire prior to age 62. The reduction percentage for an employee and his or her eligible spouse, whose ages at retirement are within five years of each other, is 5% while age difference other than a five-year spread requires reduction percentages as explained in detail in the Plan (see Article Eight, Section 3). A Participant with 30 or more years of Credited Service will no longer have the reduction for age when he reaches age 62--but the percentage reduction to provide the automatic Survivor Benefit (based on what you receive if you were age 65 when the automatic Survivor Benefit goes into effect) continues while the automatic Survivor Benefit remains in effect.

Unless you file the written form described in the following paragraph to cancel the automatic election, the automatic Survivor Benefit will go into effect at the time you apply for a benefit. However, if you have not been married to your spouse for a year, the election will go into effect the first day of the month following the day in which you have been married for one year.

If you do not want this automatic Survivor Benefit, you along with your eligible spouse must elect in writing on a form provided by the Company to cancel it before the effective dates above. Your spouse's signature must be notorized or witnessed by a member of the Board of Administration.

If, after the election is in effect your eligible spouse dies or you are divorced by court decree, then the election will be cancelled if you provide sufficient evidence of the death or divorce to the Board. Your retirement benefit will at this time be adjusted to eliminate the surviving spouse reduction provided that no qualified domestic relations order is received prior to the beginning payment date of the restored benefit.

If your eligible spouse dies or you are divorced while the reduction for survivor benefit protection is in effect and you do not provide sufficient evidence of the event to the Board, then the reduction will continue even though there is no longer an eligible spouse for which this benefit was intended.

Special Age 65 Benefit

If you are receiving either a Normal Retirement Benefit, Early Retirement Regular Benefit, a Special Early Retirement Benefit, a Disability Retirement or a Survivor Benefit (excluding a surviving eligible spouse of a Retired Employee receiving a Deferred Vested Retirement Benefit) you will receive a Special Age 65 Benefit if you are enrolled in the voluntary Medicare coverage insurance program that is available under the Federal Social Security Act; provided however, that a surviving eligible spouse must be at least 65 years old to receive this benefit.

*Please note that each Benefit will be reduced by any "other benefits" you are receiving or entitled to receive.

<u>Calculation</u> <u>of</u> <u>Benefits</u>

The benefit amount under the Plan and the periods they are payable are
as follows:

- <u>Normal Retirement Benefit</u>---The Normal Retirement Benefit is a set
  amount based on a rate times your years of Credited Service on the
  day you retire according to the following schedule:

  | <u>Date of Retirement</u> | <u>Rate</u> |
  |---|---|
  | Sept. 7, 1989 through Nov. 30, 1989 | $19.00 |
  | December 1, 1989 and after | 22.00 |

  less Other Benefits, if any.

- <u>Early Retirement Regular Benefit</u>--The amount of the Early
  Retirement Regular Benefit is determined by taking the Normal
  Retirement Benefit and multiplying it by the percentage as shown in
  the table below which is next to the age when the Benefit begins.

  | Age When<br><u>Benefit Commences</u> | <u>Payment Percentage</u>* |
  |---|---|
  | 47 | 30.4 |
  | 48 | 32.8 |
  | 49 | 35.4 |
  | 50 | 38.3 |
  | 51 | 41.5 |
  | 52 | 45.0 |
  | 53 | 48.9 |
  | 54 | 53.2 |
  | 55 | 57.9 |
  | 56 | 63.5 |
  | 57 | 69.4 |
  | 58 | 75.2 |
  | 59 | 80.8 |
  | 60 | 86.7 |
  | 61 | 93.3 |
  | 62 | 100.0 |

  *Prorated for intermediate ages.

  less Other Benefits, if any.

  If you have thirty or more years of Credited Service or your
  combined age and years of Credited Service (to the nearest 1/12th
  in each case) total at least 85 when you retire, the Early
  Retirement Regular Benefit will be redetermined to the amount of
  the Normal Retirement Benefit, without the percentage reduction,
  when you reach age 62 and one month.

- <u>Special Early Retirement Benefit</u>--This benefit, if you qualify,
  consists of:

  .. the Normal Retirement Benefit plus

  .. a Temporary Benefit determined by multiplying your number of
     years of Credited Service on the day you retire by the rate in
     effect from the following table up to the maximum benefit.

| Date of Retirement | Rate | Maximum Benefit |
|---|---|---|
| Sept. 7, 1989 thru Nov. 30, 1989 | $17.00 | $510.00 |
| Dec. 1, 1989 thru Oct. 31, 1990 | 19.00 | 570.00 |
| Nov. 1, 1990 thru Oct. 31, 1991 | 20.00 | 600.00 |
| November 1, 1991 and after | 21.00 | 630.00 |
| less Other Benefits, if any. | | |

The Temporary Benefit will terminate when you reach age 62 and one month, or when you become eligible for an unreduced social security benefit for age or disability, whichever is the earlier.

. Disability Retirement Benefit--This benefit, if you qualify, consists of:

.. the Normal Retirement Benefit plus

.. a Temporary Benefit determined by multiplying your number of years of Credited Service on the day you become totally and permanently disabled by the rate in effect from the following table up to the maximum benefit.

| Date of Retirement | Rate | Maximum Benefit |
|---|---|---|
| Sept. 7, 1989 thru Nov. 30, 1989 | $17.00 | $510.00 |
| Dec. 1, 1989 thru Oct. 31, 1990 | 19.00 | 570.00 |
| Nov. 1, 1990 thru Oct. 31, 1991 | 20.00 | 600.00 |
| November 1, 1991 and after | 21.00 | 630.00 |

less Other Benefits, if any.

The Temporary Benefit will terminate when you reach age 62 and one month, or when you become eligible for an unreduced social security benefit for disability, whichever is the earlier.  You will be considered eligible for an Unreduced Social Security Benefit on account of disability unless you furnish the Board with written evidence that you have applied for and been denied such benefit.

. Deferred Vested Retirement Benefit--The amount of the Deferred Vested Retirement Benefit is the rate in effect at the time your employment with the Company was terminated times each year of Credited Service.

| Date of Termination | Rate |
|---|---|
| Sept. 7, 1989 thru Nov. 30, 1989 | $19.00 |
| December 1, 1989 and after | 22.00 |

less Other Benefits, if any.

You may elect to receive the Deferred Vested Retirement Benefit after age 60 or after age 55 if your combined years of age and your years of Credited Service total at least 85, but the amount determined by using the formula above will be reduced by 5/9 of 1% for each month which the benefit begins before your 65th birthday.

. Special Age 65 Benefit--The monthly benefit, if you are eligible, is the amount Medicare determines as the cost for Part B of the Federal Medicare program.

DTP006303

Supplemental Allowances

In addition to the benefits described above, there are supplemental allowances which are available to Participants who meet the requirements for them.  There is a penalty for receiving a Supplemental Allowance after you become ineligible and the Supplemental Allowance is subject to a reduction in certain instances.

- Early Retirement Supplement--The Early Retirement Supplement is available to Participants, who retire with 30 or more years of Credited Service (except those with a Deferred Vested Retirement Benefit), until age 62 and one month.  This supplement is designed to bring the total monthly benefit under the Plan to the amount on the schedule below.  The amount of this supplement is the difference between the applicable amount on the schedule and the monthly retirement benefit.  However, if a Retired Employee becomes eligible for a Unreduced Social Security Benefit as a result of a disability, the Early Retirement Supplement will be reduced by the Temporary Benefit.  The actual amount of this supplement will, therefore, depend on the amount of the monthly retirement benefit for which you are otherwise eligible:

| Date of Retirement | total monthly benefit for determining Early Retirement Supplement |
|---|---|
| Sept. 7, 1989 thru Nov. 30, 1989 | $ 1,075 |
| Dec. 1, 1989 thru Oct. 31, 1991 | 1,400 |
| Nov. 1, 1991 and after | 1,500 |

- Interim Supplements-- A Participant who retires and is eligible for a Early Retirement Regular Benefit on or after September 7, 1989, with less than thirty (30) years of Credited Service and before attaining age sixty-two (62), shall be entitled to a monthly Interim Supplement until he attains age sixty-two (62) and one (1) month.  The amount of the Interim Supplement is determined by multipying the number of years of Credited Service at the date of retirement by the following rate applicable to the age at retirement:

Monthly Amount for Each Year of Credited Service*

| Age at Retirement | Ret. 9/7/89 through 11/30/89 | Ret. 12/1/89 and thereafter |
|---|---|---|
| 54 or under | $-0- | $-0- |
| 55 | 4.70 | 7.05 |
| 56 | 5.80 | 8.70 |
| 57 | 6.80 | 10.20 |
| 58 | 7.90 | 11.85 |
| 59 | 8.90 | 13.35 |
| 60 | 10.00 | 15.00 |
| 61 | 10.00 | 15.00 |

*Prorated for intermediate ages.

Loss or Reduction of Benefits or Supplemental Allowances

There are many ways in which you can fail to qualify for, lose, or have reduced the Benefits or Supplemental Allowance you may be expecting under this Plan.  The following are some of the most common ways; review them carefully.  They do not constitute all of the circumstances.  You should realize that in order to receive a Benefit or a Supplemental Allowance from the Plan you must qualify for that Benefit or Supplemental Allowance according to the provisions of the Plan and you should refer to the Plan to see if you qualify for each Benefit or Supplemental Allowance.

- If you were hired after you reached age 60 and you do not participate in the Plan for at least five years prior to the date of your termination, you will be not eligible for a Benefit from this Plan.

- If you receive or are entitled to receive "other benefits," as fully described in the Plan, your Benefit will be reduced by the amount of each of the "other benefits." "Other benefits" means any annuity, pension or retirement benefit for concurrent service with the Company to which a Retired Employee would be entitled by reason of any Company pension or retirement plan to the extent to which the Company contributes or has contributed, but does not include any benefit the Retired Employee receives from his Employee Retirement Account or Savings Account in the Muncie RSP or the Borg-Warner Automotive, Inc.  Transmission Systems -Local 287 Retirement Investment Plan.

- If you are receiving a Temporary Benefit, it will end when you reach age 62 and one month or when you are eligible for an Unreduced Social Security Benefit.

- If you are receiving an Interim Supplement, it will end when you reach age 62 and one month.

- If you are receiving a Early Retirement Supplement, it will end when you reach age 62 and one month.

- If you do not file for a Benefit within five years of the last day you work for the Company, except if you were on a union leave of absence, you will not receive a Supplemental Allowance.

- If you do not agree to restrict your employment income as provided in the Plan, you will have your Supplemental Allowance reduced.

- If you retire with a Special Early Retirement Benefit or a Disability Benefit you are entitled to receive a Early Retirement Supplement.  The amount of such Early Retirement Supplement will be determined as if you are receiving a Temporary Benefit even though you may not be receiving a Temporary Benefit.

- If you are entitled to receive an Early Retirement Supplement, the amount of such Early Retirement Supplement will be determined as if you had elected not to receive the Survivor Benefit.

- If the Supplemental Allowance you were to receive, when added to your Benefit, would result in your total benefit exceeding 70% of your final base pay (as computed in the Plan), then the amount of the Supplemental Allowance will be reduced until the total benefit is 70% of your final base pay or until the amount of the Supplemental Allowance equal zero, whichever comes first.

- If you are entitled to receive a Supplemental Allowance and you earn over the maximum earnings allowable under social security prior to age 65, then you will be penalized double the amount that your earnings exceed the maximum earnings for Social Security.  The amount of the penalty will be deducted from the amount of the Supplemental Allowance you receive in the future.

- If you have incurred a penalty because of excess earnings or after you are entitled to Social Security benefits you are overpaid a Supplemental Allowance, you will have to either repay the over-payment in a lump sum or it will be deducted from future amounts payable to you from the Plan.

DTP006305

. If you are discharged, you will not be eligible for a Supplemental Allowance unless, after a collective bargaining grievance, a decision was made that you are so eligible.

. If you have a break in service, you may lose all of your previous Credited Service and Vested Service.

. If you are credited with less than 1,600 hours in a year, you may not receive a full year of Credited Service.
. If you transfer to a supervisor position, you will stop accumulating Credited Service under this Plan.

. If you don't apply for benefits, you won't receive them.

## Social Security

You and the Company pay equal taxes during your work years to provide Social Security benefits for your retirement. Social Security is important not only as part of your retirement income, but also for its disability, survivor and Medicare provisions. The amount of Social Security benefits will be based on those portions of your income on which Social Security taxes were paid, according to the schedule of benefits stated in the law when you retire. Although the examples in this Summary will not show estimated amounts for Social Security benefits, the availability of these benefits should be kept in mind as you review the examples. You can obtain full information on your rights and benefits by visiting your local Social Security office.

## EXAMPLES OF BENEFITS AT RETIREMENT
NOTE: The amounts below are estimates, and will be reduced by certain other benefits (as defined in the Agreement) if you are receiving or entitled to receive such benefits. These amounts are a guide to show you how to determine your benefits based on the Benefit that you are entitled to receive; it is not a statement that you are actually entitled to receive such a Benefit. All examples are based on the $22.00 rate (these calculations are as of 1/1/90).

### Normal Retirement Benefit at age 65 with 30 years of Credited Service

.Without the Survivor Benefit Option
    Normal Retirement Benefit
    (rate x years of credited service)    $660.00
    +Special Age 65 Benefit *             + 28.60
                                          ---------
    TOTAL BENEFIT                         $688.60

.With the Survivor Benefit Option
    Normal Retirement Benefit             $660.00
    (rate x years of credited service)
    -Survivor Benefit reduction**         - 33.00
                                          ---------
    BENEFIT                               $627.00
    +Special Age 65 Benefit *             + 28.60
                                          ---------
    TOTAL BENEFIT                         $655.60

    Survivor Benefit
    (Normal Retirement Benefit -Survivor
    Benefit Reduction x 60%:              $376.20
    $660.00 - 33.00 = $627.00 x 60%)

    *Special Age 65 Benefit will be the normal Medicare charge.
    **The usual survivor option percentage charge is 5%.

Page 12 Highlights

DTP006306

Normal Retirement Benefit at age 65 with 20 years of Credited
Service

```
.Without the Survivor Benefit Option
        Normal Retirement Benefit (rate x
        years of credited service)          $440.00
       +Special Age 65 Benefit *            + 28.60
                                            ---------
        TOTAL BENEFIT .                     $468.60


.With the Survivor Benefit Option
        Normal Retirement Benefit (rate x
        years of credited service)          $440.00
       -Survivor Benefit Reduction * *      - 22.00
                                            ----------
                                            $418.00
       +Special Age 65 Benefit  *           + 28.60
                                            ----------
        TOTAL BENEFIT                        $446.60


        Survivor Benefit
        (Normal Retirement Benefit
        -Survivor Benefit Reduction**
        x 60%:                               $250.80
        $440.00 -22.00 = $418.00 x 60%)


        *Special Age 65 Benefit will be the normal Medicare charge.
        **The usual survivor option percentage charge is .5%.
```

<u>Early</u> <u>Retirement</u> <u>Regular</u> <u>Benefit</u> <u>at</u> <u>age</u> <u>60</u> <u>with</u> <u>30</u> <u>years</u> <u>of</u> <u>Credited</u>
<u>Service</u>

.Without the Survivor Benefit Option

|  | Benefits Received Until Age 62 | Benefits Received Between Age 62 & 65 | Benefits Received Beginning at Age 65 |
|---|---|---|---|
| Normal Retirement Benefit  # | $572.22 # | $660.00 | $660.00 |
| +Early Retirement Supplement | 827.78 | .00 | .00 |
| +Special Age 65 Benefit  * | .00 | .00 | 28.60 |
| TOTAL BENEFIT | $1,400.00 | $660.00 | $688.60 |

.With the Survivor Benefit Option

|  | Benefits Received Until Age 62 | Benefits Received Between Age 62 & 65 | Benefits Received Beginning at age 65 |
|---|---|---|---|
| Normal Retirement Benefit  # | $572.22 # | $660.00 | $660.00 |
| - Survivor Option ** | - 33.00 | - 33.00 | - 33.00 |
| BENEFIT | $539.22 | $627.00 | $627.00 |
| + Early Retirement Supplement | 827.78 | .00 | .00 |
| + Special Age 65 Benefit  * | .00 | .00 | + 28.60 |
| TOTAL BENEFIT | $1367.00 | $627.00 | $655.60 |

Survivor Benefit Option
(Early Retirement
Regular Benefit
- Survivor Benefit **
Reduction x 60%:   $376.20      $376.20      $376.20
$660.00 -33.00 = $627.00 x 60%)

# Reduced for Early Retirement
*Special Age 65 Benefit will be the normal Medicare charge.
**The usual survivor option percentage charge is 5%.

DTP006308

<u>Early Retirement Regular Benefit at age 60 with 20 years of Credited Service</u>

.Without the Survivor Benefit Option

| | Benefits Received Until Age 62 | Benefits Received Between Age 62 & 65 | Benefits Received Beginning at Age 65 |
|---|---|---|---|
| Normal Retirement Benefit (reduced for early retirement) | $381.48 | $381.48 | $381.48 |
| + Interim Supplement | 300.00 | .00 | .00 |
| + Special Age 65 Benefit * | .00 | .00 | + 28.60 |
| TOTAL BENEFIT | $681.48 | $381.48 | $410.08 |

.With the Survivor Benefit Option

| | Benefits Received Until Age 62 | Benefits Received Between Age 62 & 65 | Benefits Received Beginning at Age 65 |
|---|---|---|---|
| Normal Retirement Benefit (reduced for early retirement) | $381.48 | $381.48 | $381.48 |
| - Survivor option * | - 19.07 | - 19.07 | - 19.07 |
| BENEFIT | $362.41 | $362.41 | $362.41 |
| + Interim Supplement | +300.00 | .00 | .00 |
| + Special Age 65 Benefit ** | .00 | .00 | + 28.60 |
| TOTAL BENEFIT | $662.41 | $362.41 | $391.01 |
| Survivor Benefit (Early Retirement Regular Benefit -Survivor Reduction x 60%: $440.00 -58.52 = $381.48 x 60%) | $228.89 | $228.89 | $228.89 |

*Special Age 65 Benefit will be the normal Medicare charge.
**The usual survivor option percentage charge is 5%.

