UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLARD L. SLOAN, EUGENE J.
WINNINGHAM, and JAMES L. KELLEY,
on behalf of themselves and a similarly
situated class,

                Plaintiffs,

v.

BORGWARNER, INC., BORGWARNER
FLEXIBLE BENEFITS PLANS and
BORGWARNER DIVERSIFIED
TRANSMISSION PRODUCTS, INC.,

                Defendants.

Case No. 09-cv-10918
Hon. Paul D. Borman
Magistrate Mona K. Majzoub

**Class Action**

_____/

# EXHIBIT 23

# TO

# PLAINTIFFS' MOTION
# FOR SUMMARY JUDGMENT
# AS TO LIABILITY

# BORG-WARNER AUTOMOTIVE DIVERSIFIED TRANSMISSION PRODUCTS CORPORATION, MUNCIE PLANT

## RETIREMENT INCOME

## PROGRAM

## GUIDE BOOKLET

EXHIBIT

24

PENGAD 800-631-6989

March 12, 1996

Covering employees in the bargaining unit represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and its Local 287.

TABLE OF CONTENTS

Page

A.  The Summary

    1.  Employees Retired or Terminated before
        March 12, 1995                                  3 Highlights
    2.  Highlights of the Plan                          3 Highlights
    3.  Participation in the Plan                       3 Highlights
    4.  Qualifying for a Benefit                        3 Highlights
    5.  Credited Service and Vested Service             4 Highlights
    6.  Breaks in Service                               5 Highlights
    7.  Types of Benefits                               5 Highlights
    8.  Calculation of Benefits                         7 Highlights
    9.  Supplemental Allowances                         9 Highlights
    10. Loss or Reduction of Benefits or
        Supplemental Allowances                        10 Highlights
    11. Social Security                                 12 Highlights
    12. Examples of Benefits at Retirement              12 Highlights
    13. Application for Benefits                        17 Highlights
    14. Group Insurance at Retirement                   17 Highlights
    15. Benefit upon Plan Termination                   17 Highlights
    16. Financing the Plan                              18 Highlights
    17. Rights under ERISA                              18 Highlights
    18. Other Information                               19 Highlights

B.  The Official Agreement

    1.  Article One                                      1
    2.  Article Two                                      4
    3.  Article Three                                    5
    4.  Article Four                                     6
    5.  Article Five                                    10
    6.  Article Six                                     18
    7.  Article Seven                                   20
    8.  Article Eight                                   24
    9.  Article Nine                                    29
    10. Article Ten                                     33
    11. Article Eleven                                  36
    12. Article Twelve                                  39
    13. Article Thirteen                                43

C.  Supplemental Retirement Income Program Agreement    45

D.  Rate Schedules ($24.00,$25.00 & $26.50)             47

E.  Exhibit A ~ Survivor Option Percentage Schedules    50

F.  Letters of Understanding:
    Retiree Bonus Memorandum of Understanding           51

DTP009586

RETIREMENT INCOME PROGRAM
OF
BORG-WARNER AUTOMOTIVE DIVERSIFIED TRANSMISSION
PRODUCTS CORPORATION, MUNCIE PLANT

The first twenty pages of this booklet provide a summary of the
Retirement Income Program of Borg-Warner Automotive Diversified
Transmission Products Corporation, Muncie Plant (the "Plan") and are
intended to answer questions most often asked. Also, there are examples
of various types of retirement benefits and schedules provided for your
convenience. The balance of the booklet is a complete copy of the
official agreement and Plan as it has been agreed upon between Borg-
Warner Automotive Diversified Transmission Products Corporation, Muncie
Plant and the International Union, United Automobile, Aerospace and
Agricultural Implement Workers of America, UAW, and its Local 287 (the
"Agreement"). Your eligibility to participate in this defined benefit
plan and the benefits you will receive will be determined by this
Agreement. You should refer to it to fully understand your benefits.

These highlights reflect the Plan as it was amended effective as of
March 12, 1996.

Employees retired or terminated before March 12, 1995
If you have retired or terminated employment before March 12,1995 and
you were a participant in this Plan, your benefits will be determined
under the Plan as it existed at the time of your retirement or
termination.

Highlights of the Plan
The purpose of the Plan, which is a defined benefit plan, is to provide
you with a source of income that begins at retirement. When you retire,
you may receive benefits from this Plan.

Participation in the Plan
To participate in this Plan you must have been employed by Borg-Warner
Automotive Diversified Transmission Products Corporation, Muncie Plant
(the "Company") on September 7, 1989 in the bargaining unit (which is
defined in the applicable collective bargaining agreement between the
Company and the Union), attained the age of 21, and received pay for
1,000 hours during a twelve consecutive month period beginning on the
date you were hired or in any succeeding twelve month period. You will
not be eligible to participate in the Plan if:

- you were not employed by the Company in the Bargaining Unit on
  September 7, 1989, or

- you were hired for employment by the Company in the Bargaining Unit
  on September 7, 1989 or thereafter, or

- you elect to participate in the Borg-Warner Automotive Diversified
  Transmission Products Corporation, Muncie Plant Retirement Savings
  Plan (the "Muncie RSP").

In the event you are a Participant in the Plan, but quit, are discharged
or have your seniority broken for any other reason and at some later
date you are rehired by the Company, you will not be eligible to accrue
further Credited Service in this Plan.

Qualifying for a Benefit
You may qualify for:

- A Normal Retirement Benefit at or after age 65; provided however,
  you meet the eligibility requirements and you were hired prior to
  age 60 and you continue working through your 65th birthday. If you
  were hired after having attained age 60, you will become eligible

DTP009587

for a Normal Retirement Benefit after you complete five years of participation in the Plan.

. An <u>Early Retirement Regular Benefit</u>, either:
 .. at or after age 60 but before age 65, if you have at least ten years of Credited Service, or

 .. at or after age 55, but before age 60, if the sum of your age and your years of Credited Service total at least 85, or

 .. at anytime after you have thirty years of Credited Service.

. A <u>Special Early Retirement Benefit</u> beginning at or after age 55 but before age 65, if you have at least ten years of Credited Service and you are retired under mutually satisfactory conditions as explained in the Plan and you are not discharged for cause.

. A <u>Disability Retirement Benefit</u>, if, your employment ends because you become totally and permanently disabled and you have at least ten years of Credited Service. To be eligible for this benefit, you must fulfill all the requirements as defined in the Plan. These requirements state the length of time you must have been disabled and also the type of disability which this benefit covers.

. A <u>Deferred Vested Retirement Benefit</u> if you have at least five years of Vested Service or ten years of Credited Service. This benefit begins at age 65, or, upon your election, a reduced benefit either after age 60 or after age 55 if the sum of your age and years of Credited Service total at least 85.

## Credited Service and Vested Service

Eligibility for benefits and the amount of benefits are determined by the amount of Credited Service which you have at the time you terminate your employment. Your eligibility for a Deferred Vested Retirement Benefit is determined by whether you have five years of Vested Service or ten years of Credited Service at the time you terminate your employment. Credited Service and Vested Service is counted as follows:

. <u>Credited Service:</u>

 For years of employment before October 1, 1950. You will receive Credited Service in an amount equal to the greater of the years of seniority you have on October 1, 1950 or the actual years of employment.

 For years of employment on or after October 1, 1950. You will receive Credited Service in an amount equal to one year for each calendar year you work at least 1,600 hours for which you are paid, or a fractional year's credit, if you work fewer than 1,600 hours.

. <u>Vested Service:</u>
 You will receive one year of Vested Service for each year of Credited Service you had before January 1, 1976, and, one year of Vested Service for each calendar year beginning January 1, 1976 during which you worked 1,000 hours. There are no fractional years of Vested Service.

. <u>Types of Hours Counted for Credited and Vested Service:</u>
 The hours counted for Credited Service and Vested Service are the hours you actually work, but they may also include limited periods during which you do not work or receive pay. They are described in the Plan, and you should refer to it to determine the amount of hours you have.

DTP009588

Breaks in Service
You will incur a break in service if you quit, or are discharged, or
seniority is broken for any other reason, and after January 1, 1976 if
you also work fewer than 500 hours during a calendar year. If, you
incur a break in service, you will lose credit for all of your previous
Credited Service and Vested Service, unless you were eligible for a
Deferred Vested Retirement Benefit when you incurred the break in
service.

Your previous Credited Service and Vested Service will be restored as
soon as you return to work, but you will not be eligible to Participate
in this Plan and you will not be credited with further Credited Service
in this Plan.

Types of Benefits
When you retire, you may be eligible for one or more of the Benefits*
listed below. To determine whether you fulfill all of the requirements,
you must review the Plan. Do not assume that you are eligible for a
Benefit.

- Normal Retirement*
  .. The Normal Retirement Benefit plus the Special Age 65 Benefit.

- Early Retirement*
  .. Thirty or more years of Credited Service: The Normal Retirement
     Benefit reduced until age 62 and one month, plus the Early
     Retirement Supplement until age 62 and one month (or later,
     according to the Social Security schedule set forth on page 9
     of the Highlights (the "Post 1937 Social Security Schedule")),
     plus the Special Age 65 Benefit beginning at age 65.

  .. Less than thirty years of Credited Service and retired before
     age 62: The Normal Retirement Benefit reduced until age 62 and
     one month, plus the Interim Supplement until age 62 and one
     month (or later, according to the Post 1937 Social Security
     Schedule), plus the Special Age 65 Benefit beginning at age 65.

  .. Less than thirty years of Credited Service and retired on or
     after age 62: The Normal Retirement Benefit plus the Special
     Age 65 Benefit beginning at age 65.

- Special Early Retirement* or Disability Retirement*
  .. Thirty or more years of Credited Service: The Normal Retirement
     Benefit, plus if not eligible for an Unreduced Social Security
     Benefit, a Temporary Benefit until age 62 and one month (or
     later, according to the Post 1937 Social Security Schedule),
     plus the Early Retirement Supplement until age 62 and one month
     (or later, according to the Post 1937 Social Security Schedule),
     plus the Special Age 65 Benefit beginning at age 65, or, if
     under voluntary Medicare coverage, before age 65.

  .. Less than thirty years of Credited Service and retired before
     age 62: The Normal Retirement Benefit, plus the Special Age 65
     Benefit beginning at age 65, or, if under voluntary Medicare
     coverage, before age 65, plus if not eligible for an Unreduced
     Social Security Benefit, the Temporary Benefit until age 62 and
     one month (or later, according to the Post 1937 Social Security
     Schedule).

  .. Less than thirty years of Credited Service and over age 62 when
     retired: The Normal Retirement Benefit, plus the Special Age 65
     Benefit beginning at age 65, or, if under voluntary Medicare
     coverage, before age 65.

  *Please note that each Benefit will be reduced by any "other
   benefits" you are receiving or entitled to receive.

- <u>Deferred Vested Retirement*</u>
  - .. Five years of Vested Service or Ten years of Credited Service: The Deferred Vested Retirement Benefit.

- <u>Survivor Benefit</u>
  There are two types of survivor benefit protection available under this Plan. One is in effect while you are still employed, and the other comes into effect when you begin retirement. There are several conditions for you and your spouse to satisfy before you qualify for the protection. Also, the election of the survivor protection will reduce the amount of your monthly retirement benefit so please read the following carefully.

  - .. <u>Pre-Retirement Survivor Benefit</u>
    While you are still working, your eligible spouse may be entitled to a Survivor Benefit if you die at a time at which you have either:

    ...reached age sixty and have ten years of Credited Service; or

    ...reached age fifty-five and your age and number of years of Credited Service total at least 85; or

    ...have at least thirty years of Credited Service; or

    ...Vested in accordance with the "Vesting" provisions (5 years), although the benefit payments are delayed until the earliest date you could have retired.

    The amount of the Survivor Benefit will be 60% of the Normal Retirement Benefit which you would have received on or after age 62 years and one (1) month if you had retired on the day before your death, reduced in accordance with the Plan.

    In order to qualify for this Survivor Benefit, you must have fulfilled the requirements above and your surviving eligible spouse must have been married to you for at least one full year immediately before your death.

  - .. <u>Post-Retirement Automatic Survivor Benefit or Optional Survivor Benefits:</u>
    <u>Unless you elect otherwise before you retire</u> (see following paragraphs), your Benefit will <u>automatically be reduced</u> from the amount calculated under the formula to provide automatic survivor benefit protection after your normal retirement, early retirement, special early retirement, disability, or deferred vested retirement. The Automatic Survivor Benefit percentage is 60% of the reduced Benefit. However, if you retire on or after March 12, 1995, you may elect an Optional Survivor Benefit of either 75% or 100% of the reduced Benefit. The cost is appropriate to the selected Option.

    An eligible spouse is a spouse to whom you are married for at least one year as of the date your Benefit commences or, if you are married to your spouse for less than one year at the time your Benefit commences, then the survivor benefit will go into effect the first day of the month following the day in which you have been married to that spouse for one year.

    Under the Automatic Survivor Benefit, except as provided in the next paragraph, you will receive a reduced Benefit for life and upon your death, your surviving eligible spouse will receive 60% of the reduced Benefit for his or her lifetime. If you elected either one of the two Optional Survivor Benefits, your surviving eligible spouse will receive (depending upon your election) 75% or 100% of the reduced Benefit. Under either the

DTP009589

Automatic Survivor Benefit or one of the two Optional Survivor Benefits, your Benefit will be further reduced for age, if you retire prior to age 62. The reduction percentage for an employee and his or her eligible spouse is explained in detail in the Plan (see Article Eight, Section 3). A Participant with 30 or more years of Credited Service will no longer have the reduction for age when he reaches age 62 and one month but the percentage reduction to provide the Automatic Survivor Benefit continues while the Automatic Survivor Benefit remains in effect.

Unless you file the written form described in the following paragraph, the Automatic Survivor Benefit will go into effect at the time you apply for a Benefit. However, if you have not been married to your spouse for a year, the election will go into effect the first day of the month following the day in which you have been married for one year.

If you do not want the Automatic Survivor Benefit, you along with your eligible spouse must, in writing on a form provided by the Company, elect either the applicable Retirement Benefit or one of the two Optional Survivor Benefits before the effective dates above. Your spouse's signature must be notarized or witnessed by a member of the Board of Administration.

If, after the Automatic Survivor Benefit or one of the two Optional Survivor Benefits is in effect, your eligible spouse dies or you are divorced by court decree, then the Survivor Benefit election will be cancelled if you provide sufficient evidence of the death or divorce to the Board. Your retirement benefit will at this time be adjusted to eliminate the surviving spouse reduction, provided that no qualified domestic relations order is received prior to the beginning payment date of the restored benefit.

If your eligible spouse dies or you are divorced while the reduction for survivor benefit protection is in effect and you do not provide sufficient evidence of the event to the Board, then the reduction will continue even though there is no longer an eligible spouse for which this benefit was intended.

- Special Age 65 Benefit
If you are receiving either a Normal Retirement Benefit, Early Retirement Regular Benefit, a Special Early Retirement Benefit, a Disability Retirement or a Survivor Benefit (excluding a surviving eligible spouse of a Retired Employee receiving a Deferred Vested Retirement Benefit) you will receive a Special Age 65 Benefit if you are enrolled in the voluntary Medicare coverage insurance program that is available under the Federal Social Security Act; provided however, that a surviving eligible spouse must be at least 65 years old to receive this benefit.

Calculation of Benefits
The benefit amount under the Plan and the periods they are payable are as follows:
- Normal Retirement Benefit---The Normal Retirement Benefit is a set amount based on a rate times your years of Credited Service on the day you retire according to the following schedule:

| Date of Retirement | Rate |
|---|---|
| March 12, 1995 through March 31, 1996 | $24.00 |
| April 1, 1996 through March 31, 1997 | 25.00 |
| April 1, 1997 and after | 26.50 |
| less Other Benefits, if any. | |

Page 7 Highlights

DTP009590

· **Early Retirement Benefit**--The amount of the Early Retirement
Benefit is determined by taking the Normal Retirement Benefit and
multiplying it by the percentage as shown in the table below which
is next to the age when the Benefit begins.

| Age When Benefit Commences | Payment Percentage** |
|---|---|
| 47 | 30.4 |
| 48 | 32.8 |
| 49 | 35.4 |
| 50 | 38.3 |
| 51 | 41.5 |
| 52 | 45.0 |
| 53 | 48.9 |
| 54 | 53.2 |
| 55 | 57.9 |
| 56 | 63.5 |
| 57 | 69.4 |
| 58 | 75.2 |
| 59 | 80.8 |
| 60 | 86.7 |
| 61 | 93.3 |
| 62 | 100.0 |

less Other Benefits, if any.

If you have thirty or more years of Credited Service or your
combined age and years of Credited Service (to the nearest 1/12th
in each case) total at least 85 when you retire, the Early
Retirement Benefit will be redetermined to the amount of the
Normal Retirement Benefit, without the percentage reduction, when
you reach age 62 and one month.

**Prorated for intermediate ages.

· **Special Early Retirement Benefit**--This benefit, if you qualify,
consists of:
.. the Normal Retirement Benefit plus

.. a Temporary Benefit determined by multiplying your number of
years of Credited Service on the day you retire by the rate in
effect from the following table up to the maximum benefit.

| Date of Retirement | Rate | Maximum Benefit |
|---|---|---|
| March 12, 1995 and after | $22.00 | $660.00 |
| Less Other Benefits, if any. | | |

The Temporary Benefit will terminate when you reach age 62
and one month (the Temporary Benefit for a Participant born
after 1937 who retires on or after the Effective Date - for
whom the 80% level Social Security Benefit date is beyond
age 62 and one month - will terminate according to the Post
1937 Social Security Schedule) or when you become eligible
for an Unreduced Social Security Benefit for age or
disability, whichever is the earlier.

· **Disability Retirement Benefit**--This benefit, if you qualify,
consists of:
.. the Normal Retirement Benefit plus

.. a Temporary Benefit determined by multiplying your number of
years of Credited Service on the day you become totally and
permanently disabled by the rate in effect from the following
table up to the maximum benefit.

DTP009591

| Date of Retirement | Rate | Maximum Benefit |
|---|---|---|
| March 12, 1995 and after | $22.00 | $660.00 |
| less Other Benefits, if any. | | |

The Temporary Benefit will terminate when you reach age 62 and one month (the Temporary Benefit for a Participant born after 1937 who retires on or after the Effective Date - for whom the 80% level Social Security Benefit date is beyond age 62 and one month - will terminate according to the Post 1937 Social Security Schedule) or when you become eligible for an Unreduced Social Security Benefit for age or disability, whichever is the earlier. You will be considered eligible for an Unreduced Social Security Benefit on account of disability unless you furnish the Board with written evidence that you have applied for and been denied such benefit.

- Deferred Vested Retirement Benefit--The amount of the Deferred Vested Retirement Benefit is the rate in effect at the time your employment with the Company was terminated times each year of Credited Service.

| Date of Termination | Rate |
|---|---|
| March 12, 1995 through March 31, 1996 | $24.00 |
| April 1, 1996 through March 31, 1997 | 25.00 |
| April 1, 1997 and after | 26.50 |
| less Other Benefits, if any. | |

You may elect to receive the Deferred Vested Retirement Benefit after age 60 or after age 55 if your combined years of age and your years of Credited Service total at least 85, but the amount determined by using the formula above will be reduced by 5/9 of 1% for each month which the benefit begins before your 65th birthday.

- Special Age 65 Benefit--The monthly benefit, if you are eligible, is the amount Medicare determines as the cost for Part B of the Federal Medicare program.

Supplemental Allowances
In addition to the benefits described above, there are supplemental allowances which are available to Participants who meet the requirements for them.  There is a penalty for receiving a Supplemental Allowance after you become ineligible and the Supplemental Allowance is subject to a reduction in certain instances.

- Early Retirement Supplement--The Early Retirement Supplement is available to Participants, who retire on or after March 12, 1995 with 30 or more years of Credited Service (except those with a Deferred Vested Retirement Benefit), until age 62 and one month, or later, according to the Post 1937 Social Security Schedule set forth below:

POST 1937 SOCIAL SECURITY SCHEDULE

| Birth year | Applicable Benefit Terminates @ Age |
|---|---|
| 1938 | 62 & 2 months |
| 1939 | 62 & 4 months |
| 1940 | 62 & 6 months |
| 1941 | 62 & 8 months |
| 1942 | 62 &10 months |
| 1943-1954 | 63 & 0 months |
| 1955 | 63 & 2 months |
| 1956 | 63 & 4 months |
| 1957 | 63 & 6 months |
| 1958 | 63 & 8 months |
| 1959 | 63 &10 months |
| 1960 | 64 & 0 months |

DTP009592

The Early Retirement Supplement is designed to bring the total monthly benefit under the Plan to the amount on the table below. The amount of this supplement is the difference between the applicable amount on the table and the monthly retirement benefit. However, if a Retired Employee becomes eligible for an Unreduced Social Security Benefit as a result of a disability, the Early Retirement Supplement will be reduced by the Temporary Benefit. The actual amount of this supplement will, therefore, depend on the amount of the monthly retirement benefit for which you are otherwise eligible:

| Date of Retirement | total monthly benefit for determining Early Retirement Supplement |
|---|---|
| March 12, 1995 through March 31, 1996 | $1,600.00 |
| April 1, 1996 through March 31, 1997 | 1,700.00 |
| April 1, 1997 and after | 1,800.00 |

. Interim Supplements-- A Participant who is eligible for an Early Retirement Benefit and who retires, on or after March 12, 1995, with less than thirty (30) years of Credited Service and before attaining age sixty-two (62), shall be entitled to a monthly Interim Supplement until he attains age sixty-two (62) and one (1) month (or later, according to the Post 1937 Social Security Schedule). The amount of the Interim Supplement is determined by multiplying the number of years of Credited Service at the date of retirement by the following rate applicable to the age at retirement:

| Age at Retirement | Monthly Amount for Each Year of Credited Service** For Retirements after March 12, 1995 and thereafter |
|---|---|
| 54 or under | $-0- |
| 55 | 7.05 |
| 56 | 8.70 |
| 57 | 10.20 |
| 58 | 11.85 |
| 59 | 13.35 |
| 60 | 15.00 |
| 61 | 15.00 |

**Prorated for intermediate ages.

. Early Beginning of Social Security Benefit -- If the Retired Employee elects to draw his Social Security Benefit earlier than the age, applicable to such Retired Employee, set forth in the Post 1937 Social Security Schedule, the Early Retirement Supplement or the Interim Supplement, as applicable, terminates at that time. Also, if the Retired Employee fails to notify the Pension Board of such early election, the excess payments are subject to the "penalty provisions" of Article Nine, Section 4.

Loss or Reduction of Benefits or Supplemental Allowances
There are many ways in which you can fail to qualify for, lose, or have reduced the Benefits or Supplemental Allowance you may be expecting under this Plan. The following are some of the most common ways; review them carefully. They do not constitute all of the circumstances. You should realize that in order to receive a Benefit or a Supplemental Allowance from the Plan you must qualify for that Benefit or Supplemental Allowance according to the provisions of the Plan and you should refer to the Plan to see if you qualify for each Benefit or Supplemental Allowance.

. If you were hired after January 1, 1988 and you were age 60 or more at the time of your hire and you did not participate in the Plan for at least five years prior to the date of your termination, you will not be eligible for a Benefit from this Plan.

DTP009593

. If you receive or are entitled to receive "other benefits," as fully described in the Plan, your Benefit will be reduced by the amount of each of the "other benefits." "Other benefits" means any annuity, pension or retirement benefit for concurrent service with the Company to which a Retired Employee would be entitled by reason of any Company pension or retirement plan to the extent to which the Company contributes or has contributed, but does not include any benefit the Retired Employee receives from his Employee Retirement Account or Savings Account in the Muncie RSP or the Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant Local 287 Retirement Investment Plan.

. If you are receiving a Temporary Benefit, it will end when you reach age 62 and one month (or later, according to the Post 1937 Social Security Schedule).

