UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLARD L. SLOAN, EUGENE J.
WINNINGHAM, and JAMES L. KELLEY,

        Plaintiffs,

       v.

BORGWARNER INC., BORGWARNER
DIVERSIFIED TRANSMISSION
PRODUCTS INC., and BORGWARNER
FLEXIBLE BENEFITS PLANS,

        Defendants.

Case 2:09-cv-10918-PDB-MKM

U.S. District Judge Paul D. Borman

U.S. Magistrate Judge Mona K. Majzoub

## BORGWARNER'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Elisa Angeli Palizzi (P52088)
(angeli@millercanfield.com)
Miller, Canfield, Paddock and Stone, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
313.496.7635
313.963.6420 fax

Bobby R. Burchfield
(bburchfield@mwe.com)
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
McDermott Will & Emery LLP
600 13th Street, Northwest
Washington, D.C. 20005
202.756.8000
202.756.8087 fax

*Attorneys for BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iv

CONCISE STATEMENT OF THE ISSUE PRESENTED ..........................................................vi

CONTROLLING AUTHORITY FOR THE RELIEF SOUGHT .................................................vii

INDEX OF EXHIBITS.................................................................................................viii

INTRODUCTION ........................................................................................................1

STATEMENT OF ADDITIONAL FACTS .................................................................................2

ARGUMENT ..............................................................................................................4

I.     THE UNAMBIGUOUS LANGUAGE OF THE COLLECTIVE BARGAINING
AND HEALTH INSURANCE AGREEMENTS REQUIRES SUMMARY
JUDGMENT AGAINST PLAINTIFFS AND FOR BORGWARNER. ............................4

     A.     The Agreements' Express Statements Conclusively Defeat Vesting of
Retiree Health Benefits. ...................................................................5

     B.     Tools Used To Ascertain Vesting in Ambiguous Contracts Do Not Apply
Here.......................................................................................8

          1.     "Tying" Eligibility for Health Benefits to Eligibility for Pension
Benefits Does Not Alone Establish Vesting, Especially When the
Contracts Say Elsewhere that Retiree Health Benefits Are Not
Vested....................................................................................8

          2.     The Agreements' Limits on Other Benefits Are Irrelevant........................9

          3.     The 1992 Agreement's Treatment of Future Hires and the 2005
Agreement's Treatment of Its Retirees Do Not Demonstrate the
Vesting of Retiree Health Benefits............................................10

          4.     The Agreement in 1992 to Ten Years of Deductible and Stop-Loss
Increases Does Not Demonstrate that Plaintiffs' Health Benefits
Are Interminable or Unchangeable............................................12

II.     EXTRINSIC EVIDENCE RELIED UPON BY PLAINTIFFS IS IRRELEVANT
AND CANNOT LEAD TO SUMMARY JUDGMENT IN THEIR FAVOR. ...................13

     A.     Extrinsic Evidence of BorgWarner's Intent in Pre-1989 Agreements Is
Irrelevant and, in Any Event, Does Not Demonstrate Vesting..............13

     B.     Extrinsic Evidence of BorgWarner's Intent After 1989 Defeats Plaintiffs' View that Their Health Benefits Were Vested and Unchangeable. ....................... 16

CONCLUSION ......................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................4

*Bender v. Newell Window Furnishings, Inc.*, 725 F. Supp. 2d 642 (W.D. Mich. 2010)................10

*Bender v. Newell Window Furnishings, Inc.*, No. 11-1335, 2012 WL 1537916, at *4 (6th
    Cir. May 3, 2012) ......................................................................................5, 8, 11

*Bittinger v. Tecumseh Prods. Co.*, 83 F. Supp. 2d 851(E.D. Mich. 1998),
    *aff'd*, 201 F.3d 440 (6th Cir. 1999) ...........................................................................2

*BorgWarner Diversified Transmission Prods. Inc. v. UAW, Local No. 287*, No. 1:06-cv-
    058-LJM-TAB, 2008 WL 4274476, at *1 (S.D. Ind. Sept. 12, 2008) ................................1

*Cole v. ArvinMeritor, Inc.*, 515 F. Supp. 2d 791 (E.D. Mich. 2006)...........................................13

*Gilbert v. Doehler–Jarvis, Inc.*, 87 F. Supp. 2d 788 (N.D. Ohio 2000) .......................................14

*Golden v. Kelsey–Hayes Co.*, 954 F. Supp. 1173 (E.D. Mich. 1997)............................................4

*Golden v. Kelsey–Hayes Co. (In re Golden)*, 73 F.3d 648 (6th Cir. 1996) .................................4, 8

*Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510
    (1997) ...................................................................................................................5

*International Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983) .................... *passim*

*Jensen v. SIPCO, Inc.*, 38 F.3d 945 (8th Cir. 1994) .....................................................................11

*Linville v. Teamsters Misc. Workers Union, Local 284*, 206 F.3d 648 (6th Cir. 2000) .......1, 8, 9,12

*Maurer v. Joy Techs., Inc.*, 212 F.3d 907 (6th Cir. 2000)............................................................5

*McCoy v. Meridian Auto. Sys., Inc.*, 390 F.3d 417 (6th Cir. 2004) .................................................9

*Noe v. Polyone Corp.*, 520 F.3d 548 (6th Cir. 2008)...................................................................9

*Prater v. Ohio Educ. Ass'n*, 505 F.3d 437 (6th Cir. 2007) ............................................................7

*Reese v. CNH Am. LLC*, 574 F.3d 315 (6th Cir. 2009)...........................................................1, 5, 17

*Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279 (6th Cir. 1986).........................................13

*Smith v. ABS Indus., Inc.*, 890 F.2d 841 (6th Cir. 1989)...............................................................5

*Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503 (6th Cir. 2003) .................................................4

*Wood v. Detroit Diesel Corp.*, 607 F.3d 427 (6th Cir. 2010) .............................................................8

*Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571 (6th Cir. 2006) .................................................4

**Statutes and Rules**

ERISA § 201, 29 U.S.C. § 1051 (2006).................................................................................................5

Fed. R. Civ. P. 56............................................................................................................................... vii, 4

Fed. R. Evid. 401 ..............................................................................................................................13

Fed. R. Evid. 402 ..............................................................................................................................13

## CONCISE STATEMENT OF THE ISSUE PRESENTED

Can an agreement to vest retiree health benefits be inferred when express contract language acknowledges the lack of an agreement to vest, contains specific durational clauses, and made changes to existing retirees' benefits?

