UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLARD L. SLOAN, EUGENE J. WINNINGHAM, and JAMES L. KELLEY,

Plaintiffs,

v.

BORGWARNER INC., BORGWARNER DIVERSIFIED TRANSMISSION PRODUCTS INC., and BORGWARNER FLEXIBLE BENEFITS PLANS,

Defendants.

Case 2:09-cv-10918-PDB-MKM

U.S. District Judge Paul D. Borman

U.S. Magistrate Judge Mona K. Majzoub

# BORGWARNER'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


Elisa Angeli Palizzi (P52088)
(angeli@millercanfield.com)
Miller, Canfield, Paddock and Stone, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
313.496.7635
313.963.6420 fax

Bobby R. Burchfield
(bburchfield@mwe.com)
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
McDermott Will & Emery LLP
600 13th Street, Northwest
Washington, D.C. 20005
202.756.8000
202.756.8087 fax

*Attorneys for BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

INDEX OF EXHIBITS .......... iv

I. THE PARTIES DID NOT AGREE TO VESTED BENEFITS.......... 1

II. THE CHANGES IMPLEMENTED BY BORGWARNER SATISFY THE STANDARDS IN *REESE*.......... 3

III. *WAL-MART* PRECLUDES PLAINTIFFS' DAMAGES CLAIM. .......... 4

# TABLE OF AUTHORITIES

**Cases**

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) ....................5

*Bauer v. Kraft Foods Global, Inc.*, 277 F.R.D. 558 (W.D. Wis. 2012) ....................5

*Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253 (6th Cir. 2012) ....................1

*Cole v. ArvinMeritor, Inc.*, 549 F.3d 1064 (6th Cir. 2008) ....................1

*Harnden v. Jayco, Inc.*, 496 F.3d 579 (6th Cir. 2007) ....................3

*Int'l Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983) ....................2

*Linville v. Teamsters Misc. Workers Union, Local 284*, 206 F.3d 648 (6th Cir. 2000) ....................1, 2

*Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26 (2d Cir. 2012) ....................5

*Reese v. CNH Am. LLC*, 574 F.3d 315 (6th Cir. 2009) ....................1, 3

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ....................1, 5

**Statutes and Rules**

Fed. R. Civ. P. 56 ....................3

Fed. R. Evid. 703 ....................3

Fed. R. Evid. 1006 ....................4

**Other Authorities**

10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (3d ed. 1998 & Supp. 2012) ....................3

## INDEX OF EXHIBITS

BorgWarner has attached to this reply excerpts of exhibits or authorities already part of the summary judgment record. The excerpts reflect updated highlighting by BorgWarner to comply with the Court's practice guidelines.

| **Exhibit** | **Description** |
|---|---|
| L | *Int'l Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983) (revised pages 1480 and 1482 of R. 101 Ex. 10) (*replaces* R. 108 Ex. L) |
| N | *Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253 (6th Cir. 2012) (revised R. 111 Ex. 21) |
| O | *Cole v. ArvinMeritor, Inc.*, 549 F.3d 1064 (6th Cir. 2008) (revised page 1075 of R. 101 Ex. 5) |
| P | *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (revised page 2560 of R. 101 Ex. 16) |
| Q | Federal Rule of Civil Procedure 56 (revised page 583 of R. 101 Ex. 18) |

Only weeks ago, the Sixth Circuit reiterated that "vesting of retiree welfare benefits is a matter of contractual agreement." *Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 261 (6th Cir. 2012).[1] For this reason, the parties' undisputed "agreement to disagree" entered at the beginning of the class period, and confirmed at the end, is fatal to Plaintiffs' claim of an agreement to vest, as is the specific durational clause. Even if they could overcome those hurdles, however, their claim to inalterable benefits fails as a matter of law, *Reese*, 574 F.3d at 326, and their claim for damages is precluded by *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011).

## I. THE PARTIES DID NOT AGREE TO VESTED BENEFITS.

As shown (R. 95, Defs.' Mot. 3), in a contract addendum signed in 1990, BorgWarner explicitly refused to agree that retiree health benefits are vested, and reiterated this position in the Plant Shutdown Agreement in 2009. Although the parties agreed to many provisions in the CBAs, the undisputed record shows they *never agreed* on vesting, and thus as a matter of law the retiree health benefits did not vest. In their effort to negate this determinative "agreement to disagree" provision, Plaintiffs assert that it is an "after-the-fact self-serving" provision, and could have no effect on current retirees. (R. 112, Pls.' Opp'n 4.) But the provision was executed by the employer and both unions in *1990*, even *before* execution of the 1989 HIA in *1992*. For all or virtually all of this class of 1989 through 2009 retirees, the provision served as a written forewarning of BorgWarner's refusal to agree to vesting.[2]

---

[1] *See also Reese v. CNH Am. LLC*, 574 F.3d 315, 321 (6th Cir. 2009) (vested retiree health benefits are "purely a matter of contract"); *Linville v. Teamsters Misc. Workers Union, Local 284*, 206 F.3d 648, 651 (6th Cir. 2000) ("The *Yard-Man* inference . . . cannot be used to contradict the express text of the agreement or plan documents.").

