UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLARD L. SLOAN, EUGENE J.
WINNINGHAM, JAMES L. KELLEY,
on behalf of themselves and a similarly
situated class,

        Case No. 09-cv-10918
        Hon. Paul D. Borman

    Plaintiffs,        Magistrate Mona K. Majzoub

v.        **Class Action**

BORGWARNER, INC., BORGWARNER
FLEXIBLE BENEFITS PLANS and
BORGWARNER DIVERSIFIED
TRANSMISSION PRODUCTS, INC.,

    Defendants.
_____/

| | |
|---|---|
| David R. Radtke (P47016) | Bobby R. Burchfield |
| Roger J. McClow (P27170) | Joshua D. Rogaczewski |
| Patrick J. Rorai (P65091) | McDERMOTT WILL & EMERY |
| KLIMIST, McKNIGHT, SALE, | Attorneys for Defendants |
| McCLOW & CANZANO, P.C. | 600 Thirteenth St., N.W. |
| Attorneys for Plaintiffs | Washington, D.C. 20005 |
| 400 Galleria Officentre, Suite 117 | 202-756-8000; fax 202-756-8087 |
| Southfield, MI 48034 | bburchfield@mwe.com |
| 248-354-9650; fax 248-354-9656 | jrogaczewski@mwe.com |
| dradtke@kmsmc.com | |
| rmcclow@kmsmc.com | Elisa Angeli Palizzi (P52088) |
| prorai@kmsmc.com | MILLER, CANFIELD, PADDOCK |
| | & STONE, P.L.C. |
| | Attorneys for Defendants |
| | 150 W. Jefferson Avenue, Suite 2500 |
| | Detroit, MI 48226 |
| | 313-496-7635; fax 313-963-6420 |
| | angeli@millercanfield.com |

_____/

**PLAINTIFFS' REPLY BRIEF
IN SUPPORT OF SUMMARY JUDGMENT**

-i-

# TABLE OF CONTENTS

I.      The Health Care Benefits for Retirees and Surviving Spouses Are Vested According to Terms of the Health Insurance Agreements. . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     The Summary Plan Descriptions Support the Contention That Retiree Health Care Benefits Are Vested. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    Retiree Health Care Benefits are Directly Tied to Receipt of Pension Benefits. . . . . . . 3

IV.    The 10 Year Agreement on Deductibles and Stop-Loss, the Establishment of Category B Retirees and Grandfathered Retirees Show the Vested Nature of the Benefits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

-ii-

## **TABLE OF AUTHORITIES**

*Bender v. Newell Window Furnishings, Inc.*,
725 F. Supp. 2d 642 (W.D. Mich. 2010), aff'd 2012 U.S. App. LEXIS 9003
(6th Cir. May 3, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*International Union, UAW v. Loral Corporation,*
1997 U.S. App. LEXIS 2118 (6th Cir. February 3, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  **The Health Care Benefits for Retirees and Surviving Spouses Are Vested According to Terms of the Health Insurance Agreements.**

Plaintiffs' Response Brief in Opposition to BorgWarner's Motion for Summary Judgment rebutted Defendants' claim the "agreements to disagree" in the 1990 ACME Agreement and the 2009 Shutdown Agreement negate the vesting language in Article VIII of the HIAs. (Dkt. #112 pp. 2-6) Defendants continue to claim these self-serving statements evidence a lack of an agreement to vest. This claim is wrong. The statements only show that there was a disagreement as to *whether* the retiree health care benefits vested -- the very issue before this Court.

Defendants also claim HIA Exhibit A, Section M.2.(e), which states that coverages provided in Exhibit A terminate on the date the agreement is terminated, limits the duration of retiree health care benefits to the duration of the HIA. Defendants deliberately ignore the plain language of HIA Exhibit A, Sections M.2.(a), (b) and (d) which refer to the "applicable continuation provisions" of the HIA or Appendix A as determining the duration of retiree and surviving spouse health care coverage. (P. MSJ Ex. 2 pp. 65-66; P. MSJ Ex. 5 pp. 72-73; P. MSJ Ex. 6 pp. 74-75)[1] Because the "applicable continuation provision" for retiree health care is Article VIII of the HIAs, Exhibit A, Section M.2, when read as a whole, *is* consistent with and *confirms* Plaintiffs' assertion that the benefits are vested.

