UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WILLARD L. SLOAN, EUGENE J. WINNINGHAM, and JAMES L. KELLEY, <br><br> Plaintiffs, <br><br> v. <br><br> BORGWARNER INC., BORGWARNER DIVERSIFIED TRANSMISSION PRODUCTS INC., and BORGWARNER FLEXIBLE BENEFITS PLANS, <br><br> Defendants. | Case 2:09-cv-10918-PDB-MKM <br><br> U.S. District Judge Paul D. Borman <br><br> U.S. Magistrate Judge Mona K. Majzoub |

**BORGWARNER'S NOTICE OF SUPPLEMENTAL AUTHORITY**

BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans—referred to collectively as "BorgWarner"—hereby notify the Court of *Reese v. CNH America LLC*, Nos. 11-1359, 11-1857, 11-1969, 2012 WL 4009695, at *1 (6th Cir. Sept. 13, 2012) (*Reese II*) (attached), a supplemental authority relevant to BorgWarner's pending motion for summary judgment.

BorgWarner has argued that it is entitled to summary judgment because the changes made to Plaintiffs' health benefits in May 2009 were reasonable and permissible under *Reese v. CNH America LLC*, 574 F.3d 315, 324–27 (6th Cir. 2009) (*Reese I*). (R. 95, Defs.' Mot. 16–19.) Plaintiffs responded by contending that *Reese I* is limited to the facts of that case or situations in which the benefit agreements are lost (R. 112, Pls.' Opp'n 10–11 & n.10) and that benefit changes cannot be unilateral (*id.* at 12).

*Reese II* addresses directly Plaintiffs' criticisms. *First,* it confirms the central holding of *Reese I*, which was that "CNH could make 'reasonable' changes to the healthcare plan covering

eligible retirees." 2012 WL 4009695, at *2. *Second*, the Sixth Circuit made clear that employer changes to retiree health benefits need not be negotiated to be permissible: "In holding that 'CNH . . . may reasonably alter' the plaintiffs' benefits, we recognized that CNH could alter them *on its own*, not as part of a new collective-bargaining process." *Id.* at *3 (quoting *Reese I*, 574 F.3d at 327).

Dated: September 27, 2012                                   Respectfully submitted,

                                                            s/Bobby R. Burchfield
Elisa Angeli Palizzi (P52088)                               Bobby R. Burchfield
(angeli@millercanfield.com)                                 (bburchfield@mwe.com)
Miller, Canfield, Paddock and Stone, P.L.C.                 Joshua David Rogaczewski
150 West Jefferson, Suite 2500                              (jrogaczewski@mwe.com)
Detroit, Michigan 48226                                     McDermott Will & Emery LLP
313.496.7635                                                600 13th Street, Northwest
313.963.6420 fax                                            Washington, D.C. 20005
                                                            202.756.8000
                                                            202.756.8087 fax

*Attorneys for BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2012, I electronically filed the foregoing **BorgWarner's Notice of Supplemental Authority** with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

<u>s/Bobby R. Burchfield</u>
Bobby R. Burchfield
(bburchfield@mwe.com)
McDermott Will & Emery LLP
600 13th Street, Northwest
Washington, D.C. 20005
202.756.8000
202.756.8087 fax

Page 1

--- F.3d ----, 2012 WL 4009695 (C.A.6 (Mich.))
**(Cite as: 2012 WL 4009695 (C.A.6 (Mich.)))**

Only the Westlaw citation is currently available.

United States Court of Appeals,
Sixth Circuit.
Jack REESE, Frances Elaine Pidde, James Cichanopsky, Roger Miller and George Nowlin, Plaintiffs–Appellees (11–1359), Plaintiffs–Appellees/Cross–Appellants (11–1857 & 11–1969),
Ronald Hitt, Plaintiff,
v.
CNH AMERICA LLC, fka Case Corporation and CNH Global NV, Defendants–Appellants 11–1359), Defendants–Appellants/Cross–Appellees (11–1857 & 11–1969).

Nos. 11–1359, 11–1857, 11–1969.
Argued: June 5, 2012.
Decided and Filed: Sept. 13, 2012.