DTP006309

Disability Retirement or Special Early Retirement with
20 years of Credited Service at age 60.

. Without the Survivor Benefit Option

|  | Benefits Received Until Age 62 | Benefits Received Between Age 62 & 65 | Benefits Received Beginning at Age 65 |
|---|---|---|---|
| If eligible for Social Security: Normal Retirement Benefit | $440.00 | $440.00 | $440.00 |
| + Special Age 65 Benefit * (Assumed) | + 28.60 | + 28.60 | + 28.60 |
| TOTAL BENEFIT | $468.60 | $468.60 | $468.60 |
| If not eligible for Social Security: Normal Retirement Benefit | $440.00 | $440.00 | $440.00 |
| + Temporary Benefit ($20) | +400.00 | .00 | .00 |
| + Special Age 65 Benefit * | 0.00 | + 28.60 | + 28.60 |
| TOTAL BENEFIT | $840.00 | $468.60 | $468.60 |

. With the Survivor Benefit Option

|  | Benefits Received Until Age 62 | Benefits Received Between Age 62 & 65 | Benefits Received Beginning at Age 65 |
|---|---|---|---|
| If eligible for Social Security: Normal Retirement Benefit | $440.00 | $440.00 | $440.00 |
| − Survivor Option ** | − 22.00 | − 22.00 | − 22.00 |
| BENEFIT | $418.00 | $418.00 | $418.00 |
| + Special Age 65 Benefit * | + 28.60 | + 28.60 | + 28.60 |
| TOTAL BENEFIT | $446.60 | $446.60 | $446.60 |
| If not eligible for Social Security: Normal Retirement Benefit | $440.00 | $440.00 | $440.00 |
| − Survivor Option ** | − 22.00 | − 22.00 | − 22.00 |
|  | $418.00 | $418.00 | $418.00 |
| + Temporary Supplement | +400.00 | .00 | .00 |
| + Special Age 65 Benefit * | + 28.60 | + 28.60 | + 28.60 |
| TOTAL BENEFIT | $846.60 | $446.60 | $446.60 |
| Survivor Benefit (Normal Retirement Benefit Reduced−Survivor Reduction x 60%: $440.00 −22.00=$418.00 x 60%) | $250.80 | $250.80 | $250.80 |

Page 16 Highlights

DTP006310

*Special Age 65 Benefit will be the normal Medicare charge.
**The usual survivor option percentage charge is 5%.
Deferred Vested Retirement of a Participant who terminated
employment with 20 years of Credited Service on or after December 1,
1989 at age 65
    Deferred Vested Retirement Benefit: = $440.00
    ($22.00 x 20 years of Credited Service)

Application for a Benefit

To begin a Benefit under the Plan, you must file an application.  An
application may be obtained from the Company's Insurance and Pension
office, or ask your foreman or Union Representative.

You should file your application about 60 days before the date you
wish to retire.

If your claim for a Benefit is denied, in whole or part, you will be
notified, in writing, by the Board of Administration.  The Board will
give the reasons for the denial and tell you what additional infor-
mation might be needed to consider your claim further.  You may appeal
to the Board for a review of any claim which the Board denies in whole
or in part within 60 days of the date on which your claim is denied.
The Board will review any information which you provide and will notify
you within 60 days after receipt of your request for review.

Group Insurance at Retirement

Hospital and Medical Insurance Benefits--Your hospital and medical
expense coverage will be continued after your retirement pursuant to the
Health Insurance Agreement between Borg-Warner Automotive Diversified
Transmission Products Corporation, Muncie Plant, and International
Union, United Automobile, Aerospace and Agricultural Implement Workers
of America (UAW) and its Local No. 287 entered into on the 27th day of
October, 1989 (the "Health Insurance Agreement").  The Company pays the
full cost of such coverage for "retirees and their eligible dependents"
according to the terms of the Health Insurance Agreement. These terms
are described in the Health Insurance Agreement and Group Insurance
booklet.

Life Insurance After Retirement--If your group life insurance is in
effect at the date of your retirement, your life insurance will be
continued in effect for you in accordance with the terms and the
schedule of the Health Insurance Agreement. These terms are described in
the Health Insurance Agreement booklet.

Benefits upon Plan Termination

If the assets in the Trust Fund are sufficient, then all the benefits
based on your Credited Service under the Plan to date of termination of
the Plan would be paid; however, if the assets in the Trust Fund aren't
sufficient, certain groups get their benefits, or parts of the benefits,
before certain others, and some benefits may not be paid at all.

Even if assets should run out, there are certain benefits that Borg-
Warner Automotive Diversified Transmission Products Corporation will pay
out of corporate funds.  In the event that Borg-Warner Automotive
Diversified Transmission Products Corporation should go out of existence
completely, there are certain government guarantees from the Pension
Benefit Guaranty Corporation (PBGC).

Benefits under this Plan are insured by the PBGC if the Plan terminates. Generally, the PBGC guarantees most vested normal age retirement benefits, early retirement benefits, and certain disability and survivor's benefits; however, the PBGC does not guarantee all types of benefits under covered plans, and the amount of benefit protection is subject to certain limitations.

The PBGC guarantees vested benefits at the level in effect on the date of a plan termination; however, if a plan has been in effect less than five years before it terminates, or if benefits have been increased within the five years before plan termination, the whole amount of the plan's vested benefits or the benefit increases may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit the PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its limitations, ask the Company's Insurance and Pension Office or the PBGC. Inquiries to the PBGC should be addressed to:

    The Office of Communications
    PBGC
    2020 "K" Street, N.W.
    Washington, D.C.  20006

The PBGC Office of Communications may also be reached by calling (202) 254-4817.

To the extent provided for in the Supplemental Retirement Income Program Agreement dated 10/27/89, if the Plan should terminate because of the Muncie Plant closing,

    .. all Participants who had retired, surviving eligible spouses who were being paid a Benefit, and Participants eligible to retire would receive their full benefits, including all Supplemental Allowances.

    .._ Participants entitled to a Deferred Vested Retirement Benefit would receive their accrued benefits, and

    .. the eligible spouses of deceased employees who were eligible for a Survivor Benefit would receive such Survivor Benefit.

If Borg-Warner Automotive Diversified Transmission Products Corporation should go out of existence, the Supplemental Allowances might no longer be guaranteed.

After the benefits of the previous paragraph were taken care of, then IF THERE WAS ANY MONEY LEFT IN THE TRUST FUND, Participants with less than 10 years of service would be taken care of. These benefits are entirely dependent upon there being Trust Fund assets. Neither Borg-Warner Automotive Diversified Transmission Products Corporation nor the PBGC would pay any of these.

### Financing the Plan

Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, sponsors the Plan and makes contributions to the Borg-Warner Corporation Employees Pension Trust. Company contributions are made each year according to what an independent actuary says is sufficient to provide the Plan's stated benefits assuming the Plan continues in effect.

DTP006312

Your Rights under the Employee Retirement Income Security Act of 1974 (ERISA)

As a participant in the Plan, you have certain rights and protections under the Employee Retirement Security Act of 1974. ERISA entitles you to:

- Examine, without charge, at the Company's Insurance and Pension Department, 5401 Kilgore, Muncie, IN 47304, all Plan documents, including copies of all documents filed by the Plan with the U.S. Department of Labor, such as annual reports and Plan descriptions.

- Obtain copies of all Plan documents and other Plan information upon request to the Insurance and Pension Department. A reasonable charge will be made for copies.

- Receive a summary of the Plan's annual financial report. We will furnish each participant with a copy of this summary financial report.

- Obtain a statement once a year telling you whether you have a right to receive a benefit at normal retirement age (age 65) and if so, what your benefits would be at normal retirement age if you stop working under the Plan now. If you do not have a right to a benefit, the statement will tell you how many more years you have to work to get a right to a benefit. This statement must be requested in writing. We will provide the statement free of charge.

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of a plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to operate the Plan prudently and in the interest of you and other Plan participants and beneficiaries.

No one, including your employer, or any other person, may terminate you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

If your claim for a benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the Board of Administration of the Plan review and reconsider your claim.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Board of Administration and do not receive them within thirty days, you may file suit in a federal court. In such a case, the court may require the Plan administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Board of Administration.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court.

If it should happen that the Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in federal court.

The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

DTP006313

Page 19 Highlights

If you should have any questions about this Plan or your rights under ERISA, you should contact the Insurance and Pension Office or the nearest Area Office of the U.S. Labor/Management Service Administration, Department of Labor.

Other Information

. This summary is a brief description of the Plan.  The official Plan document and Trust Agreement describe the provisions of the Plan in more detail and will solely govern with respect to your eligibility to participate in the Plan and the benefits you will receive under the Plan.

. Type of administration of the Plan.

.. Administered by the Company.  Benefit structure administered by the Company-Union Joint Board of Administration Per Article Four of the Retirement Income Program Agreement.

. Name and address of the employer and administrator.

.. Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant
5401 West Kilgore
Muncie, IN  47304
(317) 286-6100

. Employer tax identification number and plan.

.. EIN 31-1232404 Plan No. 036.

. Name and address of trustee.

.. The Northern Trust Company
Employee Benefit Fund Division
50 South LaSalle Street
Chicago, IL  60675

The name of the Trust is the Borg-Warner Corporation Employees Pension Trust.

. The Retirement Income Program Agreement is negotiated separately from the collective bargaining agreement, and it contains all relevant provisions.

. Name and address for service of legal process.

.. Retirement Income Program
Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant
5401 W. Kilgore
Muncie, IN  47304

Service of legal process may also be made on the trustee.

. Plan year for record keeping.

.. Records are kept on a Plan year basis.  End of Plan year is December 31.

DTP006314

RETIREMENT INCOME PROGRAM
OF
BORG-WARNER AUTOMOTIVE DIVERSIFIED TRANSMISSION PRODUCTS
CORPORATION, MUNCIE PLANT

THIS AGREEMENT was made and entered into this 27th day of October, 1989 by and between Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, hereinafter called the Company, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW and its Local 287, hereinafter called the Union.

W I T N E S S E T H:
The parties hereto have mutually agreed as follows:

This Agreement supersedes the Retirement Income Program Agreement between the parties dated September 7, 1986, and sets forth the entire agreement of the parties with respect to the subject of pensions for employees who were employed in the barganging unit on September 7, 1989 and who have not elected to become a participant in the Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, Retirement Savings Plan.  This Agreement may be modified or supplemented only by further written agreement between the parties hereto.

This Agreement is effective September 7, 1989.  Except as provided in Article Seven, Section 7, the Retirement Income Program Agreement between the Company and the Union dated July 16, 1974 (as amended January 1, 1976), March 6, 1980, March 3,1983, and September 7, 1986 (individually, the "Prior Agreement" or collectively, the "Prior Agreements") shall apply to any Employee retired or terminated prior to September 7, 1989.

ARTICLE ONE
DEFINITIONS

As used in this Agreement, the following terms shall have the meanings indicated:

1.  "Accrued Benefit" means any Benefit under the Plan that a Participant is entitled to under Article Seven as of a particular date.

2.  "Actuary" means the actuary selected by the Company pursuant to Article Three of this Plan.

3.  "Affiliate" means the Company or any corporation that is either a parent corporation, subsidiary corporation or an affiliated or associated entity of the Company that together with the Company is a member of a "controlled group" within the meaning of the Code Sections 414(b), 414(c), 414(m) and 414(o).

4.  "Bargaining Unit" means the group of employees represented by the Union and defined in the Collective Bargaining Agreement between the Company and the Union as amended from time to time.

5.  "Benefit" means either a Normal Retirement Benefit, Early Retirement Regular Benefit, Special Early Retirement Benefit, Disability Retirement Benefit, Deferred Vested Retirement Benefit or Survivor Benefit pursuant to Article Seven and/or Article Eight to which a Participant or Eligible Spouse is entitled upon meeting the eligibility requirements pursuant to Article Six.

6.  "Benefit Commencement Date" means the date on which a Participant's Benefit actually begins under the Plan.

DTP006315

7. "Board" means the Board of Administration, provided for in Article Four of this Agreement.

8. "Break in Service" means less than 500 Hours of Employment in any Plan Year pursuant to Article Five, Section 3. A Participant will incur a one-year break in service for purposes of eligibility to participate if during an eligibility computation period he completes less than 500 hours of employment.

9. "Code" means the Internal Revenue Code of 1986, as amended and in effect from time to time.

10. "Collective Bargaining Agreement" means the Collective Bargaining Agreement between the Company and the Union, effective September 7, 1989 with respect to the Bargaining Unit, as amended from time to time.

11. "Company" means the plants of Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, located in the city of Muncie and Delaware County, Indiana.

12. "Credited Service" means the sum of any Past Service and any Future Service under Article Five. Service with the Company after the December 31 immediately preceding the January 1 that a Participant's Accrued Benefit is frozen under Article Seven, Section 8 shall not be considered as Credited Service under the Plan.

13. "Early Retirement Supplement" means that portion of the Supplemental Allowance provided in accordance with the provisions of Article Nine, Subsection 2(a).

14. "Effective Date" means September 7, 1989.

15. "Eligible Spouse" means (a) the husband or wife to whom a Participant has been married for at least one year prior to his Benefit Commencement Date by a marriage recognized by the law of the state of residence and with respect to a deceased Participant means the husband or wife to whom the deceased Participant had been married for at least one (1) year immediately prior to the Participant's date of death, or (b) the husband or wife to whom a Participant has been married less than one year prior to his Benefit Commencement Date but to whom the Participant thereafter remains married through the first anniversary date of such marriage.

16. "Employee" means any person employed by the Company or on the seniority list on or after January 1, 1950, in the Bargaining Unit defined in the applicable Collective Bargaining Agreement between the Company and the Union.

17. "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

18. "Fiduciaries" means the Company, the Trustee or Trustees, the Board and any investment or financial management or consulting firm, company, or individual designated in accordance with Article Two, but only with respect to the specific responsibilities of each for Plan and Trust administration, all as described in Articles Two and Four herein and the Trust Agreement.

19. "Future Service" means service with the Company as determined under Article Five, Section 2.

20. "Interim Supplement" means the portion of the Supplemental Allowance provided in accordance with the provisions of Article Nine, Subsection 2(b).

21. "Muncie RSP" means the Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant Retirement Savings Plan, as amended from time to time.

22. "Normal Retirement Age" means the later of the date on which the Participant attains age 65 or, if hired after age sixty (60), the fifth anniversary of the date on which the Participant commenced participation in the Plan. A Participant's right to his Benefit shall be nonforfeitable when he attains Normal Retirement Age.

23. "Other Benefits" means any other annuity, pension or retirement benefit for concurrent service with the Company that a Retired Employee would be entitled to by reason of any Company pension or retirement plan to which the Company contributes or has contributed, but does not include any benefit the Retired Employee receives from his Employee Retirement Account or Savings Account in the Muncie RSP or any benefit the Retired Employee receives under the Borg-Warner Automotive, Inc. Transmission Systems-Local 287 Retirement Investment Plan.

24. "Participant" means any Employee who (a) was employed by the Company in the Bargaining Unit on September 7, 1989, (b) has attained age 21 and (c) has completed twelve (12) consecutive months beginning on the Employee's date of hire or succeeding twelve (12) month periods, during which the Employee completes 1000 hours of Future Service. Any Participant who elects to participate in the Muncie RSP effective as of January 1, 1991 or any January 1 thereafter, shall cease being a Participant in this Plan effective as of the December 31 immediately preceding that January 1. Any Employee hired for employment with the Company on September 7, 1989 or thereafter shall not be eligible to participate in the Plan. Any Employee who is rehired for employment with the Company on September 7, 1989 or thereafter will be credited with Vested Service, but not any further Credited Service under the Plan for the subsequent period of employment.

25. "Past Service" means service with the Company as determined under Article Five, Section 1.

26. "Plan" means the Retirement Income Program of Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant.

27. "Plan Year" means the calendar year beginning January 1 and ending December 31 during which the Plan is in effect.

28. "Retired Employee" means a Participant retired under the Plan.

29. "Retirement Benefit" means the monthly payment or payments to which a Retired Employee is entitled.

30. "Special Age 65 Benefit" means that benefit provided in accordance with the provisions of Article Seven, Section 6.

31. "Supplemental Allowance" means the amounts consisting of the Early Retirement Supplement, and Interim Supplement, provided in accordance with the provisions of Article Nine. Unless otherwise expressly provided, a Supplemental Allowance is subject to the provisions of this Agreement and the Retirement Benefits payable from the Trust Fund.

DTP006317

32. "Surviving Eligible Spouse" means an Eligible Spouse who is receiving a Benefit under Article Eight, Section 3 of the Plan.

33. "Temporary Benefit" means the portion of the Retirement Benefits provided in Article Seven that is terminated upon the earlier of a Retired Employee's attainment of age 62 or becoming eligible for an Unreduced Social Security Benefit.

34. "Totally and Permanently Disabled" means the Participant has a mental or physical condition resulting from any medically determinable injury or disease which the Board finds, on the basis of competent medical evidence, will result in the Participant being unable to engage in further regular employment with the Company and will presumably be permanent and continuous for life; provided, however, that for the purposes of the Plan, a Participant shall not be deemed Totally and Permanently Disabled if his disability was a result of service in the armed forces of any country, performed after October 1, 1950, for which a service-connected veteran's disability benefit is payable, except that nothing herein shall prevent a Participant from being deemed so disabled under the Plan if he has accumulated at least five (5) years of Credited Service after separation from service in the armed forces and before such disability occurs.

35. "Trust Agreement" means the agreement or the agreements entered into by the Company with the Trustee in accordance with Article Two.

36. "Trustee" means the trustee or trustees selected by the Company, and designated by the Trust Agreement to hold and invest the Trust Fund.

37. "Trust Fund" means the fund or funds established pursuant to Article Two and to which payments are made by the Company in accordance with Article Three of this Agreement.

38. "Union" means the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and its Local 287.

39. "Unreduced Social Security Benefit" means a benefit equivalent to an individual's primary insurance amount determined and payable under Title II of the Social Security Act, as now in effect or as hereafter amended, without any reduction being made thereon.