. If you are receiving an Interim Supplement, it will end when you reach age 62 and one month (or later, according to the Post 1937 Social Security Schedule).

. If you are receiving an Early Retirement Supplement, it will end when you reach age 62 and one month (or later, according to the Post 1937 Social Security Schedule).

. If you do not file for a Benefit within five years of the last day you work for the Company, except if you were on a union leave of absence, you will not receive a Supplemental Allowance.

. If you do not agree to restrict your employment income as provided in the Plan, you will have your Supplemental Allowance reduced.

. If you retire with a Special Early Retirement Benefit or a Disability Benefit you are entitled to receive an Early Retirement Supplement. The amount of such Early Retirement Supplement will be determined as if you are receiving a Temporary Benefit even though you may not be receiving a Temporary Benefit.

. If you are entitled to receive an Early Retirement Supplement, the amount of such Early Retirement Supplement will be determined as if you had elected not to receive the Survivor Benefit.

. If the Supplemental Allowance you were to receive, when added to your Benefit, would result in your total benefit exceeding 70% of your final base pay (as computed in the Plan), then the amount of the Supplemental Allowance will be reduced until the total benefit is 70% of your final base pay or until the amount of the Supplemental Allowance equal zero, whichever comes first.

. If you are entitled to receive a Supplemental Allowance and you earn over the allowable maximum earnings limit of $10,000, then you will be penalized double the amount that your earnings exceed the maximum limit. The amount of the penalty will be deducted from the amount of the Supplemental Allowance you receive in the future.

. If you have incurred a penalty because of excess earnings or after you are entitled to Social Security benefits you are overpaid a Supplemental Allowance, you will have to either repay the over-payment in a lump sum or it will be deducted from future amounts payable to you from the Plan.

DTP009594

- If you are discharged, you will not be eligible for a Supplemental Allowance unless, after a collective bargaining grievance, a decision was made that you are so eligible.

- If you have a break in service, you may lose all of your previous Credited Service and Vested Service.

- If you are credited with less than 1,600 hours in a year, you may not receive a full year of Credited Service.

- If you transfer to a supervisor position, you will stop accumulating Credited Service under this Plan.

- If you don't apply for benefits, you won't receive them.

## Social Security

You and the Company pay equal taxes during your work years to provide Social Security benefits for your retirement. Social Security is important not only as part of your retirement income, but also for its disability, survivor and Medicare provisions. The amount of Social Security benefits will be based on those portions of your income on which Social Security taxes were paid, according to the schedule of benefits stated in the law when you retire. Although the examples in this Summary will not show estimated amounts for Social Security benefits, the availability of these benefits should be kept in mind as you review the examples. You can obtain full information on your rights and benefits by visiting your local Social Security office.

## EXAMPLES OF BENEFITS AT RETIREMENT

NOTE:   The amounts below are estimates, and will be reduced by certain other benefits (as defined in the Agreement) if you are receiving or entitled to receive such benefits. These amounts are a guide to show you how to determine your benefits based on the Benefit that you are entitled to receive; it is not a statement that you are actually entitled to receive such a Benefit. All examples are based on the $24.00 rate (these calculations are as of April 1, 1995).

Normal Retirement Benefit at age 65 with 30 years of Credited Service
.Without the Automatic Survivor Benefit

| | |
|---|---|
| Normal Retirement Benefit | |
| (rate x years of credited service) | $720.00 |
| +Special Age 65 Benefit *** | + 46.10 |
| TOTAL BENEFIT | $766.10 |

***Special Age 65 Benefit will be the normal Medicare charge.

DTP009595

```
.With the Automatic Survivor Benefit
    Normal Retirement Benefit                      $720.00
    (rate x years of credited service)
    -Survivor Benefit reduction****                - 36.00
                                                   ----------
    BENEFIT                                        $684.00
    +Special Age 65 Benefit ***                    + 46.10
                                                   ----------
    TOTAL BENEFIT                                  $730.10


    Survivor Benefit
    Normal Retirement Benefit
    -Survivor Benefit Reduction****
    ($720.00 -36.00 =$684.00 x 60%)                $410.40
```

## Normal Retirement Benefit at age 65 with 20 years of Credited Service

```
.Without the Automatic Survivor Benefit
    Normal Retirement Benefit (rate x
    years of credited service)                     $480.00
    +Special Age 65 Benefit ***                    + 46.10
                                                   ----------
    TOTAL BENEFIT                                  $526.10


.With the Automatic Survivor Benefit
    Normal Retirement Benefit (rate x
    years of credited service)                     $480.00
    -Survivor Benefit Reduction ****               - 24.00
                                                   ----------
                                                   $456.00
    +Special Age 65 Benefit  ***                   + 46.10
    TOTAL BENEFIT                                  $502.10


    Survivor Benefit
    Normal Retirement Benefit
    -Survivor Benefit Reduction****
    ($480.00 -24.00 =$456.00 x 60%)                $273.60



    ****The percentage reduction is 5% for the 60% Automatic
        Survivor Benefit.
```

DTP009596

Early Retirement Benefit at age 60 with 30 years of Credited Service

.Without the Automatic Survivor Benefit

|  | Benefits Received Until Age 62 | Benefits Received Between Age 62 & 65 | Benefits Received Beginning at Age 65 |
|---|---|---|---|
| Normal Retirement Benefit  # | $624.24 # | $720.00 | $720.00 |
| +Early Retirement Supplement | 975.76 | .00 | .00 |
| +Special Age 65 Benefit  *** | .00 | .00 | 46.10 |
| TOTAL BENEFIT | $1,600.00 | $720.00 | $766.10 |

.With the Automatic Survivor Benefit

|  | Benefits Received Until Age 62 | Benefits Received Between Age 62 & 65 | Benefits Received Beginning at age 65 |
|---|---|---|---|
| Normal Retirement Benefit  # | $624.24 # | $720.00 | $720.00 |
| -Survivor Benefit Reduction **** | ~ 36.00 | ~ 36.00 | -36.00 |
| BENEFIT | $588.24 | $684.00 | $684.00 |
| + Early Retirement Supplement | 975.76 | .00 | .00 |
| + Special Age 65 Benefit  *** | .00 | .00 | + 46.10 |
| TOTAL BENEFIT | $1564.00 | $684.00 | $730.10 |

| Survivor Benefit Early Retirement Benefit -Survivor Benefit Reduction**** ($720.00 -36.00 =$684.00 x 60%) | $410.40 | $410.40 | $410.40 |
|---|---|---|---|
| + Special Age 65 Benefit  *** | .00 | .00 | + 46.10 |
|  | $410.40 | $410.40 | $456.10 |

# Reduced for Early Retirement

DTP009597

Page 14 Highlights

<u>Early Retirement Regular Benefit at age 60 with 20 years of Credited Service</u>

.Without the Automatic Survivor Benefit

|  | Benefits Received Until Age 62 | Benefits Received Between Age 62 & 65 | Benefits Received Beginning at Age 65 |
|---|---|---|---|
| Normal Retirement Benefit (reduced for early retirement) | $416.16 | $416.16 | $416.16 |
| + Interim Supplement | 300.00 | .00 | .00 |
| + Special Age 65 Benefit *** | .00 | .00 | + 46.10 |
| <u>TOTAL BENEFIT</u> | $716.16 | $416.16 | $462.26 |

.With the Automatic Survivor Benefit

|  | Benefits Received Until Age 62 | Benefits Received Between Age 62 & 65 | Benefits Received Beginning at Age 65 |
|---|---|---|---|
| Normal Retirement Benefit (reduced for early retirement) | $416.16 | $416.16 | $416.16 |
| –Survivor Benefit Reduction**** | – 20.81 | – 20.81 | –20.81 |
| BENEFIT | $395.35 | $395.38 | $395.35 |
| + Interim Supplement | +300.00 | .00 | .00 |
| + Special Age 65 Benefit *** | .00 | .00 | + 46.10 |
| <u>TOTAL BENEFIT</u> | $695.35 | $395.35 | $441.45 |

|  | | | |
|---|---|---|---|
| Survivor Benefit Early Retirement Benefit Reduced for age –Survivor Benefit Reduction ($480.00 –63.84, –$20.81 =$395.35 x 60%) | $237.21 | $237.21 | $237.21 |
| + Special Age 65 Benefit *** | .00 | .00 | + 46.10 |
|  | $237.21 | $237.21 | $283.31 |

***Special Age 65 Benefit will be the normal Medicare charge.

****The percentage reduction is 5% for the 60% Automatic Survivor Benefit.

<u>Disability Retirement or Special Early Retirement at age 60 with 20</u>
<u>years of Credited Service.</u>
.Without the Automatic Survivor Benefit

|  | Benefits Received Until Age 62 | Benefits Received Between Age 62 & 65 | Benefits Received Beginning at Age 65 |
|---|---|---|---|
| If eligible for Social Security: | | | |
| Normal Retirement Benefit | $480.00 | $480.00 | $480.00 |
| + Special Age 65 Benefit *** | + 46.10 | + 46.10 | + 46.10 |
| TOTAL BENEFIT | $526.10 | $526.10 | $526.10 |
| If <u>not</u> eligible for Social Security: | | | |
| Normal Retirement Benefit | $480.00 | $480.00 | $480.00 |
| + Temporary Benefit ($21) | +420.00 | .00 | .00 |
| + Special Age 65 Benefit *** | 0.00 | + 0.00 | + 46.10 |
| TOTAL BENEFIT | $900.00 | $480.00 | $526.10 |

.With the Automatic Survivor Benefit

|  | Benefits Received Until Age 62 | Benefits Received Between Age 62 & 65 | Benefits Received Beginning at Age 65 |
|---|---|---|---|
| If eligible for Social Security: | | | |
| Normal Retirement Benefit | $480.00 | $480.00 | $480.00 |
| - Survivor Option Reduction **** | - 24.00 | - 24.00 | - 24.00 |
| BENEFIT | $456.00 | $456.00 | $456.00 |
| + Special Age 65 Benefit *** | + 46.10 | + 46.10 | + 46.10 |
| TOTAL BENEFIT | $502.10 | $502.10 | $502.10 |
| If not eligible for Social Security: | | | |
| Normal Retirement Benefit | $480.00 | $480.00 | $480.00 |
| - Survivor Option Reduction **** | - 24.00 | - 24.00 | -24.00 |
|  | $456.00 | $456.00 | $456.00 |
| + Temporary Supplement | +420.00 | .00 | .00 |
| + Special Age 65 Benefit *** | 0.00 | 0.00 | + 46.10 |
| TOTAL BENEFIT | $876.00 | $456.00 | $502.10 |
| Survivor Benefit Normal Retirement Benefit -Survivor Benefit Reduction x 60% ($480.00 -24.00=$456.00 x 60%) | $273.60 | $273.60 | $273.60 |
| + Special Age 65 Benefit *** | 0.00 | 0.00 | + 46.10 |
|  | $273.60 | $273.60 | $319.70 |

DTP009598

Deferred Vested Retirement of a Participant who terminated
employment with 20 years of Credited Service on or after March 12,
1995 at age 65
Deferred Vested Retirement Benefit: $24.00 x 20 years of Credited
Service= $480.00

Application for a Benefit.
To begin a Benefit under the Plan, you must file an application.  An
application may be obtained from the Company's Human Resources
Department, or ask your foreman or Union Representative.

You should file your application about 60 days before the date you wish
to retire.

If your claim for a Benefit is denied, in whole or part, you will be
notified, in writing, by the Board of Administration.  The Board will
give the reasons for the denial and tell you what additional infor-
mation might be needed to consider your claim further.  You may appeal
to the Board for a review of any claim which the Board denies in whole
or in part within 60 days of the date on which your claim is denied.
The Board will review any information which you provide and will notify
you within 60 days after receipt of your request for review.

Group Insurance at Retirement.
Hospital and Medical Insurance Benefits--Upon retirement, hospital and
medical expense coverage will be continued pursuant to the Health
Insurance Agreement between Borg-Warner Automotive Diversified
Transmission Products Corporation, Muncie Plant, and International
Union, United Automobile, Aerospace and Agricultural Implement Workers
of America (UAW) and its Local No. 287 entered into on the 12th day of
March, 1995 (the "Health Insurance Agreement").  The Company pays,
according to the terms of the Health Insurance Agreement, the cost of
such coverage for "retirees and their eligible dependents".  These
terms are described in the Health Insurance Agreement and Group
Insurance booklet.

Life Insurance After Retirement--If your group life insurance is in
effect at the date of your retirement, your life insurance will be
continued in effect for you in accordance with the terms and the
schedule of the Health Insurance Agreement.  These terms are described
in the Health Insurance Agreement booklet.

Benefits upon Plan Termination.
If the assets in the Trust Fund are sufficient, then all the benefits
based on your Credited Service under the Plan to date of termination of
the Plan would be paid; however, if the assets in the Trust Fund aren't
sufficient, certain groups get their benefits, or parts of the
benefits, before certain others, and some benefits may not be paid at
all.

Even if assets should run out, there are certain benefits that Borg-
Warner Automotive Diversified Transmission Products Corporation will
pay out of corporate funds.  In the event that Borg-Warner Automotive
Diversified Transmission Products Corporation should go out of
existence completely, there are certain government guarantees from the
Pension Benefit Guaranty Corporation (PBGC).

Benefits under this Plan are insured by the PBGC if the Plan
terminates.  Generally, the PBGC guarantees most vested normal age
retirement benefits, early retirement benefits, and certain disability
and survivor's benefits; however, the PBGC does not guarantee all types
of benefits under covered plans, and the amount of benefit protection
is subject to certain limitations.

DTP009599

The PBGC guarantees vested benefits at the level in effect on the date
of a plan termination; however, if a plan has been in effect less than

five years before it terminates, or if benefits have been increased within the five years before plan termination, the whole amount of the plan's vested benefits or the benefit increases may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit the PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its limitations, ask the Company's Insurance and Pension Office or the PBGC. Inquiries to the PBGC should be addressed to:

The Office of Communications
PBGC
2020 "K" Street, N.W.
Washington, D.C. 20006

The PBGC Office of Communications may also be reached by calling (202) 254-4817.

To the extent provided for in the Supplemental Retirement Income Program Agreement dated March 12, 1995, if the Plan should terminate because of the Muncie Plant closing,

- all Participants who had retired, surviving eligible spouses who were being paid a Benefit, and Participants eligible to retire would receive their full benefits, including all Supplemental Allowances.

- Participants entitled to a Deferred Vested Retirement Benefit would receive their accrued benefits, and

- the eligible spouses of deceased employees who were eligible for a Survivor Benefit would receive such Survivor Benefit.

If Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant should go out of existence, the Supplemental Allowances might no longer be guaranteed.

After the benefits of the previous paragraph were taken care of, then IF THERE WAS ANY MONEY LEFT IN THE TRUST FUND, Participants with less than 10 years of service would be taken care of. These benefits are entirely dependent upon there being Trust Fund assets. Neither Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant nor the PBGC would pay any of these.

Financing the Plan.
Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, sponsors the Plan and makes contributions to the Borg-Warner Automotive, Inc. Employees Pension Trust. Company contributions are made each year according to what an independent actuary says is sufficient to provide the Plan's stated benefits assuming the Plan continues in effect.

Your Rights under the Employee Retirement Income Security Act of 1974 (ERISA)

As a participant in the Plan, you have certain rights and protections under the Employee Retirement Security Act of 1974. ERISA entitles you to:

- Examine, without charge, at the Company's Human Resources Department, all Plan documents, including copies of all documents filed by the Plan with the U.S. Department of Labor, such as annual reports and Plan descriptions.

DTP009600

- Obtain copies of all Plan documents and other Plan information upon request to the Insurance and Pension Department. A reasonable

Page 18 Highlights

charge will be made for copies.

. Receive a summary of the Plan's annual financial report.  We will
  furnish each participant with a copy of this summary financial
  report.

. Obtain a statement once a year telling you whether you have a right
  to receive a benefit at normal retirement age (age 65) and if so,
  what your benefits would be at normal retirement age if you stop
  working under the Plan now.  If you do not have a right to a
  benefit, the statement will tell you how many more years you have
  to work to get a right to a benefit.  This statement must be
  requested in writing.  We will provide the statement free of
  charge.

In addition to creating rights for Plan participants, ERISA imposes
duties upon the people who are responsible for the operation of a plan.
The people who operate your Plan, called "fiduciaries" of the Plan,
have a duty to operate the Plan prudently and in the interest of you
and other Plan participants and beneficiaries.

No one, including your employer, or any other person, may terminate you
or otherwise discriminate against you in any way to prevent you from
obtaining a benefit or exercising your rights under ERISA.

If your claim for a benefit is denied in whole or in part, you must
receive a written explanation of the reason for the denial.  You have
the right to have the Board of Administration of the Plan review and
reconsider your claim.

Under ERISA, there are steps you can take to enforce the above rights.
For instance, if you request materials from the Board of Administration
and do not receive them within thirty days, you may file suit in a
federal court.  In such a case, the court may require the Plan
administrator to provide the materials and pay you up to $100 a day
until you receive the materials, unless the materials were not sent
because of reasons beyond the control of the Board of Administration.

If you have a claim for benefits which is denied or ignored, in whole
or in part, you may file suit in a state or federal court.

If it should happen that the Plan fiduciaries misuse the Plan's money,
or if you are discriminated against for asserting your rights, you may
seek assistance from the U.S. Department of Labor, or you may file suit
in federal court.

The court will decide who should pay court costs and legal fees.  If
you are successful, the court may order the person you have sued to pay
these costs and fees.  If you lose, the court may order you to pay
these costs and fees, for example, if it finds your claim is frivolous.

If you should have any questions about this Plan or your rights under
ERISA, you should contact the Insurance and Pension Office or the
nearest Area Office of the U.S. Labor/Management Service
Administration, Department of Labor.

Other Information.
  . This summary is a brief description of the Plan.  The official Plan
    document and Trust Agreement describe the provisions of the Plan in
    more detail and will solely govern with respect to your eligibility
    to participate in the Plan and the benefits you will receive under
    the Plan.

  . Type of administration of the Plan.

    ... Administered by the Company.  Benefit structure administered by

DTP009601

the Company-Union Joint Board of Administration Per Article Four of the Retirement Income Program Agreement.

. Name and address of the employer and administrator.

  .. Borg-Warner Automotive Diversified Transmission Products
     Corporation, Muncie Plant
     5401 West Kilgore
     Muncie, IN 47304
     (317) 286-6100

. Employer tax identification number and plan.

  .. EIN 31-1232404 Plan No. 036.

. Name and address of trustee.

  .. The Northern Trust Company
     Employee Benefit Fund Division
     50 South LaSalle Street
     Chicago, IL 60675

     The name of the Trust is the Borg-Warner Automotive, Inc.
     Employees Pension Trust.

.. The Retirement Income Program Agreement is negotiated separately
   from the collective bargaining agreement, and it contains all
   relevant provisions.

. Name and address for service of legal process.

  .. Retirement Income Program
     Borg-Warner Automotive Diversified Transmission Products
     Corporation, Muncie Plant
     5401 W. Kilgore
     Muncie, IN 47304

     Service of legal process may also be made on the trustee.

. Plan year for record keeping.

  .. Records are kept on a Plan year basis. End of Plan year is
     December 31.

DTP009602

RETIREMENT INCOME PROGRAM
OF
BORG-WARNER AUTOMOTIVE DIVERSIFIED TRANSMISSION PRODUCTS
CORPORATION, MUNCIE PLANT

THIS AGREEMENT was made and entered into this 12th day of March, 1995 by and between Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, hereinafter called the Company, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW and its Local 287, hereinafter called the Union.

W I T N E S S E T H:
The parties hereto have mutually agreed as follows:

This Agreement supersedes the Retirement Income Program Agreement between the parties dated October 27, 1989 (as amended September 27, 1990 by the Agreement on Extension of the Retirement Income Program Agreement), and sets forth the entire agreement of the parties with respect to the subject of pensions for employees who were employed in the bargaining unit on September 7, 1989 and who have not elected to become a participant in the Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, Retirement Savings Plan. This Agreement may be modified or supplemented only by further written agreement between the parties hereto.

This Agreement is effective March 12, 1995. Except as provided in Article Seven, Section 7, the Retirement Income Program Agreement between the Company and the Union dated July 16, 1974 (as amended January 1, 1978), March 6, 1980, March 3,1983, September 7, 1986, and October 27, 1989, as amended September 27, 1990 by the Agreement on Extension of the Retirement Income Program Agreement, (individually, the "Prior Agreement" or collectively, the "Prior Agreements") shall apply to any Employee retired or terminated prior to March 12, 1995.

ARTICLE ONE
DEFINITIONS

As used in this Agreement, the following terms shall have the meanings indicated:

1. "Accrued Benefit" means any Benefit under the Plan that a Participant is entitled to under Article Seven as of a particular date.

2. "Actuary" means the actuary selected by the Company pursuant to Article Three of this Plan.

3. "Affiliate" means the Company or any corporation that is either a parent corporation, subsidiary corporation or an affiliated or associated entity of the Company that together with the Company is a member of a "controlled group" within the meaning of the Code Sections 414(b), 414(c), 414(m) and 414(o).

4. "Bargaining Unit" means the group of employees represented by the Union and defined in the Collective Bargaining Agreement between the Company and the Union as amended from time to time.

5. "Benefit" means either a Normal Retirement Benefit, Early Retirement Regular Benefit, Special Early Retirement Benefit, Disability Retirement Benefit, Deferred Vested Retirement Benefit or Survivor Benefit pursuant to Article Seven and/or Article Eight to which a Participant or Eligible Spouse is entitled upon meeting the

DTP009603

eligibility requirements pursuant to Article Six.

6.  "Benefit Commencement Date" means the date on which a Participant's Benefit actually begins under the Plan.

7.  "Board" means the Board of Administration, provided for in Article Four of this Agreement.

8.  "Break in Service" means less than 500 Hours of Employment in any Plan Year pursuant to Article Five, Section 3. A Participant will incur a one-year break in service for purposes of eligibility to participate if during an eligibility computation period he completes less than 500 hours of employment.

9.  "Code" means the Internal Revenue Code of 1986, as amended and in effect from time to time.

10. "Collective Bargaining Agreement" means the Collective Bargaining Agreement between the Company and the Union, effective March 12, 1995 with respect to the Bargaining Unit, as amended from time to time.

11. "Company" means the plants of Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, located in the city of Muncie and Delaware County, Indiana.

12. "Credited Service" means the sum of any Past Service and any Future Service under Article Five. Service with the Company after the December 31 immediately preceding the January 1 that a Participant's Accrued Benefit is frozen under Article Seven, Section 8 shall not be considered as Credited Service under the Plan.

13. "Early Retirement Supplement" means that portion of the Supplemental Allowance provided in accordance with the provisions of Article Nine, Subsection 2(a).

14. "Effective Date" means March 12, 1995.

15. "Eligible Spouse" means (a) the husband or wife to whom a Participant has been married for at least one year prior to his Benefit Commencement Date by a marriage recognized by the law of the state of residence and with respect to a deceased Participant means the husband or wife to whom the deceased Participant had been married for at least one (1) year immediately prior to the Participant's date of death, or (b) the husband or wife to whom a Participant has been married less than one year prior to his Benefit Commencement Date but to whom the Participant thereafter remains married through the first anniversary date of such marriage.

16. "Employee" means any person employed by the Company or on the seniority list on or after January 1, 1950, in the Bargaining Unit defined in the applicable Collective Bargaining Agreement between the Company and the Union.

17. "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

18. "Fiduciaries" means the Company, the Trustee or Trustees, the Board and any investment or financial management or consulting firm, company, or individual designated in accordance with Article Two, but only with respect to the specific responsibilities of each for Plan and Trust administration, all as described in Articles Two and

                                    DTP009604

Four herein and the Trust Agreement.

19.   "Future Service" means service with the Company as determined under Article Five, Section 2.