## CONTROLLING AUTHORITY FOR THE RELIEF SOUGHT

Federal Rule of Civil Procedure 56

*Int'l Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983)

# INDEX OF EXHIBITS

BorgWarner has attached to this opposition excerpts of exhibits or authorities already part of the summary judgment record. The excerpts reflect updated highlighting by BorgWarner to comply with the Court's practice guidelines.

**Exhibit**     **Description**

A     Health Insurance Agreement Between Borg-Warner Automotive Diversified Transmission Products Corporation, Muncie Plant and the International Union, United Automotive, Aerospace and Agricultural Implement Workers of America, UAW, and Its Local No. 287 (Oct. 27, 1989) (DTP021130–DTP021260) (Pls.' Dep. Ex. 7) (revised pages 7–8 of R. 96 Ex. 1)

B     Retirement (General Summary of Often Asked or Emphasized Items Covered with Employees upon Application for Retirement) (Jan. 1990) (CM000241–CM000244) (Pls.' Dep. Ex. 9) (revised page 4 of R. 104 Ex. 24)

C     1992 Agreement on Modification and Extension of Existing Health Insurance Agreement and Ancillary Matters (Nov. 30, 1992) (DTP000432–DTP000450) (Pls.' Dep. Ex. 18) (revised page 1 of Exhibit C of R. 96 Ex. 3)

D     Position Statement (1987) (DTP001679–DTP001683) (Pls.' Dep. Ex. 52) (revised page 2 of R. 104 Ex. 29)

E     Memorandum from Bill Studlow to Dick Nuerge (Mar. 24, 1987) (DTP013873–DTP013925) (Pls.' Dep. Ex. 56) (revised page 1 of and page 41 of the attachment of R. 104 Ex. 30)

F     Facsimile from R.A. Nuerge to George Turczynowsky (Feb. 14, 1989) (DTP004372–DTP004375) (Pls.' Dep. Ex. 55) (revised pages 1–3 of R. 104 Ex. 26)

G     Deposition of William David Campbell (Oct. 27, 2011) (revised pages 51–54 of R. 98 Ex. 18)

H     Deposition of Laura J. Champagne (Jan. 13, 2012) (revised pages 112–14, 116–17, and 119–20 of R. 98 Ex. 19)

I     Deposition of Richard Nuerge (Oct. 25, 2011) (revised pages 45–46 of R. 100 Ex. 24)

J     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (revised page 255 of R. 101 Ex. 1)

| Exhibit | Description |
|---------|-------------|
| K | *BorgWarner Diversified Transmission Prods. Inc. v. UAW, Local No. 287*, No. 1:06-cv-058-LJM-TAB, 2008 WL 4274476, at *1 (S.D. Ind. Sept. 12, 2008) (revised page 4 of R. 101 Ex. 3) |
| L | *Int'l Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983) (revised pages 1480 and 1482 of R. 101 Ex. 10) |
| M | *Noe v. Polyone Corp.*, 520 F.3d 548 (6th Cir. 2008) (revised page 566 of R. 101 Ex. 13) |

## INTRODUCTION

Plaintiffs cannot obtain summary judgment by ignoring material facts. Yet, in their effort to show contractual entitlement to fully paid health benefits for life, they simply ignore an explicit "agreement to disagree" between their unions and their employer, BorgWarner,[1] about whether retiree health benefits were vested. They also ignore express contractual language in the Health Insurance Agreements ("HIAs") limiting the duration of retiree health benefits to the term of the respective HIAs, as well as language in the HIAs expressly empowering BorgWarner to modify or terminate the benefits at the end of each HIA.[2] Further, Plaintiffs ignore recent Sixth Circuit precedent holding that, "unless it says otherwise," a collective bargaining agreement "should be construed to permit modifications to benefits plans" if three criteria are met. *Reese v. CNH Am. LLC*, 574 F.3d 315, 326 (6th Cir. 2009).

Rather than address any of these material impediments to their demands, Plaintiffs invoke *International Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), and later decisions, in a strained effort to construct a legal inference that their benefits are vested. But as the Sixth Circuit has made clear, "[t]he *Yard-Man* inference . . . cannot be used to contradict the express text of the agreement or plan documents," especially when the plan at issue "addresses the duration of benefits." *Linville v. Teamsters Misc. Workers Union, Local 284*, 206 F.3d 648, 651

---

[1] "BorgWarner" refers for convenience to BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans. (*See* R. 95, BorgWarner's Mot. Summ. J. 1 n.1.)

[2] Alluding to a declaratory judgment action filed in the Southern District of Indiana in 2006, Plaintiffs state that "[t]he court held that [BorgWarner's] unilateral changes to retiree benefits violated the 2005 HIA." (R. 102, Pls.' Mot. Summ. J. 7 n.9.) This statement is *almost* accurate; more precisely, that court held that BorgWarner could not make changes to the benefits provided by the 2005 HIA *while that HIA was still in effect. BorgWarner Diversified Transmission Prods. Inc. v. UAW, Local No. 287*, No. 1:06-cv-058-LJM-TAB, 2008 WL

*(footnote continued on next page)*

(6th Cir. 2000); *see also Bittinger v. Tecumseh Prods. Co.*, 83 F. Supp. 2d 851, 860–61

(E.D. Mich. 1998) (holding that express language limiting duration of retiree benefits defeats

summary judgment for retirees on their claims for vested benefits), *aff'd*, 201 F.3d 440 (6th Cir.