[2] Unlike the employer in *Cole v. ArvinMeritor, Inc.*, 549 F.3d 1064, 1075 (6th Cir. 2008), here BorgWarner wrote its disagreement with vesting into the contract.

Plaintiffs contend that the Court should rely on an earlier, unsigned version of the addendum. It is basic that the signed version supersedes earlier drafts. Moreover, the testimony cited by Plaintiffs (R. 112, Pls.' Opp'n 3) does not prove that BorgWarner *ever agreed* to the earlier version.

Plaintiffs' primary argument is that certain tools of contractual interpretation, such as the "tying" of eligibility for health benefits to eligibility for pension benefits, lead to an inference of vesting. (*Id.* at 1.) The Sixth Circuit has made clear, however, that such tools for inferring intent are allowed only if the contract is *ambiguous* on the issue of vesting. *Linville*, 206 F.3d at 651; *Int'l Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479, 1480 (6th Cir. 1983) ("the court should first look to the explicit language of the [CBA] for clear manifestations of intent," and only "ambiguity requires that we look to other provisions"); (*see also* R. 108, Defs.' Opp'n 8–9). If, as here, one party made clear its opposition to vesting, inferring vesting would frustrate rather than fulfill the contractual intent.

Next, Plaintiffs argue that, if the benefits were not vested, BorgWarner could have changed them at any time from 1989 to 2009. That is incorrect. The CBAs, and the related HIAs, were in effect continuously during the class period. Only in 2009 did the final HIA expire without replacement, at which time BorgWarner made the benefit modifications at issue here.

Plaintiffs' other arguments are equally meritless. Although "general durational provisions" will not preclude vesting (R. 112, Pls.' Opp'n 6–7), BorgWarner demonstrated that the durational provision here relates specifically to retiree health benefits (R. 95, Defs.' Mot. 14–15). Likewise, summary plan descriptions that conflict with the CBA are not binding (R. 112, Pls.' Opp'n 7–8), but BorgWarner relies on language *in the mutually executed HIA itself* giving it the right to "modify, amend, suspend, or terminate the Plan" upon expiration (R. 95, Defs.'

Mot. 15). And finally, Plaintiffs cannot deny that the increased copays for prescription drug benefits in 1998, and the extension of the annual escalator for the deductible in 2000, were imposed on persons who had already retired, thus undermining the suggestion that benefits were lifetime inalterable. (*Id.* SUMF ¶¶ 7, 8.) Even if, as Plaintiffs claim, benefits were also improved in certain ways, the fact of those changes further undermines their claims of inalterability.

At bottom, Plaintiffs cannot overcome the clear wording of the "agree to disagree" and duration provisions. Summary judgment rejecting vesting is appropriate.

## II. THE CHANGES IMPLEMENTED BY BORGWARNER SATISFY THE STANDARDS IN *REESE*.

Plaintiffs misunderstand *Reese*. *Reese* allows reasonable, unilateral changes by an employer to retiree health benefits "unless [the CBA] says otherwise," a conclusion that "makes sense not only in the narrow circumstances of this case but also within *the broader context of ERISA*." 574 F.3d at 326 (emphasis added); *see id.* at 327 ("CNH, in short, cannot terminate all health-care benefits for retirees, but it [*i.e.*, CNH] may reasonably alter them.") The scope of allowable changes is determined by three criteria. *Reese*, 574 F.3d at 326. Undisputed evidence submitted by BorgWarner, including a declaration by retiree health benefits expert Scott Macey, demonstrates that the changes at issue satisfy each criterion. (R. 95, Defs.' Mot. 16–19.)[3]

[3] BorgWarner properly designated Mr. Macey as an expert on retiree health benefits, served his expert report, and made him available for deposition. Plaintiffs complain about his expert declaration, but have not moved to strike it. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738, at 372 (3d ed. 1998) ("A party must move to strike an affidavit that violates Rule 56[(c)(4)]."). Mr. Macey's declaration demonstrates his qualification to provide an expert opinion in this case. (*See* R. 98 Ex. 17, Macey Decl. ¶ 1.) And contrary to Plaintiffs' assertion (R. 112, Pls.' Opp'n 16), as an expert Mr. Macey can rely on hearsay. *See* Fed. R. Evid. 703; *Harnden v. Jayco, Inc.*, 496 F.3d 579, 583 (6th Cir. 2007). Finally, Plaintiffs have submitted no evidence to rebut his conclusions. *See* Fed. R. Civ. P. 56(e)(2).