HIA Appendix A, Section 8 also supports the Plaintiffs' argument of the vested nature of retiree health care benefits for Class Members where it states that an employee immediately loses coverage upon termination of employment "*[e]xcept as specifically set forth in Article VIII of the [Health Insurance] Agreement*" which contains the applicable continuation provisions for retiree health care. (P. MSJ Ex. 2 p. 20; P. MSJ Ex. 5 p. 19; P. MSJ Ex. 6 p. 19)

---

[1] Exhibits to Plaintiffs' Motion for Summary Judgment are referred to as "P. MSJ Ex. __." Exhibits to Plaintiffs' Reply Brief in Support of Motion for Summary Judgment are designated as "P. Reply Ex. __."

-1-

If the Defendants are correct the HIA benefits terminate when the HIAs terminated, then transition survivor income benefits which last for 24 months; bridge income benefits which survivors are to receive until age 62 or remarriage; layoff benefits which can last as long as 12 months; and extended disability benefits which in many cases last as long as an employee's seniority would also terminate when the HIA expired. If that were true, it would completely undermine the purpose of these benefits, which often outlive a three year agreement. It would also be contrary to the plain language of HIA Exhibit A, Section M.2. (a) and (d) which state that the applicable continuation provisions for layoff, disability and death are in the HIA and its Appendix A. (P. MSJ Ex. 2 pp. 65-66; P. MSJ Ex. 5 pp. 72-73; P. MSJ Ex. 6 pp. 74-75)

There is no durational limit on retiree health care benefits in the HIA. To the contrary, the benefits are vested *because* health care benefits are tied to receipt of pension benefits.

**II.   The Summary Plan Descriptions Support the Contention That Retiree Health Care Benefits Are Vested.**

The Defendants also continue to incorrectly claim the UAW negotiated the SPD appended to the end of the 1989 HIA. SPDs are *not* negotiated agreements.[2] ERISA requires that plans provide summary plan descriptions to beneficiaries. See 29 U.S.C. §1022.

Even more importantly, the SPDs upon which Defendants rely, specifically refer to the collectively bargained nature of the health care benefits. The SPDs also specifically provide that Defendants' ability to modify, suspend or terminate the Plan or policies is subject to the provisions of the HIAs. (P. MSJ Ex. 2 p. 121; P. MSJ Ex. 5 p. 130; P. MSJ Ex. 6 p. 132) Therefore, regardless

---

[2] Defendants' claim is also directly contradicted by George Turczynowsky who testified in his deposition that the 1989 SPD was written by DTP in Muncie and then reviewed by BorgWarner, its corporate parent. (P. MSJ Ex. 11, Tr. 53-54) It is also contradicted by the facts surrounding the 1989 negotiations. Laura Champagne, the UAW representative who reviewed the SPD in 1992, was not a participant in the 1989 negotiations. She did not review the SPD language until 1992 -- 3 years after the 1989 HIA was agreed upon. (Dkt. #108 p. 3)

of whether the UAW negotiated, agreed to or approved the SPDs, it does not obviate from the fact that the SPDs *do not* negate the vesting language of Article VIII in the HIAs. Just the opposite is true. The SPDs specifically limit Defendants' ability to change benefits to only what is allowable in the HIAs. The HIAs vested the lifetime health care benefits at the levels contained in the enumerated HIA Exhibits. The UAW had no reason to object to the SPDs because they did not undermine or negate the HIA's vesting language for health care benefits for retirees and surviving spouses.

### III. Retiree Health Care Benefits are Directly Tied to Receipt of Pension Benefits.

Defendants also claim that the HIAs do not specifically tie retiree health care benefits to receipt of a pension. First, as the Sixth Circuit most recently held in *Bender v. Newell Window Furnishings,* 2012 U.S. App. LEXIS 9003 (6th Cir. May 3, 2012), retiree health care benefits are vested, even if not tied to pension benefits, if there is no contract language specifically limiting the duration of retiree health care benefits. (P. MSJ Ex. 33, p. 10) Here, the HIAs *do* specifically tie retiree health care benefits with receipt of a pension and there is no durational limit on retiree health care benefits, other than remarriage by a surviving spouse. The tie between pension and retiree health care is most direct in Article VIII, Section 3, which provides:

> ***The Company will provide the medical coverages and procedures set forth under the provisions of Exhibit A. . ., C, D, E, F and H and will pay the monthly premium for such coverage for***:
>
> A. A surviving spouse and the eligible dependent(s) of a retired employee . . . *who is receiving a monthly retirement benefit* under Article VIII, Section 3, of the Retirement Income Program . . . . (P. MSJ Ex. 2 pp. 8-9; P. MSJ Ex. 5 pp. 6-7; P. MSJ Ex. 6 p. 6-7)