**Background:** Retirees brought action against employer, seeking declaration that they were entitled to lifetime health-care benefits, an injunction requiring employer to maintain level of retiree health-care benefits then in effect, and damages for injuries retirees might sustain if benefits were terminated. The district court, 2007 WL 2484989, granted summary judgment in favor of retirees and awarded attorney's fees to retirees, 2008 WL 2546936. Employer appealed. The Court of Appeals, 574 F.3d 315, affirmed in part and reversed in part. On remand, the United States District Court for the Eastern District of Michigan, Patrick J. Duggan, J., 2011 WL 824585, granted summary judgment for retirees. Employer appealed.

**Holdings:** The Court of Appeals, Sutton, Circuit Judge, held that:
(1) employer was entitled to reasonably, but unilaterally, alter lifetime health-care benefits for retirees and
(2) reasonableness of employer's unilateral alteration of lifetime health-care benefits had to be informed by facts that were not in record.

Reversed and remanded.

Bernice B. Donald, Circuit Judge, filed dissenting opinion.

West Headnotes

**[1] Labor and Employment 231H ⟨⟩445**

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(B) Plans in General
            231Hk443 Amendment of Plan
                231Hk445 k. Right to Amend. Most Cited Cases

Employer was entitled to reasonably, but unilaterally, alter lifetime health-care benefits for retirees, even though employer could not terminate benefits because retirees' right to lifetime benefits vested upon retirement pursuant to collective bargaining agreement (CBA) which provided that employees who retired under employer's pension plan were eligible to receive health-care benefits.

**[2] Labor and Employment 231H ⟨⟩1203**

231H Labor and Employment
    231HXII Labor Relations
        231HXII(D) Bargaining Representatives
            231Hk1200 Extent of Authority and Duties of Representative in General
                231Hk1203 k. Representation of Non-Members. Most Cited Cases

A union does not represent retired employees when it bargains a new contract for its employees.

**[3] Labor and Employment 231H ⟨⟩484(1)**

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(C) Fiduciaries and Trustees
            231Hk479 Notice and Disclosure Requirements
                231Hk484 Amendment or Termination of Plan
                    231Hk484(1) k. In General. Most Cited Cases

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 4009695 (C.A.6 (Mich.))
**(Cite as: 2012 WL 4009695 (C.A.6 (Mich.)))**

Reasonableness of employer's unilateral alteration of lifetime health-care benefits for retirees under collective bargaining agreement (CBA) had to be informed by amount that retirees paid for their health care under old plan and amount that employer paid, amount that retirees and employer would each pay under new plan and how quickly each side's costs were likely to grow, quality of care provided under old plan compared to quality of care under new plan, material difference in retirees' benefits from those offered to current employees and people retiring today, and comparing retiree's benefits to benefits offered by other companies in similar industries.

Appeal from the United States District Court for the Eastern District of Michigan at Detroit. No. 2:04–CV–70592–Patrick J. Duggan, District Judge.**ARGUED:**Bobby R. Burchfield, McDermott, Will & Emery LLP, Washington, D.C., for Appellants and Appellants/Cross–Appellees. Roger J. McClow, McKnight, McClow & Canzano, P.C., Southfield, Michigan, for Appellees and Appellees/Cross–Appellants. **ON BRIEF:**Bobby R. Burchfield, Joshua David Rogaczewski, McDermott, Will & Emery LLP, Washington, D. C., for Appellants and Appellants/Cross–Appellees. Roger J. McClow, McKnight, mcClow & canzano, P.C., Southfield, Michigan, for Appellees and Appellees/Cross–Appellants.

Before GIBBONS, SUTTON and DONALD, Circuit Judges.

SUTTON, J., delivered the opinion of the court in which GIBBONS, J., joined. DONALD, J. (pp. 9–15), delivered a separate dissenting opinion.

### OPINION
SUTTON, Circuit Judge.

*\*1* In litigation, as in film, sequels rarely satisfy. This case is no exception. Three years ago, we remanded this dispute to the district court for factfinding necessary to determine whether CNH America's proposed modifications to its retiree healthcare benefits are reasonable. The district court did not reach the reasonableness question and did not create a factual record that would permit us to answer the question on our own. As a result, we reverse and remand for further proceedings.