40. "Vested Service" means a calendar year during which the Employee completes at least one thousand (1000) hours of Future Service as defined in Article Five, Section 3.

### ARTICLE TWO
### TRUST FUND AND TRUSTEE

A Trustee or Trustees shall be designated by the Company with one or more Trust Agreements executed between the Company and such Trustees, under the terms of which one or more Trust Funds shall be established to receive, hold, invest and reinvest contributions payable by the Company, interest and other income, and to pay the Benefits and Supplemental Allowances provided by the Plan. A copy of the Trust Agreement or Trust Agreements shall be filed with the Board for information only. The Trustee or Trustees or, if so designated by the Trustee or by the Company or by both, an investment or financial management or consulting firm, company, or individual shall be solely responsible for the investment and reinvestment of the funds in the Trust Fund, and shall have sole

DTP006318

discretion as to the securities in which the funds shall be invested or reinvested, including a share of any joint investment account or trust.

The Company will determine the form and terms of any such Trust Agreement; may modify any such Trust Agreement from time to time to accomplish the purpose of the Plan; and remove any Trustee and select any successor Trustee. No Participant shall make or be required to make any contribution to the Trust Fund. The Retirement Benefits provided for herein shall be only such as can be provided by the assets of the Trust Fund and there shall be no liability or obligation on the part of the Company to make any further contributions to the Trustee in the event of termination of this Agreement or the Plan.

## ARTICLE THREE
### PAYMENTS TO THE TRUST

1.  Company Contributions. The Company agrees that, during the period commencing with the Effective Date and continuing for the term of this Agreement, it will from time to time make contributions to the Trust Fund in an aggregate amount sufficient, based upon estimates made by a qualified Actuary selected by the Company,

    (a) to cover the normal cost of the Retirement Benefits provided for under the Plan for such period;
    (b) to fund the lump sum past service costs of the Retirement Benefits provided for under the Plan for such period, on the basis of a method of funding approved by such Actuary, which complies with ERISA; and
    (c) to fund the Early Retirement Supplements and Interim Supplements provided under Article Nine of the Plan on any basis approved by the Actuary; provided that the only contribution required with respect to such Supplemental Allowances shall be the cumulative amount of such Supplemental Allowances paid to
    —    the date as of which contributions are being determined less all prior contributions made with respect to Supplemental Allowances, if any.

    In determining the amount of the contributions required by this Article Three, Section 1, the Actuary shall also take into account contributions heretofore made to the Trust Fund under all Prior Agreements.

2.  Contributions Greater than Minimum. Nothing herein shall be deemed to prevent the Company from making contributions toward the lump sum past service cost greater than those required under this Article Three, nor shall a greater contribution in any year be construed to reduce the maximum funding period established as provided above. Amounts contributed by the Company in any year in excess of the requirements of this Article Three, including contributions made prior to January 1, 1989, shall be credited against contributions required hereinunder in the subsequent year or years.

3.  Tax Deductibility of Contributions. All of the foregoing is subject to the understanding that (a) the Company shall not be required in any year to make contributions in the amount which is greater than the amount which is deductible in that year in computing taxable income under the provisions of the Code, and (b) the Company shall not be obligated to make additional payments to the Trust Fund to make up deficiencies arising from depreciation in the value of the securities of the Trust Fund except as otherwise provided by the Supplemental Retirement Income Program Agreement between the Company and the Union of even date herewith.

Page 5

DTP006319

4.  <u>Statement by Actuary to Board</u>. The Company will cause the Board to be furnished annually with a statement, certified by the Actuary, that the aggregate amount of the contributions made by the Company to the Trust Fund is not less than the amount required by this Agreement. The Company's obligation under this Article Three shall be deemed to have been completely discharged by the furnishing of such statement certified by the Actuary.

5.  <u>Liability Limited to Trust Fund</u>. By payment to the Trust Fund of the contributions provided in this Article Three, the Company shall be relieved of any further liability, and Retirement Benefits, including Supplemental Allowances, provided for under this Agreement shall be payable only from the Trust Fund except as otherwise provided by the Supplemental Retirement Income Program Agreement between the Company and the Union of even date herewith.

ARTICLE FOUR
ADMINISTRATION OF THE PLAN

1.  <u>Administration by the Company</u>. Except as specifically provided otherwise in this Article Four, the administration of the provisions of the Plan shall be the sole responsibility of the Company. As administrator of the Plan, the Company shall:

(a)  Select the Trustee for the Trust Fund as provided for in Article Two.

(b)  Select the Actuary for the Plan.

(c)  Select an independent qualified public accountant to render, where required by regulation, his opinion of the financial statements and schedules included in the annual reports filed with federal agencies pursuant to Title I of ERISA.

(d)  Submit all reports and disclosures required by federal law to the appropriate regulatory agencies and participants, and concurrently submit the same to the Board.

(e)  Notify Participants annually of their Credited Service and Vested Service, and after any appeals to the Board have been resolved, record such Credited Service and/or Vested Service.

(f)  Arrange for payment of a Benefit to which Retired Employees and Eligible Spouses are determined to be entitled by the Board and other payments which may properly be paid from the Trust Fund under the terms of the Plan.

(g)  Maintain all records necessary for administration of the Plan.

2.  <u>Board</u>. There shall be established a Board of Administration, three (3) members of which shall be employees of the Company appointed by the Company (hereinafter referred to as the Company members), and three (3) members of which shall be Employees of the Company appointed by the Union (hereinafter referred to as the Union members), which Board shall administer the benefit structure of the Plan. An impartial chairman shall be selected by mutual agreement of the Company members and the Union members of the Board. In the event of their inability to agree within a period of ten (10) days, the Board shall ask the American Arbitration Association to submit to the Board a list of five (5) names. The Union members of the Board shall first strike two (2) names from the list and the Company

DTP006320

members shall then strike two (2) names, leaving the remaining name as the impartial chairman. The impartial chairman shall vote at meetings of the Board only in the event of a deadlock.

3.  **Removal.**  Either the Company or the Union at any time may remove a member appointed by it and may appoint a member to fill any vacancy among the members appointed by it.  Both the Company and the Union shall notify each other in writing of the members respectively appointed by them before any such appointments shall be effective. The impartial chairman shall serve until such time as he may be requested to resign by three (3) of the members of the Board.

4.  **Powers of the Board.**  The Board shall have the following powers in the application of this Agreement, but without adding to or amending same:

(a)  To prescribe procedures to be followed by Participants in filing applications for a Benefit, and for the furnishing of evidence necessary to establish Participants rights to a Benefit under the Plan, and to institute rules and procedures as may be necessary to administer any qualified domestic relations orders;

(b)  To make a determination as to rights of any Participant applying for a Benefit, and shall afford any such individual or the Company dissatisfied with any such determination the right to a hearing thereon;

(c)  To develop procedures for the establishment of Credited Service for Participants and, after affording Participants an opportunity to make objection with respect thereto, to establish such facts conclusively in advance of retirement;

(d)  To receive from the Company, from the Union, and from Participants such information as shall be necessary for the proper administration of the benefit structure of the Plan;

(e)  To prepare and distribute, in such manner as the Board determines to be appropriate, information explaining the Plan;

(f)  To furnish to the Company, the Union, and the Social Security Department of the International Union (UAW), upon request, such annual reports with respect to its administration of the Plan as are reasonable and appropriate;

(g)  To receive the certified statement of the Actuary as provided in Article Three;

(h)  To receive and review annually a report of receipts, disbursements and aggregate assets of the Trust Fund from the Trustee (which report shall include a percentage breakdown of the assets classified by categories of investments) and actuarial valuations of the Plan by the Actuary (which report shall include a statement of the assumptions used and a summary of the age, sex and service data on which it is based).  Copies of such reports shall be sent to the Social Security Department of the International Union (UAW).

(i)  To collect, receive, evaluate, analyze and prepare statistical data with respect to the administration of the Plan;

Page  7

DTP006321

(j) In the event the Company does not furnish facilities satis-factory to the Board, the Board shall maintain or arrange for such office space, equipment, services and other assistance as may be necessary for the proper administration of the Plan, with due regard to economical administration of the Plan; and to authorize payment by the Trustee from the Trust Fund of expenses necessary for the proper administration of the Plan; and

(k) In the event a payment or payments hereunder are due to a Retired Employee or a Surviving Eligible Spouse and unpaid at the time of the Retired Employee's death or the Surviving Eligible Spouse's death, the Board may determine that said payments shall be made either to the spouse, a child or children, a parent or parents, a brother or brothers, or a sister or sisters of the deceased Retired Employee or Surviving Eligible Spouse, or to the estate of the decedent, and may cause payments to be made to such person so determined or to the decedent's estate. Any such payment shall be a payment for the account of the Retired Employee or the Surviving Eligible Spouse and shall operate as a complete discharge of the Board, the Company, the Union and the Trustee, of any liability therefor.

5. <u>Applications, Notice and Appeal</u>. The Participant or the Surviving Eligible Spouse of the deceased Participant, shall file his application for a Benefit with the Personnel Department or other designated department or employee of the Company, or at such other place as may be designated by the Board, which application shall be transmitted with pertinent data bearing on the applicant's eligibility to the Board for action at its next regular monthly meeting. The Board shall act upon the application promptly and shall notify the applicant and the Company whether or not, on the basis of the information submitted the applicant is eligible under The Plan, and, if so, the amount of the Benefit. Upon approval of the application, the Board shall direct the Trustee to make payments from the Trust Fund. No such payment shall be made until authorized by the Board, but payments shall be retroactive to the date the Benefit was first payable under Article Eight.

If the Board denies any application for a Benefit, in whole or in part, it shall notify the applicant in writing of such denial and of the right to a review by the Board and shall set forth in a manner calculated to be understood by the applicant specific reasons for such denial and references to Plan provisions on which the denial is based, a description of any additional material or information necessary for the applicant to perfect his application and an explanation of why such material or information is necessary.

Any person, or his duly authorized representative, whose application for a Benefit is denied in whole or in part, may appeal from such denial to the Board for a review of the decision by submitting to the Board within sixty (60) days after receiving written notice from the Board of the denial of his claim a written statement:

(a) Requesting a review of the application for a Benefit by the Board, and

(b) Setting forth all of the grounds upon which the request for review is based, any facts in support thereof and any issues or comments which he deems relevant to the application.

DTP006322

The Board shall make a full and fair review of each such application and any written materials submitted by the applicant or the Company in connection therewith and may require the Company or the applicant to submit within thirty (30) days of written notice by the Board therefor, such additional facts, documents or other evidence as the Board reasonably requests in order to make such a review. On the basis of its review, the Board shall make a determination of the applicant's eligibility for a Benefit under the Plan. The Board shall act upon each such submission within sixty (60) days after the later of the receipt of the applicant's request for review or receipt of any additional materials reasonably requested by the Board from such applicant.

6. Meetings. The Board shall meet once each month, or more often if the Board deems it necessary, and to constitute a quorum for the transaction of business there shall be required to be present at any meeting of the Board at least two (2) Union members and two (2) Company members. At all meetings of the Board the Company members shall have a total of three (3) votes, and the Union members shall have a total of three (3) votes, the vote of any absent members being divided equally between the members present appointed by the same party. Decisions of the Board shall be by a majority of the votes cast and shall be final and binding upon the Company, the Union, and the Employee involved.

7. Reliance on Information. The Board and any member thereof shall be entitled to rely upon the correctness of any information furnished by the Union, the Company, or the Participant. Neither the Board nor any of its members, nor the Union, nor any officer or any other representative of the Union, nor the Company, nor any officer or other representative of the Company, shall be liable because of any act or failure to act on the part of the Board, or any of its members, to any person whatsoever, except that nothing herein shall be deemed to relieve any such individual from liability for his own fraud or bad faith.

8. Compensation. The Company members and the Union members of the Board shall serve without compensation from the Trust Fund. The Company and the Union each shall be responsible for the expenses of any expert or advisor selected by its members but not by the Board as such.

DTP006323

9.   Limit of Board Power.  The Board shall have no power to add to or to
     subtract from or modify any of the terms of this Agreement or Plan,
     nor to change or add to any benefit provided by this Agreement or
     Plan, nor to waive or fail to apply any requirement of eligibility
     for a Benefit under this Agreement or Plan.

     Any case referred to the Board on which it has no power to rule
     shall be referred back to the parties without ruling.

     No ruling or decision of the Board in one case shall create a basis
     for a retroactive adjustment in any other case prior to the date of
     written filing of each specific claim.

     The Board will accept as conclusive and final any determination made
     under the Collective Bargaining Agreement hereinbefore referred to
     or any subsequent collective bargaining agreement on any matter for
     which the terms of such agreement provide a means of determination.

                              ARTICLE FIVE
                          CREDITING OF SERVICE

1.   Past Service
     (a) Past Service as Credited prior to March 1, 1974
         A Participant's Past Service shall be computed to the nearest
         one-twelfth (1/12) year and shall be credited at the rate of one
         (1) year for each year of seniority which the Participant held
         on October 1, 1950, excluding any years or portions thereof of
         seniority which have been granted because of military service
         prior to employment by the Company.  When the Participant's
         actual service with the Company is greater than his seniority,
         such actual service record shall be used on a calendar year
         basis, provided that if the Participant was out of the employ of
         the Company for one (1) or more periods of two (2) years or
         more, only service following the most recent of such periods
         shall be counted.

     (b) Past Service as Credited on or after March 1, 1974

         A Participant's Past Service shall be computed to the nearest
         one-twelfth (1/12) year and shall be credited as follows:

         (i) Past Service as described in Subsection 1 (a) above, plus

         (ii) Elapsed time actually worked (including authorized leave
              of absences due to sickness or accident and authorized
              leave of absence for military service if the Participant
              returns to active employment within ninety (90) days of
              discharge from military service) for periods of employment
              prior to October 1, 1950, not previously credited.  Any
              other time during which such Participant was employed by
              the Company (including, but not limited to, layoff and
              leaves of absence other than for sickness, accident, or
              military service) shall not be counted.

                                                  DTP006324
Page   10

In computing additional Past Service under this Subsection 1(b)
each period of employment shall be considered separately and
such service computed to the nearest one-twelfth (1/12) year for
each period.  For an Participant with seniority on March 1,
1974, application for additional Past Service must be made
within ninety (90) days of April 22, 1974, and for a Participant
hired after March 1, 1974, within thirty (30) days of hire;
otherwise no additional Past Service credit under this
Subsection 1(b) will be granted at any time.

Except as provided in Article Five, Section 7, a supervisor or any
other employee transferred into the Bargaining Unit from other
employment by the Company, shall receive credit for Past Service to
the nearest quarter year as though the seniority rules referred to
above were applied to his entire service with the Company.

2.  Future Service

(a) On or after October 1, 1950, a Participant shall be credited
    with one (1) year of Future Service for every Plan Year
    in which he receives pay from the Company for working 1,600 or
    more hours.  For a Plan Year in which he receives pay for
    working less than 1,600 hours, he may count such part of the
    year as the number of hours of work for which he receives pay
    in that year bears to 1,600, each hour in any year to count
    only once, although he may receive more than straight time pay
    for it.  For the purpose of this Subsection 2 (a), pay includes
    straight time holiday pay and vacation bonus pay.  For the
    purpose of the allowance of credit only under this Section 2, a
    holiday for which pay is received for eight (8) hours shall be
    deemed to be worked at eight (8) hours.  Vacations shall be
    deemed to be worked in the amount of forty (40) hours for
    Participants with more than one (1) but less than three (3)
    year's seniority; sixty (60) hours for Participants with more
    than three (3) but less than five (5) years' seniority; eighty
    (80) hours for Participants with more than five (5) but less
    than ten (10) years' seniority; one hundred (100) hours for
    Participants with more than ten (10) but less than fifteen (15)
    years' seniority; one hundred twenty (120) hours for
    Participants with fifteen (15) years but less than twenty (20)
    years of seniority; and, for Participants with twenty (20) or
    more years of seniority, one hundred twenty (120) hours for the
    years prior to 1973 and one hundred forty (140) hours for the
    year 1973 and thereafter.

    On and after January 1, 1976, to the extent that Future Service
    is not otherwise given for hours under this Section 2,
    Future Service shall be given for:

    (i) Each hour for which a Participant is directly or
        indirectly paid or entitled to payment by the Company for
        the performance of duties.  These hours shall be credited
        to the Participant for the computation period or periods
        in which the duties are performed.

DTP006325

(ii) Each hour for which a Participant is directly or indirectly paid or entitled to payment by the Company for reasons other than for the performance of duties. These hours shall be credited to the Participant for the computation period or periods in which payment is made or amounts payable to the Participant become due. No more than 501 hours shall be credited under this provision (ii) for any continuous period of nonperformance of duties.

(iii) Each hour for which back pay, irrespective of mitigation of damage, has been either awarded or agreed to by the Company. These hours shall be credited to the Participant for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement, or payment was made.

(b) For the period from October 1, 1950, to December 31, 1950, the Participant may count each one hundred thirty-three (133) hours for which he received pay from the Company for working as one (1) month of Future Service and the remaining hours, if more than sixty-six (66), shall count as one (1) month of Future Service, but in no event may he count more than the total number of months from October 1, 1950, to December 31, 1950 as Future Service.

(c) Credit towards Future Service after January 1, 1951, will be computed to the nearest full month. For the period beginning with January 1st in every Plan Year in which hours for which the Participant has received pay within the year as defined in this Section 2 are less than one thousand six hundred (1,600), every one hundred thirty-three (133) hours shall count as a month of Future Service, and the remaining hours, if sixty-six (66) or more, shall count as another month of Future Service, and if less than sixty-six (66) shall not count.

(d) A Participant who may be absent from his work pursuant to leave of absence approved by the Company for illness and who other-wise has been scheduled to work, shall receive credit for Future Service (not to exceed his total years or portion thereof of seniority at the time of such leave, if such leave commences after April 1, 1983) at the rate of forty (40) hours per week during such period of leave. A Participant who may be absent from his work for Local 287 business, or to serve as an International Representative of the Union (this provision limited to three (3) International Representatives at any one (1) time) and who would otherwise have been scheduled to work, shall receive credit toward Future Service at the rate of forty (40) hours per week during such periods of leave, except that with respect to the period commencing on or after November 1, 1961, a Participant who is on such leave for Local 287 business or to serve as an International Representative of the Union shall receive credit toward Future Service at the rate of forty (40) hours per each complete week that he is on such leave.