20.   "Interim Supplement" means the portion of the Supplemental Allowance provided in accordance with the provisions of Article Nine, Subsection 2(b).

21.   "Muncie RSP" means the Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant Retirement Savings Plan, as amended from time to time.

22.   "Normal Retirement Age" means the later of the date on which the Participant attains age 65 or, if hired after age sixty (60), the fifth anniversary of the date on which the Participant commenced participation in the Plan.  A Participant's right to his Benefit shall be nonforfeitable when he attains Normal Retirement Age.

23.   "Other Benefits" means any other annuity, pension or retirement benefit for concurrent service with the Company that a Retired Employee would be entitled to by reason of any Company pension or retirement plan to which the Company contributes or has contributed, but does not include any benefit the Retired Employee receives from his Employee Retirement Account or Savings Account in the Muncie RSP or any benefit the Retired Employee receives under the Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant Local 287 Retirement Investment Plan.

24.   "Participant" means any Employee who (a) was employed by the Company in the Bargaining Unit on September 7, 1989, (b) has attained age 21 and (c) has completed twelve (12) consecutive months beginning on the Employee's date of hire or succeeding twelve (12) month periods, during which the Employee completes 1000 hours of Future Service. Any Participant who elects to participate in the Muncie RSP effective as of January 1, 1991 or any January 1 thereafter, shall cease being a Participant in this Plan effective as of the December 31 immediately preceding that January 1.  Any Employee hired for employment with the Company on September 7, 1989 or thereafter shall not be eligible to participate in the Plan.  Any Employee who is rehired for employment with the Company on September 7, 1989 or thereafter will be credited with Vested Service, but not any further Credited Service under the Plan for the subsequent period of employment.

25.   "Past Service" means service with the Company as determined under Article Five, Section 1.

26.   "Plan" means the Retirement Income Program of Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant.

27.   "Plan Year" means the calendar year beginning January 1 and ending December 31 during which the Plan is in effect.

28.   "Retired Employee" means a Participant retired under the Plan.

29.   "Retirement Benefit" means the monthly payment or payments to which a Retired Employee is entitled.

30.   "Special Age 65 Benefit" means that benefit provided in accordance with the provisions of Article Seven, Section 6.

DTP009605

31. "Supplemental Allowance" means the amounts, consisting of the Early Retirement Supplement and the Interim Supplement, provided in accordance with the provisions of Article Nine. Unless otherwise expressly provided, a Supplemental Allowance is subject to the provisions of this Agreement and the Retirement Benefits payable from the Trust Fund.

32. "Surviving Eligible Spouse" means an Eligible Spouse who is receiving a Benefit under Article Eight, Section 3 of the Plan.

33. "Temporary Benefit" means the portion of the Retirement Benefits provided in Article Seven that is terminated upon the earlier of a Retired Employee's attainment of age sixty-two (62) and one (1) month (or according to the Post 1937 Social Security Schedule set forth in Article Nine, Section 2 (a)) or becoming eligible for an Unreduced Social Security Benefit.

34. "Totally and Permanently Disabled" means the Participant has a mental or physical condition resulting from any medically determinable injury or disease which the Board finds, on the basis of competent medical evidence, will result in the Participant being unable to engage in further regular employment with the Company and will presumably be permanent and continuous for life; provided, however, that for the purposes of the Plan, a Participant shall not be deemed Totally and Permanently Disabled if his disability was a result of service in the armed forces of any country, performed after October 1, 1950, for which a service-connected veteran's disability benefit is payable, except that nothing herein shall prevent a Participant from being deemed so disabled under the Plan if he has accumulated at least five (5) years of Credited Service after separation from service in the armed forces and before such disability occurs.

35. "Trust Agreement" means the agreement or the agreements entered into by the Company with the Trustee in accordance with Article Two.

36. "Trustee" means the trustee or trustees selected by the Company, and designated by the Trust Agreement to hold and invest the Trust Fund.

37. "Trust Fund" means the fund or funds established pursuant to Article Two and to which payments are made by the Company in accordance with Article Three of this Agreement.

38. "Union" means the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and its Local 287.

39. "Unreduced Social Security Benefit" means a benefit equivalent to an individual's primary insurance amount determined and payable under Title II of the Social Security Act, as now in effect or as hereafter amended, without any reduction being made thereon.

40. "Vested Service" means a calendar year during which the Employee completes at least one thousand (1000) hours of Future Service as defined in Article Five, Section 3.

ARTICLE TWO
TRUST FUND AND TRUSTEE

A Trustee or Trustees shall be designated by the Company with one or more Trust Agreements executed between the Company and such Trustees, under the terms of which one or more Trust Funds shall be established to

Page 4

receive, hold, invest and reinvest contributions payable by the Company, interest and other income, and to pay the Benefits and Supplemental Allowances provided by the Plan. A copy of the Trust Agreement or Trust Agreements shall be filed with the Board for information only. The Trustee or Trustees or, if so designated by the Trustee(s) or by the Company or by both, an investment or financial management or consulting firm, company, or individual shall be solely responsible for the investment and reinvestment of the funds in the Trust Fund, and shall have sole discretion as to the securities in which the funds shall be invested or reinvested, including a share of any joint investment account or trust.

The Company will determine the form and terms of any such Trust Agreement; may modify any such Trust Agreement from time to time to accomplish the purpose of the Plan; and remove any Trustee and select any successor Trustee. No Participant shall make or be required to make any contribution to the Trust Fund. The Retirement Benefits provided for herein shall be only such as can be provided by the assets of the Trust Fund and there shall be no liability or obligation on the part of the Company to make any further contributions to the Trustee in the event of termination of this Agreement or the Plan.

### ARTICLE THREE
### PAYMENTS TO THE TRUST

1. Company Contributions. The Company agrees that, during the period commencing with the Effective Date and continuing for the term of this Agreement, it will from time to time make contributions to the Trust Fund in an aggregate amount sufficient, based upon estimates made by a qualified Actuary selected by the Company,

    (a) to cover the normal cost of the Retirement Benefits provided for under the Plan for such period;
    (b) to fund the lump sum past service costs of the Retirement Benefits provided for under the Plan for such period, on the basis of a method of funding approved by such Actuary, which complies with ERISA; and
    (c) to fund the Early Retirement Supplements and Interim Supplements provided under Article Nine of the Plan on any basis approved by the Actuary; provided that the only contribution required with respect to such Supplemental Allowances shall be the cumulative amount of such Supplemental Allowances paid to the date as of which contributions are being determined less all prior contributions made with respect to Supplemental Allowances, if any.

    In determining the amount of the contributions required by this Article Three, Section 1, the Actuary shall also take into account contributions heretofore made to the Trust Fund under all Prior Agreements.

2. Contributions Greater than Minimum. Nothing herein shall be deemed to prevent the Company from making contributions toward the lump sum past service cost greater than those required under this Article Three, nor shall a greater contribution in any year be construed to reduce the maximum funding period established as provided above. Amounts contributed by the Company in any year in excess of the requirements of this Article Three, including contributions made prior to January 1, 1995, shall be credited against contributions required hereinunder in the subsequent year or years.

3. Tax Deductibility of Contributions. All of the foregoing is subject

DTP009607

to the understanding that (a) the Company shall not be required in any year to make contributions in the amount which is greater than the amount which is deductible in that year in computing taxable income under the provisions of the Code, and (b) the Company shall not be obligated to make additional payments to the Trust Fund to make up deficiencies arising from depreciation in the value of the securities of the Trust Fund except as otherwise provided by the Supplemental Retirement Income Program Agreement between the Company and the Union of even date herewith.

4. Statement by Actuary to Board. The Company will cause the Board to be furnished annually with a statement, certified by the Actuary, that the aggregate amount of the contributions made by the Company to the Trust Fund is not less than the amount required by this Agreement. The Company's obligation under this Article Three shall be deemed to have been completely discharged by the furnishing of such statement certified by the Actuary.

5. Liability Limited to Trust Fund. By payment to the Trust Fund of the contributions provided in this Article Three, the Company shall be relieved of any further liability, and Retirement Benefits, including Supplemental Allowances, provided for under this Agreement shall be payable only from the Trust Fund except as otherwise provided by the Supplemental Retirement Income Program Agreement between the Company and the Union of even date herewith.

ARTICLE FOUR
ADMINISTRATION OF THE PLAN

1. Administration by the Company. Except as specifically provided otherwise in this Article Four, the administration of the provisions of the Plan shall be the sole responsibility of the Company. As administrator of the Plan, the Company shall:

   (a) Select the Trustee for the Trust Fund as provided for in Article Two.

   (b) Select the Actuary for the Plan.

   (c) Select an independent qualified public accountant to render, where required by regulation, their opinion of the financial statements and schedules included in the annual reports filed with federal agencies pursuant to Title I of ERISA.

   (d) Submit all reports and disclosures required by federal law to the appropriate regulatory agencies and participants, and concurrently submit the same to the Board.

   (e) Notify Participants annually of their Credited Service and Vested Service, and after any appeals to the Board have been resolved, record such Credited Service and/or Vested Service.

   (f) Arrange for payment of a Benefit to which Retired Employees and Eligible Spouses are determined to be entitled by the Board and other payments which may properly be paid from the Trust Fund under the terms of the Plan.

   (g) Maintain all records necessary for administration of the Plan.

2. Board. There shall be established a Board of Administration, three (3) members of which shall be employees of the Company appointed by the Company (hereinafter referred to as the Company members), and

DTP009608

three (3) members of which shall be Employees of the Company appointed by the Union (hereinafter referred to as the Union members), which Board shall administer the benefit structure of the Plan. An impartial chairman shall be selected by mutual agreement of the Company members and the Union members of the Board. In the event of their inability to agree within a period of ten (10) days, the Board shall ask the American Arbitration Association to submit to the Board a list of five (5) names. The Union members of the Board shall first strike two (2) names from the list and the Company members shall then strike two (2) names, leaving the remaining name as the impartial chairman. The impartial chairman shall vote at meetings of the Board only in the event of a deadlock.

3. Removal. Either the Company or the Union at any time may remove a member appointed by it and may appoint a member to fill any vacancy among the members appointed by it. Both the Company and the Union shall notify each other in writing of the members respectively appointed by them before any such appointments shall be effective. The impartial chairman shall serve until such time as he may be requested to resign by three (3) of the members of the Board.

4. Powers of the Board. The Board shall have the following powers in the application of this Agreement, but without adding to or amending same:

   (a) To prescribe procedures to be followed by Participants in filing applications for a Benefit, and for the furnishing of evidence necessary to establish the rights of any Participant to a Benefit under the Plan, and to institute rules and procedures as may be necessary to administer any qualified domestic relations orders;

   (b) To make a determination as to rights of any Participant applying for a Benefit, and shall afford any such individual or the Company dissatisfied with any such determination the right to a hearing thereon;

   (c) To develop procedures for the establishment of Credited Service for Participants and, after affording Participants an opportunity to make objection with respect thereto, to establish such facts conclusively in advance of retirement;

   (d) To receive from the Company, from the Union, and from Participants such information as shall be necessary for the proper administration of the benefit structure of the Plan;

   (e) To prepare and distribute, in such manner as the Board determines to be appropriate, information explaining the Plan;

   (f) To furnish to the Company, the Union, and the Social Security Department of the International Union (UAW), upon request, such annual reports with respect to its administration of the Plan as are reasonable and appropriate;

   (g) To receive the certified statement of the Actuary as provided in Article Three;

   (h) To receive and review annually a report of receipts, disbursements and aggregate assets of the Trust Fund from the Trustee (which report shall include a percentage breakdown of the assets classified by categories of investments) and actuarial valuations of the Plan by the Actuary (which report shall

DTP009609

include a statement of the assumptions used and a summary of
the age, sex and service data on which it is based). Copies of
such reports shall be sent to the Social Security Department of
the International Union (UAW).

(i)   To collect, receive, evaluate, analyze and prepare statistical
data with respect to the administration of the Plan;

(j)   In the event the Company does not furnish facilities satis-
factory to the Board, the Board shall maintain or arrange for
such office space, equipment, services and other assistance as
may be necessary for the proper administration of the Plan,
with due regard to economical administration of the Plan; and
to authorize payment by the Trustee from the Trust Fund of
expenses necessary for the proper administration of the Plan;
and

(k)   In the event a payment or payments hereunder are due to a
Retired Employee or a Surviving Eligible Spouse and unpaid at
the time of the Retired Employee's death or the Surviving
Eligible Spouse's death, the Board may determine that said
payments shall be made either to the spouse, a child or
children, a parent or parents, a brother or brothers, or a
sister or sisters of the deceased Retired Employee or Surviving
Eligible Spouse, or to the estate of the decedent, and may
cause payments to be made to such person so determined or to
the decedent's estate.  Any such payment shall be a payment for
the account of the Retired Employee or the Surviving Eligible
Spouse and shall operate as a complete discharge of the Board,
the Company, the Union and the Trustee, of any liability
therefor.

5.   **Applications, Notice and Appeal**.  The Participant or the Surviving
Eligible Spouse of the deceased Participant, shall file his
application for a Benefit with the Human Resources Department or
other designated department or employee of the Company, or at such
other place as may be designated by the Board, which application
shall be transmitted with pertinent data bearing on the applicant's
eligibility to the Board for action at its next regular monthly
meeting.  The Board shall act upon the application promptly and
shall notify the applicant and the Company whether or not, on the
basis of the information submitted, the applicant is eligible under
the Plan, and, if so, the amount of the Benefit.  Upon approval of
the application, the Board shall direct the Trustee to make payments
from the Trust Fund.  No such payment shall be made until authorized
by the Board, but payments shall be retroactive to the date the
Benefit was first payable under Article Eight.

If the Board denies any application for a Benefit, in whole or in
part, it shall notify the applicant in writing of such denial and of
the right to a review by the Board and shall set forth in a manner
calculated to be understood by the applicant specific reasons for
such denial and references to Plan provisions on which the denial is
based, a description of any additional material or information
necessary for the applicant to perfect his application and an
explanation of why such material or information is necessary.

Any person, or his duly authorized representative, whose application
for a Benefit is denied in whole or in part, may appeal from such
denial to the Board for a review of the decision by submitting to
the Board within sixty (60) days after receiving written notice from
the Board of the denial of his claim a written statement:

DTP009610

    (a)   Requesting a review of the application for a Benefit by the Board, and

    (b)   Setting forth all of the grounds upon which the request for review is based, any facts in support thereof and any issues or comments which he deems relevant to the application.

The Board shall make a full and fair review of each such application and any written materials submitted by the applicant or the Company in connection therewith and may require the Company or the applicant to submit within thirty (30) days of written notice by the Board therefor, such additional facts, documents or other evidence as the Board reasonably requests in order to make such a review. On the basis of its review, the Board shall make a determination of the applicant's eligibility for a Benefit under the Plan. The Board shall act upon each such submission within sixty (60) days after the later of the receipt of the applicant's request for review or receipt of any additional materials reasonably requested by the Board from such applicant.

6.    <u>Meetings</u>.  The Board shall meet once each month, or more often if the Board deems it necessary, and to constitute a quorum for the transaction of business there shall be required to be present at any meeting of the Board at least two (2) Union members and two (2) Company members. At all meetings of the Board the Company members shall have a total of three (3) votes and the Union members shall have a total of three (3) votes, the vote of any absent members being divided equally between the members present appointed by the same party. Decisions of the Board shall be by a majority of the votes cast and shall be final and binding upon the Company, the Union, and the Employee involved.

7.    <u>Reliance on Information</u>.  The Board and any member thereof shall be entitled to rely upon the correctness of any information furnished by the Union, the Company, or the Participant. Neither the Board nor any of its members, nor the Union, nor any officer or any other representative of the Union, nor the Company, nor any officer or other representative of the Company, shall be liable because of any act or failure to act on the part of the Board, or any of its members, to any person whatsoever, except that nothing herein shall be deemed to relieve any such individual from liability for his own fraud or bad faith.

8.    <u>Compensation</u>.  The Company members and the Union members of the Board shall serve without compensation from the Trust Fund. The Company and the Union each shall be responsible for the expenses of any expert or advisor selected by its members but not by the Board as such.

DTP009611

9.   Limit of Board Power.  The Board shall have no power to add to or to subtract from or modify any of the terms of this Agreement or Plan, nor to change or add to any benefit provided by this Agreement or Plan, nor to waive or fail to apply any requirement of eligibility for a Benefit under this Agreement or Plan.

Any case referred to the Board on which it has no power to rule shall be referred back to the parties without ruling.

No ruling or decision of the Board in one case shall create a basis for a retroactive adjustment in any other case prior to the date of written filing of each specific claim.

The Board will accept as conclusive and final any determination made under the Collective Bargaining Agreement hereinbefore referred to or any subsequent collective bargaining agreement on any matter for which the terms of such agreement provide a means of determination.

ARTICLE FIVE
CREDITING OF SERVICE

1.   Past Service.
   (a) Past Service as Credited prior to March 1, 1974
       A Participant's Past Service shall be computed to the nearest one-twelfth (1/12) year and shall be credited at the rate of one (1) year for each year of seniority which the Participant held on October 1, 1950, excluding any years or portions thereof of seniority which have been granted because of military service prior to employment by the Company.  When the Participant's actual service with the Company is greater than his seniority, such actual service record shall be used on a calendar year basis, provided that if the Participant was out of the employ of the Company for one (1) or more periods of two (2) years or more, only service following the most recent of such periods shall be counted.

   (b) Past Service as Credited on or after March 1, 1974
       A Participant's Past Service shall be computed to the nearest one-twelfth (1/12) year and shall be credited as follows:

       (i) Past Service as described in Subsection 1 (a) above, plus

       (ii) Elapsed time actually worked (including authorized leaves of absence due to sickness or accident and authorized leave of absence for military service if the Participant returns to active employment within ninety (90) days of discharge from military service) for periods of employment prior to October 1, 1950, not previously credited.  Any other time during which such Participant was employed by the Company (including, but not limited to, layoff and leaves of absence other than for sickness, accident, or military service) shall not be counted.

       In computing additional Past Service under this Subsection 1(b) each period of employment shall be considered separately and such service computed to the nearest one-twelfth (1/12) year for each period.  For a Participant with seniority on March 1, 1974, application for additional Past Service must be made within ninety (90) days of April 22, 1974, and for a Participant hired after March 1, 1974, within thirty (30) days of hire; otherwise no additional Past Service credit under this Subsection 1(b)

Page  10

DTP009612

will be granted at any time.

Except as provided in Article Five, Section 7, a supervisor or any other employee transferred into the Bargaining Unit from other employment by the Company, shall receive credit for Past Service to the nearest quarter year as though the seniority rules referred to above were applied to his entire service with the Company.

2.  Future Service.
    (a)  On or after October 1, 1950, a Participant shall be credited with one (1) year of Future Service for every Plan Year in which he receives pay from the Company for working 1,600 or more hours. For a Plan Year in which he receives pay for working less than 1,600 hours, he may count such part of the year as the number of hours of work for which he receives pay in that year bears to 1,600, each hour in any year to count only once, although he may receive more than straight time pay for it. For the purpose of this Subsection 2 (a), pay includes straight time holiday pay and vacation bonus pay. For the purpose of the allowance of credit only under this Section 2, a holiday for which pay is received for eight (8) hours shall be deemed to be worked at eight (8) hours. Vacations shall be deemed to be worked in the amount of forty (40) hours for Participants with more than one (1) but less than three (3) years seniority; sixty (60) hours for Participants with more than three (3) but less than five (5) years seniority; eighty (80) hours for Participants with more than five (5) but less than ten (10) years seniority; one hundred (100) hours for Participants with more than ten (10) but less than fifteen (15) years seniority; one hundred twenty (120) hours for Participants with fifteen (15) years but less than twenty (20) years of seniority; and, for Participants with twenty (20) or more years of seniority, one hundred twenty (120) hours for the years prior to 1973 and one hundred forty (140) hours for the year 1973 and thereafter.

    On and after January 1, 1976, to the extent that Future Service is not otherwise given for hours under this Section 2, Future Service shall be given for:

    (i)  Each hour for which a Participant is directly or indirectly paid or entitled to payment by the Company for the performance of duties. These hours shall be credited to the Participant for the computation period or periods in which the duties are performed.

    (ii)  Each hour for which a Participant is directly or indirectly paid or entitled to payment by the Company for reasons other than for the performance of duties. These hours shall be credited to the Participant for the computation period or periods in which payment is made or amounts which are payable to the Participant become due. No more than 501 hours shall be credited under this provision (ii) for any continuous period of nonperformance of duties.

    (iii)  Each hour for which back pay, irrespective of mitigation of damage, has been either awarded or agreed to by the Company. These hours shall be credited to the Participant for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement, or

DTP009613

payment was made.

(iv) Effective as of March 12, 1995, each hour for which a Participant is on leave under the Family and Medical Leave Act of 1993 (not to exceed eight (8) hours for any scheduled work day or forty (40) hours per week during such period of leave); provided however, that if such leave is unpaid, credit for Future Service will be given only if the Participant returns to active employment with the Company at the conclusion of the leave.

(b) For the period from October 1, 1950, to December 31, 1950, the Participant may count each one hundred thirty-three (133) hours for which he received pay from the Company for working as one (1) month of Future Service and the remaining hours, if more than sixty-six (66), shall count as one (1) month of Future Service, but in no event may he count more than the total number of months from October 1, 1950, to December 31, 1950 as Future Service.

(c) Credit towards Future Service after January 1, 1951, will be computed to the nearest full month. For the period beginning with January 1st in every Plan Year in which hours for which the Participant has received pay within the year as defined in this Section 2 are less than one thousand six hundred (1,600), every one hundred thirty-three (133) hours shall count as a month of Future Service, and the remaining hours, if sixty-six (66) or more, shall count as another month of Future Service, and if less than sixty-six (66) shall not count.

(d) A Participant who may be absent from his work pursuant to leave of absence approved by the Company for illness and who other-wise has been scheduled to work, shall receive credit for Future Service (not to exceed his total years or portion thereof of seniority at the time of such leave, if such leave commences after April 1, 1983) at the rate of forty (40) hours per week during such period of leave. A Participant who may be absent from his work for Local 287 business, or to serve as an International Representative of the Union (this provision limited to three (3) International Representatives at any one (1) time) and who would otherwise have been scheduled to work, shall receive credit toward Future Service at the rate of forty (40) hours per week during such periods of leave, except that with respect to the period commencing on or after November 1, 1961, a Participant who is on such leave for Local 287 business or to serve as an International Representative of the Union shall receive credit toward Future Service at the rate of forty (40) hours per each complete week that he is on such leave.

(e) A Participant who on or after January 1, 1968, shall be absent during any Plan Year from his work because of layoff shall receive credit for Future Service at the rate of forty (40) hours per week during the Plan Year in which the layoff occurred provided that such Participant during such Plan Year shall have received pay for at least one hundred seventy (170) hours of work; and provided further, that if such layoff commenced in 1974 or any Plan Year thereafter and continues after the Plan Year in which it commenced, the Participant (including a Participant who receives pay for 1,600 or more hours in 1974 or any Plan Year thereafter if he is absent from work due to layoff at the end of any such Plan Year) may count forty (40) hours for each complete calendar week of absence

DTP009614

from work due to layoff in the Plan Year after such commencing year, not to exceed 1,430 hours that he may count for all such absence related to receipt of such pay from the Company in such commencing year. In no event shall the provisions of this Section 2 result in a duplication of Future Service under any other provision of this Article Five.