1999).

Accordingly, and as explained in BorgWarner's motion for summary judgment, the

unambiguous language of the collective bargaining agreements and HIAs in force between 1989

and 2009 require entry of summary judgment in BorgWarner's favor and denial of Plaintiffs'

motion for summary judgment.

## STATEMENT OF ADDITIONAL FACTS

Plaintiffs agree with BorgWarner that the contracts under which Plaintiffs retired or

received retiree health benefits are unambiguous. (R. 102, Pls.' Mot. Summ. J. 11 ("The

[Contracts] Unambiguously Provide for Lifetime Retiree Health Care Benefits.").) Under *Yard-*

*Man*, then, the only facts *material* to Plaintiffs' motion are the language used in the CBAs and

HIAs between 1989 and 2009 to describe retiree health benefits.[3]

Nevertheless, Plaintiffs support their motion with extrinsic evidence, but neglect extrinsic

evidence undermining their claim to vested benefits.

1.      As the term of the 1986 HIA drew to a close, and a strike loomed, Jack Reising of

BorgWarner DTP informed the chairman of the Local 287's negotiating committee that the

company did not consider retirees' health benefits vested:

---

*(continuation of footnote from previous page)*
4274476, at *4 (S.D. Ind. Sept. 12, 2008). The changes at issue in this case were made *after* the
2005 HIA expired by its own terms.

[3] BorgWarner provided these facts in connection with its motion for summary judgment
and incorporates them by reference. (R. 95, BorgWarner's Mot. Summ. J. SUMF ¶¶ 1–9.)

> The Company is not obligated to continue health insurance coverage for retirees and their dependents. However, the Company will continue through September, 1989 all coverages applicable to retirees, except prescription drug coverage . . . .

(Ex. 26, Aug. 4, 1989, Reising–Dulaney Ltr. 2; Ex. 34, Reising Dep. 51:7–18.) About a month later, Mr. Reising explained the company's position to retirees and surviving spouses:

> The Union has said that your insurance coverages are a lifetime benefit which may not be unilaterally eliminated or discontinued. Our attorneys have advised the UAW and us that the Union's position is not supported by either the insurance agreement or the most recent court decisions.

(Ex. 27, Sept. 14, 1989, Reising–Retiree Ltr. 2; Ex. 34, Reising Dep. 65:16–66:3.)

2.     On October 9, 1992, the UAW's Laura Hess reported to International Representative Chuck Smith that she had thirty-one substantive comments on the draft of the 1989 HIA. (Ex. 29, Oct. 9, 1992, Hess–Smith Mem. 1–4; R. 98 Ex. 19, Champagne Dep. 112:24–114:21.)[4] Two of the comments addressed the summary description in the HIA, but neither of them addressed the "future of the plan" section. (Ex. 29, Oct. 9, 1992, Hess–Smith Mem. 4.) Four days later, Ms. Hess received responses to her comments. (Ex. 30, Oct. 13, 1992, Resp. Hess Comments 1–7; R. 98 Ex. 19, Champagne Dep. 116:24–117:13.) Finally, on November 23, 1992, the UAW confirmed that it had "reviewed the 1989 draft summary plan descriptions for insurance and pension benefits" and "[b]ased on [that] review, and the changes the Company has made in relationship to that review, the document is now acceptable." (Ex. 31, Nov. 23, 1992, Hess–Daffara Ltr. 1; R. 98 Ex. 19, Champagne Dep. 119:24–120:16 (confirming the document referred to in the November 23, 1992, letter is the 1989 HIA).)

---

[4] Exhibits referred to *without* a record number can be found in the accompanying BorgWarner's Supplemental Appendix of Summary Judgment Exhibits.

## ARGUMENT

To obtain summary judgment on their claims, Plaintiffs must submit undisputed evidence that BorgWarner contractually agreed to provide them with vested retiree health benefits. *See* Fed. R. Civ. P. 56(a); *Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 578 (6th Cir. 2006) (explaining plaintiffs' burden to show that their labor union and employer "agreed to vest a welfare benefit plan"). To defeat Plaintiffs' motion, BorgWarner need only "present specific facts to prove that there is a genuine issue for trial." *Golden v. Kelsey–Hayes Co.*, 954 F. Supp. 1173, 1182 (E.D. Mich. 1997). And for the purposes of Plaintiffs' motion, BorgWarner is entitled to all justifiable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003) ("When reviewing cross-motions for summary judgment, we must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party.").

In contrast, to prevail on its motion for summary judgment, BorgWarner need *not* prove the absence of an agreement to provide vested retiree health care benefits. *See Golden v. Kelsey–Hayes Co. (In re Golden)*, 73 F.3d 648, 656 (6th Cir. 1996) ("*Yard-Man* does not shift the burden of proof to the employer . . . .").

## I.   THE UNAMBIGUOUS LANGUAGE OF THE COLLECTIVE BARGAINING AND HEALTH INSURANCE AGREEMENTS REQUIRES SUMMARY JUDGMENT AGAINST PLAINTIFFS AND FOR BORGWARNER.

For almost three decades, *Yard-Man* has provided the interpretive framework to be used in cases such as this. Most of the framework is not controversial. The first step is to "look to the explicit language of the collective bargaining agreement for clear manifestations of intent." *Yard-Man*, 716 F.2d at 1479. If the explicit language regarding retiree health benefits is ambiguous, then "the court may look to other words and phrases in the collective bargaining agreement for

4

guidance." *Id.* at 1480. Ambiguity also permits the use of extrinsic evidence to construe the CBA. *E.g.*, *Smith v. ABS Indus., Inc.*, 890 F.2d 841, 846 n.1 (6th Cir. 1989). In this case, however, the Court need not proceed beyond step one because the explicit, unambiguous language of the CBAs and HIAs defeats Plaintiffs' vesting claims. The Court must ignore Plaintiffs' arguments about "other words and phrases" and extrinsic evidence.