In an effort to show the changes are unreasonable, Plaintiffs greatly exaggerate their effects. They assert that BorgWarner "completely eliminated health care coverage for Medicare-eligible retirees" (R. 112, Pls.' Opp'n 13), but these retirees are by definition eligible for Medicare, relied on by the overwhelming majority of senior Americans; BorgWarner *also* provided each Medicare-eligible class member and spouse a Retiree Reimbursement Account payment of $169.58 per month and a pension supplement of approximately $90 per month (R. 95, Defs.' Mot. SUMF ¶¶ 16, 17). From May 2009 to November 2011 (thirty months), they contend, Willard Sloan paid $6,755.50 out of pocket for health care, or $225.18 per month. (Eugene Winningham and James Kelley paid less.) The undisputed record shows that those amounts are reasonable standing alone (*id.* ¶¶ 19–22), but Plaintiffs also appear to ignore the almost $340 these retirees and their spouses received together each month into their company-funded reimbursement accounts (*id.* ¶ 16).[4]

Further, Plaintiffs complain that the $104.25 per month each *pre*-Medicare retiree must pay is "devastating" (R. 112, Pls.' Opp'n 14), but this is just rhetoric. The average premium for a pre-Medicare retired union member nationwide is between $168 and $229 (R. 98 Ex. 17, Macey Decl. ¶ 31(c)), and Plaintiffs' payments are certainly within the range of reasonableness.

## III. *WAL-MART* PRECLUDES PLAINTIFFS' DAMAGES CLAIM.

As shown (R. 95, Defs.' Mot. 19–20), the Supreme Court in *Wal-Mart* unanimously ruled that Rule 23(b)(1) and (b)(2) are inappropriate vehicles for awarding individualized damages on a class-wide basis. It is true that the Court left open the prospect that Rule 23(b)(1) and (b)(2)

[4] The chart purporting to show Plaintiffs' drug costs (R. 112 Ex. 10) is inadmissible because Plaintiffs have failed to provide the underlying data. Fed. R. Evid. 1006. Also, it is unclear what point Plaintiffs are trying to make in attacking Michelle DuFour's declaration (R. 112, Pls.' Opp'n 14 n.14) since the differences between her estimates and the Plaintiffs' numbers are insubstantial.

plaintiffs may obtain "monetary relief [that is] incidental to the injunctive or declaratory relief," 131 S. Ct. at 2557, but that is not this case.[5] To recover damages here, each class member would need to come forward with individual medical bills and prove that his or her out of pocket spending was above the amounts that he or she would have spent without the plan changes. Trial on those issues would not be "incidental" to injunctive relief; it would "predominate" over the injunctive relief. Rule 23(b)(1) and (b)(2) do "not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 131 S. Ct. at 2557; *see also id.* at 2559 ("In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process.").[6]

Dated: July 12, 2012

Respectfully submitted,

s/Bobby R. Burchfield
Bobby R. Burchfield
(bburchfield@mwe.com)
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
McDermott Will & Emery LLP
600 13th Street, Northwest
Washington, D.C. 20005
202.756.8000
202.756.8087 fax

Elisa Angeli Palizzi (P52088)
(angeli@millercanfield.com)
Miller, Canfield, Paddock and Stone, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
313.496.7635
313.963.6420 fax

*Attorneys for BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

[5] The Court did not address the correctness of *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), but construed it as allowing "damages that flow directly from liability to the class *as a whole*" and as not requiring "additional hearings to resolve the disparate merits of each individual's case." 131 S. Ct. at 2560. That possible exception to *Wal-Mart* does not apply here.

[6] *See Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 29 (2d Cir. 2012) (individual damages requires non-incidental, individualized proceedings rejected by *Wal-Mart*); *Bauer v. Kraft Foods Global, Inc.*, 277 F.R.D. 558, 562–64 (W.D. Wis. 2012) (denying Rule 23(b)(2) certification where plaintiffs sought damages for health care costs).

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2012, I electronically filed the foregoing **BorgWarner's Reply Brief in Support of Its Motion for Summary Judgment** with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

s/Bobby R. Burchfield
Bobby R. Burchfield
(bburchfield@mwe.com)
McDermott Will & Emery LLP
600 13th Street, Northwest
Washington, D.C. 20005
202.756.8000
202.756.8087 fax