In *International Union, UAW v. Loral Corporation,* 1997 U.S. App. LEXIS 2118 (6th Cir. February 3, 1997) (P. Reply Ex. 1), the court held that it would be an impossible construction of a collectively bargained plan to provide for lifetime benefits for surviving spouses, while allowing for

-3-

the termination of the underlying benefits for retirees.  Here, Article VIII of the HIAs directly ties the eligibility for pension benefits with the promise of vested retiree health care benefits.  Even if the Court believes only the language in Article VIII, Section 3 for surviving spouse provides the link, it would be impossible to construe the language of the HIAs to provide for lifetime benefits for surviving spouses, but allow for the termination of the health care benefits for retirees.

**IV.     The 10 Year Agreement on Deductibles and Stop-Loss, the Establishment of Category B Retirees and Grandfathered Retirees Show the Vested Nature of the Benefits.**

In the 1992 HIA, and in the 1995 HIA, the parties reached agreements which set the deductible and stop-loss amounts until December 31, 2002 -- over four years after the 1992 and 1995 HIAs expired in March 1998.  (P. MSJ Ex. 5 pp. 65, 80; P. MSJ Ex. 6 pp. 66-67, 82)  This is clear evidence that the benefits were vested.  If the retiree health care benefits expired in 1998 when the HIAs expired, it would have made no sense for the parties to agree to deductibles and stop-losses beyond the HIAs' expiration.  The only plausible explanation is that the parties knew the health care benefits for retirees and surviving spouses set forth in the HIAs and the Exhibits were contractually required to continue beyond 1998.  Defendants' argument that the parties agreed to deductibles and stop-loss amounts through 2002 without knowing the benefits to which they were applicable is absurd.

The same logic holds true for the parties' 1992 negotiation of Category B Retirees' benefits, for future employees hired after December 31, 1992.  Under the Defendants' theory, Category A Retirees were already not eligible for company-paid benefits after March 1998, when the 1992 HIA expired.  If that was true, then why create a new category of retirees (none of whom would retire under the 1992 HIA) that also did not have vested retiree health care benefits? Defendants leave this question unanswered, because the answer (that Category A Retirees, as opposed to Category B Retirees, had vested benefits) undermines their entire case.

Defendants' arguments against the only logical interpretation of the HIAs fail completely. The ten year agreement on deductibles and stop-loss amounts, the establishment of Category B Retirees and the 2005 grandfathering of retirees into a prior, better benefit plan are completely contrary to an agreement that retiree health care benefits may be changed, modified or terminated upon the expiration of the HIAs. See *Bender v. Newell Window Furnishings, Inc.*, 725 F. Supp. 2d 642, 658 (W.D. Mich. 2010), *aff'd* in 2012 U.S. App. LEXIS 9003 (6th Cir. May 3, 2012).

**V.    Conclusion**

For the reasons set forth in Plaintiffs' Motion for Summary Judgment as to Liability and this Reply Brief, Plaintiffs are entitled to summary judgment as to liability.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.


By: /s/ David R. Radtke
   DAVID R. RADTKE (P47016)
   ROGER J. McCLOW (P27170)
   PATRICK J. RORAI (P65091)
   Attorneys for Plaintiffs
   400 Galleria Officentre, Suite 117
   Southfield, MI  48034
   (248) 354-9650
   dradtke@michworklaw.com
   rmcclow@michworklaw.com
   prorai@michworklaw.com

Dated: July 12, 2012

## CERTIFICATE OF SERVICE

    I hereby certify that on July 12, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will serve it upon:

Bobby R. Burchfield                      Elisa Angeli Palizzi
Joshua D. Rogaczewski

                               Respectfully submitted,

                               McKNIGHT, McCLOW, CANZANO,
                               SMITH & RADTKE, P.C.

                               By: /s/ David R. Radtke
                                 DAVID R. RADTKE (P47016)
                                 ROGER J. McCLOW (P27170)
                                 PATRICK J. RORAI (P65091)
                                 Attorneys for Plaintiffs
                                 400 Galleria Officentre, Suite 117
                                 Southfield, MI  48034
                                 (248) 354-9650
                                 dradtke@michworklaw.com
                                 rmcclow@michworklaw.com
                                 prorai@michworklaw.com

P:\RHC Cases\BorgWarner\2009 MI Lawsuit\Pleadings\PLs Reply BRF inSupport ofMSJ.wpd