### I.

Our previous opinion makes it unnecessary to recount the protracted history of this litigation. See Reese v. CNH America LLC, 574 F.3d 315, 318–20 (6th Cir.2009). There, we considered two questions: "Did [CNH] in the 1998 CBA agree to provide health-care benefits to retirees and their spouses for life? And, if so, does the scope of this promise permit CNH to alter these benefits in the future?" Id. at 321. In answering the first question, we rejected CNH's claim that the CBA permitted the company to terminate the benefits, holding that eligibility for lifetime healthcare benefits had "vested." Id. at 322; see Yolton v. El Paso Tenn. Pipeline Co., 435 F.3d 571, 580 (6th Cir.2006); UAW v. Yard–Man, Inc., 716 F.2d 1476, 1482 (6th Cir.1983).

In answering the second question ("What does vesting mean in this setting?"), we rejected the suggestion that the *scope* of this commitment in the context of healthcare benefits, as opposed to pension benefits, meant that CNH could make no changes to the healthcare benefits provided to retirees. Unlike pension obligations, we explained, healthcare benefits cannot readily be monetized at retirement or for that matter practically fixed. See Reese, 574 F.3d at 324. Doctors and medical-insurance providers come and go. Medical plans change from year to year. And fixed, unalterable medical benefits at all events are not what retirees want. Nothing, indeed, would make employers happier than to know that vesting in the healthcare-benefits context meant the *same thing* as vesting in the pension context. For then, a company faced with the obligation could account for what it had spent on each employee for healthcare benefits on the day of retirement, then commit to spend no less through the end of the retiree's (and spouse's) life. Nor would most employers be troubled if this commitment, like most defined-benefit pension plans, increased based on inflation as measured by the consumer-price index. The reality is that, even though we have relied on language tying healthcare benefits to pension benefits as a basis for determining that healthcare benefits have vested, vesting in the context of healthcare benefits provides an evolving, not a fixed, benefit. See Yolton, 435 F.3d at 583 (relying on language in the summary plan descriptions saying that "*continued* coverages *will be the same as those that were in effect on the day preceding your retirement*"); see also Noe v. PolyOne Corp., 520 F.3d 548, 558 (6th Cir.2008); *McCoy v. Meridian Auto. Sys., Inc.,* 390 F.3 417, 422 (6th Cir.2004); Golden v.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 4009695 (C.A.6 (Mich.))
**(Cite as: 2012 WL 4009695 (C.A.6 (Mich.)))**

*Kelsey–Hayes Co.,* 73 F.3d 648, 656 (6th Cir.1996).

**\*2** The rub for retirees and employers alike is that healthcare benefits—what is provided and what it costs—have not been remotely static in modern memory. The reason has little to do with traditional causes of inflation and more to do with the expansion of the benefit: the remarkable growth in modern life-saving and comfort-improving medical procedures, devices and drugs. New and better medical procedures arise while others become obsolete. And it is the rare medical innovation that costs *less* than the one it replaces. Retirees, quite understandably, do not want lifetime eligibility for the medical-insurance plan in place on the day of retirement, even if that means they would pay no premiums for it. They want eligibility for up-to-date medical-insurance plans, all with access to up-to-date medical procedures and drugs. Whatever else vesting in the healthcare context means, all appear to agree that it does not mean that beneficiaries receive a bundle of services fixed once and for all. Companies want the freedom to change health-insurance plans. And beneficiaries want something more than a fixed, unalterable bundle of services; they want coverage to account for new and better, yet likely more expensive, procedures and medications than the ones in existence at retirement.

All of this was borne out by the parties' implementation of the relevant collective bargaining agreements—in at least two respects. As explained in our prior opinion, the 1998 CBA "created a Managed Health Care Network Plan for past and future retirees. In other words, it imposed managed care on all of them, which represented a reduction in the effective choices of coverage available for all retirees and the coverage actually provided to many, if not most, of them." *Reese,* 574 F.3d at 325. "Pre–1998 retirees thus saw their coverage downgraded in at least one respect: Unlike the prior plan, under which they could choose any doctor without suffering a financial penalty, they generally had to pay more for choosing an out-of-plan doctor." *Id.* Other cases reach the same conclusion. *Winnett v. Caterpillar, Inc.,* 609 F.3d 404, 412–13 (6th Cir.2010) (explaining that a change to managed care is a "significant change" representing a "reduction" in benefits); *cf. UAW v. Aluminum Co. of Am.,* 932 F.Supp. 997, 1011 (N.D.Ohio 1996) (challenging employer's adoption of a managed-care plan as a reduction in benefits).