DTP006326

(e)  A Participant who on or after January 1, 1968, shall be absent
during any Plan Year from his work because of layoff shall
receive credit for Future Service at the rate of forty (40)
hours per week during the Plan Year in which the layoff
occurred provided that such Participant during such Plan Year
shall have received pay for at least one hundred seventy (170)
hours of work; and provided further, that if such layoff
commenced in 1974 or any Plan Year thereafter and continues
after the Plan Year in which it commenced, the Participant
(including a Participant who receives pay for 1,600 or more
hours in 1974 or any Plan year thereafter if he is absent from
work due to layoff at the end of any such Plan Year) may count
forty (40) hours for each complete calendar week of absence
from work due to layoff in the Plan Year after such commencing
year, not to exceed 1,430 hours that he may count for all such
absence related to receipt of such pay from the Company in such
commencing year.  In no event shall the provisions of this
Section 2 result in a duplication of Future Service under any
other provision of this Article Five.

(f)  A Participant who was active on January 1, 1971, and who had at
least five (5) years of seniority on January 1, 1968, and who
was absent from work because of layoff during any Plan Year
after December 31, 1955 and before January 1, 1963, shall
receive credit for Future Service, for each complete calendar
week of such absence during which he had seniority, with a
number of hours computed by multiplying forty (40) hours by the
applicable percentage determined with reference to his
seniority on January 1, 1968, pursuant to the following table:

| Participant's Seniority on January 1, 1968 | Percent |
|---|---|
| 20 or more years | 100 |
| 15 years but less than 20 years | 75 |
| 10 years but less than 15 years | 50 |
| 5 years but less than 10 years | 25 |

provided, however, that the foregoing shall apply only if (i)
the Participant shall have made proper application for
adjustment of his Future Service in accordance with the
foregoing, (ii) he shall have been credited with not more than
one thousand six hundred (1,600) hours in any Plan Year with
respect to which adjustment is to be made, and (iii) that there
shall be no duplication of Future Service by virtue of the
application of the provisions of this Section.

If a Participant who was active on January 1, 1971 had at least
five (5) years of seniority on April 1, 1980, then the
application of the table set forth in this Subsection 2 (f)
shall be extended to January 1, 1968, and the percent in the
table shall be 100 for all of the seniority classes shown
subject to all other conditions 2 (f).

(g)  A Participant who was active and who had at least five (5)
years of seniority on March 1, 1974, and who was absent from
work because of layoff during any Plan Year after December 31,
1950 and before January 1, 1956, shall receive credit for
Future Service, for each complete calendar week of such absence

during which he had seniority, with a number of hours computed by multiplying forty (40) hours by the applicable percentage determined with reference to his seniority on March 1, 1974, pursuant to the following table:

| Participant's Seniority on March 1, 1974 | Percent |
|---|---|
| 20 years or more | 100 |
| 15 years but less than 20 years | 75 |
| 10 years but less than 15 years | 50 |
| 5 years but less than 10 years | 25 |

provided, however, that the foregoing shall apply only if (i) the Participant shall have made proper application for adjustment of his Future Service in accordance with the foregoing, (ii) he shall have been credited with not more than one thousand six hundred (1,600) hours in any Plan Year with respect to which adjustment is to be made, and (iii) that there shall be no duplication of Future Service by virtue of the application of the provisions of this Section 2.

If a Participant was active on or after March 6, 1977 and otherwise met the conditions of this Subsection 2 (g), the percent in the above table shall be 100 for all of the seniority classes shown, subject to all other conditions of Subsection 2 (g).

(h) A Participant who was active and who had at least five (5) years of seniority as of September 8, 1986 and who held seniority between January 1, 1968 and December 31, 1972, and who was absent from work because of layoff during any Plan Year after December 31, 1967 and before January 1, 1973, shall be credited, for each complete calendar week of such absence during which he had seniority, with a number of hours computed by multiplying forty (40) hours by the applicable percentage determined with reference to his seniority on September 8, 1986, pursuant to the following table:

| Participant's Seniority on September 8, 1986 | Percent |
|---|---|
| 20 years or more | 100 |
| 15 years but less than 20 years | 75 |
| 10 years but less than 15 years | 50 |
| 5 years but less than 10 years | 25 |

provided, however, that the foregoing shall apply only if (i) the Participant shall have made proper application for adjustment of his Future Service in accordance with the foregoing, (ii) he shall have been credited with not more than one thousand six hundred (1,600) hours in any Plan Year with respect to which adjustment is to be made, and (iii) that there shall be no duplication of Future Service by virtue of the application of the provisions of this Section 2.

(i) A Participant who was active and who had at least five (5) years of seniority as of December 1, 1989 and who held seniority between January 1, 1973 and December 31, 1977, and

DTP006328

who was absent from work because of layoff during any Plan Year
after December 31, 1972 and before January 1, 1978, shall
receive credit for Future Service, for each complete calendar
week of such absence during which he had seniority, with a
number of hours computed by multiplying forty (40) hours by the
applicable percentage determined with reference to his
seniority on December 1, 1989 pursuant to the following table:

| Participant's Seniority on December 1, 1989 | Percent |
|---|---|
| 20 years or more | 100 |
| 15 years but less than 20 years | 75 |
| 10 years but less than 15 years | 50 |
| 5 years but less than 10 years | 25 |

provided, however, that the foregoing shall apply only if (i)
the Participant shall have made proper application for
adjustment of his Future Service in accordance with the
foregoing, (ii) he shall have been credited with not more than
one thousand six hundred (1,600) hours in any Plan Year with
respect to which adjustment is to be made, and (iii) that there
shall be no duplication of Future Service by virtue of the
application of the provisions of this Section 2.

(j) Except as provided in Article Five, Section 7, a supervisor or
any other employee transferred into the Bargaining Unit from
other employment by the Company, shall receive credit for
Future Service in accordance with the provisions of this
Section 2 in the same manner as though the entire time was
worked in the Bargaining Unit.

(k) A Participant who after October 1, 1950, is absent from his
work pursuant to leave of absence, approved by the Company, for
military service and who during such absence retains
reemployment rights under the provisions of the Selective
Service Act, as amended, and who while he retains such
reemployment rights returns to work for the Company or reports
to the Company and is given leave of absence or layoff status,
shall be credited with Future Service at the rate of forty (40)
hours per week for the period of such absence.

Notwithstanding the foregoing, in no event will the operation of
this Section 2 result in a duplication of Credited Service for the
same hours.

3. Vested Service

A Participant shall be credited with one year of Vested Service for
each year of Credited Service prior to January 1, 1976, and for each
Plan Year commencing on or after January 1, 1976, in which he has
1,000 or more hours of Future Service as defined in Article Five,
Section 2 for which allowance of credit is given, up to a maximum of
Five (5) years of Vested Service.

On and after January 1, 1987, hours for the purpose of Vested
Service shall include each hour of maternity or paternity leave of
absence at the rate of forty hours per week of such leave.   Such
hours shall be credited in the year the leave begins, if necessary
to prevent a Break in Service, otherwise in the year next following.
Hours of leave in excess of five hundred one (501) may be
disregarded for any one period of leave.   For purposes of this Plan,

"maternity or paternity leave" means termination of employment or absence from work due to the pregnancy of the Participant, the birth of a child of the Participant, the placement of a child in connection with the adoption of a child by a Participant, or the caring for a Participant's child during the period immediately following the child's birth or placement for adoption. The Company shall determine, under rules of uniform application and based on information provided to the Company by the Participant, whether or not the Participant's termination of employment or absence from work is due to "maternity or paternity leave."

4.   Loss of Credited Service.

After October 1, 1950, a Participant shall, subject to the provisions of the Plan, lose all Credited Service for the purpose of this Plan:

(a)   If the Participant quits; or

(b)   If the Participant is discharged; or

(c)   If the Participant's seniority is broken for any other reason, provided that, any Participant, retired under the Disablity Retirement provisions of this or Prior Agreements and who is subsequently re-employed by the Company and has his seniority reinstated, shall have his Credited Service at the time of the Disability Retirement reinstated.

Any former Participant, who on termination of his employment becomes entitled to a Deferred Vested Retirement Benefit and who is subsequently rehired by the Company, shall not be credited with any further Credited Service under the Plan for any period of employment with the Company after his rehire date and shall not be eligible during the period to receive the Deferred Vested Retirement Benefit that he was entitled to at the time of his initial termination.

Any Participant with seniority on or after March 1, 1974, whose seniority was broken on or after October 1, 1950, and before January 1, 1976, thereby losing his Credited Service pursuant to this Section 4, shall upon making proper application, have such Credited Service reinstated.  For Participants with seniority on March 1, 1974, application must be made within ninety (90) days of April 22, 1974.  For other Participants, application must be made within thirty (30) days of hire.

On and after January 1, 1976 if an event specified in (a), (b), or (c) above occurs and the Participant completes less than 500 hours for which allowance of credit is given in that Plan Year, then that Plan Year and subsequent Plan Years during which such Participant has less than 500 hours for which allowance of credit is given shall each constitute a one year Break in Service.  Upon incurring a Break in Service, a Participant's rights and benefits under the Plan shall be determined in accordance with Credited Service and Vested Service at the time of Break in Service.  For a former Employee who, at the time of a Break in Service, has not become entitled to a Deferred Vested Retirement Benefit, years of pre-break Credited and Vested Service shall be restored only if the number of consecutive years of Break in Service was less than the greater of five (5) years or the aggregate number of years of pre-break Vested Service.

DTP006330

5.   Notice of Credited Service and Vested Service.

   Once each year the Board shall inform each Participant in writing of
   the Future Service and Vested Service he accumulated for the
   preceding year.  His total Credited Service and Vested Service to
   date shall also be shown.  Credited Service and Vested Service shown
   in any notice given by the Board to a Participant (whether
   heretofore or hereafter) shall be conclusively deemed to be correct
   and final, and no contrary claim concerning it may be raised, unless
   the Participant files or has filed objection with the Board, in
   writing, within sixty (60) days following the first receipt of
   notice of such accumulated Credited Service and Vested Service.
   This sixty (60) day period may be extended by the Board at its
   discretion within such sixty (60) day period.

6.   Service in Controlled Group.

   A Participant who has been employed on and after January 1, 1976
   by an Affiliate shall receive credit towards Vested Service for
   service with such Affiliate on or after January 1, 1976 as if it
   were service with the Company.

7.   Non-Duplication of Credited Service

   Except for the provisions of Section 8 of Article Five, any
   Participant transferred to or from the Bargaining Unit shall not
   receive Credited service under this Article Five for service under
   the Borg-Warner Retirement Savings Plan (the "Retirement Savings
   Plan") or any other retirement plan (including any defined benefit
   plan or defined contribution plan) of the Company or an Affiliate
   where;

   (a) the Participant has received, is receiving, is eligible to
       receive or may become eligible to receive a lump sum
       distribution from the Retirement Savings Plan or any other
       retirement plan of the Company or an Affiliate except for a lump
       sum distribution under the Borg-Warner Automotive, Inc.
       Transmission Sustems-Local 287 Retirement Investment Plan; or

   (b) the Participant has received, is receiving, is eligible to
       receive or may become eligible to receive an annuity benefit
       from any other retirement plan of the Company or an Affiliate,
       except for a benefit under the Borg-Warner Automotive, Inc.
       Transmission Systems-Local 287 Retirment Investment Savings
       Plan; or

   (c) the Company or the Affiliate made a contribution on behalf of
       the Participant for the same period of service to the Retirement
       Savings Plan or any other defined contribution retirement plan
       of the Company or an Affiliate, except for a benefit under the
       Borg-Warner Automotive, Inc. Transmission Systems-Local 287
       Retirement Investment Savings Plan.

8.   Return To Bargaining Unit From Supervisory Position.
     Any Participant who

   (a) transferred from the Bargaining Unit to a Supervisory position
       with the Company, and

DTP006331

(b) returns to the Bargaining Unit during the term of this Agreement pursuant to the provisions of the Collective Bargaining Agreement,

shall resume participation in the Plan as of the date of such return. The Participant shall be credited with Credited Service for the period of time he was a participant in the Retirement Savings Plan only if within thirty (30) days prior to his date of retirement he elects either to:

(y) receive his Retirement Benefit under the Plan and forfeit the Vested Portion of his Company Retirement Account under the Retirement Savings Plan, or

(z) receive his Retirement Benefit under the Plan reduced by the actuarial equivalent benefit amount of the Vested Portion of his Company Retirement Account under the Retirement Savings Plan (as determined by an actuary selected by the Plan Administrator of the Retirement Savings Plan), and receive the Vested Portion of his Company Retirement Account under the Retirement Savings Plan.

ARTICLE SIX
ELIGIBILITY

1.  Normal Retirement.

Each Participant hired prior to age sixty (60) who has attained the age of sixty-five (65) on or after the Effective Date and whose employment with the Company is thereafter terminated, shall be eligible for a Normal Retirement Benefit as provided in Article Seven. Effective January 1, 1988, each Participant hired after age sixty (60) who has attained the age of sixty-five (65) and has reached the fifth anniversary of the date on which his participation commenced shall be eligible for a Normal Retirement Benefit as provided in Article Seven. Notwithstanding the foregoing, an Employee who retired prior to January 1, 1976 must also have at least ten (10) years of Credited Service to be eligible for a Normal Retirement Benefit.

2.  Early Retirement Regular.

Each Participant whose employment with the Company is terminated on or after the Effective Date under any one of the following conditions:

(a) Has ten (10) years or more of Credited Service and has attained the age of sixty (60) but not sixty-five (65), or

(b) Has attained the age of fifty-five (55), but not sixty (60), and when his combined years of age and years of Credited Service (to the nearest one-twelfth (1/12) in each case) shall total eighty-five (85) or more, or

(c) Has thirty (30) years or more of Credited Service.

DTP006332

and whose termination of employment shall not constitute a Special Early Retirement under Article Six, Section 3, or a Disability

Retirement under Article Six, Section 4 shall be eligible for the Early Retirement Regular Benefit as provided in Article Seven, Section 2.

3.   Special Early Retirement.

(a)   A Participant with ten (10) or more of Credited Service who has attained the age of fifty-five (55) but not sixty-five (65) and who is unable to work efficiently by reason of a permanent disability is eligible for a Special Early Retirement Benefit as provided in Article Seven, Section 3, provided that such retirement, on or after the Effective Date, is under mutually satisfactory conditions acceptable to the Participant, the Company and the Union; provided however, that a Participant discharged for cause prior to age sixty-five (65) shall not be entitled to a Special Early Retirement Benefit but shall only be entitled to a Benefit under Article Seven, Section 2 if such Participant otherwise meets the eligibility requirements of such Section 2.

(b)   Such Special Early Retirement must be in the best interests of the Company and intended to benefit a Participant who is unable to work efficiently by reason of permanent disability.  Any of the following situations (the listing of which should not be considered as excluding other situations not enumerated) generally will result in Special Early Retirement for the Participant:

(i)   The Participant is no longer physically or mentally capable of performing his work in an efficient and satisfactory manner.

(ii)   The Participant, though still capable of performing his work satisfactorily, is prevented by chronic physical illness or physical disability (less than total) from working regularly to the extent that the efficiency of operation is interfered with.

(iii)   The Participant's condition, based on medical evidence satisfactory to the Company, is such that, although able to perform the duties of his job efficiently and satisfactorily, he would thereby be jeopardizing his health or that of fellow Participants or Employees.

(iv)   The Participant is on disability leave or is laid off because he is unable to do the work offered by the Company efficiently and satisfactorily although able to perform efficiently and satisfactorily other work in the plant to which he would have been entitled if he had had sufficient seniority, and his condition, based on medical evidence satisfactory to the Company, is expected to be continuous until his normal retirement age.

DTP006333

4.   <u>Disability Retirement</u>.

Each Participant whose employment with the Company is terminated on
or after the Effective Date, with ten (10) years or more Credited
Service who is Totally and Permanently Disabled and who retires by
reason of such disability prior to attainment of age sixty-five (65)
shall be eligible for a Disability Retirement Benefit as provided in
Article Seven, Section 4.

5.   <u>Deferred Vested Retirement</u>

Each Participant with ten (10) years or more of Credited Service or
five years of Vested Service whose employment is terminated on or
after the Effective Date and who is not eligible for or receiving
any other type of Benefit under this Plan, shall be eligible for a
Deferred Vested Retirement Benefit as provided in Article Seven,
Section 5.

6.   <u>Election to become a Participant in the Muncie RSP</u>.

Notwithstanding anything else in this Article Six, any Participant,
who was

   (a) employed by the Company in the Bargaining Unit on September 7,
   1989,

   (b) employed by the Company in the Bargaining Unit on December 31,
   1990, and

   (c) not eligible on December 31, 1990 under Article Six of the
   Plan for a Normal Retirement Benefit or an Early Retirement
   Regular Benefit,

may elect to become a Participant in the Muncie RSP on January 1,
1991 pursuant to a written election (on the appropriate form
provided by the Company) prior to the deadline for such an election
as established by the Company.  If a Participant does not elect to
participate in the Muncie RSP effective January 1, 1991, the
Participant may make this election effective as of any succeeding
January 1 pursuant to the written election procedures established in
the Muncie RSP.  If the Participant elects to participate in the
Muncie RSP, the Participant's Accrued Benefit under this Plan shall
be frozen pursuant to Article Seven, Section 8 and the Participant
shall not be credited with any further Credited Service under this
Plan.

7.   <u>No Eligibility after September 7, 1989</u>.

An Employee who:

   (a)  who was not employed by the Company in the Bargaining Unit
        on September 7, 1989 or

   (b)  who is hired for employment with the Company in the
        Bargaining Unit on September 7, 1989, or thereafter, or

   (c)  was (i) employed by the Company in the Bargaining Unit on
        September 7, 1989, (ii) terminated his employment with the
        Company on or after September 7, 1989, and (iii) was
        rehired by the Company thereafter,

shall not be eligible to participate in this Plan.