(f) A Participant who was active on January 1, 1971, and who had at least five (5) years of seniority on January 1, 1968, and who was absent from work because of layoff during any Plan Year after December 31, 1955 and before January 1, 1963, shall receive credit for Future Service, for each complete calendar week of such absence during which he had seniority, with a number of hours computed by multiplying forty (40) hours by the applicable percentage determined with reference to his seniority on January 1, 1968, pursuant to the following table:

| Participant's Seniority on January 1, 1968 | Percent |
|---|---|
| 20 or more years | 100 |
| 15 years but less than 20 years | 75 |
| 10 years but less than 15 years | 50 |
| 5 years but less than 10 years | 25 |

provided, however, that the foregoing shall apply only if (i) the Participant shall have made proper application for adjustment of his Future Service in accordance with the foregoing, (ii) he shall have been credited with not more than one thousand six hundred (1,600) hours in any Plan Year with respect to which adjustment is to be made, and (iii) that there shall be no duplication of Future Service by virtue of the application of the provisions of this Section 2.

If a Participant who was active on January 1, 1971 had at least five (5) years of seniority on April 1, 1980, then the application of the table set forth in this Subsection 2 (f) shall be extended to January 1, 1968, and the percent in the table shall be 100 for all of the seniority classes shown subject to all other conditions of Subsection 2 (f).

(g) A Participant who was active and who had at least five (5) years of seniority on March 1, 1974, and who was absent from work because of layoff during any Plan Year after December 31, 1950 and before January 1, 1956, shall receive credit for Future Service, for each complete calendar week of such absence during which he had seniority, with a number of hours computed by multiplying forty (40) hours by the applicable percentage determined with reference to his seniority on March 1, 1974, pursuant to the following table:

| Participant's Seniority on March 1, 1974 | Percent |
|---|---|
| 20 years or more | 100 |
| 15 years but less than 20 years | 75 |
| 10 years but less than 15 years | 50 |
| 5 years but less than 10 years | 25 |

provided, however, that the foregoing shall apply only if (i) the Participant shall have made proper application for adjustment of his Future Service in accordance with the foregoing, (ii) he shall have been credited with not more than

Page  13

DTP009615

one thousand six hundred (1,600) hours in any Plan Year with respect to which adjustment is to be made, and (iii) that there shall be no duplication of Future Service by virtue of the application of the provisions of this Section 2.

If a Participant was active on or after March 8, 1977 and otherwise met the conditions of this Subsection 2 (g), the percent in the above table shall be 100 for all of the seniority classes shown, subject to all other conditions of Subsection 2 (g).

(h) A Participant who was active and who had at least five (5) years of seniority as of September 8, 1986 and who held seniority between January 1, 1968 and December 31, 1972, and who was absent from work because of layoff during any Plan Year after December 31, 1967 and before January 1, 1973, shall receive credit for Future Service, for each complete calendar week of such absence during which he had seniority, with a number of hours computed by multiplying forty (40) hours by the applicable percentage determined with reference to his seniority on September 8, 1986, pursuant to the following table:

Participant's Seniority on
| September 8, 1986 | Percent |
|---|---|
| 20 years or more | 100 |
| 15 years but less than 20 years | 75 |
| 10 years but less than 15 years | 50 |
| 5 years but less than 10 years | 25 |

provided, however, that the foregoing shall apply only if (i) the Participant shall have made proper application for adjustment of his Future Service in accordance with the foregoing, (ii) he shall have been credited with not more than one thousand six hundred (1,600) hours in any Plan Year with respect to which adjustment is to be made, and (iii) that there shall be no duplication of Future Service by virtue of the application of the provisions of this Section 2.

(i) A Participant who was active and who had at least five (5) years of seniority as of December 1, 1989 and who held seniority between January 1, 1973 and December 31, 1977, and who was absent from work because of layoff during any Plan Year after December 31, 1972 and before January 1, 1978, shall receive credit for Future Service, for each complete calendar week of such absence during which he had seniority, with a number of hours computed by multiplying forty (40) hours by the applicable percentage determined with reference to his seniority on December 1, 1989 pursuant to the following table:

Participant's Seniority on
| December 1, 1989 | Percent |
|---|---|
| 20 years or more | 100 |
| 15 years but less than 20 years | 75 |
| 10 years but less than 15 years | 50 |
| 5 years but less than 10 years | 25 |

provided, however, that the foregoing shall apply only if (i) the Participant shall have made proper application for adjustment of his Future Service in accordance with the foregoing, (ii) he shall have been credited with not more than one thousand six hundred (1,600) hours in any Plan Year with

DTP009616

respect to which adjustment is to be made, and (iii) that there shall be no duplication of Future Service by virtue of the application of the provisions of this Section 2.

(j) A Participant who was active and who had at least five (5) years of seniority as of March 12, 1995 and who held seniority between January 1, 1978 and December 31, 1987, and who was absent from work because of layoff during any Plan Year after December 31, 1977 and before January 1, 1988, shall receive credit for Future Service, for each complete calendar week of such absence during which he had seniority, with a number of hours computed by multiplying forty (40) hours by the applicable percentage determined with reference to his seniority on March 12, 1995 pursuant to the following table:

| Participant's Seniority on March 12, 1995 | Percent |
|---|---|
| 20 years or more | 100 |
| 15 years but less than 20 years | 75 |
| 10 years but less than 15 years | 50 |
| 5 years but less than 10 years | 25 |

provided, however, that the foregoing shall apply only if (i) the Participant shall have made proper application for adjustment of his Future Service in accordance with the foregoing, (ii) he shall have been credited with not more than one thousand six hundred (1,600) hours in any Plan Year with respect to which adjustment is to be made, and (iii) that there shall be no duplication of Future Service by virtue of the application of the provisions of this Section 2.

(k) Except as provided in Article Five, Section 7, a supervisor or any other employee transferred into the Bargaining Unit from other employment by the Company, shall receive credit for Future Service in accordance with the provisions of this Section 2 in the same manner as though the entire time was worked in the Bargaining Unit.

(1) A Participant who after October 1, 1950, is absent from his work pursuant to leave of absence, approved by the Company, for military service and who during such absence retains reemployment rights under the provisions of the Selective Service Act, as amended, and who while he retains such reemployment rights returns to work for the Company or reports to the Company and is given leave of absence or layoff status, shall be credited with Future Service at the rate of forty (40) hours per week for the period of such absence.

Notwithstanding the foregoing, in no event will the operation of this Section 2 result in a duplication of Credited Service for the same hours.

3. Vested Service. A Participant shall be credited with one year of Vested Service for each year of Credited Service prior to January 1, 1976, and for each Plan Year commencing on or after January 1, 1976, in which he has 1,000 or more hours of Future Service as defined in Article Five, Section 2 for which allowance of credit is given, up to a maximum of Five (5) years of Vested Service.

On and after January 1, 1987, hours for the purpose of Vested Service shall include each hour of maternity or paternity leave of absence at the rate of forty (40) hours per week of such leave.

DTP009617

Such hours shall be credited in the year the leave begins, if necessary to prevent a Break in Service, otherwise in the year next following. Hours of leave in excess of five hundred one (501) may be disregarded for any one period of leave. For purposes of this Plan, "maternity or paternity leave" means termination of employment or absence from work due to the pregnancy of the Participant, the birth of a child of the Participant, the placement of a child in connection with the adoption of a child by a Participant, or the caring for a Participant's child during the period immediately following the child's birth or placement for adoption. The Company shall determine, under rules of uniform application and based on information provided to the Company by the Participant, whether or not the Participant's termination of employment or absence from work is due to "maternity or paternity leave."

4.  Loss of Credited Service. After October 1, 1950, a Participant shall, subject to the provisions of the Plan, lose all Credited Service for the purpose of this Plan:

    (a) If the Participant quits; or

    (b) If the Participant is discharged; or

    (c) If the Participant's seniority is broken for any other reason, provided that, any Participant, retired under the Disability Retirement provisions of this or Prior Agreements and who is subsequently re-employed by the Company and has his seniority reinstated, shall have his Credited Service at the time of the Disability Retirement reinstated.

Any former Participant, who on termination of his employment becomes entitled to a Deferred Vested Retirement Benefit and who is subsequently rehired by the Company, shall not be credited with any further Credited Service under the Plan for any period of employment with the Company after his rehire date and shall not be eligible during the period to receive the Deferred Vested Retirement Benefit that he was entitled to at the time of his initial termination.

Any Participant with seniority on or after March 1, 1974, whose seniority was broken on or after October 1, 1950, and before January 1, 1976, thereby losing his Credited Service pursuant to this Section 4, shall upon making proper application, have such Credited Service reinstated. For Participants with seniority on March 1, 1974, application must be made within ninety (90) days of April 22, 1974. For other Participants, application must be made within thirty (30) days of hire.

On and after January 1, 1976 if an event specified in (a), (b), or (c) above occurs and the Participant completes less than 500 hours for which allowance of credit for purposes of Vested Service is given in that Plan Year, then that Plan Year and subsequent Plan Years during which such Participant has less than 500 hours for which allowance of credit is given shall each constitute a one year Break in Service. Upon incurring a Break in Service, a Participant's rights and benefits under the Plan shall be determined in accordance with Credited Service and Vested Service at the time of Break in Service. For a former Employee who, at the time of a Break in Service, has not become entitled to a Deferred Vested Retirement Benefit, years of pre-break Credited and Vested Service shall be restored only if the number of consecutive years of Break in Service was less

DTP009618

than the greater of five (5) years or the aggregate number of years of pre-break Vested Service.

5. **Replacement of Credited Service for Employees Rehired Pursuant to the February 14, 1994 Agreement.** An Employee rehired pursuant to the Agreement between the Company and the Union dated February 14, 1994 (the " February 1994 Agreement") who had Credited Service under the Plan at the time of his prior termination from the employment of the Company and who was in active employment with the Company on the Effective Date shall receive a contribution to his account in the Muncie RSP, pursuant to the terms of the Muncie RSP, for such years of Credited Service under the Plan. Effective at the time that the contribution is made to the Muncie RSP, the second and third sentence of paragraph 6 of the February 1994 Agreement shall be null and void, such Employee will forfeit his Credited Service under the Plan and, notwithstanding any other provision of the Plan, such employee will no longer be entitled to a Benefit under the Plan.

6. **Notice of Credited Service and Vested Service.** Once each year the Board shall inform each Participant in writing of the Future Service and Vested Service he accumulated for the preceding year. His total Credited Service and Vested Service to date shall also be shown. Credited Service and Vested Service shown in any notice given by the Board to a Participant (whether heretofore or hereafter) shall be conclusively deemed to be correct and final, and no contrary claim concerning it may be raised, unless the Participant files or has filed objection with the Board, in writing, within sixty (60) days following the first receipt of notice of such accumulated Credited Service and Vested Service. This sixty (60) day period may be extended by the Board at its discretion within such sixty (60) day period.

7. **Service in Controlled Group.** A Participant who has been employed on and after January 1, 1976 by an Affiliate shall receive credit towards Vested Service for service with such Affiliate on or after January 1, 1976 as if it were service with the Company.

8. **Non-Duplication of Credited Service.** Except for the provisions of Section 9 of Article Five, any Participant transferred to or from the Bargaining Unit shall not receive a duplication of Credited Service under this Article Five for service under the Borg-Warner Retirement Savings Plan (the "Retirement Savings Plan") or any other retirement plan (including any defined benefit plan or defined contribution plan) of the Company or an Affiliate where;

    (a) the Participant has received, is receiving, is eligible to receive or may become eligible to receive a lump sum distribution from the Retirement Savings Plan or any other retirement plan of the Company or an Affiliate except for a lump sum distribution under the Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant Local 287 Retirement Investment Plan; or

    (b) the Participant has received, is receiving, is eligible to receive or may become eligible to receive an annuity benefit from any other retirement plan of the Company or an Affiliate, except for a benefit under the Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant Local 287 Retirement Investment Plan; or

    (c) the Company or the Affiliate made a contribution on behalf of the Participant for the same period of service to the Retirement

DTP009619

Savings Plan or any other defined contribution retirement plan of the Company or an Affiliate, except for a benefit under the Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant Local 287 Retirement Investment Savings Plan.

9. <u>Return To Bargaining Unit From Supervisory Position.</u> Any Participant who

   (a) transferred from the Bargaining Unit to a Supervisory position with the Company, and

   (b) returns to the Bargaining Unit during the term of this Agreement pursuant to the provisions of the Collective Bargaining Agreement,

   shall resume participation in the Plan as of the date of such return. The Participant shall be credited with Credited Service for the period of time he was a participant in the Retirement Savings Plan only if within thirty (30) days prior to his date of retirement he elects either to:

   (y) receive his Retirement Benefit under the Plan and forfeit the Vested Portion of his Company Retirement Account under the Retirement Savings Plan, or

   (z) receive his Retirement Benefit under the Plan reduced by the actuarial equivalent benefit amount of the Vested Portion of his Company Retirement Account under the Retirement Savings Plan (as determined by an actuary selected by the Plan Administrator of the Retirement Savings Plan), and receive the Vested Portion of his Company Retirement Account under the Retirement Savings Plan.

### ARTICLE SIX
### ELIGIBILITY

1. <u>Normal Retirement.</u> Each Participant hired prior to age sixty (60) who has attained the age of sixty-five (65) on or after the Effective Date and whose employment with the Company is thereafter terminated, shall be eligible for a Normal Retirement Benefit as provided in Article Seven. Each Participant hired after January 1, 1988 who was age sixty (60) or over at the time of his/her hire and who attains the age of sixty-five (65) and reaches the fifth anniversary of the date on which his participation commenced shall be eligible for a Normal Retirement Benefit as provided in Article Seven.

2. <u>Early Retirement Regular.</u> Each Participant whose employment with the Company is terminated on or after the Effective Date under any one of the following conditions:

   (a) Has ten (10) years or more of Credited Service and has attained the age of sixty (60) but not sixty-five (65), or

   (b) Has attained the age of fifty-five (55), but not sixty (60), and when his combined years of age and years of Credited Service (to the nearest one-twelfth (1/12) in each case) shall total eighty-five (85) or more, or

   (c) Has thirty (30) years or more of Credited Service.

   and whose termination of employment shall not constitute a Special Early Retirement under Article Six, Section 3, or a Disability

DTP009620

Retirement under Article Six, Section 4 shall be eligible for the Early Retirement Regular Benefit as provided in Article Seven, Section 2.

3. Special Early Retirement.

(a) A Participant with ten (10) or more years of Credited Service who has attained the age of fifty-five (55) but not sixty-five (65) and who is unable to work efficiently by reason of a permanent disability is eligible for a Special Early Retirement Benefit as provided in Article Seven, Section 3, provided that on or after the Effective Date, such retirement, after due consideration is given to the obligations of the Americans With Disabilities Act of 1990, is under mutually satisfactory conditions acceptable to the Participant, the Company, and the Union; provided however, that a Participant discharged for cause prior to age sixty-five (65) shall not be entitled to a Special Early Retirement Benefit but shall only be entitled to a Benefit under Article Seven, Section 2 if such Participant otherwise meets the eligibility requirements of such Section 2.

(b) Such Special Early Retirement must be in the best interests of the Company and intended to benefit a Participant who is unable to work efficiently by reason of permanent disability. Any of the following situations (the listing of which should not be considered as excluding other situations not enumerated) generally will result in Special Early Retirement for the Participant:

(i) The Participant is no longer physically or mentally capable of performing his work in an efficient and satisfactory manner.

(ii) The Participant, though still capable of performing his work satisfactorily, is prevented by chronic physical illness or physical disability (less than total) from working regularly to the extent that the efficiency of operation is interfered with.

(iii) The Participant's condition, based on medical evidence satisfactory to the Company, is such that, although able to perform the duties of his job efficiently and satisfactorily, he would thereby be jeopardizing his health or that of fellow Participants or Employees.

(iv) The Participant is on disability leave or is laid off because he is unable to do the work offered by the Company efficiently and satisfactorily although able to perform efficiently and satisfactorily other work in the plant to which he would have been entitled if he had had sufficient seniority, and his condition, based on medical evidence satisfactory to the Company, is expected to be continuous until his normal retirement age.

DTP009621

4. **Disability Retirement.** Each Participant whose employment with the Company is terminated on or after the Effective Date, with ten (10) years or more Credited Service who is Totally and Permanently Disabled and who retires by reason of such disability prior to attainment of age sixty-five (65) shall be eligible for a Disability Retirement Benefit as provided in Article Seven, Section 4.

5. **Deferred Vested Retirement.** Each Participant with ten (10) years or more of Credited Service or five years of Vested Service whose employment is terminated on or after the Effective Date and who is not eligible for or receiving any other type of Benefit under this Plan, shall be eligible for a Deferred Vested Retirement Benefit as provided in Article Seven, Section 5.

6. **Election to become a Participant in the Muncie RSP.** Notwithstanding anything else in this Article Six, any Participant, who was
   (a) employed by the Company in the Bargaining Unit on September 7, 1989,

   (b) employed by the Company in the Bargaining Unit on December 31, 1990, and

   (c) not eligible on December 31, 1990 under Article Six of the Plan for a Normal Retirement Benefit or an Early Retirement Regular Benefit,

   may elect to become a Participant in the Muncie RSP on January 1, 1991 pursuant to a written election (on the appropriate form provided by the Company) prior to the deadline for such an election as established by the Company. If a Participant does not elect to participate in the Muncie RSP effective January 1, 1991, the Participant may make this election effective as of any succeeding January 1 pursuant to the written election procedures established in the Muncie RSP. If the Participant elects to participate in the Muncie RSP, the Participant's Accrued Benefit under this Plan shall be frozen pursuant to Article Seven, Section 8 and the Participant shall not be credited with any further Credited Service under this Plan.

7. **No Eligibility after September 7, 1989.** An Employee who:
   (a) who was not employed by the Company in the Bargaining Unit on September 7, 1989 or

   (b) who is hired for employment with the Company in the Bargaining Unit on September 7, 1989, or thereafter, or

   (c) was (i) employed by the Company in the Bargaining Unit on September 7, 1989, (ii) terminated his employment with the Company on or after September 7, 1989, and (iii) was rehired by the Company thereafter,
   shall not be eligible to participate in this Plan.

### ARTICLE SEVEN
### RETIREMENT BENEFITS

1. **Normal Retirement Benefit.** From and after the Effective Date, the Normal Retirement Benefit of a Participant eligible therefor under Article Six, Section 1, and who has applied therefor, shall be a monthly amount equal to the number of his years of Credited Service multiplied by the applicable rate from the following table:

DTP009622

| Date of Retirement | Rate |
|---|---|
| March 12, 1996 through March 31, 1996 | $24.00 * |
| April 1, 1996 through March 31, 1997 | 25.00 * |
| April 1, 1997, and after | 26.50 * |
| less Other Benefits, if any. | |

\* Prorated for Credited Service of less than one (1) year in accordance with table A attached hereto

2.  Early Retirement Regular Benefit. From and after the Effective Date, the Early Retirement Regular Benefit of a Participant eligible therefor under Article Six, Section 2, and who has applied therefor, shall be a monthly amount which shall be determined in accordance with the provisions of Article Seven, Section 1, reduced in accordance with the table set forth below, less Other Benefits, if any:

| Age When Pension Commences | Percentages * |
|---|---|
| 47 | 30.4% |
| 48 | 32.8 |
| 49 | 35.4 |
| 50 | 38.3 |
| 51 | 41.5 |
| 52 | 45.0 |
| 53 | 48.9 |
| 54 | 53.2 |
| 55 | 57.9 |
| 56 | 63.5 |
| 57 | 69.4 |
| 58 | 75.2 |
| 59 | 80.8 |
| 60 | 86.7 |
| 61 | 93.3 |
| 62 or over | 100.00 |

\*Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the Participant is under the age he will attain at his next birthday.

If a Participant, with thirty (30) or more years of Credited Service or whose combined years of age and years of Credited Service (to the nearest one-twelfth (1/12) in each case) total eighty-five (85) or more, retires at his option on or after the Effective Date, the Benefit otherwise payable to him after age sixty-two (62) and one (1) month shall be redetermined on the basis of an unreduced benefit in accordance with Article Seven, Section 1, based upon his Credited Service and the provisions of the Plan in effect at the time of his retirement from the Company.

3.  Special Early Retirement Benefit. From and after the Effective Date, the Early Retirement Benefit of a Participant eligible therefor under Article Six, Section 3, by reason of retirement because of mutually satisfactory conditions between the ages of fifty-five (55) and sixty-five (65), and who has applied therefor, shall be a monthly amount consisting of:

(a)  An amount determined in accordance with Article Seven, Section 1, plus

DTP009623

(b)  A Temporary Benefit equal to his number of years of Credited
     Service multiplied by the applicable rate from the following
     table:

| Date of Retirement | Rate | Maximum Benefit |
|---|---|---|
| March 12, 1995, and after | $22.00 | $660.00 |
| less Other Benefits, if any. | | |

The Temporary Benefit determined in accordance with this Article
Seven, Subsection 3 (b) shall be payable until age sixty-two (62)
and one (1) month (the Temporary Benefit for a Participant born
after 1937 who retires on or after the Effective Date - for whom the
80% level Social Security Benefit date is beyond age 62 and one
month - will terminate according to the Social Security schedule set
forth in Article Nine, Section 2 (a) (the "Post 1937 Social Security
Schedule")) or until the age at which the Participant becomes or
could have become eligible for an Unreduced Social Security Benefit
for age or disability, whichever is the earlier

If the Retired Employee elects to draw his Social Security Benefit
earlier than the age, applicable to such Retired Employee, set forth
in the Post 1937 Social Security Schedule, the Temporary Benefit
terminates at that time.  Also, if the Retired Employee fails to
notify the Pension Board of such early election, the excess payments
are subject to the "penalty provisions" of Article Nine, Section 4.

4.  Disability Retirement Benefit. From and after the Effective Date,
    the Disability Retirement Benefit of a Participant eligible therefor
    under Article Six, Section 4, and who has applied therefor, shall be
    a monthly amount consisting of:
    (a)  An amount determined in accordance with Article Seven, Section
         1, plus

    (b)  A Temporary Benefit equal to his number of years of Credited
         Service multiplied by the applicable rate from the following
         table:

| Date of Retirement | Rate | Maximum Benefit |
|---|---|---|
| March 12, 1995, and after | $22.00 | $660.00 |
| less Other Benefits, if any. | | |

The Temporary Benefit determined in accordance with this
Article Seven, Section 4, shall be payable until age sixty-two
(62) and one month (the Temporary Benefit for a Participant
born after 1937 who retires on or after the Effective Date -
for whom the 80% level Social Security Benefit date is beyond
age 62 and one month -will terminate according to the Post 1937
Social Security Schedule) or until the age at which the Retired
Employee becomes or could have become eligible for an Unreduced
Social Security Benefit for age or disability, whichever is the
earlier.

If the Retired Employee elects to draw his Social Security
Benefit earlier than the age, applicable to such Retired
Employee, set forth in the Post 1937 Social Security Schedule,
the Temporary Benefit terminates at that time.  Also, if the
Retired Employee fails to notify the Pension Board of such
early election, the excess payments are subject to the "penalty
provisions" of Article Nine, Section 4.

DTP009624

For purposes of this Article Seven, Section 4, a Retired Employee shall be considered as being eligible for an Unreduced Social Security Benefit on account of disability under the Social Security Act unless he shall have furnished to the Board written evidence from the Social Security Administration that he has applied for and has been adjudged ineligible for such benefits.

5. <u>Deferred Vested Retirement Benefit</u>. The Deferred Vested Retirement Benefit of a Participant eligible therefor under Article Six, Section 5, and who has applied therefor, shall be whichever of the following is applicable.

   (a) For a Participant terminated on or after the Effective Date, a monthly benefit payable at age 65 equal to his years of Credited Service multiplied by the applicable rate from the following table:

   | Date of Retirement | Rate |
   |---|---|
   | March 12, 1995 through March 31, 1996 | $24.00 |
   | April 1, 1996 through March 31, 1997 | 25.00 |
   | April 1, 1997, and after | 26.50 |
   | less Other Benefits, if any. | |

   (b) The Participant may elect, in lieu of the Deferred Vested Retirement Benefit determined in accordance with Subsection 5 (a), a Deferred Vested Retirement Benefit commencing after age sixty (60) or after age fifty-five (55) if combined years of age and years of Credited Service (to the nearest one-twelfth (1/12) in each case) shall total eighty-five (85) or more, determined in accordance with Subsection 5 (a), but reduced by five-ninths (5/9ths) of one percent (1%) for each complete calendar month by which such former Participant is under the age of sixty-five (65) at the date the Deferred Vested Retirement Benefit commences.