### A.    The Agreements' Express Statements Conclusively Defeat Vesting of Retiree Health Benefits.

Unlike pension benefits, retiree health benefits are welfare benefits that do not vest unless the employer and union reach an agreement that the benefits will vest. *See* ERISA § 201(1), 29 U.S.C. § 1051(1) (2006); *Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 514 (1997) ("ERISA . . . specifically exempts 'employee welfare plans' from its stringent vesting requirements."). In short, "vesting of retiree welfare benefits is a matter of contractual agreement." *Bender v. Newell Window Furnishings, Inc.*, No. 11-1335, 2012 WL 1537916, at *4 (6th Cir. May 3, 2012); *see also Reese*, 574 F.3d at 321 ("purely a matter of contract"); *Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 914 (6th Cir. 2000) ("[T]he parties must agree to vest a welfare benefit plan."). Plaintiffs themselves acknowledge: "the issue of whether [retiree health benefits] are vested is dependent on the bargain struck by the parties." (R. 102, Pls.' Mot. Summ. J. 11.) Here, the CBAs' express language defeats any claim for vesting in this case and entitles BorgWarner to summary judgment. (R. 95, BorgWarner's Mot. Summ. J. 12–16.) This is true for four reasons.

*First*, the parties *twice*—in 1990 and 2009—entered agreements that acknowledged the lack of an agreement to vest. The 1990 ACME Contract contains a "Joint Letter of Agreement on Post-Retirement Benefit Liabilities" that directly addresses "post-retirement benefit liabilities" and states:

> This agreement does not prejudice the union's position that current retirees *have* life-time vested benefits nor [BorgWarner DTP's] position that current retirees *do not have* lifetime vested benefits.

(*Id.* SUMF ¶ 6 (emphasis added).) Over the next two decades, the parties never came to an agreement on vesting, and in 2009 reiterated their disagreement in the Plant Shutdown Agreement:

> The Company and the Union have a dispute with respect to the nature of the Company's obligation to provide post-retirement health care benefits to employees who retired prior to February 23, 2009.

(*Id.* ¶ 9.) It is legally impossible for Plaintiffs to prove an agreement that the contracts expressly disclaim.

*Second*, retiree health benefits terminated when each HIA expired unless continued in the subsequent HIA. The HIAs stated, in language unchanged from 1989 through 2009, that upon expiration they could be terminated by either party on sixty days' notice. (*Id.* ¶¶ 1, 4–5.) The HIAs further provided that "[t]he coverages provided under this Exhibit A terminate on the date . . . the Agreement is terminated." (*Id.* ¶¶ 2, 6.) Because Exhibit A specifically encompassed retiree health benefits, the termination provision applied to retirees as well as active employees. (*Id.*) In 2009, when the Plant Shutdown Agreement terminated the 2005 HIA, BorgWarner DTP's contractual obligations to Plaintiffs ceased. (*See id.* ¶ 9.) Critically, as shown below (p. 7), unlike summary plan descriptions addressed in cases cited by Plaintiffs, here the HIAs were negotiated and agreed to by BorgWarner and the unions, and are mutually binding contracts.

*Third*, the agreed-upon "future of the plan" language in the HIAs reserved BorgWarner DTP's right to "modify, amend, suspend or terminate the Plan or the Group Policies," and further made clear that "[a]n individual's insurance coverage terminates . . . when the Group Insurance Policies terminate." (R. 95, BorgWarner's Mot. Summ. J. SUMF ¶ 3.) The 2009 Plant Shutdown Agreement terminated the last HIA.

6

Anticipating BorgWarner's reliance on the "future of the plan" language in the HIAs, Plaintiffs invoke the rule that company-drafted language in a *summary plan description* "cannot retroactively cancel or modify the negotiated agreements" in this case. (R. 102, Pls.' Mot. Summ. J. 16–18.) This rule is irrelevant to this case, however, because, as Plaintiffs concede, the reservation-of-rights language is "*in the HIAs*" themselves, and not in separate SPDs. (*Id.* at 17 (emphasis added).)

The UAW explicitly agreed to BorgWarner's reservation of rights as part of an extensive review of the 1989 HIA. (Stmt. Add'l Facts ¶ 2, p. 3 above.) The union's review consisted of substantive comments on nearly all parts of the HIA, including the summary description information. (*Id.*) Tellingly, the union had *no* comments on the "future of the plan" language and signed the 1989 HIA—with the reservation-of-rights language—in 1992. (*Id.*)[5]

*Finally*, the 1998 and 2000 HIAs reduced *existing* retirees' benefits without the retirees' consent. By agreeing to these reductions, the UAW implicitly acknowledged that the benefits were *not* vested. (R. 95, BorgWarner's Mot. Summ. J. SUMF ¶¶ 7–8.)

Thus, as a matter of law, Plaintiffs' retiree health benefits were provided from contract to contract, BorgWarner never agreed to vest them, and BorgWarner reserved the right to unilaterally modify or terminate Plaintiffs' benefits if an HIA expired and was not replaced with a subsequent HIA.

---

[5] The union's agreement to the reservation-of-rights language in the HIA distinguishes this case from those cited by Plaintiffs holding that more conditional reservations of rights in SPDs do not defeat vesting claims, because unions would not be expected to object to statements in an SPD. (R. 102, Pls.' Mot. Summ. J. 16–18 (citing, e.g., *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 444 (6th Cir. 2007)).). In any event, *Prater* and decisions following it hold only that when a SPD conflicts with a CBA, the signed agreement generally controls. Here BorgWarner is relying on the *signed* HIA, which is fully consistent with the SPD.