Also confirming that the parties did not perceive the relevant CBAs as establishing fixed, unalterable benefits was the passage of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub.L. No. 108–173, 117 Stat.2066. No one batted an eye when the healthcare plans for which retirees were eligible were modified to account for the creation of Medicare Part D, the prescription-drug benefit for seniors.

In view of the distinction between the vesting of eligibility for a benefit and the scope of that commitment and in view of the parties' practice under the 1998 CBA of altering healthcare benefits under CBAs with materially identical language, we concluded that CNH could make "reasonable" changes to the healthcare plan covering eligible retirees. *Reese,* 574 F.3d at 325–27; *see also Zielinski v. Pabst Brewing Co.,* 463 F.3d 615, 619 (7th Cir.2006) (distinguishing the vesting of healthcare benefits from the scope of that commitment and holding that the employer was obligated to provide benefits "reasonably commensurate" with pre-retirement plans). We listed three considerations: Does the modified plan provide benefits "reasonably commensurate" with the old plan? Are the proposed changes "reasonable in light of changes in health care"? And are the benefits "roughly consistent with the kinds of benefits provided to current employees"? *Reese,* 574 F.3d at 326. We remanded the case to the district court to take evidence and to decide in the first instance the legal question whether CNH's proposed modifications were reasonable. *Id.* at 327.

**\*3** Back in the district court, CNH moved for approval of its proposed modifications to the benefits, introducing evidence (including affidavits from its employee-benefits director and an employee-benefits consultant and attorney) that the changes were reasonable. The plaintiffs introduced little new evidence on the issue of reasonableness. They instead relitigated several questions our court had already decided, moving for summary judgment on the ground that CNH lacks the ability to modify any benefits, save at the approval of the union that once represented them. The district court agreed and granted their motion.

II.

[1][2] The plaintiffs and the district court misread the panel opinion. In holding that "CNH ... may

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 4009695 (C.A.6 (Mich.))
**(Cite as: 2012 WL 4009695 (C.A.6 (Mich.)))**

reasonably alter" the plaintiffs' benefits, we recognized that CNH could alter them *on its own,* not as part of a new collective-bargaining process. *Reese,* 574 F.3d at 327. Past changes to retiree healthcare benefits, we noted, had not been collectively bargained, which comes as no surprise since "a union does not represent retired employees when it bargains a new contract for its employees." *Id.* at 324; see *Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 172, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). The district court, in short, erred when it disregarded our holding that the company may make reasonable modifications to the plaintiffs' healthcare benefits.

[3] That leaves two options: remand the case to the district court yet again or resolve the reasonableness question as a matter of law based on the evidence in the record. It is tempting to resolve the case now. This long-running dispute needs to come to an end, and it is particularly unfair to prolong the dispute when the status quo—a preliminary injunction in favor of the plaintiffs—not only favors just one party but also risks mooting the economic stakes of the case for the other party. Yet this sticky reality remains. The case turns in part on facts not in the record: How much did retirees pay for their health care under the old plan? How much did CNH pay? How much will the retirees and CNH each pay under the new plan, and how quickly are each side's costs likely to grow? How does the quality of care provided under the old plan compare to the quality of care under the new plan? Do the retirees' benefits differ in material respects from those offered to current employees and people retiring today? How do the benefits compare to benefits offered by other companies in similar industries? In the absence of a record on these points, the answer to the reasonableness question is a shot in the dark.

To gauge whether CNH has proposed reasonable modifications to its healthcare benefits for retirees, the district court should consider whether the new plan provides benefits "reasonably commensurate" with the old plan, whether the changes are "reasonable in light of changes in health care" (including access to new medical procedures and prescriptions) and whether the benefits are "roughly consistent with the kinds of benefits provided to current employees." *Reese,* 574 F.3d at 326. In doing so, the district court should take evidence on the following questions (and others it considers relevant to the reasonableness question):

*4 • What is the average annual total out-of-pocket cost to retirees for their healthcare under the old plan (the 1998 Group Benefit Plan)? What is the equivalent figure for the new plan (the 2005 Group Benefit Plan)?