ARTICLE SEVEN
RETIREMENT BENEFITS

1.  Normal Retirement Benefit.

From and after the Effective Date, the Normal Retirement Benefit of
a Participant eligible therefor under Article Six, Section 1, and
who has applied therefor, shall be a monthly amount equal to the
number of his years of Credited Service multiplied by the applicable
rate from the following table:

| Date of Retirement | Rate |
|---|---|
| September 7, 1989 through November 30, 1989 | $19.00 |
| December 1, 1989 and after | 22.00 * |

less Other Benefits, if any.

* Prorated for Credited Service of less than one (1) year in
  accordance with table A attached hereto

2.  Early Retirement Regular Benefits.

From and after the Effective Date, the Early Retirement Regular
Benefit of a Participant eligible therefor under Article Six,
Section 2, and who has applied therefor, shall be a monthly amount
which shall be determined in accordance with the provisions of
Article Seven, Section 1, reduced in accordance with the table set
forth below, less Other Benefits, if any:

| Age When Pension Commences | Percentages * |
|---|---|
| 47 | 30.4% |
| 48 | 32.8 |
| 49 | 35.4 |
| 50 | 38.3 |
| 51 | 41.5 |
| 52 | 45.0 |
| 53 | 48.9 |
| 54 | 53.2 |
| 55 | 57.9 |
| 56 | 63.5 |
| 57 | 69.4 |
| 58 | 75.2 |
| 59 | 80.8 |
| 60 | 86.7 |
| 61 | 93.3 |
| 62 or over | 100.00 |

*Prorated for intermediate ages computed on the basis of the number
of complete calendar months by which the Participant is under the
age he will attain at his next birthday.

If a Participant with thirty (30) or more years of Credited Service
or whose combined years of age and years of Credited Service (to the
nearest one-twelfth (1/12) in each case) total eighty-five (85) or
more retires at his option on or after the Effective Date, the

Page 21

DTP006335

Benefit otherwise payable to him after age sixty-two (62) and one (1) month shall be redetermined on the basis of an unreduced benefit in accordance with Article Seven, Section 1, based upon his Credited Service and the provisions of the Plan in effect at the time of his retirement from the Company.

3. Special Early Retirement. From and after the Effective Date, the Early Retirement Benefit of a Participant eligible therefor under Article Six, Section 3, by reason of retirement because of mutually satisfactory conditions between the ages of fifty-five (55) and sixty-five (65), and who has applied therefor, shall be a monthly amount consisting of:

(a) An amount determined in accordance with Article Seven, Section 1, plus

(b) A Temporary Benefit equal to his number of years of Credited Service multiplied by the applicable rate from the following table:

| Date of Retirement | Rate | Maximum Benefit |
|---|---|---|
| Sept. 7, 1989 thru Nov. 30, 1989 | $17.00 | $510.00 |
| Dec. 1, 1989 thru Oct. 31, 1990 | 19.00 | 570.00 |
| Nov. 1, 1990 thru Oct. 31, 1991 | 20.00 | 600.00 |
| November 1, 1991 and after | 21.00 | 630.00 |

less Other Benefits, if any.

The Temporary Benefit determined in accordance with this Article Seven, Subsection 3 (b) shall be payable until age sixty-two (62) and one (1) month or until the age at which the Participant becomes or could have become eligible for an Unreduced Social Security Benefit for age or disability, whichever is the earlier.

4. Disability Retirement Benefit.

From and after the Effective Date, the Disability Retirement Benefit of a Participant eligible therefor under Article Six, Section 4, and who has applied therefor, shall be a monthly amount consisting of:

(a) An amount determined in accordance with Article Seven, Section 1, plus

(b) A Temporary Benefit equal to his number of years of Credited Service multiplied by the applicable rate from the following table:

| Date of Retirement | Rate | Maximum Benefit |
|---|---|---|
| Sept. 7, 1989 thru Nov. 30, 1989 | $17.00 | $510.00 |
| Dec. 1, 1989 thru Oct. 31, 1990 | 19.00 | $570.00 |
| Nov. 1, 1990 thru Oct. 31, 1991 | 20.00 | 600.00 |
| November 1, 1991 and after | 21.00 | 630.00 |

less Other Benefits, if any.

The Temporary Benefit determined in accordance with this Article Seven, Section 4, shall be payable until age sixty-two (62) and one month or until the age at which the Retired Employee becomes or could have become eligible for an Unreduced

Social Security Benefit for age or disability, whichever is the earlier. For purposes of this Article Seven, Section 4, a Retired Employee shall be considered as being eligible for an Unreduced Social Security Benefit on account of disability under the Social Security Act unless he shall have furnished to the Board written evidence from the Social Security Administration that he has applied for and has been adjudged ineligible for such benefits.

5. Deferred Vested Retirement Benefit.

The Deferred Vested Retirement Benefit of a Participant eligible therefor under Article Six, Section 5, and who has applied therefor, shall be whichever of the following is applicable.

(a) For a Participant terminated on or after the Effective Date, a monthly benefit payable at age 65 equal to his years of Credited Service multiplied by the applicable rate from the following table:

| Date of Retirement | Rate |
|---|---|
| September 7, 1989 through November 30, 1989 | $19.00 |
| December 1, 1989 and after | 22.00 |

less Other Benefits, if any.

(b) The Participant may elect, in lieu of the Deferred Vested Retirement Benefit determined in accordance with Subsection 5 (a), a Deferred Vested Retirement Benefit commencing after age sixty (60) or after age fifty-five (55) if combined years of age and years of Credited Service (to the nearest one-twelfth (1/12) in each case) shall total eighty-five (85) or more, determined in accordance with Subsection 5 (a), but reduced by five-ninths (5/9ths) of one percent (1%) for each complete calendar month by which such former Participant is under the age of sixty-five (65) at the date the Deferred Vested Retirement Benefit commences.

6. Special Age 65 Benefit.

Commencing on and after the Effective Date, any Retired Employee age sixty-five (65) years or older who is receiving a Benefit under Article Seven, Section 1 (Normal Retirement), or Article Seven, Section 2 (Early Retirement Regular), or Article Seven, Section 3 (Special Early Retirement), or Article Seven, Section 4, (Disability Retirement), or any Surviving Eligible Spouse age sixty-five (65) or older who is receiving a Benefit payable under Article Eight , Section 3, (Survivor Benefit Option), (excluding the Surviving Eligible Spouse of a former Participant who was receiving a Deferred Vested Retirement Benefit under Article Seven, Section 5) or any Retired Employee who on or after September 1, 1974, has not attained age sixty-five (65) and who is receiving a Benefit under Article Seven, Section 2 (Early Retirement Regular), or Article Seven, Section 3 (Special Early Retirement), or Article Seven, Section 4 (Disability Retirement) and who is enrolled in the voluntary medicare coverage insurance program that is available under the Federal Social Security Act ("Voluntary Medicare Coverage") by making contributions therefor, shall receive a monthly Special Age 65 Benefit equal to the amount of the monthly premium rate in effect

Participant becomes eligible and applies therefor and shall be payable on the first day of each month thereafter during the life of such Participant.

(b) With respect to a former Particant whose employment is terminated, a Deferred Vested Retirement Benefit shall be payable to such former Participant, if eligible therefor, as of the later of the first day of the month following the month (i) in which such former Participant attains age sixty (60), or becomes age fifty-five (55) if years of age and years of Credited Service (to the nearest one-twelfth (1/12) in each case) shall total eighty-five (85), or (ii) during which the Board receives a written application from such former Participant and shall be payable on the first day of each month thereafter during the life of such former Participant.

A former Participant who would be eligible to receive a Deferred Vested Retirement Benefit but who has not made application therefor by the ninetieth (90th) day prior to his sixty-fifth (65th) birthday shall on or about that time be mailed by the Company a notice informing him that he may make such application.  The notice shall be mailed to his last address shown on the Company's records.

(c) Notwithstanding anything to the contrary in this Article Eight, payment of a Benefit under this Plan shall commence not later than the 60th day following the close of the Plan Year in which the latest of the following dates occurs: (i) the date which the Participant attains age sixty-five (65); (ii) the tenth anniversary of the year in which the Participant commenced participation in the Plan; or (iii) the date on which the Participant terminated his service with the Company.

If a Participant has a "Required Beginning Date" which precedes the latest of the three dates specified in the preceding sentence, distribution shall commence no later than such Required Beginning Date. In this regard, Required Beginning Date shall mean April 1 of the Plan Year following the later of the Plan Year in which the Participant attains age 70-1/2.

Unless a shorter period of distribution is prescribed by other provisions of this Plan, distribution of a Benefit hereunder shall be made over the life of the Participant or the lives of the Participant and his Eligible Spouse.

2.  **Disability Retirement Benefit**.

(a) Disability Retirement Benefits shall be payable as provided under Article Seven, Section 4 to a Participant eligible therefor under Article Six, Section 4 on the first day of the month following the expiration of twenty-six (26) weeks from the date on which he became Totally and Permanently Disabled and shall be payable on the first day of each month thereafter, so long as he is Totally and Permanently Disabled, during the life of such Participant until he attains age sixty-five (65) or, if earlier, the age at which he becomes eligible for an Unreduced Social Security Benefit for age, at which time he shall receive the Normal Retirement Benefit to which he is entitled under Article Seven, Section 1, based on his Credited Service at the time he became Totally and Permanently Disabled.

(b) Disability Retirement Benefits shall be terminated:

    (i) If the Participant returns to any regular gainful employment or occupation (except for purposes of rehabilitation under supervision of a recognized rehabilitation agency for a temporary period approved by the Board); or

    (ii) If the Board determines that the Participant has sufficiently recovered to engage in any regular gainful employment or occupation with the Company: or

    (iii) If the Participant refuses to undergo a medical examination requested by three (3) members of the Board, provided that the Participant may not be required to undergo a medical examination more often than twice a year.

In any case where the Board is required to make a determination with respect to whether a Participant applying for a Disability Retirement Benefit is Totally and Permanently Disabled, the Participant first shall be required to submit to an examination by a competent physician or physicians selected by the Board, and shall be required to submit to such re-examination as shall be necessary for the Board to make a determination concerning his physical or mental condition. Whenever any such question is before the Board for determination, any three (3) members of the Board may require the Participant to submit to an examination by a physician of their choice, and such physician shall be afforded an opportunity to consult with the physicians appointed by the Board at any time before a final determination by the Board shall have been made. A Participant or Retired Employee who shall refuse to submit to any physical examination properly requested under the Plan shall not be placed or continued on Disability Retirement.

3. <u>Survivor Benefit Option</u>.

(a) If a Participant dies on or after the Effective Date, and at a time when such Participant shall have reached his or her sixtieth (60th) birthday and had ten (10) or more years of Credited Service, or shall have reached his or her fifty-fifth (55th) birthday with combined years of age and Credited Service (to the nearest one-twelfth (1/12th) in each case) that total at least eighty-five (85), or had thirty (30) or more years of Credited Service and,

    (i) such Participant had seniority at the time of his death or, the seniority of such Participant had been broken because of retirement on or after the Effective Date and the Participant dies before the date when his Retirement Benefits are to commence, and

    (ii) such Participant is survived by an Eligible Spouse,

then the Eligible Spouse of such Participant shall be eligible, upon due application therefor to receive the Survivor's Benefit described in Article Eight, Subsection 3 (i) below.

DTP006339

(b) The Eligible Spouse of a Participant who has ten (10) or more years of Credited Service or Five (5) or more years of Vested Service but who is not separated from service and is not yet eligible to retire and the Eligible Spouse of an Employee who separated from service after September 1, 1974 and at some time was eligible for a Deferred Vested Retirement Benefit but who has not retired and not received his first Retirement Benefit, shall be eligible to receive the Survivor's Benefit described in Article Eight, Subsection 3 (i) below. The Survivor Benefit shall commence at the first of the month following the earliest date the Participant or the terminated Employee eligible for a Deferred Vested Retirement Benefit would have become eligible to have retired under the terms of this Plan.

(c) In lieu of the applicable Retirement Benefit provided in Article Seven, Section 1 (Normal Retirement Benefit), Section 2 (Early Retirement Regular Benefit), Section 3 (Special Early Retirement Benefit), Section 4 (Disability Retirement Benefit), or Section 5 (Deferred Vested Retirement Benefit) or, if less, the Benefit which would be payable if eligible for an Unreduced Social Security Benefit for age or disability, a Participant automatically shall be deemed to have elected a reduced Benefit during his lifetime as hereinafter provided in Subsection 3 (d) below, and a Survivor's Benefit as hereinafter provided in Subsection 3(e) below, payable after the death of such Participant to the Eligible Spouse of such Participant during the further lifetime of the Eligible Spouse.

This automatic election shall become effective on the Benefit Commencement Date, except that if, on such date which would otherwise be the effective date of the election, the Participant's spouse is not an Eligible Spouse, the effective date of the election shall be postponed until the first day of the month following the month in which the spouse becomes an Eligible Spouse and at such time the Participant's Benefit will be automatically adjusted in accordance with Subsection 3 (d) below.

This automatic election shall be applicable only with respect to the Eligible Spouse of the Participant at the effective date of the election.

At least nine months prior to a married Participant's earliest retirement date, the Board shall provide the Participant with information regarding the automatic election and the necessary forms upon which the Participant, with the written consent of his Eligible Spouse, can waive the automatic election. A Participant, with the consent of the Participant's Eligible Spouse, may prevent this automatic election by executing a written rejection in whatever form and manner as may be prescribed by the Board for this purpose and by filing such written rejection:

    (i) at the time of application for the Benefit, or

    (iii) during the 90 day period following the date the Participant is provided with the information regarding the automatic election.

DTP006340

The consent of the Participant's Eligible Spouse must be in writing, notarized or witnessed by a member of the Board, must be irrevocable and must acknowledge the financial impact of the waiver of the automatic election. If the Participant or his Eligible Spouse dies before the effective date of the automatic election, the election shall be cancelled automatically.

(d) The amount of the reduced Retirement Benefit payable under Article Seven, Section 1 (Normal Retirement Benefit), Section 2 (Early Retirement Regular Benefit), Section 3 (Special Early Retirement Benefit), Section 4 (Disability Retirement Benefit), or Section 5 (Deferred Vested Retirement Benefit), to a Retired Employee (including for purposes of this Subsection a former Participant entitled to a Deferred Vested Retirement Benefit) who shall have elected the Survivor Benefit under Subsection 3 (c) above shall be determined by reducing the amount of the applicable Benefit by a percentage, hereinafter provided, of the Benefit that would have been payable to the Retired Employee on and after age sixty-five (65) if such Retired Employee had not elected the Survivor Benefit. The percentage to be used shall be five percent (5%) except that such percentage shall be decreased by one-half (1/2) of one percent (1%) for each year in excess of five (5) years up to ten (10) years that the age of the Eligible Spouse exceeds the age of the Retired Employee and increased by one-half (1/2) of one percent (1%) for each year in excess of five (5) years that the age of the Eligible Spouse is less than the age of the Retired Employee (the age of each being determined as being the age at his or her birthday nearest the date on which the first payment of such Retired Employee's Benefit shall be payable).

The reductions provided in this Subsection 3 (d) shall be made in all Retirement Benefits payable to the Retired Employee on or after the date the election of the Survivor Benefit becomes effective.

(e) The amount of the Benefit payable to the Eligible Spouse of a Retired Employee who elected a Survivor Benefit under Subsection 3 (c) above shall be sixty percent (60%) of the amount of the Benefit that was or would have been payable after age sixty-two (62) and one (1) month to the Retired Employee after the applicable reduction provided in Subsection 3 (d) above.

(f) The Benefit rate used for purposes of computing the amount of the Benefit which is referred to in Subsection 3 (d) and (e) above, shall be the rate specified in the applicable Subsection of Article Seven, Section 1 (Normal Retirement Benefit), Section 2 (Early Retirement Regular Benefit), Section 3 (Special Early Retirement Benefit), Section 4 (Disability Retirement Benefit), or Section 5 (Deferred Vested Retirement Benefit) which would be payable after the Participant becomes eligible for an Unreduced Social Security Benefit for age or disability.

(g) In the event the Eligible Spouse of a Retired Employee who has made a Survivor Benefit election under Subsection 3 (c) above shall predecease such Retired Employee, such Retired Employee shall have his Retirement Benefit restored to the amount payable without the Survivor Benefit, effective the first day

Page 28                                    DTP006341

of the third month following the month in which the Board receives evidence satisfactory to the Board of the Eligible Spouse's death.

(h)  A Retired Employee who has elected the Survivor Benefit under Subsection 3 (c) and who is divorced by court decree from his Eligible Spouse after such election, shall have his Retirement Benefit restored to the amount payable without the Survivor Benefit, effective the first day of the third month following the month in which the Board receives evidence satisfactory to the Board of the final decree of divorce, provided that no qualified domestic relations order is received prior to the beginning payment date of the restored benefit.

(i)  The monthly Benefit payable to the Eligible Spouse of a Participant who died prior to becoming eligible for a Benefit under Subsection 3 (a) shall be the Benefit such Eligible Spouse would have been entitled to receive under Subsection 3 (e), if the Participant had retired on the earliest date he would have become eligible to have retired under the terms of the Plan with Retirement Benefits commencing the first day of the following month in which the Participant could have elected the Survivor Benefit.

## ARTICLE NINE
### SUPPLEMENTAL ALLOWANCES

1.  Eligibility.

Supplemental Allowances consist of an Early Retirement Supplement, and an Interim Supplement.

Subject to the provisions of Article Nine, Sections 3, 4, 5, and 6, a Participant who retires under Article Six, Section 2, 3, or 4 hereof, and who files his application for a Benefit within five (5) years of the last day he worked for the Company and/or Affiliate , and who agrees to restrict his participation in the work force as provided in Article Nine, Section 4 below will receive, on the following terms and conditions, a monthly Supplemental Allowance in addition to his Retirement Benefit.

2.  Amount of the Supplemental Allowance.

(a)  Early Retirement Supplement.  A Participant who retires under Article Six, Section 2 (Early Retirement Regular), Section 3 (Special Early Retirement), or Section 4 (Disability Retirement) on or after the Effective Date, with thirty (30) years or more of Credited Service, shall be entitled to a monthly Early Retirement Supplement until age sixty-two (62) and one (1) month in an amount which when added to his Retirement Benefit under the Plan will equal the amount of the total monthly benefit applicable to him as provided below; subject to the provisions of Article Nine, Sections 3, 4, 5, and 6.