6. <u>Special Age 65 Benefit</u>. Commencing on and after the Effective Date, any Retired Employee age sixty-five (65) years or older who is receiving a Benefit under Article Seven, Section 1 (Normal Retirement), or Article Seven, Section 2 (Early Retirement Regular), or Article Seven, Section 3 (Special Early Retirement), or Article Seven, Section 4, (Disability Retirement), or any Surviving Eligible Spouse age sixty-five (65) or older who is receiving a Benefit payable under Article Eight, Section 3, (Survivor Benefit Option, but excluding the Surviving Eligible Spouse of a former Participant who was receiving a Deferred Vested Retirement Benefit under Article Seven, Section 5) or any Retired Employee who on or after September 1, 1974, has not attained age sixty-five (65) and who is receiving a Benefit under Article Seven, Section 2 (Early Retirement Regular), or Article Seven, Section 3 (Special Early Retirement), or Article Seven, Section 4 (Disability Retirement) and who is enrolled in the voluntary medicare coverage insurance program that is available under the Federal Social Security Act ("Voluntary Medicare Coverage") by making contributions therefor, shall receive a monthly Special Age 65 Benefit equal to the amount of the monthly premium rate in effect for such Voluntary Medicare Coverage, in addition to the amount of the Benefit paid to the Retired Employee or the Surviving Eligible Spouse. In no event shall such Special Age 65 Benefit commence prior to:

Page 23                                             DTP009625

    (a)   the first day of the first month following the month a
           Retired Employee or the Surviving Eligible Spouse age 65
           or older becomes enrolled in the Voluntary Medicare
           Coverage, or

    (b)   the first day of the first month following the month
           during which a Retired Employee, not age 65, who is
           receiving an Early Retirement Regular Benefit or a Special
           Early Retirement Benefit or a Disability Benefit becomes
           enrolled in the Voluntary Medicare Coverage.

The Special Age 65 Benefit shall continue only if the Retired
Employee or Surviving Eligible Spouse continues to be enrolled in
the Voluntary Medicare Coverage. Such Special Age 65 Benefit shall
cease the month following the month in which the Retired Employee or
Surviving Eligible Spouse is no longer enrolled in the Voluntary
Medicare Coverage and shall not be reinstated. The monthly Special
Age 65 Benefit as of April 1, 1995 is $46.10.

7. **Benefits for Employees Retired or Terminated Prior to March 12, 1995**
Any Participant who has retired under a Prior Agreement, or any
Surviving Eligible Spouse receiving a benefit under a Prior
Agreement, shall receive benefits and supplemental allowances, if
any, in accordance with the Prior Agreement in effect at the time of
the Participant's retirement or termination of employment. However,
the level of benefit for the Special Age 65 Benefit shall be as
specified in Article Seven, Section 6 of this Agreement.

8. **Benefits Frozen upon Participation in the Muncie RSP.**
Notwithstanding any other provision of this Plan, any Participant
who makes an election pursuant to Article Six, Section 6, to
participate in the Muncie RSP as of January 1, 1991, shall have his
Accrued Benefit frozen as of December 31, 1990. In addition, any
Participant who makes an election pursuant to Article Six, Section 6
to participate in the Muncie RSP effective as of any succeeding
January 1, shall have his Accrued Benefit frozen as of the day
immediately preceding the date that the Participant begins
participation in the Muncie RSP. The Accrued Benefit of each such
Participant shall not increase beyond the level of Benefit that the
Participant is entitled to as of the date the Accrued Benefit is
frozen.

## ARTICLE EIGHT
## COMMENCEMENT AND DURATION OF BENEFITS

1. **Age Retirement Benefits.**
    (a)  A Normal Retirement Benefit, a Early Retirement Regular Benefit
        or a Special Early Retirement Benefit shall be payable to a
        Participant on the first day of the month after such
        Participant becomes eligible and applies therefor and shall be
        payable on the first day of each month thereafter during the
        life of such Participant.

    (b)  With respect to a former Participant whose employment is
        terminated, a Deferred Vested Retirement Benefit shall be
        payable to such former Participant, if eligible therefor, as of
        the later of the first day of the month following the month (i)
        in which such former Participant attains age sixty (60), or
        becomes age fifty-five (55) if years of age and years of
        Credited Service (to the nearest one-twelfth (1/12) in each
        case) shall total eighty-five (85), or (ii) during which the

DTP009626

Board receives a written application from such former Participant and shall be payable on the first day of each month thereafter during the life of such former Participant.

A former Participant who would be eligible to receive a Deferred Vested Retirement Benefit but who has not made application therefor by the ninetieth (90th) day prior to his sixty-fifth (65th) birthday shall on or about that time be mailed by the Company a notice informing him that he may make such application. The notice shall be mailed to his last address shown on the Company's records.

(c)   Notwithstanding anything to the contrary in this Article Eight, payment of a Benefit under this Plan shall commence not later than the 60th day following the close of the Plan Year in which the latest of the following dates occurs: (i) the date which the Participant attains age sixty-five (65); (ii) the tenth anniversary of the year in which the Participant commenced participation in the Plan; or (iii) the date on which the Participant terminated his service with the Company.

If a Participant has a "Required Beginning Date" which precedes the latest of the three dates specified in the preceding sentence, distribution shall commence no later than such Required Beginning Date. In this regard, Required Beginning Date shall mean April 1 of the Plan Year following the later of the Plan Year in which the Participant attains age 70-1/2.

Unless a shorter period of distribution is prescribed by other provisions of this Plan, distribution of a Benefit hereunder shall be made over the life of the Participant or the lives of the Participant and his Eligible Spouse.

2.   Disability Retirement Benefit.
   (a)   Disability Retirement Benefits shall be payable as provided under Article Seven, Section 4 to a Participant eligible therefor under Article Six, Section 4 on the first day of the month following the expiration of twenty-six (26) weeks from the date on which he became Totally and Permanently Disabled and shall be payable on the first day of each month thereafter, so long as he is Totally and Permanently Disabled, during the life of such Participant until he attains age sixty-five (65) or, if earlier, the age at which he becomes eligible for an Unreduced Social Security Benefit for age, at which time he shall receive the Normal Retirement Benefit to which he is entitled under Article Seven, Section 1, based on his Credited Service at the time he became Totally and Permanently Disabled.

   (b)   Disability Retirement Benefits shall be terminated:

      (i)   If the Participant returns to any regular gainful employment or occupation (except for purposes of rehabilitation under supervision of a recognized rehabilitation agency for a temporary period approved by the Board); or

      (ii)   If the Board determines that the Participant has sufficiently recovered to engage in any regular gainful employment or occupation with the Company; or

Page 25

DTP009627

(iii) If the Participant refuses to undergo a medical examination requested by three (3) members of the Board, provided that the Participant may not be required to undergo a medical examination more often than twice a year.

In any case where the Board is required to make a determination with respect to whether a Participant applying for a Disability Retirement Benefit is Totally and Permanently Disabled, the Participant first shall be required to submit to an examination by a competent physician or physicians selected by the Board, and shall be required to submit to such re-examination as shall be necessary for the Board to make a determination concerning his physical or mental condition. Whenever any such question is before the Board for determination, any three (3) members of the Board may require the Participant to submit to an examination by a physician of their choice, and such physician shall be afforded an opportunity to consult with the physicians appointed by the Board at any time before a final determination by the Board shall have been made. A Participant or Retired Employee who shall refuse to submit to any physical examination properly requested under the Plan shall not be placed or continued on Disability Retirement.

3. <u>Survivor Benefit Options.</u>
   (a) If a Participant dies on or after the Effective Date, and at a time when such Participant shall have reached his or her sixtieth (60th) birthday and had ten (10) or more years of Credited Service, or shall have reached his or her fifty-fifth (55th) birthday with combined years of age and Credited Service (to the nearest one-twelfth (1/12th) in each case) that total at least eighty-five (85), or had thirty (30) or more years of Credited Service and,

     (i) such Participant had seniority at the time of his death or, the seniority of such Participant had been broken because of retirement on or after the Effective Date and the Participant dies before the date when his Retirement Benefits are to commence, and

     (ii) such Participant is survived by an Eligible Spouse, then the Eligible Spouse of such Participant shall be eligible, upon due application therefor to receive the Survivor's Benefit described in Article Eight, Subsection 3 (j) below.

   (b) The Eligible Spouse of a Participant who has ten (10) or more years of Credited Service or Five (5) or more years of Vested Service but who is not separated from service and is not yet eligible to retire and the Eligible Spouse of an Employee who separated from service after September 1, 1974 and at such time was eligible for a Deferred Vested Retirement Benefit and has not received his first Retirement Benefit, shall be eligible upon the death of the Participant or the terminated Employee to receive the Survivor's Benefit described in Article Eight, Subsection 3 (j) below. The Survivor Benefit shall commence at the first of the month following the earliest date the Participant or the terminated Employee eligible for a Deferred Vested Retirement Benefit would have become eligible to have retired or received a Retirement Benefit under the terms of this Plan.

      DTP009628

(iii) If the Participant refuses to undergo a medical examination requested by three (3) members of the Board, provided that the Participant may not be required to undergo a medical examination more often than twice a year.

In any case where the Board is required to make a determination with respect to whether a Participant applying for a Disability Retirement Benefit is Totally and Permanently Disabled, the Participant first shall be required to submit to an examination by a competent physician or physicians selected by the Board, and shall be required to submit to such re-examination as shall be necessary for the Board to make a determination concerning his physical or mental condition. Whenever any such question is before the Board for determination, any three (3) members of the Board may require the Participant to submit to an examination by a physician of their choice, and such physician shall be afforded an opportunity to consult with the physicians appointed by the Board at any time before a final determination by the Board shall have been made. A Participant or Retired Employee who shall refuse to submit to any physical examination properly requested under the Plan shall not be placed or continued on Disability Retirement.

3.  <u>Survivor Benefit Options</u>.

(a)  If a Participant dies on or after the Effective Date, and at a time when such Participant shall have reached his or her sixtieth (60th) birthday and had ten (10) or more years of Credited Service, or shall have reached his or her fifty-fifth (55th) birthday with combined years of age and Credited Service (to the nearest one-twelfth (1/12th) in each case) that total at least eighty-five (85), or had thirty (30) or more years of Credited Service and,

   (i)  such Participant had seniority at the time of his death or, the seniority of such Participant had been broken because of retirement on or after the Effective Date and the Participant dies before the date when his Retirement Benefits are to commence, and

   (ii)  such Participant is survived by an Eligible Spouse, then the Eligible Spouse of such Participant shall be eligible, upon due application therefor to receive the Survivor's Benefit described in Article Eight, Subsection 3 (j) below.

(b)  If the Participant dies on or after the Effective Date, the Eligible Spouse of a Participant who has ten (10) or more years of Credited Service or Five (5) or more years of Vested Service but who is not separated from service and is not yet eligible to retire and the Eligible Spouse of an Employee who separated from service after September 1, 1974 and at such time was eligible for a Deferred Vested Retirement Benefit and has not received his first Retirement Benefit, shall be eligible to receive the Survivor's Benefit described in Article Eight, Subsection 3 (j) below. The Survivor Benefit shall commence at the first of the month following the earliest date the Participant or the terminated Employee eligible for a Deferred Vested Retirement Benefit would have become eligible to have retired or received a Retirement Benefit under the terms of this Plan.

Page 26

DTP009629

(c)   In lieu of the applicable Retirement Benefit provided in
      Article Seven, Section 1 (Normal Retirement Benefit), Section 2
      (Early Retirement Regular Benefit), Section 3 (Special Early
      Retirement Benefit), Section 4 (Disability Retirement Benefit),
      or Section 5 (Deferred Vested Retirement Benefit) or, if less,
      the Benefit which would be payable if eligible for an Unreduced
      Social Security Benefit for age or disability, a Participant
      automatically shall be deemed to have elected a reduced Benefit
      during his lifetime as hereinafter provided in Subsection 3 (d)
      below and the Automatic Survivor Benefit as hereinafter
      provided in Subsection 3(e) below, payable after the death of
      such Participant to the Eligible Spouse of such Participant
      during the further lifetime of the Eligible Spouse.

      This automatic election shall become effective on the Benefit
      Commencement Date, except that if, on such date which would
      otherwise be the effective date of the election, the
      Participant's spouse is not an Eligible Spouse, the effective
      date of the election shall be postponed until the first day of
      the month following the month in which the spouse becomes an
      Eligible Spouse and at such time the Participant's Benefit will
      be automatically adjusted in accordance with Subsection 3 (d)
      below.

      This automatic election shall be applicable only with respect
      to the Eligible Spouse of the Participant at the effective date
      of the election.

      At least nine months prior to a married Participant's earliest
      retirement date, the Board shall provide the Participant with
      information regarding the amount of the applicable Retirement
      Benefit, the amount of the Automatic Survivor Benefit and the
      amount of each of the two (2) Optional Survivor Benefits
      (which are set forth in Subsection 3 (f)), as well as the
      necessary forms upon which the Participant, with the written
      consent of his Eligible Spouse, can waive the Automatic
      Survivor Benefit and elect either the applicable Retirement
      Benefit or one of the two Optional Survivor Benefits.    A
      Participant, with the consent of the Participant's Eligible
      Spouse, may prevent the Automatic Survivor Benefit by executing
      a written rejection in whatever form and manner as may be
      prescribed by the Board for this purpose and by filing such
      written rejection:
             (i)   at the time of application for the Benefit, or

             (ii)  during the 90 day period following the date the
                   Participant is provided with the information
                   regarding the automatic election.

      The consent of the Participant's Eligible Spouse must be in
      writing, notarized or witnessed by a member of the Board, must
      be irrevocable and must acknowledge the financial impact of the
      waiver of the Automatic Survivor Benefit.  If the Eligible
      Spouse of a Participant dies before the effective date of
      either of the Automatic Survivor Benefit or one of the Optional
      Survivor Benefits, the Survivor Benefit election shall be
      cancelled automatically.

(d)   The amount of the applicable Retirement Benefit payable under
      Article Seven, Section 1 (Normal Retirement Benefit), Section 2

DTP009630

(Early Retirement Regular Benefit), Section 3 (Special Early
Retirement Benefit), Section 4 (Disability Retirement Benefit),
or Section 5 (Deferred Vested Retirement Benefit), to a Retired
Employee (including for purposes of this Subsection a former
Participant entitled to a Deferred Vested Retirement Benefit)
whose Eligible Spouse will receive either the Automatic
Survivor Benefit under Subsection 3 (e) or one of two Optional
Survivor Benefits under Subsection 3 (f) shall be determined by
reducing the amount of the applicable Retirement Benefit that
would have been payable to the Retired Employee on and after
age sixty-five (65), if such Retired Employee had not elected
either the Automatic Survivor Benefit or one of the two
Optional Survivor Benefits, to the percentage level set forth
in Exhibit A.

The reductions provided in this Subsection 3 (d) shall be made
in all Retirement Benefits payable to the Retired Employee on
or after the date the election of the Survivor Benefit becomes
effective.

(e)    The amount of the Benefit payable to the Eligible Spouse of a
Retired Employee who will receive the Automatic Survivor
Benefit under Subsection 3 (c) above shall be sixty percent
(60%) of the amount of the Benefit that was or would have been
payable after age sixty-two (62) and one (1) month to the
Retired Employee after the applicable reduction provided in
Subsection 3 (d) above.

(f)    The Optional Survivor Benefit shall be either seventy-five
percent (75%) or one hundred percent (100%) of the amount of
the Benefit that was or would have been payable after age
sixty-two (62) and one (1) month to the Retired Employee after
the applicable reduction provided in Subsection 3 (d) above,
and such Optional Survivor Benefit shall be payable in
accordance with the election the Participant made under
Subsection 3 (c) above.

(g)    The Benefit rate used for purposes of computing the amount of
the Benefit which is referred to in Subsection 3 (d), (e) and
(f) above, shall be the rate specified in the applicable
Subsection of Article Seven, Section 1 (Normal Retirement
Benefit), Section 2 (Early Retirement Regular Benefit), Section
3 (Special Early Retirement Benefit), Section 4 (Disability
Retirement Benefit), or Section 5 (Deferred Vested Retirement
Benefit) which would be payable after the Participant becomes
eligible for an Unreduced Social Security Benefit for age or
disability.

(h)    In the event the Eligible Spouse of a Retired Employee who has
made an election under Subsection 3 (c) above of the Automatic
Survivor Benefit or one of the two Optional Survivor Benefits
shall predecease such Retired Employee, such Retired Employee
shall have his Retirement Benefit restored to the amount
payable without the Survivor Benefit, effective the first day
of the third month following the month in which the Board
receives evidence satisfactory to the Board of the Eligible
Spouse's death.

(i)    A Retired Employee who has made an election under Subsection 3
(c) above of the Automatic Survivor Benefit or one of the two

Page 28

DTP009631

Optional Survivor Benefits and who is divorced by court decree from his Eligible Spouse after such election, shall have his Retirement Benefit restored to the amount payable without the Survivor Benefit, effective the first day of the third month following the month in which the Board receives evidence satisfactory to the Board of the final decree of divorce, provided that no qualified domestic relations order is received prior to the beginning payment date of the restored benefit.

(j)   The monthly Benefit payable to the Eligible Spouse of a Participant who died prior to becoming eligible for a Benefit under Subsection 3 (a) shall be the Benefit such Eligible Spouse would have been entitled to receive under Subsection 3 (e),if the Participant had retired on the earliest date he would have become eligible to have retired under the terms of the Plan with Retirement Benefits commencing the first day of the following month in which the Participant could have elected the Survivor Benefit.

## ARTICLE NINE
### SUPPLEMENTAL ALLOWANCES

1.   <u>Eligibility</u>. Supplemental Allowances consist of either an Early Retirement Supplement, or and an Interim Supplement.  Subject to the provisions of Article Nine, Sections 3, 4, 5, and 6, a Participant who retires under Article Six, Section 2, 3, or 4 hereof, and who files his application for a Benefit within five (5) years of the last day he worked for the Company and/or Affiliate, and who agrees to restrict his participation in the work force as provided in Article Nine, Section 4 below will receive, on the following terms and conditions, a monthly Supplemental Allowance in addition to his Retirement Benefit.

2.   <u>Amount of the Supplemental Allowance</u>.
(a)   <u>Early Retirement Supplement</u>.  A Participant who retires under Article Six, Section 2 (Early Retirement Regular), Section 3 (Special Early Retirement), or Section 4 (Disability Retirement) on or after the Effective Date, with thirty (30) years or more of Credited Service, shall be entitled to a monthly Early Retirement Supplement until age sixty-two (62) and one (1) month in an amount which when added to his Retirement Benefit under the Plan will equal the amount of the "total monthly benefit" applicable to him as follows:

| Date of Retirement | total monthly benefit for Determining Early Retirement Supplement |
|---|---|
| March 12, 1995 through March 31, 1996 | $1,600 |
| April 1, 1996 through March 31, 1997 | 1,700 |
| April 1, 1997, and after | 1,800 |

subject to the provisions of Article Nine, Sections 3, 4, 5, and 6, provided however, that the Early Retirement Supplement for a Participant, born after 1937 who retires on or after the Effective Date (for whom the 80% level Social Security Benefit date is beyond age 62 and one month), will terminate according to the Post 1937 Social Security Schedule set forth below:

Page 29

DTP009632

### POST 1937 SOCIAL SECURITY SCHEDULE

| Birth year | Applicable Benefit Terminates @ Age |
|------------|-------------------------------------|
| 1938 | 62 & 2 months |
| 1939 | 62 & 4 months |
| 1940 | 62 & 6 months |
| 1941 | 62 & 8 months |
| 1942 | 62 & 10 months |
| 1943-1954 | 63 & 0 months |
| 1955 | 63 & 2 months |
| 1956 | 63 & 4 months |
| 1957 | 63 & 6 months |
| 1958 | 63 & 8 months |
| 1959 | 63 &10 months |
| 1960 and after | 64 & 0 months |

If the Retired Employee elects to draw his Social Security Benefit earlier than the age, applicable to such Retired Employee, as set forth in the Post 1937 Social Security Schedule, the Early Retirement Supplement terminates at that time.  Also, if the Retired Employee fails to notify the Pension Board of such early election, the excess payments are subject to the "penalty provisions" of Article Nine, Section 4.

(b) Interim Supplement.  A Participant who retires under Article Six, Section 2 (Early Retirement Regular) on or after the Effective Date, with less than thirty (30) years of Credited Service and before attaining age sixty-two (62), shall be entitled to a monthly Interim Supplement until he attains age sixty-two (62) and one (1) month equal to the amount applicable to him for each year of Credited Service that he had at the date of his retirement; as follows:

| Age at Retirement | Monthly Amount for Each Year of Credited Service* For Retirements March 12, 1995 and thereafter |
|-------------------|-------------------------------------|
| 54 or under | $-0- |
| 55 | 7.05 |
| 56 | 8.70 |
| 57 | 10.20 |
| 58 | 11.85 |
| 59 | 13.35 |
| 60 | 15.00 |
| 61 | 15.00 |

*Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the Participant is under the age he will attain at his next birthday.

subject to the provisions of Article Nine, Sections 3, 4, 5, and 6; provided however, that the Interim Supplement for a Participant, born after 1937 who retires on or after the Effective Date (for whom the 80% level Social Security Benefit date is beyond age 62 and one month), will terminate according to the Post 1937 Social Security Schedule.

If the Retired Employee elects to draw his Social Security Benefit earlier than the age, applicable to such Retired Employee, as set forth in in the Post 1937 Social Security Schedule, the Interim Supplement terminates at that time. Also, if the Retired Employee

DTP009633

fails to notify the Pension Board of such early election, the excess payments are subject to the "penalty provisions" of Article Nine, Section 4).

3.   **Assumptions and Adjustments in Computing Amount of Supplemental Allowance.**

(a)   The Early Retirement Supplement under Article Nine, Subsection 2 (a) or the Interim Supplement under Article Nine, Subsection 2 (b) for a Participant retiring under Article Six, Section 2 (Early Retirement) shall be calculated assuming that his Retirement Benefit commences immediately after retirement, and such Early Retirement Supplement or Interim Supplement shall be reduced for any month prior to age sixty-two (62) and one (1) month (or according to the Post 1937 Social Security Benefit Schedule for a Participant born after 1937 who retires on or after the Effective Date) for which he receives or is entitled to receive an Unreduced Social Security Benefit, by an amount equal to the amount of the Temporary Benefit to which he would have been entitled if he had retired under Article Six, Section 3 (Special Early Retirement).

(b)   The Early Retirement Supplement under Article Nine, Subsection 2 (a) for a Participant retiring under Article Six, Section 3 (Special Early Retirement) or Section 4 (Disability Retirement) shall be calculated on the assumption that he will receive his Temporary Benefit until age sixty-two (62) and one (1) month (or according to the Post 1937 Social Security Benefit Schedule for a Participant born after 1937 who retires on or after the Effective Date) even if such Temporary Benefit is not received by the Participant until such age because of his entitlement to Social Security benefits.

(c)   The Early Retirement Supplement under Article Nine, Subsection 2 (a) for a Participant who elects a Survivor Benefit provided in Article Eight shall be calculated on the basis of the Benefit he would have received if he had not elected one of the Survivor Benefit Options.