**B.    Tools Used To Ascertain Vesting in Ambiguous Contracts Do Not Apply Here.**

The provisions described above obviate resort to the inferences Plaintiffs seek to draw from other parts of the HIA. *See Linville*, 206 F.3d at 650–51 (holding inference of vesting does not undermine express durational language); *Yard-Man*, 716 F.2d at 1480 (explaining that other parts of CBA are useful only if the health benefit provisions are ambiguous).

**1.    "Tying" Eligibility for Health Benefits to Eligibility for Pension Benefits Does Not Alone Establish Vesting, Especially When the Contracts Say Elsewhere that Retiree Health Benefits Are Not Vested.**

Plaintiffs' central argument for vesting is that the HIAs "tied" eligibility for retiree health benefits to eligibility for pension benefits. The relevant provision of the HIAs states:

> [A]n employee who retires under the Retirement Income Program Agreement on or after December 1, 1989, . . . shall be entitled to the life insurance, Managed Care, basic hospitalization/surgical/medical, prescription drug, major medical, substance abuse, vision, human organ/tissue transplant, and Medical Case Management coverages and procedures, as set forth in Exhibits A, C, D, E, F and H, . . . .

(R. 96 Ex. 1, 1989 HIA art. 8, § 1(A).) This language merely specifies who is eligible, upon retirement, for health care benefits; it does not promise perpetual entitlement to or unchangeable retiree health benefits. Based on *Golden* and other decisions, however, Plaintiffs assert that their health benefits, like their pension benefits, must be vested for life. (R. 102, Pls.' Mot. Summ. J. 12–14 (discussing *Golden*, 73 F.3d at 656). Plaintiffs suggest that this inference alone provides a "sufficient basis" to support an intent to vest in this case. (*Id.* at 13 n.18.)[6]

---

[6] Plaintiffs characterize *Wood v. Detroit Diesel Corp.*, 607 F.3d 427, 435–36 (6th Cir. 2010), as holding that tying of health to pension benefits is "sufficient" to find vesting. While *Wood* held that such tying (among other things) was sufficient to find vesting in *that* particular case, it did not hold that it was sufficient in *every* case. And it certainly did not overrule *Linville*, which held that an inference could not overcome clear contract language inconsistent with an intent to vest benefits. 206 F.3d at 650–51.

*(footnote continued on next page)*

8

*Golden* and decisions following it establish no such per se rule. Rather, those decisions set forth an inference—an indirect method for analyzing whether or not the parties *intended* the retiree health benefits to vest—to be used only in the absence of explicit contractual language addressing vesting. *See McCoy v. Meridian Auto. Sys., Inc.*, 390 F.3d 417, 422 (6th Cir. 2004) (explaining that *Golden* held that tying health benefit and pension eligibilities "*suggested* that the parties *meant* to vest" benefits (emphasis added)). The Sixth Circuit has never held nor ever suggested that the "tying" inference set forth in *Golden* can overcome explicit contractual language negating an agreement to vest. *Cf. Linville*, 206 F.3d at 651 (*Yard-Man* inferences cannot overcome express language limiting duration of benefits); *Noe v. Polyone Corp.*, 520 F.3d 548, 566 (6th Cir. 2008) (Sutton, J., concurring in part and dissenting in part) ("No case, to my knowledge, holds that tying language alone suffices to permit retirees to fend off summary judgment—much less to mandate that the benefits vested as a matter of law.").

For that reason, the *Golden* inference is not useful here. The parties *directly* and *explicitly* said in their contracts that BorgWarner objected to vesting, and *Golden* and its progeny do not allow an indirect inference in the face of an explicit "agreement to disagree" about vesting.

### 2.   The Agreements' Limits on Other Benefits Are Irrelevant.

Plaintiffs also argue that, because the contracts place limits on the duration of certain benefits for surviving spouses and active employees on layoff or on leave, the Court should infer

---

*(continuation of footnote from previous page)*

    Plaintiffs also rely on *Bender*, 2012 WL 1537916, at *1, which found vesting even though the retiree health benefits were *not* tied to pension benefits. (R. 102, Pls.' Mot. Summ. J. 14.) Here, unlike in *Bender*, the parties explicitly agreed that BorgWarner did not intend to vest benefits. Further, as Plaintiffs note, the agreements in *Bender* contained only a general durational clause, but no durational provision specific to retiree health benefits. Here, the parties specifically agreed that when an HIA terminated, the retiree health care benefits provided in it also terminated.

that retiree health benefits were *not* subject to durational limits and, therefore, *are* vested.

(R. 102, Pls.' Mot. Summ. J. 14–16.) The HIAs here, however, *do* impose specific durational limitations on retiree health benefits. "The coverages provided under this Exhibit A terminate on the date . . . the Agreement is terminated." (R. 95, BorgWarner's Mot. Summ. J. SUMF ¶¶ 2, 6). The cases on which Plaintiffs rely involved contracts *without* specific durational limits on retiree health care. *See, e.g.*, *Yard-Man*, 716 F.2d at 1482 (noting the absence of language limiting the payment of retiree insurance benefits to the life of the collective bargaining agreement); *Bender v. Newell Window Furnishings, Inc.*, 725 F. Supp. 2d 642, 658 (W.D. Mich. 2010) (explaining that the durational clauses "[did] not specifically refer to the retiree benefits" and did not "unambiguously and expressly limit the duration of retirees benefits"), *aff'd*, No. 11-1335, 2012 WL 1537916, at *1 (6th Cir. May 3, 2012). Further, the unique durational limits of some particular benefits, which may expire *during* the term of the pertinent HIA, cannot trump the HIA's general durational limit on retiree health benefits.

### 3. The 1992 Agreement's Treatment of Future Hires and the 2005 Agreement's Treatment of Its Retirees Do Not Demonstrate the Vesting of Retiree Health Benefits.