• What is the average per-beneficiary cost to CNH under the old plan? What is the equivalent figure for the new plan?

• What premiums, deductibles and copayments must retirees pay under the old plan? What about under the new plan?

• What difference (if any) is there between the quality of care available under the old and new plans?

• What difference (if any) is there between the new plan and the plans CNH makes available to current employees and people retiring today?

• How does the new plan compare to plans available to retirees and workers at companies similar to CNH and with demographically similar employees?

It is not lost on us that the reasonableness inquiry is a vexing one. But the difficulty of the inquiry flows at least in part from the vagueness of the commitment underlying this litigation. It is well to remember the language of the relevant commitment: "Employees who retire under the Case Corporation Pension Plan for Hourly Paid Employees after 7/1/94, or their surviving spouses eligible to receive a spouse's pension under the provisions of that Plan, shall be eligible for the Group benefits as described in the following paragraphs." *Id.* at 318. What that means in the context of ever-changing medical-care developments, and ever-changing healthcare plans, is not easy. But if the parties cannot resolve the point on their own, we (and the district court) will do our best to resolve it for them.

One other thing on this score: the district court concluded that the East Moline Shutdown Agreement created "unalterable and irreducible" healthcare bene-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 4009695 (C.A.6 (Mich.))
**(Cite as: 2012 WL 4009695 (C.A.6 (Mich.)))**

fits for those who retired under it. R .304 at 22. The Moline Agreement, however, governs only the "economic closedown benefits and the eligibility rules established and set forth in" that agreement. R.290–2 at 19. Nothing in the agreement speaks to healthcare. It neither establishes nor sets forth healthcare benefits, which are instead found in the 1998 CBA, which are vested, and which remain subject to reasonable modification.

In view of this disposition of the appeal, we think it premature to address the parties' attorney-fees arguments. For one, this case is not over. For another, the district court may wish to revisit its attorney-fee decision based on its resolution of the questions identified above.

The dissent proposes a different path—that we reconsider our decision in *Reese I* and go back to square one. Unlike Judge Gibbons and me, Judge Donald did not sit on *Reese I*, so it would not be fair to call this an about-face or buyer's remorse. At the same time, the law-of-the-case doctrine presents a serious impediment to this approach. And the reality that neither party to this dispute has invoked an exception to the law-of-thecase doctrine presents a conclusive impediment to it.

### III.
**\*5** For these reasons, we reverse and remand for proceedings consistent with this opinion.

**DISSENT**[BERNICE B. DONALD](), Circuit Judge, dissenting.

My review of the issues presented here leads me to the conclusion that the majority's approach to modifying the scope of the retirees' vested health care benefits, both past and present, involves a misapprehension of the relevant law. While reasonableness is a common standard in the law, I cannot agree that resorting to what is reasonable provides the proper analytical framework in the instant case. When faced with contract terms that result in unanticipated consequences for the parties, courts are naturally tempted to play the role of arbiter and seek to resolve the case equitably. This Court, however, is one of law and not equity. Because the resolution of this case, as well as the prior appeal, represents a departure from current law, I respectfully dissent.

When affirming in part the district court's first grant of summary judgment to Plaintiffs in the instant dispute, this Court held that the retirees "have a vested right to receive health care benefits for life." *Reese I,* 574 F.3d at 327. On this issue, *Reese I* was consistent with prior decisions of this Court holding that when an employer ties eligibility for welfare benefits to eligibility for pension benefits those welfare benefits vest for life. *Noe v. PolyOne Corp.,* 520 F.3d 548, 558 (6th Cir.2008); *Yolton v. El Paso Tenn. Pipeline Co.,* 435 F.3d 571, 582–83 (6th Cir.2006); *McCoy v. Meridian Auto. Sys., Inc.,* 390 F.3d 417, 422 (6th Cir.2004); *Golden v. Kelsey–Hayes Co.,* 73 F.3d 648, 656 (6th Cir.1996).