EARLY RETIREMENT SUPPLEMENT RATES

| Date of Retirement | total monthly benefit for Determining Early Retirement Supplement |
|---|---|
| September 7, 1989 through November 30, 1989 | $1,075 |
| December 1, 1989 through October 31, 1991 | 1,400 |
| November 1, 1991 and after | 1,500 |

(b) Interim Supplement. A Participant who retires under Article Six, Section 2 (Early Retirement Regular) on or after the Effective Date, with less than thirty (30) years of Credited Service and before attaining age sixty-two (62), shall be entitled to a monthly Interim Supplement until he attains age sixty-two (62) and one (1) month equal to the amount applicable to him as provided below for each year of Credited Service that he had at the date of his retirement; subject to the provisions of Article Nine, Sections 3, 4, 5, and 6.

INTERIM SUPPLEMENT RATES
Monthly Amount for Each Year
of Credited Service*

| Age at Retirement | Ret. 9/7/89 through 11/30/89 | Ret. 12/1/89 and After |
|---|---|---|
| 54 or under | $-0- | $-0- |
| 55 | 4.70 | 7.05 |
| 56 | 5.80 | 8.70 |
| 57 | 6.80 | 10.20 |
| 58 | 7.90 | 11.85 |
| 59 | 8.90 | 13.35 |
| 60 | 10.00 | 15.00 |
| 61 | 10.00 | 15.00 |

*Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the Participant is under the age he will attain at his next birthday.

3. Assumptions and Adjustments in Computing Amount of Supplemental Allowance.

(a) The Early Retirement Supplement under Article Nine, Subsection 2 (a) or the Interim Supplement under Article Nine, Subsection 2 (b) for a Participant retiring under Article Six, Section 2 (Early Retirement Regular) shall be calculated assuming that his Retirement Benefit commences immediately after retirement, and such Early Retirement Supplement or Interim Supplement shall be reduced for any month prior to age sixty-two (62) and one (1) month for which he receives or is entitled to receive an Unreduced Social Security Benefit, by an amount equal to the amount of the Temporary Benefit to which he would have been entitled if he had retired under Article Six, Section 3 (Special Early Retirement).

(b) The Early Retirement Supplement under Article Nine, Subsection 2 (a) for a Participant retiring under Article Six, Section 3 (Special Early Retirement) or Section 4 (Disability Retirement) shall be calculated on the assumption that he will receive his

DTP006343

Temporary Benefit until age sixty-two (62) even if such
Temporary Benefit is not received by the Participant until such
age because of his entitlement to Social Security benefits.

(c)  The Early Retirement Supplement under Article Nine, Subsection
2 (a) for a Participant who elects a Survivor Benefit provided
in Article Eight shall be calculated on the basis of the
Benefit he would have received if he had not elected the
Survivor Benefit.

4.  Payment of Supplemental Allowance and Penalty Provision.
Any of the Supplemental Allowances to which a Participant is
entitled shall commence on the first day of the month in which the
Participant retires and shall be payable monthly thereafter until
the first day of the month in which he dies, or his Benefit ceases
for any other reason, or he attains age sixty-two (62) and one (1)
month whichever occurs first; provided however, that if a Retired
Employee receiving any of the Supplemental Allowances has earnings
after retirement in excess of the allowable earnings level (for
Social Security recipients under the age of 65 or the age level as
determined by the Federal Social Security rules then in effect)
before he attains age sixty-two (62) in any calendar year (such
earnings being defined for this purpose as the amount and type
permitted without reduction of benefits under the Federal Social
Security Act or the corresponding amount and type in any future
Federal legislation amending, superseding, supplementing or
incorporating the Federal Social Security Act), a penalty equal to
double the amount by which such earnings exceed the amount permitted
shall be charged against each succeeding monthly Supplemental
Allowance which the Retired Employee would otherwise be entitled to
receive until the full amount of such penalty is satisfied, it being
understood that penalties and charges herein shall be cumulative if
appropriate; and provided further, that if he had been receiving a
Benefit under Section 4, Article Six (Disability Retirement) and had
been receiving Supplemental Allowance payments and the Board finds
that he is no longer Totally and Permanently Disabled he shall not,
if his seniority is restored, thereby forfeit any right he may
thereafter have to receive Supplemental Allowance payments if he
thereafter retires under the Plan.

A Retired Employee receiving any Supplemental Allowance before age
sixty-two (62) and one (1) month may be required to certify that his
earnings have not been in excess of the permitted amount and to
furnish verification of the amount of his earnings.  If any
overpayments of a Supplemental Allowance are made after a Retired
Employee incurred a penalty because of excess earnings, or by reason
of a Retired Employee becoming entitled to receive Social Security
benefits, any such overpayments shall, unless repaid by the Retired
Employee in a lump sum, be deducted from future Retirement Benefits
payable to him under the Plan.

5.  Reduction Due to Earnings Limitation.
If the total of the Retired Employee's Retirement Benefit under this
Plan and his monthly Supplemental Allowance receivable up to age
sixty-two (62) and one (1) month as computed above would exceed
seventy percent (70%) of his final base pay, his monthly Supplement
Allowance (but not his Retirement Benefit under Article Seven) shall
be reduced to the extent required so that such Retirement Benefit
plus his Supplemental Allowance will equal seventy percent (70%) of
his final base pay.  For this purpose, the final monthly base pay of

DTP006344

such Retired Employee shall mean four and one-third (4-1/3) times the base hourly rate of such Retired Employee at the time of retirement, as defined in Article IX of the Supplemental Unemployment Benefit Plan between the Company and the Union in effect at the time of his retirement, multiplied by forty (40) in the case of an hourly rated Employee, plus cost-of-living allowances but excluding overtime additions to straight time pay, shift differentials, vacation bonus, year-end bonus, or any other extra compensation.

6. Discharged Participants.
A discharged Participant shall not be eligible to receive a Supplemental Allowance except that a discharged Participant eligible for an Early Retirement Regular Benefit under Article Seven, Section 2 may retire and also process a grievance in which a determination is sought through the regular grievance procedure under the Collective Bargaining Agreement that the reason for the discharge of the Participant shall not result in the Participant being ineligible to receive a Supplemental Allowance. If the award should provide for the payment of any wages for time not worked after the discharge, then any Retirement Benefits received by such Participant for such period of time shall be credited against the award.

7. Union Leave of Absence.
Notwithstanding anything in this Plan, a Participant who retires while on an approved leave of absence requested by the International Union to permit such Participant to engage in the business of or to work for the International Union shall be entitled to a Supplemental Allowance under this Article Nine, even though such Participant had not worked for the Company within five (5) years of retirement.

ARTICLE TEN
MISCELLANEOUS

1. Non-alienation of Benefits and Supplemental Allowance.
No Benefit or Supplemental Allowance payable at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment or encumbrance of any kind. Any attempt to alienate, sell, transfer, assign, pledge or otherwise encumber any such Benefit or Supplemental Allowance, whether presently or thereafter payable, shall be void. No Benefit or Supplemental Allowance, nor the Trust Fund, shall in any manner be liable for or subject to the debts or liability of any Participant, Surviving Eligible Spouse, or Retired Employee entitled to a Benefit or Supplemental Allowance. If the Participant, Surviving Eligible Spouse, or Retired Employee shall attempt to, or shall, alienate, sell, transfer, assign, pledge, or otherwise encumber his or her Benefit or Supplemental Allowance under the Plan or any part thereof, or if, by reason of his bankruptcy or other event happening at any such time, such Benefit or Supplemental Allowance would devolve upon anyone else or would not be enjoyed by him or her, then the Board in its discretion may terminate his or her interest in any such Benefit or Supplemental Allowance and hold or apply it to or for the benefit of such person, his or her spouse, children, or other dependents, or any of them in such manner as the Board may deem proper. Notwithstanding the foregoing;

(a) The Trustee shall deduct from the Retirement Benefits or Supplemental Allowances payable to a Retired Employee or Surviving Eligible Spouse who elected to participate in the

DTP006345

Group Hospitalization and Surgical Insurance provided for in any applicable Insurance Agreement between the Company and the Union, upon notification from the Board that the Retired Employee or Surviving Eligible Spouse has so authorized, an amount equal to the contribution rate from time to time established for such insurance as certified to the Trustee by the Board, and shall pay such amount (as the Board may direct) either directly to the carrier of such insurance or to the order of the Company for transmittal to such carrier.

(b)   A Retired Employee shall have the right, subject to the provisions of this Subsection 1 (b), to authorize the Trustee to deduct from the Retirement Benefit payable to him, and to pay to the Union on his behalf, monthly dues in such amount as shall be certified to the Trustee from time to time by the Financial Secretary of the Union as being the current rate of monthly dues for Retired Employees.   Such authorization shall be made by a Retired Employee on a form provided by the Union and filed with the Board as hereinafter provided.   An authorization with respect to a particular calendar year shall be effective only if filed during the month of December immediately preceding the commencement of such calendar year, or, in the case of a Participant who retires during the course of a calendar year, during the month in which such retirement occurs.   Any such authorization filed with respect to a particular calendar year shall be irrevocable for the remainder of such calendar year, and shall be automatically renewed with respect to each succeeding calendar year unless the Retired Employee shall file a revocation with the Board during the month of December preceding the beginning of the calendar year for which the revocation is to be effective; provided, however, that if the rate of dues for Retired Employees shall be increased, a Retired Employee shall have the right to revoke such authorization by filing a revocation with the Board within thirty (30) days after the increase in the rate of dues becomes effective, such revocation to be effective for the month following the month in which the revocation is filed.   The Board shall promptly certify to the Trustee all such authorizations effectively filed by Retired Employees, and the Trustee shall give effect to such authorizations until notified by the Board of the revocation thereof.   Notwithstanding the foregoing, it is mutually understood and agreed that the Board shall have the right to discontinue the deductions and payments of dues pursuant to this Subsection 1 (b) at any time when the number of Retired Employees who have currently effective authorizations on file with the Board shall be less than one hundred (100).

(c)   A Retired Employee or Surviving Eligible Spouse entitled to a Benefit under this Plan shall have the right, upon submitting to the Board written authorization and direction acceptable to the Board, to cause Federal income taxes to be withheld from the Retirement Benefits payable under the Plan in accordance with Section 3402(o) of the Code, or subsequent comparable statute, and the applicable regulations thereunder.

(d)   Nothing in this Article shall prevent the payment of all or a portion of the Retirement Benefits under the Plan to an alternate payee under a qualified domestic relations order as such is defined in the applicable Federal law and regulations.

DTP006346

2. <u>Vesting</u>.

Except in accordance with the provision of Article Seven, Section 7, no Participant or Eligible Spouse shall be eligible to receive any Benefit or Supplemental Allowance under the provisions of the Plan prior to the Effective Date thereof. No Participant or Eligible Spouse shall have any vested right under this Plan except such rights, if any, as may accrue to a Participant upon retirement or entitlement to a Deferred Vested Retirement Benefit or to a Eligible Spouse for a Survivor Benefit upon the death of a Participant, in accordance with the provisions of the Plan.

3. <u>Waiver or Suspension of Benefits</u>

(a) Subject to applicable Federal law and regulations and notwithstanding anything to the contrary in the Plan, a Retired Employee or Surviving Eligible Spouse entitled to receive a Retirement Benefit, for personal reasons and without disclosure thereof, may request the Board in writing to suspend for any period of time the payment of all or of any part of such Retirement Benefits otherwise payable to him or her under the provisions of the Plan. Upon receipt of such a written request the Board shall authorize such suspension, in which event the Retired Employee or the Surviving Eligible Spouse shall be deemed to have forfeited all right to or interest in the amount of the Retirement Benefits so suspended, but the Retired Employee or the Surviving Eligible Spouse, as the case may be, shall retain the right to have the full amount of such Retirement Benefits to which he or she otherwise would be entitled reinstated with respect to future payments upon written notice to the Board of his or her desire to revoke a prior request for suspension under this Article Ten, Subsection 3 (a). Any suspension of Retirement Benefits requested hereunder by a Retired Employee shall not affect the Survivor Benefit payable under the Survivor Benefit Option which the Retired Employee has elected or is deemed to have elected under the Plan.

(b) In determining any Benefit or Supplemental Allowance payable to any Retired Employee, no Retirement Benefit or Supplemental Allowance shall be payable for any month during all of which the Retired Employee is receiving weekly accident or sickness benefits under any plan to which the Company shall have contributed; and for any month during part of which the Retired Employee is receiving such accident or sickness benefits, a proportionate amount of any Retirement Benefit or Supplemental Allowance otherwise payable shall be paid for that part of the month for which the Retired Employee receives no such accident or sickness benefits.

4. <u>Gender, Number and Context.</u> Words used in the Plan which are in the masculine gender shall include the feminine gender, the singular shall include the plural and the plural shall include the singular, all unless the context clearly indicates otherwise. The titles of Sections and Subsections in this Plan are included solely for convenience of reference and, if there is any conflict between the titles and the text, the text shall control.

DTP006347

ARTICLE ELEVEN

MAXIMUM ANNUAL BENEFITS

1. Maximum Permissible Amount. The Annual Benefit, as such term is defined in Article Eleven, Subsection 9 (c), payable to a Participant at any time under the Plan shall not exceed the Maximum Permissible Amount, as such term is defined in Article Eleven, Subsection 9 (h). If the Annual Benefit that the Participant would otherwise accrue in a Limitation Year, as such term is defined in Article Eleven, Subsection 9 (g), would produce an Annual Benefit in excess of the Maximum Permissible Amount, the rate of accrual will be reduced so that the annual Benefit will equal the Maximum Permissible Amount.

2. Alternative Computation. The limitation in Article Eleven, Section 1 is deemed satisfied if the Annual Benefit payable to a Participant is not more than $1,000 multiplied by the Participant's years of participation (not to exceed 10) and the Company and any Affiliate has not at any time maintained any defined contribution plan in which the Participant participated.

3. Maximum Permissible Amount - Less Than Ten Years of Credited Service. If a Participant has completed less than 10 years of Credited Service in the Plan, the Participant's Annual Benefit shall not exceed the Maximum Permissible Amount specified below as adjusted by multiplying such amount by a fraction, the numerator of which is the Participant's number of years of Credited Service in the Plan, and the denominator of which is 10. In no event shall the provisions of this Section 3 reduce the limitations provided under Code Sections 415 (b) (1) and (b) (4) to an amount less than one-tenth (1/10th) of the applicable limitation (as determined without regard to this Section 3).

4. Maximum Permissible Amount - Retirement Prior to Participants Social Security Retirement Age. If the Annual Benefit of a Participant commences before the Participant's Social Security Retirement Age, as such term is defined in Article Eleven, Subsection 9 (i), the Maximum Permissible Amount shall be adjusted so that it is the actuarial equivalent (as determined by using the Plan's Actuarial Factors) of an Annual Benefit of $90,000, multiplied by the Adjustment Factor, as such term is defined in Article Eleven, Subsection 9 (a), as prescribed by regulations issued by the Secretary of the Treasury of the United States, beginning at the Social Security Retirement Age. The adjustment provided for in the preceding sentence shall be made in such manner as the Secretary of the Treasury of the United States may prescribe that is consistent with the reduction for old-age insurance benefits commencing before the Social Security Retirement Age under the Social Security Act. In addition, the adjustment shall be based on the greater of the interest rate assumption or an assumption of 5% per year.

5. Maximum Permissible Amount - Retirement After Participants Social Security Retirement Age. If the Annual Benefit of a Participant commences after the Participant's Social Security Retirement Age, the Maximum Permissible Amount shall be adjusted so that it is the actuarial equivalent (as determined by using the Plan's Actuarial Factors) of a benefit of $90,000, multiplied by the Adjustment Factor as provided by the Secretary of the Treasury of the United States, beginning at the Social Security Retirement Age.

6. Current Accrued Benefit. If the Current Accrued Benefit of an individual who was a Participant as of the first day of the Limitation

Page 35

DTP006348

Year beginning on or after January 1, 1987, exceeds the benefit
limitations under Code Section 415 (b), the Maximum Permissible Amount
with respect to the individual shall equal that current Accrued Benefit.

7. <u>Participation In Other Company/Affiliate Defined Benefit Plans</u>.
If a Participant is or has ever been a participant in any other defined
benefit plan maintained by the Company or any Affiliate, the sum of the
Participant's Annual Benefits from all such plans (including the Plan)
shall not exceed the Maximum Permissible Amount.  If the Maximum
Permissible Amount would otherwise be exceeded after taking into account
all such plans, the necessary reduction of the Participant's Annual
Benefit shall be made under the Plan.  However, if the Plan (or any other
defined benefit plan of an Affiliate in which a Participant participates)
was amended after May 5, 1986, but before the first Limitation Year
beginning after December 31, 1986, to increase accrued benefits to a
level below the Code Section 415 limits for Limitation Years beginning
after 1986, such excess amounts are not reflected in the denominator of
the Defined Benefit Plan Fraction for the Limitation Years beginning
after 1986 or in adjusting the numerator of the Defined Contribution Plan
Fraction in accordance with Federal Income Tax Regulations issued under
Section 235(g)(3) of the Tax Equity and Fiscal Responsibility Act of
1982.  The excess accruals are reflected in the numerator of the Defined
Benefit Plan Fraction for Limitation Years beginning after 1986, unless
the excess is eliminated.  The excess is not reflected in the Current
Accrued Benefit.

8. <u>Participation In Company/Affiliate Defined Contribution Plans</u>.
If a Participant is also a participant in any defined contribution plan
maintained by the Company or any Affiliate, the sum of the Participant's
Defined Contribution Plan Fraction as such term is defined in Article
Eleven, Subsection 10 (f) and the Defined Benefit Plan Fraction, as such
term is defined in Article Eleven, Subsection 9 (e), shall not exceed 1.0
in any Limitation Year.  If the sum of the fractions would exceed 1.0 in
any Limitation Year, the Participant's Annual Benefit shall be reduced
until the sum of the fractions is 1.0.