4.   **Payment of Supplemental Allowance and Penalty Provision.** Any of the Supplemental Allowances to which a Participant is entitled shall commence on the first day of the month in which the Participant retires and shall be payable monthly thereafter until the first day of the month in which he dies, or his Benefit ceases for any other reason, or he attains age sixty-two (62) and one (1) month (or according to the Post 1937 Social Security Benefit Schedule for a Participant born after 1937 who retires on or after the Effective Date) whichever occurs first; provided however, that effective March 12, 1995 and thereafter if a Retired Employee receiving any of the Supplemental Allowances has earnings after retirement in excess of $10,000 during any calendar year before he attains age sixty-two (62) and one (1) month (or according to the Post 1937 Social Security Benefit Schedule for a Participant born after 1937 who retires on or after the Effective Date) in any calendar year (such earnings being defined for this purpose as the amount and type permitted without reduction of benefits under the Federal Social Security Act or the corresponding amount and type in any future Federal legislation amending, superseding, supplementing or incorporating the Federal Social Security Act), a penalty equal to double the amount by which such earnings exceed the amount permitted shall be charged against each succeeding monthly Supplemental

DTP009634

Allowance which the Retired Employee would otherwise be entitled to receive until the full amount of such penalty is satisfied, it being understood that penalties and charges herein shall be cumulative if appropriate; and provided further, that if the Retired Employee had been receiving a Benefit under Section 4, Article Six (Disability Retirement) and had been receiving Supplemental Allowance payments and the Board finds that he is no longer Totally and Permanently Disabled he shall not, if his seniority is restored, thereby forfeit any right he may thereafter have to receive Supplemental Allowance payments if he thereafter retires under the Plan.

A Retired Employee. receiving any Supplemental Allowance before age sixty-two (62) and one (1) month (or according to the Post 1937 Social Security Benefit Schedule for a Participant born after 1937 who retires on or after the Effective Date) may be required to certify that his earnings have not been in excess of the permitted amount and to furnish verification of the amount of his earnings. If any overpayments of a Supplemental Allowance are made after a Retired Employee incurred a penalty because of excess earnings, or by reason of a Retired Employee becoming entitled to receive Social Security benefits, any such overpayments shall, unless repaid by the Retired Employee in a lump sum, be deducted from future Retirement Benefits payable to him under the Plan.

5. <u>Reduction Due to Earnings Limitation.</u> If the total of the Retired Employee's Retirement Benefit under this Plan and his monthly Supplemental Allowance receivable up to age sixty-two (62) and one (1) month (or according to the Post 1937 Social Security Benefit Schedule for a Participant born after 1937 who retires on or after the Effective Date) as computed above would exceed seventy percent (70%) of his final base pay, his monthly Supplemental Allowance (but not his Retirement Benefit under Article Seven) shall be reduced to the extent required so that such Retirement Benefit plus his Supplemental Allowance will equal seventy percent (70%) of his final base pay. For this purpose, the final monthly base pay of such Retired Employee shall mean four and one-third (4-1/3) times the base hourly rate of such Retired Employee at the time of retirement, as defined in Article IX of the Supplemental Unemployment Benefit Plan between the Company and the Union in effect at the time of his retirement, multiplied by forty (40) in the case of an hourly rated Employee, plus cost-of-living allowances but excluding overtime additions to straight time pay, shift differentials, vacation bonus, year-end bonus, or any other extra compensation.

6. <u>Discharged Participants.</u> A discharged Participant shall not be eligible to receive a Supplemental Allowance except that a discharged Participant eligible for an Early Retirement Regular Benefit under Article Seven, Section 2 may retire and also process a grievance in which a determination is sought through the regular grievance procedure under the Collective Bargaining Agreement that the reason for the discharge of the Participant shall not result in the Participant being ineligible to receive a Supplemental Allowance. If the award should provide for the payment of any wages for time not worked after the discharge, then any Retirement Benefits received by such Participant for such period of time shall be credited against the award.

7. <u>Union Leave of Absence.</u> Notwithstanding anything in this Plan, a Participant who retires while on an approved leave of absence requested by the International Union to permit such Participant to

DTP009635

engage in the business of or to work for the International Union shall be entitled to a Supplemental Allowance under this Article Nine, even though such Participant had not worked for the Company within five (5) years of retirement.

## ARTICLE TEN
### MISCELLANEOUS

1.   **Non-alienation of Benefits and Supplemental Allowance.** No Benefit or Supplemental Allowance payable at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment or encumbrance of any kind. Any attempt to alienate, sell, transfer, assign, pledge or otherwise encumber any such Benefit or Supplemental Allowance, whether presently or thereafter payable, shall be void. No Benefit or Supplemental Allowance, nor the Trust Fund, shall in any manner be liable for or subject to the debts or liability of any Participant, Surviving Eligible Spouse, or Retired Employee entitled to a Benefit or Supplemental Allowance. If the Participant, Surviving Eligible Spouse, or Retired Employee shall attempt to, or shall, alienate, sell, transfer, assign, pledge, or otherwise encumber his or her Benefit or Supplemental Allowance under the Plan or any part thereof, or if, by reason of his bankruptcy or other event happening at any such time, such Benefit or Supplemental Allowance would devolve upon anyone else or would not be enjoyed by him or her, then the Board in its discretion may terminate his or her interest in any such Benefit or Supplemental Allowance and hold or apply it to or for the benefit of such person, his or her spouse, children, or other dependents, or any of them in such manner as the Board may deem proper. Notwithstanding the foregoing;

   (a)  The Trustee shall deduct from the Retirement Benefits or Supplemental Allowances payable to a Retired Employee or Surviving Eligible Spouse who elected to participate in the Group Hospitalization and Surgical Insurance provided for in any applicable Insurance Agreement between the Company and the Union, upon notification from the Board that the Retired Employee or Surviving Eligible Spouse has so authorized, an amount equal to the contribution rate from time to time established for such insurance as certified to the Trustee by the Board, and shall pay such amount (as the Board may direct) either directly to the carrier of such insurance or to the order of the Company for transmittal to such carrier.

   (b)  A Retired Employee shall have the right, subject to the provisions of this Subsection 1 (b), to authorize the Trustee to deduct from the Retirement Benefit payable to him, and to pay to the Union on his behalf, monthly dues in such amount as shall be certified to the Trustee from time to time by the Financial Secretary of the Union as being the current rate of monthly dues for Retired Employees. Such authorization shall be made by a Retired Employee on a form provided by the Union and filed with the Board as hereinafter provided. An authorization with respect to a particular calendar year shall be effective only if filed during the month of December immediately preceding the commencement of such calendar year, or, in the case of a Participant who retires during the course of a calendar year, during the month in which such retirement occurs. Any such authorization filed with respect to a particular calendar year shall be irrevocable for the

DTP009636

remainder of such calendar year, and shall be automatically renewed with respect to each succeeding calendar year unless the Retired Employee shall file a revocation with the Board during the month of December preceding the beginning of the calendar year for which the revocation is to be effective; provided, however, that if the rate of dues for Retired Employees shall be increased, a Retired Employee shall have the right to revoke such authorization by filing a revocation with the Board within thirty (30) days after the increase in the rate of dues becomes effective, such revocation to be effective for the month following the month in which the revocation is filed. The Board shall promptly certify to the Trustee all such authorizations effectively filed by Retired Employees, and the Trustee shall give effect to such authorizations until notified by the Board of the revocation thereof. Notwithstanding the foregoing, it is mutually understood and agreed that the Board shall have the right to discontinue the deductions and payments of dues pursuant to this Subsection 1 (b) at any time when the number of Retired Employees who have currently effective authorizations on file with the Board shall be less than one hundred (100).

(c)   A Retired Employee or Surviving Eligible Spouse entitled to a Benefit under this Plan shall have the right, upon submitting to the Board written authorization and direction acceptable to the Board, to cause Federal income taxes to be withheld from the Retirement Benefits payable under the Plan in accordance with Section 3405 of the Code, or subsequent comparable statute, and the applicable regulations thereunder.

(d)   Nothing in this Article shall prevent the payment of all or a portion of the Retirement Benefits under the Plan to an alternate payee under a qualified domestic relations order as such is defined in the applicable Federal law and regulations.

2.   Vesting. Except in accordance with the provision of Article Seven, Section 7, no Participant or Eligible Spouse shall be eligible to receive any Benefit or Supplemental Allowance under the provisions of the Plan prior to the Effective Date thereof. No Participant or Eligible Spouse shall have any vested right under this Plan except such rights, if any, as may accrue to a Participant upon retirement or entitlement to a Deferred Vested Retirement Benefit or to a Eligible Spouse for a Survivor Benefit upon the death of a Participant, in accordance with the provisions of the Plan.

3.   Waiver or Suspension of Benefits.
(a)   Subject to applicable Federal law and regulations and notwithstanding anything to the contrary in the Plan, a Retired Employee or Surviving Eligible Spouse entitled to receive a Retirement Benefit, for personal reasons and without disclosure thereof, may request the Board in writing to suspend for any period of time the payment of all or of any part of such Retirement Benefits otherwise payable to him or her under the provisions of the Plan. Upon receipt of such a written request the Board shall authorize such suspension, in which event the Retired Employee or the Surviving Eligible Spouse shall be deemed to have forfeited all right to or interest in the amount of the Retirement Benefits so suspended, but the Retired Employee or the Surviving Eligible Spouse, as the case may be, shall retain the right to have the full amount of such

Page 34

DTP009637

Retirement Benefits to which he or she otherwise would be entitled reinstated with respect to future payments upon written notice to the Board of his or her desire to revoke a prior request for suspension under this Article Ten, Subsection 3 (a).   Any suspension of Retirement Benefits requested hereunder by a Retired Employee shall not affect the Survivor Benefit payable under the Survivor Benefit Option which the Retired Employee has elected or is deemed to have elected under the Plan.

(b)   In determining any Benefit or Supplemental Allowance payable to any Retired Employee, no Retirement Benefit or Supplemental Allowance shall be payable for any month during all of which the Retired Employee is receiving weekly accident or sickness benefits under any plan to which the Company shall have contributed; and for any month during part of which the Retired Employee is receiving such accident or sickness benefits, a proportionate amount of any Retirement Benefit or Supplemental Allowance otherwise payable shall be paid for that part of the month for which the Retired Employee receives no such accident or sickness benefits.

4.   <u>Gender, Number and Context.</u>   Words used in the Plan which are in the masculine gender shall include the feminine gender, the singular shall include the plural and the plural shall include the singular, all unless the context clearly indicates otherwise.   The titles of Sections and Subsections in this Plan are included solely for convenience of reference and, if there is any conflict between the titles and the text, the text shall control.

Page 35

DTP009638

ARTICLE ELEVEN

MAXIMUM ANNUAL BENEFITS

1. <u>Maximum Permissible Amount.</u>  The Annual Benefit, as such term is defined in Article Eleven, Subsection 9 (c), payable to a Participant at any time under the Plan shall not exceed the Maximum Permissible Amount, as such term is defined in Article Eleven, Subsection 9 (h).  If the Annual Benefit that the Participant would otherwise accrue in a Limitation Year, as such term is defined in Article Eleven, Subsection 9 (g), would produce an Annual Benefit in excess of the Maximum Permissible Amount, the rate of accrual will be reduced so that the annual Benefit will equal the Maximum Permissible Amount.

2. <u>Alternative Computation.</u>  The limitation in Article Eleven, Section 1 is deemed satisfied if the Annual Benefit payable to a Participant is not more than $1,000 multiplied by the Participant's years of participation (not to exceed 10) and the Company and any Affiliate has not at any time maintained any defined contribution plan in which the Participant participated.

3. <u>Maximum Permissible Amount - Less Than Ten Years of Credited Service.</u>  If a Participant has completed less than 10 years of Credited Service in the Plan, the Participant's Annual Benefit shall not exceed the Maximum Permissible Amount specified below as adjusted by multiplying such amount by a fraction, the numerator of which is the Participant's number of years of Credited Service in the Plan, and the denominator of which is 10.  In no event shall the provisions of this Section 3 reduce the limitations provided under Code Sections 415 (b) (1) and (b) (4) to an amount less than one-tenth (1/10th) of the applicable limitation (as determined without regard to this Section 3).

4. <u>Maximum Permissible Amount - Retirement Prior to Participants Social Security Retirement Age.</u>  If the Annual Benefit of a Participant commences before the Participant's Social Security Retirement Age, as such term is defined in Article Eleven, Subsection 9 (i), the Maximum Permissible Amount shall be adjusted so that it is the actuarial equivalent (as determined by using the Plan's Actuarial Factors) of an Annual Benefit of $90,000, multiplied by the Adjustment Factor, as such term is defined in Article Eleven, Subsection 9 (a), as prescribed by regulations issued by the Secretary of the Treasury of the United States, beginning at the Social Security Retirement Age.  The adjustment provided for in the preceding sentence shall be made in such manner as the Secretary of the Treasury of the United States may prescribe that is consistent with the reduction for old-age insurance benefits commencing before the Social Security Retirement Age under the Social Security Act.  In addition, the adjustment shall be based on the greater of the interest rate assumption or an assumption of 5% per year.

5. <u>Maximum Permissible Amount - Retirement After Participants Social Security Retirement Age.</u>  If the Annual Benefit of a Participant commences after the Participant's Social Security Retirement Age, the Maximum Permissible Amount shall be adjusted so that it is the actuarial equivalent (as determined by using the Plan's Actuarial Factors) of a benefit of $90,000, multiplied by the Adjustment Factor as provided by the Secretary of the Treasury of the United States, beginning at the Social Security Retirement Age.

6. <u>Current Accrued Benefit.</u>  If the Current Accrued Benefit of an individual who was a Participant as of the first day of the Limitation

Page 36

DTP009639

Year beginning on or after January 1, 1987, exceeds the benefit limitations under Code Section 415 (b), the Maximum Permissible Amount with respect to the individual shall equal that current Accrued Benefit.

7. <u>Participation In Other Company/Affiliate Defined Benefit Plans.</u> If a Participant is or has ever been a participant in any other defined benefit plan maintained by the Company or any Affiliate, the sum of the Participant's Annual Benefits from all such plans (including the Plan) shall not exceed the Maximum Permissible Amount. If the Maximum Permissible Amount would otherwise be exceeded after taking into account all such plans, the necessary reduction of the Participant's Annual Benefit shall be made under the Plan. However, if the Plan (or any other defined benefit plan of an Affiliate in which a Participant participates) was amended after May 5, 1986, but before the first Limitation Year beginning after December 31, 1986, to increase accrued benefits to a level below the Code Section 415 limits for Limitation Years beginning after 1986, such excess amounts are not reflected in the denominator of the Defined Benefit Plan Fraction for the Limitation Years beginning after 1986 or in adjusting the numerator of the Defined Contribution Plan Fraction in accordance with Federal Income Tax Regulations issued under Section 235(g)(3) of the Tax Equity and Fiscal Responsibility Act of 1982. The excess accruals are reflected in the numerator of the Defined Benefit Plan Fraction for Limitation Years beginning after 1986, unless the excess is eliminated. The excess is not reflected in the Current Accrued Benefit.

8. <u>Participation In Company/Affiliate Defined Contribution Plans.</u> If a Participant is also a participant in any defined contribution plan maintained by the Company or any Affiliate, the sum of the Participant's Defined Contribution Plan Fraction as such term is defined in Article Eleven, Subsection 10 (f) and the Defined Benefit Plan Fraction, as such term is defined in Article Eleven, Subsection 9 (e), shall not exceed 1.0 in any Limitation Year. If the sum of the fractions would exceed 1.0 in any Limitation Year, the Participant's Annual Benefit shall be reduced until the sum of the fractions is 1.0.

9. <u>Definitions.</u> For purposes of computing the limitations under this Section 9:
- (a) "<u>Adjustment Factor</u>" means the cost of living adjustment factor prescribed by the Secretary of the Treasury under Section 415 (d) of the Code for years beginning after December 31, 1987, applied to such items and in such manner as the Secretary shall prescribe.

- (b) "<u>Annual Additions</u>" with respect to a Participant means the sum of --
  - (i) The Affiliates' contribution made for him under any defined contribution plan of the Affiliates for the Limitation Year; and

  - (ii) Nondeductible contributions by the Participant for Limitation Years beginning after 1986 (as to Limitation Years beginning before 1987, only the lesser of 50% of such contribution or the amount of such contributions that exceed 6% of the Participant's compensation, as defined in Code Section 415 (c) (3), for the Limitation Year are treated as Annual Additions);

  - (iii) Forfeitures allocated to him under all defined contribution plans of the Affiliates for the Limitation

DTP009640

Year; and

(iv) (4) Any contributions allocated on the Participant's behalf to any medical account under Code Sections 401 (h) (6) and 419A (d).

(c) "Annual Benefit" means a Participant's Normal Retirement Benefit computed under Article Seven, Section 1, expressed as--

(i)   A qualified joint and survivor annuity form of payment for any married Participant if the automatic election applies to such Participant; or

(ii)   A single life annuity form of payment for any other Participant.

(d) "Current Accrued Benefit" means a Participant's Annual Benefit under the Plan, determined as if the Participant had separated from service as of the close of the last Limitation Year beginning before January 1, 1987, then expressed as an annual benefit within the meaning of Code Section 415 (b) (2).   In determining the amount of a Participant's Current Accrued Benefit, any change in the terms and conditions of the Plan after May 5, 1986 shall be disregarded.

(e) "Defined Benefit Plan Fraction" for any year means the fraction--

(i)   The numerator of which is the sum of the Participant's projected annual benefits under all tax-qualified defined benefit plans of the Affiliates (whether or not any such plan is terminated), determined as of the close of the year, and

(ii)   The denominator of which is the lesser of 125% of the dollar limitation in effect for the Limitation Year under Code Section 415 (b) (1) (A) or 140% or the average annual compensation amount.

(f) "Defined Contribution Plan Fraction" for any year means the fraction--

(i)   The numerator of which is the sum of the Annual Additions to the Participant's accounts under all tax-qualified defined contribution plans of the Affiliates (whether or not terminated) for the current and all prior Limitation Years (reduced, if applicable, in accordance with Federal Income Tax Regulations issued pursuant Section 235 (g) (3) of the Tax Equity and Fiscal Responsibility Act of 1982), and

(ii)   The denominator of which is the sum of the lesser of the following amounts determined for the current and all prior Limitation Years of service with the Affiliates:

(A) 125% of the dollar limitation in effect under Code Section 415 (c) (1) (A) for each year, or

(B) 140% of the amount which may be taken into account under Code Section 415 (c) (1) (B) with respect to him under such plan for such year.

Page 38

DTP009641

(iii) The denominator of the Defined Contribution Plan
Fraction shall be multiplied by the "transition
fraction" (as defined in Code Section 415 (e) (6) (B)),
if the Board has elected to use it.

(g) "Limitation Year" means the calendar year.

(h) "Maximum Permissible Amount" means the lesser of (A) $90,000
(multiplied by the Adjustment Factor) or (B) 100% of the
Participant's annual average of the highest three consecutive
calendar years of total compensation (as defined in Code
Section 415 (c) (3)) paid to the Participant by the
Affiliates during his active participation in the Plan (or
any other defined benefit plan of the Affiliates).

(i) "Social Security Retirement Age" means the age defined in
Code Section 415 (b) (8). Under that Section, a person's
Social Security Retirement Age is (a) 65 if the year of birth
is before 1938, (b) 66 if the year of birth if after 1937 but
before 1955, or (c) 67 if the year of birth is after 1954.

## ARTICLE TWELVE
## TERMINATION OF THE PLAN

1. Order of Priorities. In the event of termination of the Plan
embodied in this Agreement, the assets then remaining in the Trust
Fund, after providing the expenses of the Plan and of the Trust
Fund, shall be allocated, after deducting any balance in the Trust
Fund attributable to funding the cost of the Supplemental Allowances
under Article Nine, to the extent that they shall be sufficient, for
the purpose of paying Benefits (based on Credited Service to the
date of termination of the Plan) to Participants who have retired or
who retire and former Employees in the following order of
precedence:

(a) To provide Benefits at such time as they become payable under
the terms of the Plan to a Retired Employee (and his Surviving
Eligible Spouse) who was receiving a Retirement Benefit as of
the beginning of the three-year period ending on the date of
termination of the Plan (or would have been eligible to retire
and commence receiving a Retirement Benefit as of the beginning
of said three-year period), computed under the provisions of
the Plan (as in effect during the five-year period ending on
the date of termination of the Plan) which would provide the
smallest Benefit.

(b) To provide Benefits to a Retired Employee (and his Surviving
Eligible Spouse) at such time as they become payable under the
terms of the Plan, which when added to the Benefits provided
under Subsection 1 (a) above, would be equal to the Benefits
under the Plan which are determined by the Pension Benefit
Guaranty Corporation to be guaranteed under Section 4022 of
ERISA (computed without regard to Section 4022 (b) (5) of said
Act).

(c) To provide Benefits, which when added to the Benefits provided
under Subsections 1 (a) and 1 (b) above would be equal to the
Benefit to which the Participant would be entitled under the
terms of the Plan, in the following order of precedence:
(i) To provide Benefits (including any Age-Service
Supplement, Lifetime Supplement or Special Age 65 Benefit

DTP009642

that commenced prior to the date of termination of the Plan, but excluding any Supplemental Allowances under Article Nine) to Retired Employees receiving Retirement Benefits and to Participants who retire under the Plan prior to the date of termination of the Plan, and to a Surviving Eligible Spouse entitled to a Survivor Benefit under Article Eight, without reference to the order of retirement.  No increase due to a redetermination of benefits shall be provided at any date after the termination of the Plan under this Article Twelve, Subsection 1 (c), paragraph (i).

(ii)  To provide Normal Retirement Benefits (including the Special Age 65 Benefit, if such would actually be payable upon the date of termination of the Plan) upon retirement under the terms of this Plan as if it were in effect, to Participants age sixty-five (65) or older and who have ten (10) years or more of Credited Service on the date of termination of the Plan, without reference to the order in which they reached age sixty-five (65), and to provide Disability Retirement Benefits, excluding any Supplemental Allowances under Article Nine, to Participants who on the date of termination of the Plan have been approved for a Disability Retirement Benefit but who have not then commenced to receive such benefit.

(iii)  To provide at age sixty-five (65) or, if the Participant elects, at such earlier age as the Participant may elect to receive a Normal Retirement Benefit (excluding the Special Age 65 Benefit) provided for under the terms of the Plan as now in effect, at the level reached on September 7, 1989, to Participants who on the date of termination of the Plan have ten (10) years or more of Credited Service, without reference to their ages on the date of termination of the Plan or to the order in which they shall reach age sixty-five (65).

(iv)  To provide additional Benefits which, when added to the Benefits received under Subsection 1 (c) (i) above, shall equal the Benefits otherwise provided under the Plan as now in effect (excluding any Supplemental Allowances under Article Nine and excluding any Age-Service Supplement, Lifetime Supplement or Special Age 65 Benefit not otherwise payable under Subsection 1 (c) (i) above) to Retired Employees receiving Benefits and to Participants who retire under the Plan prior to the date of its termination, and to a Eligible Spouse entitled to a Survivor Benefit under Article Eight without reference to order of retirement;

(v)  To provide additional Benefits which, when added to the Benefits received under Subsection 1 (c) (ii) above, shall equal the Benefits otherwise provided under the Plan as now in effect, to Participants age sixty-five (65) or older and who have ten (10) years or more of Credited Service on the date of termination of the Plan, without reference to the order in which they reached age sixty-five (65) and to provide additional Benefits which, when added to the Benefits received under Subsection 1 (c) (ii) above, shall equal the Benefits (excluding any

Page 40

DTP009643

Supplemental Allowances under Article Nine) otherwise provided under the Plan as now in effect, to Participants who on the date of termination of the Plan have been approved for a Disability Retirement Benefit but who have not then commenced to receive such a Benefit;

(vi) To provide, at age sixty-five (65), additional Benefits (excluding the Special Age 65 Benefit) which when added to the Benefits received under Subsection 1 (c) (iii) above, shall equal the Normal Retirement Benefit provided for under the Plan as now in effect for Participants who on the date of termination of the Plan have met the requirements of Article Six, Section 2, for Early Retirement, without reference to the order in which they shall reach age sixty-five.