Contrary to Plaintiffs' arguments, the agreements by the UAW and BorgWarner DTP that "Category B retirees"—individuals who were *hired* after 1992—were entitled to a retiree health account instead of a benefit plan, and that certain "grandfathered employees" could retire at the start of the 2005 HIA but receive the benefits described in the 2000 HIA (R. 102, Pls.' Mot. Summ. J. 15–16), have no legal or logical connection to whether Plaintiffs' retiree health benefits are vested.

*Bender*, on which Plaintiffs rely for this point (*id.*), sheds no light on this case. In that case, the union and employer agreed in 1993 that employees retiring after January 1, 1994, would not be eligible for retiree health benefits; but the union and employer gave employees who

10

retired *before* January 1, 1994, the same benefits "as those being granted active employees *as of January 1, 1986*." *Bender*, 2012 WL 1537916, at *6 (emphasis in original). The court separately found that pre-1986 benefits to be vested, *id.*, meaning that persons retiring before January 1, 1994 were entitled to the same vested benefits. The termination of benefits after January 1, 1994, had no bearing on whether the prior benefits were vested.

In this case, individuals hired after 1992, known as Category B retirees, *had not yet been hired* when BorgWarner DTP and the UAW agreed in 1992 that these future hires would not be eligible for company-paid retiree health benefits. (R. 96 Ex. 3, 1992 Tent. Health Agmt. Ex. C at 1.) It is true that the unions and BorgWarner agreed that certain employees who retired after the 2005 HIA became effective could avail themselves of the more generous benefits provided in the 2000 HIA, but *both* the 2000 and 2005 HIAs are subject to the 1990 "agreement to disagree" and the durational limitations set forth in each HIA. Indeed, BorgWarner DTP's lead negotiator in 2005 told the unions that the 2005 HIA described only the health benefits a retiree under it (*including* grandfathered employees) would receive "through the life of th[e] agreement," and that the company made no promises about what would happen after the agreement expired. (R. 98 Ex. 18, Campbell Dep. 51:8–54:6.) Again, the express "agreement to disagree" and specific durational language forecloses the inferences advocated by Plaintiffs.[7]

---

[7] *Jensen v. SIPCO, Inc.*, 38 F.3d 945 (8th Cir. 1994), cited by Plaintiffs (R. 102, Pls.' Mot. Summ. J. 16), does not require a contrary result. As Plaintiffs concede, *Jensen* relied on the employee's ability to decide between retiring immediately under a rich benefit scheme or continuing to work and retiring later under a less rich benefit scheme as *extrinsic evidence* of vesting. 38 F.3d at 951. Here, the unambiguous nature of the health benefit provisions in the CBAs and HIAs obviate the resort to such evidence. (*See* Part II below.)

**4.    The Agreement in 1992 to Ten Years of Deductible and Stop-Loss Increases Does Not Demonstrate that Plaintiffs' Health Benefits Are Interminable or Unchangeable.**

Plaintiffs final contract-based argument is that the parties' agreement in 1992 to a ten-year schedule of deductibles and stop-losses (which would outlive the 1992 and 1995 HIAs) demonstrates an intent to vest the benefits. (R. 102, Pls.' Mot. Summ. J. 14.) If benefits really terminated when the HIAs terminated, Plaintiffs argue, then a provision continuing in effect after the HIA terminated would make no sense. (*Id.*) But BorgWarner does not contend that it was *required* to stop providing Plaintiffs retiree health care benefits after the termination of each HIA; rather, BorgWarner contends that Plaintiffs' contractual *right* to health benefits ended when each HIA ended, unless a subsequent HIA continued the benefits. In fact, between 1989 and the closing of the Muncie plant in 2009, BorgWarner DTP and the UAW agreed in successive HIAs to provide health benefits to individuals that retired under prior HIAs, sometimes with agreed upon modifications.[8]

More important, it is illogical to infer from the agreement in 1992 to a ten-year schedule of deductibles and stop-losses that Plaintiffs' benefits last forever. *See Linville*, 206 F.3d at 650–51 (holding that benefits were not vested even though union provided them beyond expiration of agreement). The better inference is that the parties pre-committed to deductibles and stop-losses that would apply from 1992 through 2002 *if* the post-1992 HIAs continued to provide health

---

[8] Plaintiffs state that the benefits of individuals who retired under the 1989 HIA were unchanged between 1989 and 2006, and argue that this demonstrates vesting. (R. 102, Pls.' Mot. Summ. J. 20.) To the contrary, the parties contractually renewed and restated the benefits of these class members in subsequent HIAs, so that, after the 1989 HIA expired, benefits provided to each class member who retired from November 1989 through 1992 were restated in and dependent on each subsequent HIA in effect from 1992 until 2009.

benefits.[9] And in any event, the benefit modifications at issue here occurred in 2009, seventeen years after the 1992 agreement and fourteen years after the 1995 agreement.

## II.   EXTRINSIC EVIDENCE RELIED UPON BY PLAINTIFFS IS IRRELEVANT AND CANNOT LEAD TO SUMMARY JUDGMENT IN THEIR FAVOR.

Plaintiffs' attempt to bolster their vesting claim with extrinsic evidence is precluded unless the CBAs are ambiguous. *See Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279, 1288–89 (6th Cir. 1986) ("[W]here the meaning of the clause in question is clear, no construction is necessary."). Extrinsic evidence also may not be used to create ambiguity in otherwise clear contract language. *Id.* (explaining that plaintiffs could not create an issue of fact using extrinsic evidence where there is clear contract language). In this case, the parties *agree* that the relevant contracts are unambiguous. Accordingly, Plaintiffs' arguments regarding extrinsic evidence are irrelevant. Even if consideration of extrinsic evidence were appropriate, the extrinsic evidence in this case—whether from before the 1989 HIA or after it—does not support Plaintiffs' entitlement to lifetime, inalterable health care benefits.

### A.   Extrinsic Evidence of BorgWarner's Intent in Pre-1989 Agreements Is Irrelevant and, in Any Event, Does Not Demonstrate Vesting.