At the same time, the Court reversed the district court's holding that "these [vested health care] benefits must be maintained precisely at the level provided for in the 1998 CBA." *Reese,* 574 F.3d at 327. The Court remanded to the district court to determine "how and in what circumstances CNH may alter such benefits." *Id.* Upon close reexamination, I have determined that our holding that CNH may *unilaterally* alter Appellees' vested health care benefits was in error, and the majority's resolution of the case fails to correct this error.

While the "law of the case" doctrine typically prevents an appellate court from reconsidering a prior decision on a subsequent appeal, that doctrine is "salutary" and designed to support a specific policy rationale: bringing an end to litigation. *General Am. Life Ins. Co. v. Anderson,* 156 F.2d 618–19 (6th Cir.1946). Accordingly, our holding in *Reese I* is not immutable. This Court's precedent recognizes that there is "no occasion to doubt the abstract power of an appellate court, upon a second review, to reach a result inconsistent with its decision on the first review of the same case." *Chesapeake and Ohio R.R. Co. v. McKell,* 209 F. 514, 516 (6th Cir.1913) (citing *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)). Furthermore, revisiting *Reese I's* holding on the scope of retirees' vested health care benefits and affirming the district court's grant of summary judgment to Plaintiffs would bring an end to this protracted litigation. I would, therefore, take the unusual step of correcting our past error with the aim of deciding the case in a manner more firmly grounded in the law.

**\*6** Several decisions of this Court, as well as Supreme Court precedent, express the principle that,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 4009695 (C.A.6 (Mich.))
**(Cite as: 2012 WL 4009695 (C.A.6 (Mich.)))**

once a retiree's health care benefits have vested for life, an employer's unilateral modification of the scope of those benefits is a violation of the Labor Management Relations Act. Yolton, 435 F.3d at 578 ("If a welfare benefit has vested, the employer's unilateral modification or reduction of those benefits constitutes a LMRA violation."); *see also* Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co., Chemical Division, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) ("Under established contract principles, vested retirement rights may not be altered without the pensioner's consent. The retiree, moreover, would have a federal remedy under § 301 of the Labor Management Relations Act for breach of contract if his benefits were unilaterally changed." (citation omitted)); Schreiber v.Philips Display Components Co., 580 F.3d 355, 364 (6th Cir.2009); Winnett v. Caterpillar, Inc., 553 F.3d 1000, 1009 n. 5 (6th Cir.2009); Maurer v. Joy Techs., Inc., 212 F.3d 907, 914 (6th Cir.2000); UAW v. Loral Corp., 107 F.3d 11, 1997 WL 49077 at *3 (6th Cir.1997) ("It might well be sensible for the parties to agree to allow the employer to retain some flexibility to deal with future vicissitudes, but such an arrangement must be agreed to in the contract. It cannot be imposed unilaterally by the employer or the courts."); UAW v. Yard–Man, Inc., 716 F.2d 1476, 1482 n. 8 (6th Cir.1983).

The *Maurer* case is especially relevant to this discussion because the *Maurer* court confronted the same issues, in the same procedural posture, that this Court dealt with in *Reese I:* whether unclear language in a CBA indicated that "the parties intended the retirement benefits either to vest as lifetime benefits or to terminate at the end of the ... term of the CBA granting the benefits." Maurer, 212 F.3d at 911. After setting out the relevant contractual language, the *Maurer* court elucidated the principles applicable to interpretation of CBAs. One of those principles squarely applies to the instant case: "If the parties intended to vest benefits and the agreement establishing this is breached, there is ... a LMRA violation." *Id.* at 914.

Thus, clearly established precedent in this Circuit leads to the conclusion that, because retirees' health care benefits vested for life, the level of those benefits must be deemed vested in scope and *not* subject to unilateral modification by CNH. Accordingly, the district court correctly applied the law of this Circuit when it held on remand that "even if changes can be made to retiree vested health care benefits, those changes must be reached through negotiation and agreement between the union and the employer." Reese v. CNH Global N.V., No. 04–70592, 2011 WL 824585, at * 10 (E.D.Mich. March 3, 2011).