9. <u>Definitions</u>.  For purposes of computing the limitations under
this Section 9;

   (a) "<u>Adjustment Factor</u>" means the cost of living adjustment
       factor prescribed by the Secretary of the Treasury under
       Section 415 (d) of the Code for years beginning after
       December 31, 1987, applied to such items and in such manner
       as the Secretary shall prescribe.

   (b) "<u>Annual Additions</u>" with respect to a Participant means the
       sum of --

      (i) The Affiliates' contribution made for him under any
          defined contribution plan of the Affiliates for the
          Limitation Year; and

      (ii) Nondeductible contributions by the Participant for
           Limitation Years beginning after 1986 (as to Limitation
           Years beginning before 1987, only the lesser of 50% of
           such contribution or the amount of such contributions
           that exceed 6% of the Participant's compensation, as
           defined in Code Section 415 (c) (3), for the Limitation
           Year are treated as Annual Additions);

(iii) Forfeitures allocated to him under all defined
contribution plans of the Affiliates for the Limitation
Year; and

(iv) (4) Any contributions allocated on the Participant's
behalf to any medical account under Code Sections
401 (h) (6) and 419A (d).

(c) "Annual Benefit" means a Participant's Normal Retirement
Benefit computed under Article Seven, Section 1, expressed
as--

(i) A qualified joint and survivor annuity form of payment
for any married Participant if the automatic election
applies to such Participant; or

(ii) A single life annuity form of payment for any other
Participant.

(d) "Current Accrued Benefit" means a Participant's Annual
Benefit under the Plan, determined as if the Participant had
separated from service as of the close of the last Limitation
Year beginning before January 1, 1987, when expressed as an
annual benefit within the meaning of Code Section 415 (b)
(2). In determining the amount of a Participant's Current
Accrued Benefit, any change in the terms and conditions of
the Plan after May 5, 1986 shall be disregarded.

(e) "Defined Benefit Plan Fraction" for any year means the
fraction--

(i) The numerator of which is the sum of the Participant's
projected annual benefits under all tax-qualified
defined benefit plans of the Affiliates (whether or not
any such plan is terminated), determined as of the close
of the year, and

(ii) The denominator of which is the lesser of 125% of the
dollar limitation in effect for the Limitation Year
under Code Section 415 (b) (1) (A) or 140% or the
average annual compensation amount.

(f) "Defined Contribution Plan Fraction" for any year means the
fraction--

(i) The numerator of which is the sum of the Annual
Additions to the Participant's accounts under all tax-
qualified defined contribution plans of the Affiliates
(whether or not terminated) for the current and all
prior Limitation Years (reduced, if applicable, in
accordance with Federal Income Tax Regulations issued
pursuant Section 235 (g) (3) of the Tax Equity and
Fiscal Responsibility Act of 1982), and

(ii) The denominator of which is the sum of the lesser of the
following amounts determined for the current and all
prior Limitation Years of service with the Affiliates:

(A) 125% of the dollar limitation in effect under Code

DTP006350

Section 415 (c) (1) (A) for each year, or

(B) 140% of the amount which may be taken into account under Code Section 415 (c) (1) (B) with respect to him under such plan for such year.

(iii) The denominator of the Defined Contribution Plan Fraction shall be multiplied by the "transition fraction" (as defined in Code Section 415 (e) (6) (B)), if the Board has elected to use it.

(g) "Limitation Year" means the calendar year.

(h) "Maximum Permissible Amount" means the lesser of (A) $90,000 (multiplied by the Adjustment Factor) or (B) 100% of the Participant's annual average of the highest three consecutive calendar years of total compensation (as defined in Code Section 415 (c) (3)) paid to the Participant by the Affiliates during his active participation in the Plan (or any other defined benefit plan of the Affiliates).

(i) Social Security Retirement Age. "Social Security Retirement Age" means the age defined in Code Section 415 (b) (8). Under that Section, a person's Social Security Retirement Age is (a) 65 if the year of birth is before 1938, (b) 66 if the year of birth if after 1937 but before 1955, or (c) 67 if the year of birth is after 1954.

ARTICLE TWELVE
TERMINATION OF THE PLAN

1.  Order of Priorities.

In the event of termination of the Plan embodied in this Agreement, the assets then remaining in the Trust Fund, after providing the expenses of the Plan and of the Trust Fund, shall be allocated, after deducting any balance in the Trust Fund attributable to funding the cost of the Supplemental Allowances under Article Nine, to the extent that they shall be sufficient, for the purpose of paying Benefits (based on Credited Service to the date of termination of the Plan) to Participants who have retired or who retire and former Employees in the following order of precedence:

(a)  To provide Benefits at such time as they become payable under the terms of the Plan to a Retired Employee (and his Surviving Eligible Spouse) who was receiving a Retirement Benefit as of the beginning of the three-year period ending on the date of termination of the Plan (or would have been eligible to retire and commence receiving a Retirement Benefit as of the beginning of said three-year period), computed under the provisions of the Plan (as in effect during the five-year period ending on the date of termination of the Plan) which would provide the smallest Benefit.

(b)  To provide Benefits to a Retired Employee (and his Surviving Eligible Spouse) at such time as they become payable under the terms of the Plan, which when added to the Benefits provided under Subsection 1 (a) above, would be equal to the Benefits under the Plan which are determined by the Pension Benefit Guaranty Corporation to be guaranteed under Section 4022 of

ERISA (computed without regard to Section 4022 (b) (5) of said Act).

(c) To provide Benefits, which when added to the Benefits provided under Subsections 1 (a) and 1 (b) above would be equal to the Benefit to which the Participant would be entitled under the terms of the Plan, in the following order of precedence:

  (i) To provide Benefits (including any Age-Service Supplement, Lifetime Supplement or Special Age 65 Benefit that commenced prior to the date of termination of the Plan, but excluding any Supplemental Allowances under Article Nine) to Retired Employees receiving Retirement Benefits and to Participants who retire under the Plan prior to the date of termination of the Plan, and to a Surviving Eligible Spouse entitled to a Survivor Benefit under Article Eight, without reference to the order of retirement. No increase due to a redetermination of benefits shall be provided at any date after the termination of the Plan under this Article Twelve, Subsection 1 (c), paragraph (i).

  (ii) To provide Normal Retirement Benefits (including the Special Age 65 Benefit, if such would actually be payable upon the date of termination of the Plan) upon retirement under the terms of this Plan as if it were in effect, to Participants age sixty-five (65) or older and who have ten (10) years or more of Credited Service on the date of termination of the Plan, without reference to the order in which they reached age sixty-five (65), and to provide Disability Retirement Benefits, excluding any Supplemental Allowances under Article Nine, to Participants who on the date of termination of the Plan have been approved for a Disability Retirement Benefit but who have not then commenced to receive such benefit.

  (iii) To provide at age sixty-five (65) or, if the Participant elects, at such earlier age as the Participant may elect to receive a Normal Retirement Benefit (excluding the Special Age 65 Benefit) provided for under the terms of the Plan as now in effect, at the level reached on September 7, 1986, to Participants who on the date of termination of the Plan have ten (10) years or more of Credited Service, without reference to their ages on the date of termination of the Plan or to the order in which they shall reach age sixty-five (65).

  (iv) To provide additional Benefits which, when added to the Benefits received under Subsection 1 (c) (i) above, shall equal the Benefits otherwise provided under the Plan as now in effect (excluding any Supplemental Allowances under Article Nine and excluding any Age-Service Supplement, Lifetime Supplement or Special Age 65 Benefit not otherwise payable under Subsection 1 (c) (i) above) to Retired Employees receiving Benefits and to Participants who retire under the Plan prior to the date of its termination, and to a Eligible Spouse entitled to a Survivor Benefit under Article Eight without reference to order of retirement;

(v) To provide additional Benefits which, when added to the
Benefits received under Subsection 1 (c) (ii) above,
shall equal the Benefits otherwise provided under the
Plan as now in effect, to Participants age sixty-five
(65) or older and who have ten (10) years or more of
Credited Service on the date of termination of the Plan,
without reference to the order in which they reached age
sixty-five (65) and to provide additional Benefits which,
when added to the Benefits received under Subsection 1
(c) (ii) above, shall equal the Benefits (excluding any
Supplemental Allowances under Article Nine) otherwise
provided under the Plan as now in effect, to Participants
who on the date of termination of the Plan have been
approved for a Disability Retirement Benefit but who have
not then commenced to receive such a Benefit;

(vi) To provide, at age sixty-five (65), additional Benefits
(excluding the Special Age 65 Benefit) which when added
to the Benefits received under Subsection 1 (c) (iii)
above, shall equal the Normal Retirement Benefit provided
for under the Plan as now in effect to Participants who
on the date of termination of the Plan have met the
requirements of Article Six, Section 2, for Early
Retirement, without reference to the order in which they
shall reach age sixty-five.

(vii) To provide, at age sixty-five (65), Benefits (excluding
the Special Age 65 Benefit) which when added to the
Benefits received under Subsection 1 (c) (iii) if any,
shall equal the Normal Retirement Benefit provided under
the Plan, as now in effect, to Participants less than age
sixty (60) and whose combined age and Credited Service
(to the nearest one-twelfth (1/12th) in each case) equal
at least sixty (60) on the date of termination of the
Plan, without reference to the order in which they shall
reach age sixty-five (65);

(viii) To provide at age sixty-five (65), or upon the date of
termination of the Plan if the Participant is age sixty-
five (65) or older on the date of termination of the
Plan, Benefits (excluding the Special Age 65 Benefit)
which, when added to the Benefits received under
Subsection 1 (c) (iii), if any, shall equal the Normal
Retirement Benefit provided for under the terms of the
Plan, as now in effect, to Participants on the date of
termination of the Plan who are not provided for above in
this Article Twelve, Section 1, without reference to the
order in which they shall reach or shall have reached age
sixty-five (65);

(ix) Within each of the above Subsections 1 (a) through (c)
(viii), shall be included such former Participants
eligible for a Deferred Vested Retirement Benefit under
Article Seven, Section 5, who are eligible for such
Benefit on the date of termination of employment.

(x) To provide Special Age 65 Benefits commencing on the
first day of the month following the month in which age

Page 40                          DTP006353

sixty-five (65) is attained to Retired Employees and eligible Surviving Eligible Spouses provided for in Subsection 1 (a) and Subsection 1 (c) (iv) who are under age sixty-five (65) on the date of termination of the Plan.

The assets remaining in the Trust Fund attributable to funding the cost of Supplemental Allowances payable under any Prior Agreement and Supplemental Allowances payable as provided under Article Nine in the Plan, as now in effect, shall be allocated, to the extent that they shall be sufficient, in the following order of precedence:

1. To continue payments of Supplemental Allowances payable under any Prior Agreement and Supplemental Allowances payable under Article Nine in the Plan, as now in effect to Participants who shall have retired under the Plan prior to its termination;

2. To provide for the payment to Participants who have made an application, which is subsequently approved, for a Disability Retirement Benefit under the Plan prior to its termination, who are otherwise entitled to a Supplemental Allowance, of the amount of such Supplemental Allowance;

3. To provide for the payment to all other Participants on the date of termination of the Plan of their proportionate share of any actuarial reserve for Supplemental Allowances for them as certified by the Actuary.

(d) If under this Article Twelve, Subsection 1, above, after having made provision in the above order of precedence for some but not all of the groups listed above, the assets then remaining in the Trust Fund are not sufficient to provide completely for the Benefits for persons in the next group, such Benefits shall be provided for each person in such group on a pro-rata basis as determined by the Actuary.

2.    Methods of Allocation.

The allocation hereinbefore specified shall be accomplished through either (i) continuance of the Trust Fund or a new Trust Fund, or (ii) purchase of insurance annuity contracts; provided, however, that the Board, upon finding that it is not practicable or desirable under the circumstances to do either of the foregoing with respect to some or all of the groups listed in Article Twelve, Section 1, with the unanimous consent of its members, may provide for allocation of a part or all of the assets of the Trust Fund other than by the continuance of a Trust Fund or the purchase of insurance annuity contracts with respect to any or all of such groups; provided, further, however, that no change shall be made in the order of precedence and basis for allocation established in Article Twelve, Section 1.  Except as otherwise provided in the Supplemental Retirement Income Program Agreement between the Company and the Union of even date herewith, there shall be no liability or obligation on the part of the Company to make further contributions to the original Trust Fund or such new Trust Fund in the event of termination of the Plan.

3.    Merger or Consolidation

In the event of any merger or consolidation of the Plan with, or
transfer in whole or in part of the assets and liabilities of the
Trust Fund to another trust fund held under any other plan of
deferred compensation maintained or to be established for the
benefit of all or some of the Participants, the assets of the Trust
Fund applicable to such Participants shall be transferred to the
other trust fund only if each Participant would (if either this Plan
or the other plan then terminated) receive a benefit immediately
after the merger, consolidation or transfer which is equal to or
greater than the benefit he would have been entitled to receive
immediately before the merger, consolidation, or transfer (if this
Plan has been terminated), and such other plan and trust are
qualified under Sections 401 (a) and 501 (b) of the Internal Revenue
Code.

4.    Partial Termination

In the event of a partial termination of the Plan, each affected
Participant's Accrued Benefit, based on Credited Service prior to
the effective date of the partial termination shall become fully
vested and nonforfeitable to the extent funded.  The extent funded
shall be determined by computing the extent funded for the affected
Participants as if the entire Plan had terminated and assets
allocated in accordance with Article Twelve, Section One.

ARTICLE THIRTEEN<br>AMENDMENT AND DURATION OF THE PLAN

1.    Commencement of Increased Benefits Contingent on Internal Revenue
Approval.

This Agreement and the Plan provided for herein shall be effective
September 7, 1989, contingent upon and subject to approval from the
Director of Internal Revenue of the Plan and Trust established in
connection herewith for exemption from taxation under Sections 401
and 501 (a) and other applicable provisions of the Code, and
deductibility of contributions under Section 404 and other
applicable provisions of the Code.  Benefits not paid pending such
approval shall be paid retroactively to the date they would
otherwise have become due and payable after such approval is
received, but in no event shall any of the Benefits provided for
herein be paid for any month prior to September 7, 1989.  Any
modifications, alterations or amendments required by the Director of
Internal Revenue, for the purpose of approval of the Plan under
Section 401 (a) and other applicable provisions of the Code, shall
be made retroactively.

2.    Amendment and Duration.

This Agreement shall continue in full force and effect until
September 12, 1992.  During the term of this Agreement neither the
Company nor the Union shall request any change in, deletion from, or
addition to the Agreement, or be required to bargain with respect to
any change in this Agreement, nor shall any modifications,
alterations or amendment of said Agreement be an objective or be
stated as a reason for any strike or lockout, or other exercise of
economic force or threat by the Union or the Company.

Page 42

DTP006355

As of September 12, 1992, this Agreement may be terminated,
modified, changed or continued in the same manner as provided in
Article Sixteen of the Collective Bargaining Agreement.  In the
event this Agreement shall terminate, the Company shall have no
obligation to continue the Plan.

```
           COMPANY                              UNION
------------------------------      ------------------------------
```

```
BY ------------------------------
   Glen O. Eckelman, Manager
   Human Resources
```

```
                                by ------------------------------
                                   Director, Region Three
   ------------------------------
   Jack Reising, Vice President     International Representative
   Human Resources
```

```
   ------------------------------   ------------------------------
   R.  A. Nuerge, Manager
   Benefits                         ------------------------------
```

```
                                    ------------------------------
```

```
                                    ------------------------------
```

```
                                    ------------------------------
```

```
                                    ------------------------------
```

```
                                    ------------------------------
```

```
                                    ------------------------------
```

```
                                    ------------------------------
```

```
   ------------------------
   Date signed
```

Page 43

DTP006356

<u>SUPPLEMENTAL RETIREMENT INCOME PROGRAM AGREEMENT</u>

THIS SUPPLEMENTAL RETIREMENT INCOME PROGRAM AGREEMENT, entered into this 27th day of October, 1989, between Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, hereinafter called the Company as defined in Article One, Section 11 of the Retirement Income Program Agreement of even date, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and its Local Union No. 287, hereinafter called the Union as defined in Article One, Section 38, of the Retirement Income Program Agreement of even date.

<u>WITNESSETH THAT</u>:

WHEREAS, the Company and the Union have entered into the Retirement Income Program Agreement dated October 27, 1989; and

WHEREAS, the Company and the Union after negotiations have agreed upon provisions for the guaranteed payment by the Company of certain retirement income benefits under certain conditions; and

WHEREAS, the Company and the Union desire to incorporate such provisions in this Supplemental Retirement Income Program Agreement;

NOW, THEREFORE, the Company and the Union agree as follows:

1. In the event that the Plan established in the Retirement Income Program Agreement entered into on October 27, 1989 is terminated in accordance with its terms by reason of the closing of the plants of the Company located in the City of Muncie and Delaware County, Indiana and the assets in the Trust Fund maintained pursuant to the Retirement Income Program Agreement at such time are not sufficient, if allocated in accordance with the terms of Section 1 of Article Twelve of said Retirement Income Program Agreement, to provide in full the benefits described in Subsections (a), (b), (c)(i), (c)(ii), (c)(iii), and (c)(iv) of said Section 1, Article Twelve, the Company agrees to pay or cause to be paid said benefits (and all Supplemental Allowances to which the Participants covered by Subsections (a), (c)(i) and (c)(ii) of said Section 1, Article Twelve, are eligible for under Article Nine of the Retirement Income Program Agreement) as they from time to time become due to all persons eligible therefor under said Subsections to the extent that said benefits are not provided from the assets in said Trust Fund. The obligations of the Company hereunder may be discharged by the continuation of the Trust Fund and further contributions, in such amounts and at such time as determined by the Company in its discretion, to said Trust Fund or the purchase of insurance annuity contracts or such other manner as the Company deems appropriate.

2. The Supplemental Retirement Income Program Agreement between the Company (previously identified as Borg-Warner Automotive Inc. Transmission Systems) and the Union entered into on September 7, 1986 shall terminate as of September 7, 1989. This Supplemental Retirement Income Program Agreement shall be effective as of September 7, 1989 and shall continue in full force and effect until the execution of a Retirement Income Program Agreement which supersedes the Retirement Income Program Agreement entered into on October 27, 1989. This Supplemental Retirement Income Program Agreement shall be subject to negotiation at the same time specified for negotiations on the subject of a Retirement Income Program under

DTP006357

Section 2, Article Thirteen of said Retirement Income Program Agreement.