(vii) To provide, at age sixty-five (65), Benefits (excluding the Special Age 65 Benefit) which when added to the Benefits received under Subsection 1 (c) (iii) if any, shall equal the Normal Retirement Benefit provided under the Plan, as now in effect, to Participants less than age sixty (60) and whose combined age and Credited Service (to the nearest one-twelfth (1/12th) in each case) equal at least sixty (60) on the date of termination of the Plan, without reference to the order in which they shall reach age sixty-five (65);

(viii) To provide, at age sixty-five (65) or upon the date of termination of the Plan (if the Participant is age sixty-five (65) or older), Benefits (excluding the Special Age 65 Benefit) which, when added to the Benefits received under Subsection 1 (c) (iii), if any, shall equal the Normal Retirement Benefit provided for under the terms of the Plan, as now in effect, to Participants on the date of termination of the Plan who are not provided for above in this Article Twelve, Section 1, without reference to the order in which they shall reach or shall have reached age sixty-five (65);

(ix) Within each of the above Subsections 1 (a) through (c) (viii), shall be included such former Participants eligible for a Deferred Vested Retirement Benefit under Article Seven, Section 5, who are eligible for such Benefit on the date of termination of employment.

(x) To provide Special Age 65 Benefits commencing on the first day of the month following the month in which age sixty-five (65) is attained to Retired Employees and eligible Surviving Eligible Spouses provided for in Subsection 1 (a) and Subsection 1 (c) (iv) who are under age sixty-five (65) on the date of termination of the Plan.

The assets remaining in the Trust Fund attributable to funding the cost of Supplemental Allowances payable under any Prior Agreement and Supplemental Allowances payable as provided under Article Nine in the Plan, as now in effect, shall be allocated, to the extent that they shall be sufficient, in the following order of precedence:

Page 41

DTP009644

       1. To continue payments of Supplemental Allowances payable under any Prior Agreement and Supplemental Allowances payable under Article Nine in the Plan, as now in effect to Participants who shall have retired under the Plan prior to its termination;

       2. To provide for the payment to Participants who have made an application, which is subsequently approved, for a Disability Retirement Benefit under the Plan prior to its termination, who are otherwise entitled to a Supplemental Allowance, of the amount of such Supplemental Allowance;

       3. To provide for the payment to all other Participants on the date of termination of the Plan of their proportionate share of any actuarial reserve for Supplemental Allowances for them as certified by the Actuary.

   (d) If under this Article Twelve, Subsection 1, above, after having made provision in the above order of precedence for some but not all of the groups listed above, the assets then remaining in the Trust Fund are not sufficient to provide completely for the Benefits for persons in the next group, such Benefits shall be provided for each person in such group on a pro-rata basis as determined by the Actuary.

2.   <u>Methods of Allocation</u>. The allocation hereinbefore specified shall be accomplished through either (i) continuance of the Trust Fund or a new Trust Fund, or (ii) purchase of insurance annuity contracts; provided, however, that the Board, upon finding that it is not practicable or desirable under the circumstances to do either of the foregoing with respect to some or all of the groups listed in Article Twelve, Section 1, with the unanimous consent of its members, may provide for allocation of a part or all of the assets of the Trust Fund other than by the continuance of a Trust Fund or the purchase of insurance annuity contracts with respect to any or all of such groups; provided, further, however, that no change shall be made in the order of precedence and basis for allocation established in Article Twelve, Section 1. Except as otherwise provided in the Supplemental Retirement Income Program Agreement between the Company and the Union of even date herewith, there shall be no liability or obligation on the part of the Company to make further contributions to the original Trust Fund or such new Trust Fund in the event of termination of the Plan.

3.   <u>Merger or Consolidation</u>. In the event of any merger or consolidation of the Plan with, or transfer in whole or in part of the assets and liabilities of the Trust Fund to another trust fund held under any other plan of deferred compensation maintained or to be established for the benefit of all or some of the Participants, the assets of the Trust Fund applicable to such Participants shall be transferred to the other trust fund only if each Participant would (if either this Plan or the other plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if this Plan has been terminated), and such other plan and trust are qualified under Sections 401 (a) and 501 (b) of the Internal Revenue Code.

DTP009645

4.  **Partial Termination.** In the event of a partial termination of the Plan, each affected Participant's Accrued Benefit, based on Credited Service prior to the effective date of the partial termination shall become fully vested and nonforfeitable to the extent funded. The extent funded shall be determined by computing the extent funded for the affected Participants as if the entire Plan had terminated and assets allocated in accordance with Article Twelve, Section One.

## ARTICLE THIRTEEN
### AMENDMENT AND DURATION OF THE PLAN

1.  **Commencement of Increased Benefits Contingent on Internal Revenue Approval.** This Agreement and the Plan provided for herein shall be effective March 12,1995, contingent upon and subject to approval from the Internal Revenue Service of the Plan and Trust established in connection herewith for exemption from taxation under Sections 401 and 501 (a) and other applicable provisions of the Code, and deductibility of contributions under Section 404 and other applicable provisions of the Code. Benefits not paid pending such approval shall be paid retroactively to the date they would otherwise have become due and payable after such approval is received, but in no event shall any of the Benefits provided for herein be paid for any month prior to March 12, 1995. Any modifications, alterations or amendments required by the Internal Revenue Service, for the purpose of approval of the Plan under Section 401 (a) and other applicable provisions of the Code, shall be made retroactively.

2.  **Amendment and Duration.** This Agreement shall continue in full force and effect until March 12, 1998. During the term of this Agreement neither the Company nor the Union shall request any change in, deletion from, or addition to the Agreement, or be required to bargain with respect to any change in this Agreement, nor shall any modifications, alterations or amendment of said Agreement be an objective or be stated as a reason for any strike or lockout, or other exercise of economic force or threat by the Union or the Company.

    As of March 12, 1998, this Agreement may be terminated, modified, changed or continued in the same manner as provided in Article Sixteen of the Collective Bargaining Agreement. In the event this Agreement shall terminate, the Company shall have no obligation to continue the Plan.

COMPANY
------------------------------------

UNION
------------------------------------

BY ----------------------------------
Glen O. Eckelman, Director
Labor Relations & Compensation

by ----------------------------------
Director, Region Three
International Representative

----------------------------------
John C. Daffara, Director
Human Resources & Govermental
Affairs

DTP009646

```
------------------------------          ------------------------------
R.  A. Nuerge, Manager                  ------------------------------
Benefits & Office Services

------------------------------          ------------------------------
Robert Cruea, Mgr. Labor                ------------------------------
Relations-Transmissions
                                        ------------------------------

                                        ------------------------------

                                        ------------------------------

                                        ------------------------------

                                        ------------------------------

                                        ------------------------------
```

```
------------------------------
Date signed
```

DTP009647

## SUPPLEMENTAL RETIREMENT INCOME PROGRAM AGREEMENT

THIS SUPPLEMENTAL RETIREMENT INCOME PROGRAM AGREEMENT, entered into this 12th day of March, 1995 between Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, hereinafter called the Company as defined in Article One, Section 11 of the Retirement Income Program Agreement of even date, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and its Local Union No. 287, hereinafter called the Union as defined in Article One, Section 38, of the Retirement Income Program Agreement of even date.

### WITNESSETH THAT:

WHEREAS, the Company and the Union have entered into the Retirement Income Program Agreement dated March 12, 1995; and

WHEREAS, the Company and the Union after negotiations have agreed upon provisions for the guaranteed payment by the Company of certain retirement income benefits under certain conditions; and

WHEREAS, the Company and the Union desire to incorporate such provisions in this Supplemental Retirement Income Program Agreement;

NOW, THEREFORE, the Company and the Union agree as follows:

1.    In the event that the Retirement Income Program established in the Retirement Income Program Agreement entered into on March 12, 1995 is terminated in accordance with its terms by reason of the closing of the plants of the Company located in the City of Muncie and Delaware County, Indiana and the assets in the Trust Fund maintained pursuant to the Retirement Income Program Agreement at such time are not sufficient, if allocated in accordance with the terms of Section 1 of Article Twelve of said Retirement Income Program Agreement, to provide in full the benefits described in Subsections (a), (b), (c)(i), (c)(ii), (c)(iii), and (c)(iv) of said Section 1, Article Twelve, the Company agrees to pay or cause to be paid said benefits (and all Supplemental Allowances to which the Participants covered by Subsections (a), (c)(i) and (c)(ii) of said Section 1, Article Twelve, are eligible for under Article Nine of the Retirement Income Program Agreement) as they from time to time become due to all persons eligible therefor under said Subsections to the extent that said benefits are not provided from the assets in said Trust Fund. The obligations of the Company hereunder may be discharged by the continuation of the Trust Fund and further contributions, in such amounts and at such time as determined by the Company in its discretion, to said Trust Fund or the purchase of insurance annuity contracts or such other manner as the Company deems appropriate.

2.    The Supplemental Retirement Income Program Agreement between the Company and the Union entered into on October 27, 1989, shall terminate as of March 11, 1995. This Supplemental Retirement Income Program Agreement shall be effective as of March 12, 1995 and shall continue in full force and effect until the execution of a Retirement Income Program Agreement which supersedes this Retirement Income Porgram Agreement. This Supplemental Retirement Income Program Agreement shall be subject to negotiation at the same time specified for negotiations on the subject of a Retirement Income Program under Section 2, Article Thirteen of said Retirement Income Program Agreement.

DTP009648

Executed at Muncie, Indiana, on the day and year written below.

                COMPANY                                        UNION
-------------------------------              --------------------------------

BY ------------------------------
Glen O.  Eckelman, Director
Labor Relations & Compensation

                                          by ------------------------------
                                             Director, Region Three

-------------------------------              International Representative
John C.  Daffara, Director
Human Resources & Govermental Affairs

-------------------------------              --------------------------------
  R.  A. Nuerge, Manager
  Benefits & Office Services                 --------------------------------

-------------------------------              --------------------------------
  Robert Cruea, Mgr. Labor
  Relations-Transmissions                    --------------------------------

                                             --------------------------------

                                             --------------------------------

                                             --------------------------------

                                             --------------------------------

                                             --------------------------------

-------------------------------
   Date signed

Page 46

DTP009649

FACTOR=$2.000          BORG-WARNER AUTOMOTIVE DTPC, MUNCIE          MONTHLY PENSION AMOUNT=$2.00
RATE SCHEDULE FOR $24.00 PER YEAR PER MONTH     EFFECTIVE 4/1/95 UNTIL 4/1/96

| YRS | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | $120.00 | $122.00 | $124.00 | $126.00 | $128.00 | $130.00 | $132.00 | $134.00 | $136.00 | $138.00 | $140.00 | $142.00 |
| 6 | $144.00 | $146.00 | $148.00 | $150.00 | $152.00 | $154.00 | $156.00 | $158.00 | $160.00 | $162.00 | $164.00 | $166.00 |
| 7 | $168.00 | $170.00 | $172.00 | $174.00 | $176.00 | $178.00 | $180.00 | $182.00 | $184.00 | $186.00 | $188.00 | $190.00 |
| 8 | $192.00 | $194.00 | $196.00 | $198.00 | $200.00 | $202.00 | $204.00 | $206.00 | $208.00 | $210.00 | $212.00 | $214.00 |
| 9 | $216.00 | $218.00 | $220.00 | $222.00 | $224.00 | $226.00 | $228.00 | $230.00 | $232.00 | $234.00 | $236.00 | $238.00 |
| 10 | $240.00 | $242.00 | $244.00 | $246.00 | $248.00 | $250.00 | $252.00 | $254.00 | $256.00 | $258.00 | $260.00 | $262.00 |
| 11 | $264.00 | $266.00 | $268.00 | $270.00 | $272.00 | $274.00 | $276.00 | $278.00 | $280.00 | $282.00 | $284.00 | $286.00 |
| 12 | $288.00 | $290.00 | $292.00 | $294.00 | $296.00 | $298.00 | $300.00 | $302.00 | $304.00 | $306.00 | $308.00 | $310.00 |
| 13 | $312.00 | $314.00 | $316.00 | $318.00 | $320.00 | $322.00 | $324.00 | $326.00 | $328.00 | $330.00 | $332.00 | $334.00 |
| 14 | $336.00 | $338.00 | $340.00 | $342.00 | $344.00 | $346.00 | $348.00 | $350.00 | $352.00 | $354.00 | $356.00 | $358.00 |
| 15 | $360.00 | $362.00 | $364.00 | $366.00 | $368.00 | $370.00 | $372.00 | $374.00 | $376.00 | $378.00 | $380.00 | $382.00 |
| 16 | $384.00 | $386.00 | $388.00 | $390.00 | $392.00 | $394.00 | $396.00 | $398.00 | $400.00 | $402.00 | $404.00 | $406.00 |
| 17 | $408.00 | $410.00 | $412.00 | $414.00 | $416.00 | $418.00 | $420.00 | $422.00 | $424.00 | $426.00 | $428.00 | $430.00 |
| 18 | $432.00 | $434.00 | $436.00 | $438.00 | $440.00 | $442.00 | $444.00 | $446.00 | $448.00 | $450.00 | $452.00 | $454.00 |
| 19 | $456.00 | $458.00 | $460.00 | $462.00 | $464.00 | $466.00 | $468.00 | $470.00 | $472.00 | $474.00 | $476.00 | $478.00 |
| 20 | $480.00 | $482.00 | $484.00 | $486.00 | $488.00 | $490.00 | $492.00 | $494.00 | $496.00 | $498.00 | $500.00 | $502.00 |
| 21 | $504.00 | $506.00 | $508.00 | $510.00 | $512.00 | $514.00 | $516.00 | $518.00 | $520.00 | $522.00 | $524.00 | $526.00 |
| 22 | $528.00 | $530.00 | $532.00 | $534.00 | $536.00 | $538.00 | $540.00 | $542.00 | $544.00 | $546.00 | $548.00 | $550.00 |
| 23 | $552.00 | $554.00 | $556.00 | $558.00 | $560.00 | $562.00 | $564.00 | $566.00 | $568.00 | $570.00 | $572.00 | $574.00 |
| 24 | $576.00 | $578.00 | $580.00 | $582.00 | $584.00 | $586.00 | $588.00 | $590.00 | $592.00 | $594.00 | $596.00 | $598.00 |
| 25 | $600.00 | $602.00 | $604.00 | $606.00 | $608.00 | $610.00 | $612.00 | $614.00 | $616.00 | $618.00 | $620.00 | $622.00 |
| 26 | $624.00 | $626.00 | $628.00 | $630.00 | $632.00 | $634.00 | $636.00 | $638.00 | $640.00 | $642.00 | $644.00 | $646.00 |
| 27 | $648.00 | $650.00 | $652.00 | $654.00 | $656.00 | $658.00 | $660.00 | $662.00 | $664.00 | $666.00 | $668.00 | $670.00 |
| 28 | $672.00 | $674.00 | $676.00 | $678.00 | $680.00 | $682.00 | $684.00 | $686.00 | $688.00 | $690.00 | $692.00 | $694.00 |
| 29 | $696.00 | $698.00 | $700.00 | $702.00 | $704.00 | $706.00 | $708.00 | $710.00 | $712.00 | $714.00 | $716.00 | $718.00 |
| 30 | $720.00 | $722.00 | $724.00 | $726.00 | $728.00 | $730.00 | $732.00 | $734.00 | $736.00 | $738.00 | $740.00 | $742.00 |
| 31 | $744.00 | $746.00 | $748.00 | $750.00 | $752.00 | $754.00 | $756.00 | $758.00 | $760.00 | $762.00 | $764.00 | $766.00 |
| 32 | $768.00 | $770.00 | $772.00 | $774.00 | $776.00 | $778.00 | $780.00 | $782.00 | $784.00 | $786.00 | $788.00 | $790.00 |
| 33 | $792.00 | $794.00 | $796.00 | $798.00 | $800.00 | $802.00 | $804.00 | $806.00 | $808.00 | $810.00 | $812.00 | $814.00 |
| 34 | $816.00 | $818.00 | $820.00 | $822.00 | $824.00 | $826.00 | $828.00 | $830.00 | $832.00 | $834.00 | $836.00 | $838.00 |
| 35 | $840.00 | $842.00 | $844.00 | $846.00 | $848.00 | $850.00 | $852.00 | $854.00 | $856.00 | $858.00 | $860.00 | $862.00 |
| 36 | $864.00 | $866.00 | $868.00 | $870.00 | $872.00 | $874.00 | $876.00 | $878.00 | $880.00 | $882.00 | $884.00 | $886.00 |
| 37 | $888.00 | $890.00 | $892.00 | $894.00 | $896.00 | $898.00 | $900.00 | $902.00 | $904.00 | $906.00 | $908.00 | $910.00 |
| 38 | $912.00 | $914.00 | $916.00 | $918.00 | $920.00 | $922.00 | $924.00 | $926.00 | $928.00 | $930.00 | $932.00 | $934.00 |
| 39 | $936.00 | $938.00 | $940.00 | $942.00 | $944.00 | $946.00 | $948.00 | $950.00 | $952.00 | $954.00 | $956.00 | $958.00 |
| 40 | $960.00 | $962.00 | $964.00 | $966.00 | $968.00 | $970.00 | $972.00 | $974.00 | $976.00 | $978.00 | $980.00 | $982.00 |
| 41 | $984.00 | $986.00 | $988.00 | $990.00 | $992.00 | $994.00 | $996.00 | $998.00 | $1,000.00 | $1,002.00 | $1,004.00 | $1,006.00 |
| 42 | $1,008.00 | $1,010.00 | $1,012.00 | $1,014.00 | $1,016.00 | $1,018.00 | $1,020.00 | $1,022.00 | $1,024.00 | $1,026.00 | $1,028.00 | $1,030.00 |
| 43 | $1,032.00 | $1,034.00 | $1,036.00 | $1,038.00 | $1,040.00 | $1,042.00 | $1,044.00 | $1,046.00 | $1,048.00 | $1,050.00 | $1,052.00 | $1,054.00 |
| 44 | $1,056.00 | $1,058.00 | $1,060.00 | $1,062.00 | $1,064.00 | $1,066.00 | $1,068.00 | $1,070.00 | $1,072.00 | $1,074.00 | $1,076.00 | $1,078.00 |
| 45 | $1,080.00 | $1,082.00 | $1,084.00 | $1,086.00 | $1,088.00 | $1,090.00 | $1,092.00 | $1,094.00 | $1,096.00 | $1,098.00 | $1,100.00 | $1,102.00 |
| 46 | $1,104.00 | $1,106.00 | $1,108.00 | $1,110.00 | $1,112.00 | $1,114.00 | $1,116.00 | $1,118.00 | $1,120.00 | $1,122.00 | $1,124.00 | $1,126.00 |
| 47 | $1,128.00 | $1,130.00 | $1,132.00 | $1,134.00 | $1,136.00 | $1,138.00 | $1,140.00 | $1,142.00 | $1,144.00 | $1,146.00 | $1,148.00 | $1,150.00 |
| 48 | $1,152.00 | $1,154.00 | $1,156.00 | $1,158.00 | $1,160.00 | $1,162.00 | $1,164.00 | $1,166.00 | $1,168.00 | $1,170.00 | $1,172.00 | $1,174.00 |
| 49 | $1,176.00 | $1,178.00 | $1,180.00 | $1,182.00 | $1,184.00 | $1,186.00 | $1,188.00 | $1,190.00 | $1,192.00 | $1,194.00 | $1,196.00 | $1,198.00 |
| 50 | $1,200.00 | $1,202.00 | $1,204.00 | $1,206.00 | $1,208.00 | $1,210.00 | $1,212.00 | $1,214.00 | $1,216.00 | $1,218.00 | $1,220.00 | $1,222.00 |