The class before the Court comprises individuals who retired in 1989 or later. Accordingly, HIAs in effect before 1989, or documents relating to those HIAs, are irrelevant to Plaintiffs' claims. *See* Fed. R. Evid. 401 (relevant evidence bears on facts of consequence); *id.*

---

[9] Plaintiffs cite the district court decision in *Cole* as authority for their position. (R. 102, Pls.' Mot. Summ. J. 14 (discussing *Cole v. ArvinMeritor, Inc.*, 515 F. Supp. 2d 791, 801 (E.D. Mich. 2006).) In *Cole*, the court found indications of an intent to vest in (among other things) a cost-sharing provision that adjusted by its terms when a retiree "reaches Medicare eligibility" (meaning he or she reaches age 65) and again when the retiree "reaches age 80." *See Cole*, 515 F. Supp. 2d at 801. These specific references to the (quite advanced) age of retirees indicated an intent to provide lifetime benefits in a way that the ten-year schedule of deductibles and stop-losses does not.

R. 402 (irrelevant evidence is inadmissible). The changes to the retiree health benefits at issue here relate only to the post-1989 retirees. It is noteworthy that the union held a seven-week strike in 1989 about health benefits, and that the "agreement to disagree" was included in the 1990 ACME Contract. BorgWarner DTP made clear that it disputed the UAW's claim that retiree health benefits were vested. (Ex. 35, Smith Dep. 60:8–18.) Chuck Smith, who was the International Representative assigned to the Local 287 testified: "I don't think after the '89 [negotiations] that the company ever changed their position." (*Id.* at 60:14–18.)

It is surprising, therefore, that Plaintiffs rely on documents relating to those pre-1989 HIAs to support their claim for vested benefits. Plaintiffs cite *Gilbert v. Doehler–Jarvis, Inc.*, 87 F. Supp. 2d 788, 793 (N.D. Ohio 2000), for the proposition that documents related to the 1986 HIA may be considered as evidence of the parties' intent in the later HIAs under which Plaintiffs actually retired. (R. 102, Pls.' Mot. Summ. J. 19.) In *Gilbert*, however, the defendant agreed—when it purchased the plaintiffs' employer—to maintain the same insurance benefits that had been provided by the employer under older contracts. 87 F. Supp. 2d at 792–93. There is no such agreement in this case by BorgWarner.

Even if the pre-1989 HIA evidence were relevant, it does not support Plaintiffs' claim.[10] Plaintiffs rely on a superseded "retirement summary" that states that surviving spouses can receive a pension benefit for their "lifetime, along with company paid insurance" and that if they got married, "the insurance would be cancelled." (R. 104 Ex. 26, Feb. 14, 1989, Nuerge–Turczynowsky Fax attach. 1.) But this document does not say expressly that the insurance is

---

[10] For example, one of the documents on which Plaintiffs rely, a 1987 "position statement" states only that "[r]etirees will of course have both income and insurance." (R. 104 Ex. 29, 1987 Pos. Stmt. 2.) It says nothing about what the "insurance" consists of, much less the duration for which retirees would "have" it.

provided for the surviving spouse's lifetime or that marriage is the only way in which surviving spouses can lose their benefits. Further, there is *no* evidence that this retirement summary was used during the class period of this case.[11]

Next, Plaintiffs rely on a 1987 draft of an "hourly insurance booklet," which states on the first page that the company pays the "full cost of all health insurance" and, forty pages later, that retiree health insurance "is continued until . . . death." (*See* R. 104 Ex. 30, Mar. 24, 1987, Studlow–Nuerge Mem. attach. 1, 41.) The letter accompanying the draft states that it is for "hourly retirees prior to October 1, 1986," confirming that the document predates the class period and is irrelevant to Plaintiffs' claims. (R. 104 Ex. 30, Mar. 24, 1987, Studlow–Nuerge Mem. 1.) Further, the draft does not expressly tie the statement about cost with the one about duration. And the draft also states that "*[a]ll* coverages terminate as indicated above or when you cease to be eligible, upon termination of employment status, *or when the group policy terminates*, whichever is earlier." (*Id.* attach. at 41 (emphasis added).) In any event, there is no evidence that the draft booklet was ever finalized or distributed to retirees.

Finally, and contrary to the inferences that Plaintiffs seek to draw from these materials, BorgWarner DTP made clear to the UAW and retirees that it did *not* consider benefits provided by the 1986 HIA to be vested. As the 1986 HIA came to an end, BorgWarner DTP determined that, because retiree health benefits were not vested, it would stop providing them if the Local 287 struck. (Stmt. Add'l Facts ¶ 1, p. 2 above.) BorgWarner DTP communicated this

---

[11] Indeed, the evidence suggests to the contrary. *First*, the facsimile transmission enclosing the summary predates the 1989 HIA by several months. *Second*, BorgWarner DTP's lead negotiator in 1989 and 1990, Jack Reising, testified that the reference to "Warner Gear" on the summary's cover suggested that the document predated 1986. (Ex. 34, Reising Dep. 82:1–21.) *Third*, former BorgWarner Inc. benefit expert George Turczynowsky testified that it had

*(footnote continued on next page)*

position to the Local 287 as well as existing retirees, stating that "[t]he Company is not obligated to continue health insurance coverage for retirees." (*Id.*) This direct evidence of BorgWarner DTP's view of the 1986 HIA is more probative than the inferences Plaintiffs try to draw from other documents.

### B. Extrinsic Evidence of BorgWarner's Intent After 1989 Defeats Plaintiffs' View that Their Health Benefits Were Vested and Unchangeable.

Plaintiffs also rely on extrinsic evidence that purports to show that BorgWarner understood the HIAs from 1989 through 2005 to provide vested retiree health benefits. (R. 102, Pls.' Mot. Summ. J. 18–19, 20.) A close examination of this evidence illustrates, however, that none of it describes Plaintiffs' benefits as lifetime in nature or inalterable.