The district court's conclusion is also consistent with this Circuit's principle that "basic rules of contract interpretation apply" when federal courts fashion a body of federal common law for interpretation of collective bargaining agreements. Noe, 520 F.3d at 552. As a general rule, contracts containing continued performance obligations cannot be modified unless "the modification is fair and equitable in view of circumstances not anticipated by the parties when the contract was made...." RESTATEMENT (SECOND) OF CONTRACTS § 89(a) (1981). Such a modification, furthermore, must comply with the general rules of contract formation, including mutual assent: "Obligations under a collective bargaining agreement, like those under contracts in general, rest ultimately on the principle of mutual assent...." Operating Eng'rs Pension Trust v. Gilliam, 737 F.2d 1501, 1503 (9th Cir.1984). Because the retirees have not consented to the modifications proposed by CNH, I would hold under traditional principles of contract law that CNH cannot unilaterally modify the retirees' vested health care benefits.

**\*7** I recognize that the terms of the 1998 CBA, as interpreted according to Sixth Circuit precedent, pose a fundamental problem for the employer: how to fulfill its open-ended obligation to provide the health care benefits described in the CBA in spite of the rapid change and growth in the health care and health insurance industries. While this case presents a difficult choice between diametrically opposed interpretations of the 1998 CBA, it is the parties to the contract—not the court—who bear the burden of solving this dilemma. Presumably the parties have a shared interest in reaching an accommodation which ensures the retirees the continuity of health care coverage to which they are contractually entitled without bankrupting the employer or obligating it to provide services which are no longer appropriate. The Court's role in this context is to underscore that such an accommodation cannot be imposed by one party on the other, or by the court. Loral Corp., 1997 WL 49077 at *3. The majority's thoughtful analysis of the policy issues thoroughly addresses the concerns of the par-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 4009695 (C.A.6 (Mich.))
**(Cite as: 2012 WL 4009695 (C.A.6 (Mich.)))**

ties, especially the employer. However, while those issues are important, it is the law that should determine the outcome of this case.

As mentioned above, the majority relies on our conclusion in *Yolton v. El Paso Tennessee Pipeline Co.* and other cases to support *Reese I's* conclusion that the retirees' health care benefits vested for life. The majority, however, does not apply *Yolton's* plain statement of the law regarding unilateral modification of vested welfare benefits: "If a welfare benefit has vested, the employer's unilateral modification or reduction of those benefits constitutes a LMRA violation." 435 F.3d at 578. Additionally, the other cases the majority cites to support its statement that "the vesting conclusion in the context of healthcare benefits provides an evolving, not a fixed, benefit" say *nothing* about the *scope* of welfare benefits. Those cases deal only with this Court's rule that tying eligibility for welfare benefits to eligibility for pension benefits evidences an intent to vest those welfare benefits for life. Id. at 583; see also Noe, 520 F.3d at 558; McCoy, 390 F.3d at 422; Golden, 73 F.3d at 656.

The majority also errs in its choice of standard for determining whether CNH's modifications to the scope of the retirees' health care benefits are reasonable. The majority relies on the United States Court of Appeals for the Seventh Circuit's opinion in Zielinksi v. Pabst Brewing Co., 463 F.3d 615 (7th Cir.2006). The standard articulated in *Zielinski,* however, is not applicable to this case for two reasons. First, as discussed above, this Circuit's case law prohibits CNH from unilaterally modifying the retirees' vested health care benefits. Second, as the district court set forth in its opinion, *Zielinski* is factually distinguishable from the instant dispute. Reese, 2011 WL 824585, at *7 n. 9. In *Zielinski,* the Seventh Circuit confronted a situation where the only evidence of the retiree benefits package was an old brochure describing the retirees' prescription drug coverage in very general terms; neither party could provide the court with a copy of the contract alluded to in the brochure. 463 F.3d at 619. Accordingly, the Seventh Circuit had to step in and fill the gaps related to coverage in the shutdown agreement that granted vested health care benefits to the retirees. Id. at 619–20. In order to fill the gap, Judge Posner relied on the Seventh Circuit's "reasonably commensurate" test. Id. at 619–21.

**\*8** Unlike the Seventh Circuit in *Zielinski,* however, this Court has no gap filling role to play in the instant case. We know exactly what the parties agreed to in 1998: "The Group [Benefit] Plan over forty-one pages sets forth in extensive detail the types of benefits and levels of coverage that the [retirees'] and [CNH] agreed to through collective bargaining." Reese, 2011 WL 824585, at *7. Accordingly, *Zielinski* does not provide the appropriate lens for our review of this case.