Executed at Muncie, Indiana, on the day and year written below.

```
        COMPANY                              UNION
-----------------------------      --------------------------------


-----------------------------
Glen O. Eckelman, Manager
Human Resources                 by --------------------------------
                                   Director, Region Three

-----------------------------      --------------------------------
Jack Reising, Vice President
Human Resources


-----------------------------      --------------------------------
R.  A. Nuerge, Manager
Benefits

                                   --------------------------------

                                   --------------------------------

                                   --------------------------------

                                   --------------------------------

                                   --------------------------------

                                   --------------------------------

                                   --------------------------------

                                   --------------------------------

                                   --------------------------------
```

```
-----------------------------
Date of Agreement
```

DTP006358

Annual Pension Amount
22

After amount entered above, go to cell Y4

Fractions of Years of Service Credit
Effective December 1, 1989
**$22.00 Rate**
BORG--WARNER AUTOMOTIVE DTPC, MUNCIE PLANT

Monthly Pension
AMOUNT 1.8333

YEARS OF
CREDITED

| ERVI | 0 | 1 MO. | 2 MOS. | 3 MOS. | 4 MOS. | 5 MOS. | 6 MOS | 7 MOS | 8 MOS. | 9 MOS. | 10 MOS. | 11 MOS. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | 110.00 | 111.83 | 113.67 | 115.50 | 117.33 | 119.17 | 121.00 | 122.83 | 124.67 | 126.50 | 128.33 | 130.17 |
| 6 | 132.00 | 133.83 | 135.67 | 137.50 | 139.33 | 141.17 | 143.00 | 144.83 | 146.67 | 148.50 | 150.33 | 152.17 |
| 7 | 154.00 | 155.83 | 157.67 | 159.50 | 161.33 | 163.17 | 165.00 | 166.83 | 168.67 | 170.50 | 172.33 | 174.17 |
| 8 | 176.00 | 177.83 | 179.67 | 181.50 | 183.33 | 185.17 | 187.00 | 188.83 | 190.67 | 192.50 | 194.33 | 196.17 |
| 9 | 198.00 | 199.83 | 201.67 | 203.50 | 205.33 | 207.17 | 209.00 | 210.83 | 212.67 | 214.50 | 216.33 | 218.17 |
| 10 | 220.00 | 221.83 | 223.67 | 225.50 | 227.33 | 229.17 | 231.00 | 232.83 | 234.67 | 236.50 | 238.33 | 240.17 |
| 11 | 242.00 | 243.83 | 245.67 | 247.50 | 249.33 | 251.17 | 253.00 | 254.83 | 256.67 | 258.50 | 260.33 | 262.17 |
| 12 | 264.00 | 265.83 | 267.67 | 269.50 | 271.33 | 273.17 | 275.00 | 276.83 | 278.67 | 280.50 | 282.33 | 284.17 |
| 13 | 286.00 | 287.83 | 289.67 | 291.50 | 293.33 | 295.17 | 297.00 | 298.83 | 300.67 | 302.50 | 304.33 | 306.17 |
| 14 | 308.00 | 309.83 | 311.67 | 313.50 | 315.33 | 317.17 | 319.00 | 320.83 | 322.67 | 324.50 | 326.33 | 328.17 |
| 15 | 330.00 | 331.83 | 333.67 | 335.50 | 337.33 | 339.17 | 341.00 | 342.83 | 344.67 | 346.50 | 348.33 | 350.17 |
| 16 | 352.00 | 353.83 | 355.67 | 357.50 | 359.33 | 361.17 | 363.00 | 364.83 | 366.67 | 368.50 | 370.33 | 372.17 |
| 17 | 374.00 | 375.83 | 377.67 | 379.50 | 381.33 | 383.17 | 385.00 | 386.83 | 388.67 | 390.50 | 392.33 | 394.17 |
| 18 | 396.00 | 397.83 | 399.67 | 401.50 | 403.33 | 405.17 | 407.00 | 408.83 | 410.67 | 412.50 | 414.33 | 416.17 |
| 19 | 418.00 | 419.83 | 421.67 | 423.50 | 425.33 | 427.17 | 429.00 | 430.83 | 432.67 | 434.50 | 436.33 | 438.17 |
| 20 | 440.00 | 441.83 | 443.67 | 445.50 | 447.33 | 449.17 | 451.00 | 452.83 | 454.67 | 456.50 | 458.33 | 460.17 |
| 21 | 462.00 | 463.83 | 465.67 | 467.50 | 469.33 | 471.17 | 473.00 | 474.83 | 476.67 | 478.50 | 480.33 | 482.17 |
| 22 | 484.00 | 485.83 | 487.67 | 489.50 | 491.33 | 493.17 | 495.00 | 496.83 | 498.67 | 500.50 | 502.33 | 504.17 |
| 23 | 506.00 | 507.83 | 509.67 | 511.50 | 513.33 | 515.17 | 517.00 | 518.83 | 520.67 | 522.50 | 524.33 | 526.17 |
| 24 | 528.00 | 529.83 | 531.67 | 533.50 | 535.33 | 537.17 | 539.00 | 540.83 | 542.67 | 544.50 | 546.33 | 548.17 |
| 25 | 550.00 | 551.83 | 553.67 | 555.50 | 557.33 | 559.17 | 561.00 | 562.83 | 564.67 | 566.50 | 568.33 | 570.17 |
| 26 | 572.00 | 573.83 | 575.67 | 577.50 | 579.33 | 581.17 | 583.00 | 584.83 | 586.67 | 588.50 | 590.33 | 592.17 |
| 27 | 594.00 | 595.83 | 597.67 | 599.50 | 601.33 | 603.17 | 605.00 | 606.83 | 608.67 | 610.50 | 612.33 | 614.17 |
| 28 | 616.00 | 617.83 | 619.67 | 621.50 | 623.33 | 625.17 | 627.00 | 628.83 | 630.67 | 632.50 | 634.33 | 636.17 |
| 29 | 638.00 | 639.83 | 641.67 | 643.50 | 645.33 | 647.17 | 649.00 | 650.83 | 652.67 | 654.50 | 656.33 | 658.17 |
| 30 | 660.00 | 661.83 | 663.67 | 665.50 | 667.33 | 669.17 | 671.00 | 672.83 | 674.67 | 676.50 | 678.33 | 680.17 |
| 31 | 682.00 | 683.83 | 685.67 | 687.50 | 689.33 | 691.17 | 693.00 | 694.83 | 696.67 | 698.50 | 700.33 | 702.17 |
| 32 | 704.00 | 705.83 | 707.67 | 709.50 | 711.33 | 713.17 | 715.00 | 716.83 | 718.67 | 720.50 | 722.33 | 724.17 |
| 33 | 726.00 | 727.83 | 729.67 | 731.50 | 733.33 | 735.17 | 737.00 | 738.83 | 740.67 | 742.50 | 744.33 | 746.17 |
| 34 | 748.00 | 749.83 | 751.67 | 753.50 | 755.33 | 757.17 | 759.00 | 760.83 | 762.67 | 764.50 | 766.33 | 768.17 |
| 35 | 770.00 | 771.83 | 773.67 | 775.50 | 777.33 | 779.17 | 781.00 | 782.83 | 784.67 | 786.50 | 788.33 | 790.17 |
| 36 | 792.00 | 793.83 | 795.67 | 797.50 | 799.33 | 801.17 | 803.00 | 804.83 | 806.67 | 808.50 | 810.33 | 812.17 |
| 37 | 814.00 | 815.83 | 817.67 | 819.50 | 821.33 | 823.17 | 825.00 | 826.83 | 828.67 | 830.50 | 832.33 | 834.17 |
| 38 | 836.00 | 837.83 | 839.67 | 841.50 | 843.33 | 845.17 | 847.00 | 848.83 | 850.67 | 852.50 | 854.33 | 856.17 |
| 39 | 858.00 | 859.83 | 861.67 | 863.50 | 865.33 | 867.17 | 869.00 | 870.83 | 872.67 | 874.50 | 876.33 | 878.17 |
| 40 | 880.00 | 881.83 | 883.67 | 885.50 | 887.33 | 889.17 | 891.00 | 892.83 | 894.67 | 896.50 | 898.33 | 900.17 |
| 41 | 902.00 | 903.83 | 905.67 | 907.50 | 909.33 | 911.17 | 913.00 | 914.83 | 916.67 | 918.50 | 920.33 | 922.17 |
| 42 | 924.00 | 925.83 | 927.67 | 929.50 | 931.33 | 933.17 | 935.00 | 936.83 | 938.67 | 940.50 | 942.33 | 944.17 |
| 43 | 946.00 | 947.83 | 949.67 | 951.50 | 953.33 | 955.17 | 957.00 | 958.83 | 960.67 | 962.50 | 964.33 | 966.17 |
| 44 | 968.00 | 969.83 | 971.67 | 973.50 | 975.33 | 977.17 | 979.00 | 980.83 | 982.67 | 984.50 | 986.33 | 988.17 |
| 45 | 990.00 | 991.83 | 993.67 | 995.50 | 997.33 | 999.17 | 1001.00 | 1002.83 | 1004.67 | 1006.50 | 1008.33 | 1010.17 |
| 46 | 1012.00 | 1013.83 | 1015.67 | 1017.50 | 1019.33 | 1021.17 | 1023.00 | 1024.83 | 1026.67 | 1028.50 | 1030.33 | 1032.17 |
| 47 | 1034.00 | 1035.83 | 1037.67 | 1039.50 | 1041.33 | 1043.17 | 1045.00 | 1046.83 | 1048.67 | 1050.50 | 1052.33 | 1054.17 |
| 48 | 1056.00 | 1057.83 | 1059.67 | 1061.50 | 1063.33 | 1065.17 | 1067.00 | 1068.83 | 1070.67 | 1072.50 | 1074.33 | 1076.17 |
| 49 | 1078.00 | 1079.83 | 1081.67 | 1083.50 | 1085.33 | 1087.17 | 1089.00 | 1090.83 | 1092.67 | 1094.50 | 1096.33 | 1098.17 |
| 50 | 1100.00 | 1101.83 | 1103.67 | 1105.50 | 1107.33 | 1109.17 | 1111.00 | 1112.83 | 1114.67 | 1116.50 | 1118.33 | 1120.17 |

DTP006359

MEMORANDUM OF UNDERSTANDING

THIS MEMORANDUM OF UNDERSTANDING, entered into on the 27th day of October 1989, between Borg-Warner Automotive Diversified Transmission Products Corporation Muncie Plant, hereinafter called the Company as defined in Article One, Section 11 of the Retirement Income Program Agreement of even date, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and its Local Union No. 287, hereinafter called the Union as defined in Article One, Section 38, of the Retirement Income Program Agreement of even date.

WHEREAS, the Company and the Union are parties to a Retirement Income Program Agreement dated October 27, 1989;

NOW THEREFORE, the Company and the Union agree that the Retiree/Survivor Bonus Arrangement, as described in the Memorandum of Understanding between the Company and the Union entered into on the 7th day of September 1986, shall be continued for the term of the Collective Bargaining Agreement entered into on October 27, 1989 subject to the following provisions:

1.  Surviving Eligible Spouses who were receiving benefits prior to December 1, 1989, and Retired Employees who retired prior to December 1, 1989 with Ten (10) or more years of Credited Service and are receiving a Normal Retirement Benefit, Early Retirement Regular Benefit, Special Early Retirement Benefit or a Disability Retirement Benefit shall receive a scheduled bonus payment in accordance with paragraph 5 below.

2.  Retired Employees who began receiving a Normal Retirement Benefit on or after December 1, 1989 and prior to April 1, 1990, and Surviving Eligible Spouses of such Retired Employees, shall receive a scheduled bonus payment payable April, 1991 and April, 1992 in accordance with paragraph 5 below.

3.  Retired Employees who began receiving a Normal Retirement Benefit on or after April 1, 1990 and prior to April 1, 1991, and Surviving Eligible Spouses of such Retired Employees, shall receive a scheduled bonus payment payable April, 1992 in accordance with paragraph 5 below.

4.  Participants who retire on or after April 1, 1991 shall not receive a scheduled bonus payment in accordance with paragraph 5 below.

5.  In each case listed above where a Retired Employee or a Surviving Eligible Spouse shall receive a Retiree/Survivor Bonus, the following Credited Service Schedules listed below as (a) or (b) shall apply.

| (a) Retired Employees with | 4/1/90 | 4/1/91 | 4/1/92 |
|---|---|---|---|
| 25 or more years of Credited Service | $425 | $425 | $425 |
| 15 but under 25 years of Credited Service | $295 | $295 | $295 |
| 10 but under 15 years of Credited Service | $230 | $230 | $230 |

| (b) Surviving Eligible Spouses of Retired Employees with | 4/1/90 | 4/1/91 | 4/1/92 |
|---|---|---|---|
| 25 or more years of Credited Service | $235 | $235 | $235 |

DTP006360

| | | | |
|---|---|---|---|
| 15 but under 25 years of Credited Service | $165 | $165 | $165 |
| 10 but under 15 years of Credited Service | $125 | $125 | $125 |

6. The Retiree/Survivor Bonus shall be paid based on the availability of funds accrued at a $0.19/hour Cost of Living Adjustment offset as provided in the Collective Bargaining Agreement. Such Retiree/Survivor Bonus shall be paid annually with the first payment to be made April, 1990, second April 1991 and the last April, 1992; provided however that if the funds are not adequate to pay full bonus payments, a pro-rated amount, not less than the amounts set forth in the Memorandum of Understanding between the Company and the Union entered into on September 7, 1986, will be paid. If funds made available as described above in paragraph 5 exceed the amount necessary to pay the bonus payment, the excess amount will be retained to apply against future payments.

Executed at Muncie, Indiana, on the day and year written below.

COMPANY
-------------------------

UNION
--------------------------------

-----------------------------
Glen O. Eckelman, Manager
Human Resources

by --------------------------------
Director, Region Three

-----------------------------
Jack Reising, Vice President
Human
Resources

--------------------------------

-----------------------------
R. A. Nuerge, Manager
Benefits

--------------------------------

--------------------------------

--------------------------------

--------------------------------

--------------------------------

--------------------------------

--------------------------------

--------------------------------

--------------------------------

--------------------------------

-----------------------------
Date of Agreement

DTP006361

MEMORANDUM OF UNDERSTANDING

THIS MEMORANDUM OF UNDERSTANDING entered into on the 27th day of October, 1989 between Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, hereinafter called the Company as defined in Article One, Section 11, of the Retirement Income Program Agreement of even date, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW and its Local Union No. 287, hereinafter called the Union as defined in Article One, Section 38, of the Retirement Income Program Agreement of even date.

WHEREAS, the Company and the Union are parties to a Retirement Income Program Agreement dated October 27, 1989, (the "Agreement"):

NOW, THEREFORE, the Company and the Union agree as follows:

1. Subject to paragraph 2 below, Article Nine, Section 4 of the Agreement shall be modified in the following manner:

   "An Employee receiving Supplemental Allowance payments shall not be subject to the excess earnings penalty described in this Article Nine, Section 4 after three (3) full years have passed from the date his benefits commence."

2. Either the Company or the Union reserves the right to unilaterally discontinue the modification set forth in paragraph 1 above at the end of a plan year if it becomes apparent that such modification shows adverse effects to the Agreement by implementation of this liberalization. One example might be an indication of an unusually large number of employees electing to retire after adoption of this modification, but any other adverse effect could be cause for discontinuance.

Executed at Muncie, Indiana on the day and year written below.

| COMPANY | UNION |
|---|---|
| | |

By _____     By _____
Glen O. Eckelman, Manager                      Director, Region Three
Human Resources                                      International Representative

_____
Jack Reising, Vice President
Human Resources

_____
R. A. Nuerge, Manager
Benefits

_____
Date of Memorandum of
Understanding

                    DTP006362

AGREEMENT ON EXTENSION
OF THE
RETIREMENT INCOME PROGRAM AGREEMENT

THIS AGREEMENT ON EXTENSION OF THE RETIREMENT INCOME PROGRAM AGREEMENT
was entered into this 27th day of September, 1990, by and between Borg-
Warner Automotive Diversified Transmission Products Corporation, Muncie
Plant (the "Company") and International Union, United Automotive,
Aerospace and Agricultural Implement Workers of America (UAW) and its
Local 287 (the "Union").

WHEREAS, the Company and the Union are parties to a Retirement Income
Program Agreement dated October 27, 1989 (the "Agreement"); and

WHEREAS, the Company and the Union have entered into an Agreement On
Modification And Extension Of Existing Labor Contract executed on the
27th day of September 1990, wherein the Company and the Union agreed to
extend the Agreement through March 11, 1995:

NOW, THEREFORE, the Company and the Union agree as follows:

1. Article Thirteen, Section Two, is amended effective as of
   September 27, 1990 in the following manner:

   "2. Amendment and Duration.

      This Agreement shall continue in full force and effect
      until March 12, 1995. During the term of this Agreement
      neither the Company nor the Union shall request any change
      in, deletion from, or addition to the Agreement, or be
      required to bargain with respect to any change in this
      Agreement, nor shall any modifications, alterations or
      amendment of said agreement be an objective or be stated as
      a reason for any strike or lockout, or other exercise of
      economic force or threat by the Union or the Company.

      As of March 12, 1995, this Agreement may be terminated,
      modified, changed or continued in the same manner as
      provided in Article Sixteen of the Collective Bargaining
      Agreement. In the event this Agreement shall terminate,
      the Company shall have no obligation to continue the Plan."

Executed at Muncie, Indiana in the day and year written below.


        COMPANY                          UNION

_____       _____

BY _____
   Glen O. Eckelman, Manager
   Human Resources
                                By _____
_____          Director, Region Three
   Jack Reising, Vice President     International
   Human Resources                  Representative


                        Page 50

                            DTP006363

R. A. Nuerge, Manager
Benefits

Date of Agreement

DTP006364