Page 47

DTP009650

FACTOR=$2.083333  BORG-WARNER AUTOMOTIVE DTPC, MUNCIE  MONTHLY PENSION AMOUNT=$2.083333

RATE SCHEDULE FOR $25.00 PER YEAR PER MONTH  EFFECTIVE 4/1/96 UNTIL 4/1/97

| YRS | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | $125.00 | $127.08 | $129.17 | $131.25 | $133.33 | $135.42 | $137.50 | $139.58 | $141.67 | $143.75 | $145.83 | $147.92 |
| 6 | $150.00 | $152.08 | $154.17 | $156.25 | $158.33 | $160.42 | $162.50 | $164.58 | $166.67 | $168.75 | $170.83 | $172.92 |
| 7 | $175.00 | $177.08 | $179.17 | $181.25 | $183.33 | $185.42 | $187.50 | $189.58 | $191.67 | $193.75 | $195.83 | $197.92 |
| 8 | $200.00 | $202.08 | $204.17 | $206.25 | $208.33 | $210.42 | $212.50 | $214.58 | $216.67 | $218.75 | $220.83 | $222.92 |
| 9 | $225.00 | $227.08 | $229.17 | $231.25 | $233.33 | $235.42 | $237.50 | $239.58 | $241.67 | $243.75 | $245.83 | $247.92 |
| 10 | $250.00 | $252.08 | $254.17 | $256.25 | $258.33 | $260.42 | $262.50 | $264.58 | $266.67 | $268.75 | $270.83 | $272.92 |
| 11 | $275.00 | $277.08 | $279.17 | $281.25 | $283.33 | $285.42 | $287.50 | $289.58 | $291.67 | $293.75 | $295.83 | $297.92 |
| 12 | $300.00 | $302.08 | $304.17 | $306.25 | $308.33 | $310.42 | $312.50 | $314.58 | $316.67 | $318.75 | $320.83 | $322.92 |
| 13 | $325.00 | $327.08 | $329.17 | $331.25 | $333.33 | $335.42 | $337.50 | $339.58 | $341.67 | $343.75 | $345.83 | $347.92 |
| 14 | $350.00 | $352.08 | $354.17 | $356.25 | $358.33 | $360.42 | $362.50 | $364.58 | $366.67 | $368.75 | $370.83 | $372.92 |
| 15 | $375.00 | $377.08 | $379.17 | $381.25 | $383.33 | $385.42 | $387.50 | $389.58 | $391.67 | $393.75 | $395.83 | $397.92 |
| 16 | $400.00 | $402.08 | $404.17 | $406.25 | $408.33 | $410.42 | $412.50 | $414.58 | $416.67 | $418.75 | $420.83 | $422.92 |
| 17 | $425.00 | $427.08 | $429.17 | $431.25 | $433.33 | $435.42 | $437.50 | $439.58 | $441.67 | $443.75 | $445.83 | $447.92 |
| 18 | $450.00 | $452.08 | $454.17 | $456.25 | $458.33 | $460.42 | $462.50 | $464.58 | $466.67 | $468.75 | $470.83 | $472.92 |
| 19 | $475.00 | $477.08 | $479.17 | $481.25 | $483.33 | $485.42 | $487.50 | $489.58 | $491.67 | $493.75 | $495.83 | $497.92 |
| 20 | $500.00 | $502.08 | $504.17 | $506.25 | $508.33 | $510.42 | $512.50 | $514.58 | $516.67 | $518.75 | $520.83 | $522.92 |
| 21 | $525.00 | $527.08 | $529.17 | $531.25 | $533.33 | $535.42 | $537.50 | $539.58 | $541.67 | $543.75 | $545.83 | $547.92 |
| 22 | $550.00 | $552.08 | $554.17 | $556.25 | $558.33 | $560.42 | $562.50 | $564.58 | $566.67 | $568.75 | $570.83 | $572.92 |
| 23 | $575.00 | $577.08 | $579.17 | $581.25 | $583.33 | $585.42 | $587.50 | $589.58 | $591.67 | $593.75 | $595.83 | $597.92 |
| 24 | $600.00 | $602.08 | $604.17 | $606.25 | $608.33 | $610.42 | $612.50 | $614.58 | $616.67 | $618.75 | $620.83 | $622.92 |
| 25 | $625.00 | $627.08 | $629.17 | $631.25 | $633.33 | $635.42 | $637.50 | $639.58 | $641.67 | $643.75 | $645.83 | $647.92 |
| 26 | $650.00 | $652.08 | $654.17 | $656.25 | $658.33 | $660.42 | $662.50 | $664.58 | $666.67 | $668.75 | $670.83 | $672.92 |
| 27 | $675.00 | $677.08 | $679.17 | $681.25 | $683.33 | $685.42 | $687.50 | $689.58 | $691.67 | $693.75 | $695.83 | $697.92 |
| 28 | $700.00 | $702.08 | $704.17 | $706.25 | $708.33 | $710.42 | $712.50 | $714.58 | $716.67 | $718.75 | $720.83 | $722.92 |
| 29 | $725.00 | $727.08 | $729.17 | $731.25 | $733.33 | $735.42 | $737.50 | $739.58 | $741.67 | $743.75 | $745.83 | $747.92 |
| 30 | $750.00 | $752.08 | $754.17 | $756.25 | $758.33 | $760.42 | $762.50 | $764.58 | $766.67 | $768.75 | $770.83 | $772.92 |
| 31 | $775.00 | $777.08 | $779.17 | $781.25 | $783.33 | $785.42 | $787.50 | $789.58 | $791.67 | $793.75 | $795.83 | $797.92 |
| 32 | $800.00 | $802.08 | $804.17 | $806.25 | $808.33 | $810.42 | $812.50 | $814.58 | $816.67 | $818.75 | $820.83 | $822.92 |
| 33 | $825.00 | $827.08 | $829.17 | $831.25 | $833.33 | $835.42 | $837.50 | $839.58 | $841.67 | $843.75 | $845.83 | $847.92 |
| 34 | $850.00 | $852.08 | $854.17 | $856.25 | $858.33 | $860.42 | $862.50 | $864.58 | $866.67 | $868.75 | $870.83 | $872.92 |
| 35 | $875.00 | $877.08 | $879.17 | $881.25 | $883.33 | $885.42 | $887.50 | $889.58 | $891.67 | $893.75 | $895.83 | $897.92 |
| 36 | $900.00 | $902.08 | $904.17 | $906.25 | $908.33 | $910.42 | $912.50 | $914.58 | $916.67 | $918.75 | $920.83 | $922.92 |
| 37 | $925.00 | $927.08 | $929.17 | $931.25 | $933.33 | $935.42 | $937.50 | $939.58 | $941.67 | $943.75 | $945.83 | $947.92 |
| 38 | $950.00 | $952.08 | $954.17 | $956.25 | $958.33 | $960.42 | $962.50 | $964.58 | $966.67 | $968.75 | $970.83 | $972.92 |
| 39 | $975.00 | $977.08 | $979.17 | $981.25 | $983.33 | $985.42 | $987.50 | $989.58 | $991.67 | $993.75 | $995.83 | $997.92 |
| 40 | $1,000.00 | $1,002.08 | $1,004.17 | $1,006.25 | $1,008.33 | $1,010.42 | $1,012.50 | $1,014.58 | $1,016.67 | $1,018.75 | $1,020.83 | $1,022.92 |
| 41 | $1,025.00 | $1,027.08 | $1,029.17 | $1,031.25 | $1,033.33 | $1,035.42 | $1,037.50 | $1,039.58 | $1,041.67 | $1,043.75 | $1,045.83 | $1,047.92 |
| 42 | $1,050.00 | $1,052.08 | $1,054.17 | $1,056.25 | $1,058.33 | $1,060.42 | $1,062.50 | $1,064.58 | $1,066.67 | $1,068.75 | $1,070.83 | $1,072.92 |
| 43 | $1,075.00 | $1,077.08 | $1,079.17 | $1,081.25 | $1,083.33 | $1,085.42 | $1,087.50 | $1,089.58 | $1,091.67 | $1,093.75 | $1,095.83 | $1,097.92 |
| 44 | $1,100.00 | $1,102.08 | $1,104.17 | $1,106.25 | $1,108.33 | $1,110.42 | $1,112.50 | $1,114.58 | $1,116.67 | $1,118.75 | $1,120.83 | $1,122.92 |
| 45 | $1,125.00 | $1,127.08 | $1,129.17 | $1,131.25 | $1,133.33 | $1,135.42 | $1,137.50 | $1,139.58 | $1,141.67 | $1,143.75 | $1,145.83 | $1,147.92 |
| 46 | $1,150.00 | $1,152.08 | $1,154.17 | $1,156.25 | $1,158.33 | $1,160.42 | $1,162.50 | $1,164.58 | $1,166.67 | $1,168.75 | $1,170.83 | $1,172.92 |
| 47 | $1,175.00 | $1,177.08 | $1,179.17 | $1,181.25 | $1,183.33 | $1,185.42 | $1,187.50 | $1,189.58 | $1,191.67 | $1,193.75 | $1,195.83 | $1,197.92 |
| 48 | $1,200.00 | $1,202.08 | $1,204.17 | $1,206.25 | $1,208.33 | $1,210.42 | $1,212.50 | $1,214.58 | $1,216.67 | $1,218.75 | $1,220.83 | $1,222.92 |
| 49 | $1,225.00 | $1,227.08 | $1,229.17 | $1,231.25 | $1,233.33 | $1,235.42 | $1,237.50 | $1,239.58 | $1,241.67 | $1,243.75 | $1,245.83 | $1,247.92 |
| 50 | $1,250.00 | $1,252.08 | $1,254.17 | $1,256.25 | $1,258.33 | $1,260.42 | $1,262.50 | $1,264.58 | $1,266.67 | $1,268.75 | $1,270.83 | $1,272.92 |

DTP009651

FACTOR=$2.208333          BORG-WARNER AUTOMOTIVE DTPC, MUNCIE          MONTHLY PENSION AMOUNT=$2.208333
RATE SCHEDULE FOR $26.50 PER YEAR PER MONTH     EFFECTIVE 4/1/97 & AFTER

| YRS | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | $132.50 | $134.71 | $136.92 | $139.12 | $141.33 | $143.54 | $145.75 | $147.96 | $150.17 | $152.37 | $154.58 | $156.79 |
| 6 | $159.00 | $161.21 | $163.42 | $165.62 | $167.83 | $170.04 | $172.25 | $174.46 | $176.67 | $178.87 | $181.08 | $183.29 |
| 7 | $185.50 | $187.71 | $189.92 | $192.12 | $194.33 | $196.54 | $198.75 | $200.96 | $203.17 | $205.37 | $207.58 | $209.79 |
| 8 | $212.00 | $214.21 | $216.42 | $218.62 | $220.83 | $223.04 | $225.25 | $227.46 | $229.87 | $231.87 | $234.08 | $236.29 |
| 9 | $238.50 | $240.71 | $242.92 | $245.12 | $247.33 | $249.54 | $251.75 | $253.96 | $256.17 | $258.37 | $260.58 | $262.79 |
| 10 | $265.00 | $267.21 | $269.42 | $271.62 | $273.83 | $276.04 | $278.25 | $280.46 | $282.67 | $284.87 | $287.08 | $289.29 |
| 11 | $291.50 | $293.71 | $295.92 | $298.12 | $300.33 | $302.54 | $304.75 | $306.96 | $309.17 | $311.37 | $313.58 | $315.79 |
| 12 | $318.00 | $320.21 | $322.42 | $324.62 | $326.83 | $329.04 | $331.25 | $333.46 | $335.67 | $337.87 | $340.08 | $342.29 |
| 13 | $344.50 | $346.71 | $348.92 | $351.12 | $353.33 | $355.54 | $357.75 | $359.96 | $362.17 | $364.37 | $366.58 | $368.79 |
| 14 | $371.00 | $373.21 | $375.42 | $377.62 | $379.83 | $382.04 | $384.25 | $386.46 | $388.67 | $390.87 | $393.08 | $395.29 |
| 15 | $397.50 | $399.71 | $401.92 | $404.12 | $406.33 | $408.54 | $410.75 | $412.96 | $415.17 | $417.37 | $419.58 | $421.79 |
| 16 | $424.00 | $426.21 | $428.42 | $430.62 | $432.83 | $435.04 | $437.25 | $439.46 | $441.67 | $443.87 | $446.08 | $448.29 |
| 17 | $450.50 | $452.71 | $454.92 | $457.12 | $459.33 | $461.54 | $463.75 | $465.96 | $468.17 | $470.37 | $472.58 | $474.79 |
| 18 | $477.00 | $479.21 | $481.42 | $483.62 | $485.83 | $488.04 | $490.25 | $492.46 | $494.67 | $496.87 | $499.08 | $501.29 |
| 19 | $503.50 | $505.71 | $507.92 | $510.12 | $512.33 | $514.54 | $516.75 | $518.96 | $521.17 | $523.37 | $525.58 | $527.79 |
| 20 | $530.00 | $532.21 | $534.42 | $536.62 | $538.83 | $541.04 | $543.25 | $545.46 | $547.67 | $549.87 | $552.08 | $554.29 |
| 21 | $556.50 | $558.71 | $560.92 | $563.12 | $565.33 | $567.54 | $569.75 | $571.96 | $574.17 | $576.37 | $578.58 | $580.79 |
| 22 | $583.00 | $585.21 | $587.42 | $589.62 | $591.83 | $594.04 | $596.25 | $598.46 | $600.67 | $602.87 | $605.08 | $607.29 |
| 23 | $609.50 | $611.71 | $613.92 | $616.12 | $618.33 | $620.54 | $622.75 | $624.96 | $627.17 | $629.37 | $631.58 | $633.79 |
| 24 | $636.00 | $638.21 | $640.42 | $642.62 | $644.83 | $647.04 | $649.25 | $651.46 | $653.67 | $655.87 | $658.08 | $660.29 |
| 25 | $662.50 | $664.71 | $666.92 | $669.12 | $671.33 | $673.54 | $675.75 | $677.96 | $680.17 | $682.37 | $684.58 | $686.79 |
| 26 | $689.00 | $691.21 | $693.42 | $695.62 | $697.83 | $700.04 | $702.25 | $704.46 | $706.67 | $708.87 | $711.08 | $713.29 |
| 27 | $715.50 | $717.71 | $719.92 | $722.12 | $724.33 | $726.54 | $728.75 | $730.96 | $733.17 | $735.37 | $737.58 | $739.79 |
| 28 | $742.00 | $744.21 | $746.42 | $748.62 | $750.83 | $753.04 | $755.25 | $757.46 | $759.67 | $761.87 | $764.08 | $766.29 |
| 29 | $768.50 | $770.71 | $772.92 | $775.12 | $777.33 | $779.54 | $781.75 | $783.96 | $786.17 | $788.37 | $790.58 | $792.79 |
| 30 | $795.00 | $797.21 | $799.42 | $801.62 | $803.83 | $806.04 | $808.25 | $810.46 | $812.67 | $814.87 | $817.08 | $819.29 |
| 31 | $821.50 | $823.71 | $825.92 | $828.12 | $830.33 | $832.54 | $834.75 | $836.96 | $839.17 | $841.37 | $843.58 | $845.79 |
| 32 | $848.00 | $850.21 | $852.42 | $854.62 | $856.83 | $859.04 | $861.25 | $863.46 | $865.67 | $867.87 | $870.08 | $872.29 |
| 33 | $874.50 | $876.71 | $878.92 | $881.12 | $883.33 | $885.54 | $887.75 | $889.96 | $892.17 | $894.37 | $896.58 | $898.79 |
| 34 | $901.00 | $903.21 | $905.42 | $907.62 | $909.83 | $912.04 | $914.25 | $916.46 | $918.67 | $920.87 | $923.08 | $925.29 |
| 35 | $927.50 | $929.71 | $931.92 | $934.12 | $936.33 | $938.54 | $940.75 | $942.96 | $945.17 | $947.37 | $949.58 | $951.79 |
| 36 | $954.00 | $956.21 | $958.42 | $960.62 | $962.83 | $965.04 | $967.25 | $969.46 | $971.67 | $973.87 | $976.08 | $978.29 |
| 37 | $980.50 | $982.71 | $984.92 | $987.12 | $989.33 | $991.54 | $993.75 | $995.96 | $998.17 | $1,000.37 | $1,002.58 | $1,004.79 |
| 38 | $1,007.00 | $1,009.21 | $1,011.42 | $1,013.62 | $1,015.83 | $1,018.04 | $1,020.25 | $1,022.46 | $1,024.67 | $1,026.87 | $1,029.08 | $1,031.29 |
| 39 | $1,033.50 | $1,035.71 | $1,037.92 | $1,040.12 | $1,042.33 | $1,044.54 | $1,046.75 | $1,048.96 | $1,051.17 | $1,053.37 | $1,055.58 | $1,057.79 |
| 40 | $1,060.00 | $1,062.21 | $1,064.42 | $1,066.62 | $1,068.83 | $1,071.04 | $1,073.25 | $1,075.46 | $1,077.67 | $1,079.87 | $1,082.08 | $1,084.29 |
| 41 | $1,086.50 | $1,088.71 | $1,090.92 | $1,093.12 | $1,095.33 | $1,097.54 | $1,099.75 | $1,101.96 | $1,104.17 | $1,106.37 | $1,108.58 | $1,110.79 |
| 42 | $1,113.00 | $1,115.21 | $1,117.42 | $1,119.62 | $1,121.83 | $1,124.04 | $1,126.25 | $1,128.46 | $1,130.67 | $1,132.87 | $1,135.08 | $1,137.29 |
| 43 | $1,139.50 | $1,141.71 | $1,143.92 | $1,146.12 | $1,148.33 | $1,150.54 | $1,152.75 | $1,154.96 | $1,157.17 | $1,159.37 | $1,161.58 | $1,163.79 |
| 44 | $1,166.00 | $1,168.21 | $1,170.42 | $1,172.62 | $1,174.83 | $1,177.04 | $1,179.25 | $1,181.46 | $1,183.67 | $1,185.87 | $1,188.08 | $1,190.29 |
| 45 | $1,192.50 | $1,194.71 | $1,196.92 | $1,199.12 | $1,201.33 | $1,203.54 | $1,205.75 | $1,207.96 | $1,210.17 | $1,212.37 | $1,214.58 | $1,216.79 |
| 46 | $1,219.00 | $1,221.21 | $1,223.42 | $1,225.62 | $1,227.83 | $1,230.04 | $1,232.25 | $1,234.46 | $1,236.67 | $1,238.87 | $1,241.08 | $1,243.29 |
| 47 | $1,245.50 | $1,247.71 | $1,249.92 | $1,252.12 | $1,254.33 | $1,256.54 | $1,258.75 | $1,260.96 | $1,263.17 | $1,265.37 | $1,267.58 | $1,269.79 |
| 48 | $1,272.00 | $1,274.21 | $1,276.42 | $1,278.62 | $1,280.83 | $1,283.04 | $1,285.25 | $1,287.46 | $1,289.67 | $1,291.87 | $1,294.08 | $1,296.29 |
| 49 | $1,298.50 | $1,300.71 | $1,302.92 | $1,305.12 | $1,307.33 | $1,309.54 | $1,311.75 | $1,313.96 | $1,316.17 | $1,318.37 | $1,320.58 | $1,322.79 |
| 50 | $1,325.00 | $1,327.21 | $1,329.42 | $1,331.62 | $1,333.83 | $1,336.04 | $1,338.25 | $1,340.46 | $1,342.67 | $1,344.87 | $1,347.08 | $1,349.29 |

Page 49

DTP009652

## EXHIBIT A

### Percentage Of Retirement Benefit When Survivor Benefit Is Applicable

### A. When the Participant is Older Than the Eligible Surviving Spouse

| # Years Older | Automatic Survivor Benefit (60%) | Optional Survivor Benefit (75%) | Optional Survivor Benefit (100%) |
|---|---|---|---|
| 1-5 years | 95% of Retirement Benefit | 93.8% of Retirement Benefit | 91.9% of Retirement Benefit |
| 6 yrs | 94.5% | 93.2% | 91.1% |
| 7 yrs | 94% | 92.6% | 90.3% |
| 8 yrs | 93.5% | 91.9% | 89.5% |
| 9 yrs | 93% | 91.3% | 88.8% |
| 10 yrs | 92.5% | 90.7% | 88% |
| 11 yrs | 92% | 90.1% | 87.2% |
| 12 yrs | 91.5% | 89.5% | 86.4% |
| 13 yrs | 91% | 88.8% | 85.7% |
| 14 yrs | 90.5% | 88.2% | 84.9% |
| 15 yrs | 90% | 87.6% | 84.1% |
| 16 yrs | 89.5% | 87% | 83.4% |
| 17 yrs | 89% | 86.4% | 82.6% |
| 18 yrs | 88.5% | 85.7% | 81.8% |
| 19 yrs | 88% | 85.1% | 81.1% |
| 20 yrs | 87.5% | 84.5% | 80.3% |
| 21 yrs | 87% | 83.9% | 79.6% |
| 22 yrs | 86.5% | 83.3% | 78.9% |
| 23 yrs | 86% | 82.6% | 78.1% |
| 24 yrs | 85.5% | 82% | 77.4% |
| 25 yrs | 85% | 81.4% | 76.6% |
| 26 yrs | 84.5% | 80.8% | 75.9% |
| 27 yrs | 84% | 80.2% | 75.2% |
| 28 yrs | 83.5% | 79.5% | 74.5% |
| 29 yrs | 83% | 78.9% | 73.7% |
| 30 yrs | 82.5% | 78.3% | 73% |
| 31 yrs | 82% | 77.7% | 72.3% |
| 32 yrs | 81.5% | 77.1% | 71.6% |
| 33 yrs | 81% | 76.4% | 70.9% |
| 34 yrs | 80.5% | 75.8% | 70.2% |
| 35 yrs | 80% | 75.2% | 69.5% |

### B. When the Participant is Younger than Eligible Surviving Spouse

| # Years Younger | Automatic Survivor Benefit (60%) | Optional Survivor Benefit (75%) | Optional Survivor Benefit (100%) |
|---|---|---|---|
| 1-5 yrs | 95% | 93.8% | 91.9% |
| 6 yrs | 95.5% | 94.4% | 92.7% |
| 7 yrs | 96% | 95% | 93.5% |
| 8 yrs | 96.5% | 95.7% | 94.3% |
| 9 yrs | 97% | 96.3% | 95.1% |
| 10 yrs & above | 97.5 | 96.9% | 95.9% |

page 50

DTP009653

# MEMORANDUM OF UNDERSTANDING
## RETIREE/SURVIVOR BONUS

THIS MEMORANDUM OF UNDERSTANDING, entered into this 12th day of March, 1995, between Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, hereinafter called the Company as defined in Article One, Section 11 of the Retirement Income Program Agreement of even date, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and its Local Union No. 287, hereinafter called the Union as defined in Article One, Section 38, of the Retirement Income Program Agreement of even date.

WHEREAS, the Company and the Union are parties to a Retirement Income Program Agreement dated March 12, 1995;

NOW THEREFORE, the Company and the Union agree that the Retiree/Survivor Bonus Arrangement, as described in the Memorandum of Understanding between the Company and the Union entered into on the 7th day of September 1986, shall be continued for the term of the Collective Bargaining Agreement entered into this 12th day of March, 1995 subject to the following provisions:

1. Surviving Eligible Spouses who were receiving benefits prior to March 12, 1995, and Retired Employees who retired prior to March 12, 1995 with Ten (10) or more years of Credited Service and are receiving a Normal Retirement Benefit, Early Retirement Regular Benefit, Special Early Retirement Benefit or a Disability Retirement Benefit shall receive a scheduled bonus payment in accordance with paragraph 4 below. If a Retired Employee who is eligible for a bonus payment hereunder dies, his Surviving Eligible Spouse will receive a bonus payment in accordance with paragraph 4 (b) below for the remaining term of this Memorandum of Understanding.

2. Retired Employees who begin receiving a Normal Retirement Benefit on or after March 12, 1995 and prior to April 1, 1996 and Surviving Eligible Spouses of such Retired Employees, shall receive a scheduled bonus payment payable April, 1997 pursuant to paragraph 4 below.

3. Participants who retire on and after April, 1996 shall not receive a scheduled bonus payment in accordance with paragraph 4 below.

4. In each case listed above where a Retired Employee or a Surviving Eligible Spouse shall receive a Retiree/Survivor Bonus, the following Credited Service Schedules listed below as (a) or (b) shall apply.

| (a) Retired Employee with: | 4/1/95 | 4/1/96 | 4/1/97 |
|---|---|---|---|
| 25 or more yrs. | $425 | $425 | $425 |
| 15 but under 25 yrs. | $295 | $295 | $295 |
| 10 but under 15 yrs. | $230 | $230 | $230 |

page 51

DTP009654

(b) Surviving Eligible
Spouses of Retired
Employees with:

|  | 4/1/95 | 4/1/96 | 4/1/97 |
|---|---|---|---|
| 25 or more yrs. | $235 | $235 | $235 |
| 15 but under 25 yrs. | $165 | $165 | $165 |
| 10 but under 15 yrs. | $125 | $125 | $125 |

5.   The Retiree/Surviving Spouse Bonus shall be paid based on the availability of funds
accrued at a $0.19/hour Cost of Living Adjustment offset as provided in the Collective
Bargaining Agreement. Such Retiree/Survivor Bonus shall be paid annually with the
first payment to be made in April, 1995, the second payment in April, 1996 and the
last payment in April, 1997; provided however that if the funds are not adequate to
pay the full bonus payments, a pro-rated amount, not less than the amounts set forth
in the Memorandum of Understanding between the Company and the Union entered
into on September 7, 1986, will be paid.  If funds made available as described above in
paragraph 4 exceed the amount necessary to pay the bonus payment, the excess
amount will be retained to apply against future payments.

Executed at Muncie, Indiana, on the day and year written below.

**COMPANY**                                          **UNION**

By_____            By_____
Glen O. Eckelman, Director                  Director, Region Three
Labor-Relations                                    International   Representative


John C. Daffara, Director                    _____
Human Resources & Governmental
Affairs                                              _____

                                                       _____

R. A. Nuerge, Manager                       _____
Benefits

Robert Cruea, Manager                      _____
Labor Relations-
Transmissions                                    _____

                                                       _____


_____
Date of Agreement

page 52

DTP009655

## MEMORANDUM OF UNDERSTANDING

THIS MEMORANDUM OF UNDERSTANDING entered into this **12th** day of **March, 1995** between Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant, hereinafter called the Company as defined in Article One, Section 11, of the Retirement Income Program Agreement of even date, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW and its Local Union No. 287, hereinafter called the Union as defined in Article One, Section 38, of the Retirement Income Program Agreement of even date.

WHEREAS, the Company and the Union are parties to a Retirement Income Program Agreement dated **March 12, 1995,** (the "Agreement"):

NOW, THEREFORE, the Company and the Union agree as follows:

1. Subject to paragraph 2 below, Article Nine, Section 4 of the Agreement shall be modified in the following manner:

   "An Employee receiving Supplemental Allowance payments shall not be subject to the excess earnings penalty described in this Article Nine, Section 4 after three (3) full years have passed from the date his benefits commence."

2. Either the Company or the Union reserves the right to unilaterally discontinue the modification set forth in paragraph 1 above at the end of a plan year if it becomes apparent that such modification shows adverse effects to the Agreement by implementation of this liberalization. One example might be an indication of an unusually large number of employees electing to retire after adoption of this modification, but any other adverse effect could be cause for discontinuance.

Executed at Muncie, Indiana, on the day and year written below.

| COMPANY | UNION |
|---|---|

Glen O. Eckelman, Manager
Human Resources

by _____
Director, Region Three

John C. Daffara, Vice President
 Human Resources

_____

_____

R. A. Nuerge,
Manager-Benefits & Office Services

_____

Robert Cruea, Manager-Labor
Relations-Transmissions

_____

_____

_____

_____

Date of Agreement

_____

DTP009656