Plaintiffs point to several documents in an effort to show that their benefits last forever:

- Some of the documents state that an employee's insurance coverage continues after retirement or that a surviving spouse's coverage continues after the retiree's death. (R. 104 Ex. 22, 1989 Retiree Income Prog. Guide Booklet 17; R. 104 Ex. 23, 1995 Retiree Income Prog. Guide Booklet 17; R. 104 Ex. 28, Surviving Spouse Docs. 1–3, 6.)

- Some state that BorgWarner DTP pays for retiree health benefits or that such benefits are "free." (R. 104 Ex. 22, 1989 Retiree Income Prog. Guide Booklet 17; R. 104 Ex. 23, 1989 Retiree Income Prog. Guide Booklet 17; R. 104 Ex. 24, 1990 Retirement Summ. 1; R. 104 Ex. 25, 1995 Retirement Summ. 1; R. 104 Ex. 28, Surviving Spouse Docs. 1–4, 8–11.)

Nothing in the documents promises that retiree insurance would continue "forever" or that benefits would be "free" forever. To the contrary, some of the documents stress that retiree insurance is paid "at the present time" by BorgWarner DTP. (R. 104 Ex. 24, 1990 Retirement Summ. 1; R. 104 Ex. 25, 1995 Retirement Summ. 1.) This evidence is insufficient to support

---

*(continuation of footnote from previous page)*
been superseded by later documents. (*See* Ex. 36, Turczynowsky Dep. 61:19–62:7; *see* R. 104 Ex. 24, 1990 Retirement Summ. 4 (bearing Jan. 1990 date).)

summary judgment for Plaintiffs. *See Reese*, 574 F.3d at 326 (explaining that it does not follow from extrinsic evidence about the present nature of benefits that the benefits cannot change in the future).[12]

Plaintiffs make much of the fact that other documents state that retirees become eligible for Medicare at age sixty-five. (R. 104 Ex. 24, 1990 Retirement Summ. 3; R. 104 Ex. 25, 1995 Retirement Summ. 3.) Plaintiffs argue that for class members retiring at age fifty-five, "the promise of retiree healthcare benefits at the time of Medicare eligibility, would be illusory if it did not survive the expiration of the HIA." (R. 102, Pls.' Mot. Summ. J. 18.) But the retirement summaries do not promise that *every* retiree will receive retiree health benefits when he or she becomes eligible for Medicare. They merely state that retirees who become eligible for Medicare *during the term of the current HIA* must avail themselves of Medicare.[13]

Finally, Plaintiffs rely on a BorgWarner memorandum from 1998 stating that, for employees retiring before March 12, 1998, "benefits will be determined under the Plan as it existed at the time of retirement." (R. 103 Ex. 3, French Decl. Ex. A at 4.) This language comes from a section on pension benefits. Even if (contrary to fact) the language described health benefits, it would mean only that initial retirement benefits are determined "under the Plan as it

---

[12] The documents also state that benefits for surviving spouses terminate if they remarry. (R. 104 Ex. 24, 1990 Retirement Summ. 1; R. 104 Ex. 25, 1995 Retirement Summ. 1.) These statements need not be read to mean that remarriage was the *only* occurrence that could terminate a surviving spouse's insurance. (*See* pp. 14–15 above.)

[13] Although Plaintiffs rely on the 1990 and 1995 retirement summaries, they make no mention of the checklists that accompanied those summaries. (*See* R. 100 Ex. 24, Nuerge Dep. 45:17–46:25 (explaining that the checklists acknowledged receipt of the summaries.)) At no point did any of the checklists from earlier in the class period describe retiree health insurance as "lifetime" or "vested" benefits. (*See* Ex. 28, 1990 Retirement Checklist 1.) Indeed, checklists from later in the class period stated that "[c]urrently, [the health insurance] premiums for these benefits are paid by the Company" and that benefits could change in the future. (Ex. 32, Cross Retirement Checklist 1; Ex. 33, Cross Dep. 23:16–19.)

existed at the time of retirement," not that benefits could never change in the future. Moreover, this same document advises of changes to the prescription drug plan. (*Id.* at 3.) It does not support a claim for vesting.[14]

## CONCLUSION

For the reasons set forth above, BorgWarner urges the Court to deny Plaintiffs motion for summary judgment, and instead to enter summary judgment for BorgWarner.

Dated: June 14, 2012                           Respectfully submitted,

                                               s/Bobby R. Burchfield
Elisa Angeli Palizzi (P52088)                  Bobby R. Burchfield
(angeli@millercanfield.com)                    (bburchfield@mwe.com)
Miller, Canfield, Paddock and Stone, P.L.C.    Joshua David Rogaczewski
150 West Jefferson, Suite 2500                 (jrogaczewski@mwe.com)
Detroit, Michigan 48226                        McDermott Will & Emery LLP
313.496.7635                                   600 13th Street, Northwest
313.963.6420 fax                               Washington, D.C. 20005
                                               202.756.8000
                                               202.756.8087 fax

*Attorneys for BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

---

[14] Plaintiff rely on the distinction made in a 1999 memorandum between retirees hired before 1993 and the Category B retirees, who were hired after 1992. (R. 102, Pls.' Mot. Summ. J. 19 (citing R. 104 Ex. 27, Sept. 27, 1999, Nuerge–Roark Mem. 1).) As discussed above, the fact that recently hired employees would not have retiree health benefits says nothing about whether Plaintiffs' benefits are vested. (*See* Part I.B.3 above.)

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2012, I electronically filed the foregoing **BorgWarner's Brief in Opposition to Plaintiffs' Motion for Summary Judgment** with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

<u>s/Bobby R. Burchfield</u>
Bobby R. Burchfield
(bburchfield@mwe.com)
McDermott Will & Emery LLP
600 13th Street, Northwest
Washington, D.C. 20005
202.756.8000
202.756.8087 fax