In addition to the above legal errors, the majority also mischaracterizes the nature of the shift from the indemnity plan to managed care under the 1998 Group Benefit Plan, as well as how the parties previously modified the retirees' benefits. The majority claims that the negotiated and collectively bargained shift from an indemnity plan to a managed care plan in 1998 supports its conclusion that "the parties did not perceive the relevant CBAs as establishing fixed, unalterable benefits." Both *Reese I* and the majority opinion, however, are incorrect in their assertion that "managed care ... represented a reduction in the effective choices of coverage available for all retirees and the coverage actually provided to many, if not most, of them." Reese I, 574 F.3d at 325. This erroneous conclusion is central to the majority's reasoning: retirees' benefits can be unilaterally modified now because they did not previously object to a "reduction" in those benefits. The district court, however, embarked on a thorough analysis of both the indemnity and managed care plans and reached the opposite conclusion as to both effective choices and coverage.

On the issue of choice, the district court found, based on evidence submitted by the retirees, that, under the managed care plan, "close to 100% of the providers who had treated [CNH] employees were participants in the network and 100% of the hospitals in the area were within the network. Promises also were made that doctors not in the network would be approached to join." Reese, 2011 WL 824585, at *9. Virtually all of the same doctors, in the same facilities, were available to the retirees after shifting from the indemnity plan to managed care. This evidence does not support the majority's conclusion that the managed care plan "represented a reduction in the effective choices of coverage available for all retirees." Reese I, 574 F.3d at 325. The same is true of the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 4009695 (C.A.6 (Mich.))
**(Cite as: 2012 WL 4009695 (C.A.6 (Mich.)))**

coverage actually provided to retirees.

On the issue of coverage, the district court found that while the indemnity plan covered 100% of the "reasonable and customary charges" for Type A (hospital expenses) and Type B (surgery and inpatient procedures) benefits, it only covered 80% of the more common Type C benefits (out-of-hospital doctor visits). Reese, 2011 WL 824585, at *9. The indemnity plan also included a $50,000 per person lifetime maximum cap on benefits. *Id.* The managed care plan, conversely, required no retiree contributions, contained no "reasonable and customary" limitation, and had no lifetime maximum: "Thus Plaintiffs obtaining care 'in-network' under the managed care plan received better coverage than they did under the indemnity plan; those obtaining care for routine services 'out-of-network' were responsible for the same 20% of the costs that they were paying under the indemnity plan." *Id.* The evidence thus bears out CNH's contemporaneous claim that the negotiated shift to managed care in 1998 actually provided "improvements" for the retirees. *Id.* So, while I agree with *Reese I's* assertion that "the resetting of healthcare benefits for previously retired employees might not concern anyone if each change *upgraded* the existing package of benefits," Reese I, 574 F.3d at 325, I cannot join the majority's conclusion that the 1998 shift from the indemnity plan to managed care resulted in a reduction of the retirees' benefits.

**\*9** Finally, the majority also reasoned that "[p]ast changes to retiree healthcare benefits ... had not been collectively bargained," and this fact supports its conclusion that CNH may unilaterally modify retirees' benefits now. This statement, however, is not followed by factual support; the assertion is followed by a citation to the legal proposition that a union is not *required* to negotiate on behalf of its retirees in collective bargaining. Even accepting *Reese I's* claim that those CNH employees who retired between 1994 and 1998 did not consent to shifting from the indemnity plan to managed care, Reese I, 574 F.3d at 324, the agreement which led to the change *was* collectively bargained between the union and current employees, a far cry from CNH's attempt to unilaterally modify those benefits.

Because Plaintiffs have demonstrated they are entitled to judgment as a matter of law, I would affirm the district court's grant of summary judgment to Plaintiffs and overrule our previous holding that CNH may unilaterally modify the scope of Plaintiffs' retirement health benefits under the 1998 CBA. Because the majority adheres to its original decision regarding the scope of the retirees' benefits, I respectfully dissent.

C.A.6 (Mich.),2012.
Reese v. CNH America LLC
--- F.3d ----, 2012 WL 4009695 (C.A.6 (Mich.))

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.