UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLARD L. SLOAN, EUGENE J.
WINNINGHAM, and JAMES L. KELLEY,
on behalf of themselves and a similarly
situated class,

        Case No. 09-cv-10918
        Hon. Paul D. Borman

      Plaintiffs,

        Magistrate Mona K. Majzoub

v.

        **Class Action**

BORGWARNER, INC., BORGWARNER
FLEXIBLE BENEFITS PLANS and
BORGWARNER DIVERSIFIED
TRANSMISSION PRODUCTS, INC.,

      Defendants.
_____/

| | |
|---|---|
| David R. Radtke (P47016) | Bobby R. Burchfield |
| Roger J. McClow (P27170) | Joshua D. Rogaczewski |
| Patrick J. Rorai (P65091) | McDERMOTT WILL & EMERY |
| KLIMIST, McKNIGHT, SALE, | Attorneys for Defendants |
| McCLOW & CANZANO, P.C. | 600 Thirteenth St., N.W. |
| Attorneys for Plaintiffs | Washington, D.C. 20005 |
| 400 Galleria Officentre, Suite 117 | 202-756-8000; fax 202-756-8087 |
| Southfield, MI 48034 | bburchfield@mwe.com |
| 248-354-9650; fax 248-354-9656 | jrogaczewski@mwe.com |
| dradtke@kmsmc.com | |
| rmcclow@kmsmc.com | Elisa Angeli Palizzi (P52088) |
| prorai@kmsmc.com | MILLER, CANFIELD, PADDOCK |
| | & STONE, P.L.C. |
| | Attorneys for Defendants |
| | 150 W. Jefferson Avenue, Suite 2500 |
| | Detroit, MI 48226 |
| | 313-496-7635; fax 313-963-6420 |
| | angeli@millercanfield.com |

_____/

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

I.   The Evidence That the Retiree Health Care Benefits for the
     Class Are Vested Is Overwhelming. .............................. 1

     A.   The HIAs Vest Retiree Health Care Benefits. ................ 1

     B.   Specific Limitations on Other Benefits. ..................... 3

     C.   Category B Retirees and the Grandfathered Employees. ........ 4

     D.   Extrinsic Evidence Supports a Finding The Benefits
          Are Vested. ............................................... 6

II.  BorgWarner's Claim That Plaintiffs' Retiree Health Care
     Benefits Are Not Vested Is Without Merit. ....................... 7

     A.   The Self-Serving "Agreements to Disagree" Do Not
          Negate the Plain Language of Article VIII of the HIAs. ...... 7

     B.   Exhibit A of the HIAs Is Evidence of Vesting. ............... 8

     C.   Under Controlling Precedent, SPDs Cannot Modify
          Vested Benefits. .......................................... 9

III. The HIAs Require Mutual Consent to Make Changes in Benefits. ...... 9

IV.  Conclusion ..................................................... 13

-ii-

# **TABLE OF AUTHORITIES**

*Bender v. Newell Window Furnishings,* 681 F.3d 253 (6th Cir. 2012) . . . . 4, 5, 6, 9

*Cole v. ArvinMeritor* 515 F. Supp.2d 791 (E.D. Mich. 2006);
*aff'd in* 549 F.3d 1064 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Hargrove v. EaglePicher Corp.*, 852 F. Supp.2d 851
(E.D. Mich. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Jensen v. S.I.P.C.O., Inc.,* 38 F.3d 945 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 6

*Maurer v. Joy Technologies*, 212 F.3d 907 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . 6

*Moore v. Menasha Corp.,* 690 F.3d 444 (6th Cir. 2012),
*cert. denied* 133 S.Ct. 1643 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 11, 12

*Policy v. Powell Pressed Steel Co.,* 770 F.2d 609 (6th Cir. 1985) . . . . . . . . . . . . . 6

*UAW v. Yard-Man, Inc.,* 716 F.2d 1476 (6th Cir. 1983) . . . . . . . . . . . . . . . . . . . 4, 6

*United Steelworkers v. Kelsey-Hayes*, 2013 U.S. Dist LEXIS 58352
(E.D. Mich. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Zino v. Whirlpool Corp.*, 2013 U.S. Dist. LEXIS 121750
(N.D. Ohio 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Pursuant to the Court's August 23, 2013 Order, this is Plaintiffs' Supplemental Brief updating or otherwise supporting their original Motion for Summary Judgment on the issue of vesting.

## I. The Evidence That the Retiree Health Care Benefits for the Class Are Vested Is Overwhelming.

### A. The HIAs Vest Retiree Health Care Benefits.

Article VIII of the 1989, 1992 and 1995 HIAs specifically tie eligibility for fully paid health care benefits to eligibility for a lifetime pension. Article VIII, Section 1.A. provides "[A]n employee who retires under the Retirement Income Program Agreement on or after December 1, 1989 . . . shall be entitled to" health coverage as set forth in the exhibits to the HIA. Article VIII, Section 1.B. provides "An employee who terminates employment . . . while participating in the Muncie Retirement Savings Plan shall be entitled to . . ." health care benefits as set forth in the exhibits to the HIA. The "shall be entitled" to health care benefits is directly tied to retirement under the Retirement Income Program, the Retirement Savings Plan, or the Total and Permanent Disability Pension. (Dkt. #102 Ex. 2 PL Ex. 7 pp. 7-8; Ex. 5 PL Ex. 19 pp. 5-6; Ex. 6 PL Ex. 23 pp. 5-6)

Surviving spouses' entitlement to healthcare is also explicitly dependent on "receiving a monthly retirement benefit" or "while participating" in the pension plan. The *only* durational limitation on retiree health care benefits applies to surviving

spouses -- their entitlement to health care terminates upon remarriage.  As long as a surviving spouse all "receive[s] a monthly retirement benefit" or is "participating" in the pension plan, DTP is contractually obligated to pay the full cost of their medical insurance coverage for life -- unless or until they remarry.[1]  (Dkt. #102 Ex. 2 PL Ex. 7 pp. 8-10; Ex. 5 PL Ex. 19 pp. 6-8; Ex. 6 PL Ex. 23 pp. 6-8)

The HIAs specifically state that retirees and surviving spouses **shall** be entitled to the coverages and procedures "set forth" in Exhibits A, C, D, E, F and H of the HIAs.  (Dkt. #102 Ex. 2 PL Ex. 7 pp. 7-8; Ex. 5 PL Ex. 19 pp. 5-6; Ex. 6 PL Ex. 23 pp. 5-6)  The coverages and procedures to be provided to the Class Members are specific and enforceable.   (Dkt. #102 Ex. 2 PL Ex. 7 pp. 8-10; Ex. 5 PL Ex. 19 pp. 6-8; Ex. 6 PL Ex. 23 pp. 6-8)

The 1992 HIA and 1995 HIA confirm that the retiree healthcare benefits survived the duration of the agreements because the parties negotiated deductibles and stop-loss maximums for Category A PPO Retirees through 2002 -- four years beyond the 1998 termination date of the HIAs.  (Dkt. #102 Ex. 5 PL Ex. 19 p. 14; Ex. 6 PL Ex. 23 p. 14) If the benefits expired when the HIAs expired in 1998, as argued by BorgWarner, the negotiated provisions that extended beyond the expiration would be

---

[1] There is **no** similar contractual limitation on the obligation of DTP to pay for retiree coverages.  Even if retirees remarry, they are entitled to continuation of DTP paid health insurance while retired.

nonsensical. In *Cole v. ArvinMeritor* 515 F. Supp.2d 791, 801 (E.D. Mich. 2006); *aff'd in* 549 F.3d 1064 (6th Cir. 2008), the district court found that cost-sharing increases that applied after the contract expired was evidence of vested retiree healthcare benefits.

### B. Specific Limitations on Other Benefits.

In contrast to the retiree health care provision, the negotiated HIAs continued numerous specific limitations on the duration of health care and other benefits for active employees on layoff or leave and for surviving spouses.

- Surviving spouses receiving healthcare benefits could have their coverage terminate if they remarried. Article VIII, Section 3. (Dkt. #102 Ex. 2 PL Ex. 7 pp. 9-10; Ex. 5 PL Ex. 19 pp. 7; Ex. 6 PL Ex. 23 pp. 7)

- For the surviving spouse of an active employee who dies and was not eligible to retire under the pension plans, DTP paid the monthly premium costs for the first nine months following the active employee's death. After the nine month period, the surviving spouse could pay for coverage as long as they were drawing transition or bridge benefits or until remarriage. Article VIII, Section 4. (Dkt. #102 Ex. 2 PL Ex. 7 p. 10; Ex. 5 PL Ex. 19 pp. 7-8; Ex. 6 PL Ex. 23 pp. 7-8)

- Surviving spouses and their dependents were eligible for a transition survivor income benefit for 24 months. (Dkt. #102 Ex. 2 PL Ex. 7 p. 29; Ex. 5 PL Ex. 19 p. 30; Ex. 6 PL Ex. 23 p. 29)

- If a surviving spouse met the eligibility for a bridge income benefit, the survivor received it until age 62 or remarriage. (Dkt. #102 Ex. 2 PL Ex. 7 p. 31; Ex. 5 PL Ex. 19 pp. 31-32; Ex. 6 PL Ex. 23 p. 31)

- Surviving spouses who were not participants in the DTP pension plan(s) could continue coverage at their own expense, as long as they did not

    remarry. Article VIII, Section 5. (Dkt. #102 Ex. 2 PL Ex. 7 p. 10; Ex. 5 PL Ex. 19 p. 10; Ex. 6 PL Ex. 23 p. 8)

- An employee on layoff received up to twelve months of employer-paid health care coverage, depending on length of seniority. Appendix A, Section 7.B. (Dkt. #102 Ex. 2 PL Ex. 7 p. 19; Ex. 5 PL Ex. 19 pp. 18-19; Ex. 6 PL Ex. 23 p. 18)

- Under Exhibit A, Section H.5 of the HIA, an employee was eligible for the extended disability benefit program up to a maximum period equal to an employee's total length of seniority at the time of the total disability or if the employee was between 60 and 65, five years and a lesser duration as the employee's age increases at the time of their disability. (Dkt. #102 Ex. 2 PL Ex. 7 pp. 37-38; Ex. 5 PL Ex. 19 pp. 37-38; Ex. 6 PL Ex. 23 pp. 37-38)

In *UAW v. Yard-Man, Inc.,* 716 F.2d 1476, 1481 (6th Cir. 1983); *Moore v. Menasha Corporation*, 690 F.3d 444, 453 (6th Cir. 2012); *Bender v. Newell Window Furnishings,* 681 F.3d 253, 263-64 (6th Cir. 2012); and *Cole,* 549 F.3d at 1071-72, the Sixth Circuit found the parties' agreement to specific durational limits on health care or other benefits for active employees or surviving spouses of non-retired employees while not placing similar durational limits on health care benefits for retirees was evidence the retiree health care benefits were vested.

    **C.    Category B Retirees and the Grandfathered Employees.**

In Article III, Section 2 and Article VIII, Section 8 of the 1992 and 1995 HIAs, the parties negotiated a new retiree health care program for employees hired after December 31, 1992. (Dkt. #102 Ex. 5 PL Ex. 19 pp. 2-3, 9-10; Ex. 6 PL Ex. 23 pp. 8-9) These employees were designated as Category B Retirees. Category B Retirees

-4-

were ***not*** guaranteed specific, lifetime retiree healthcare benefits. The HIA provided, "[f]or employees hired after December 31, 1992, the Company shall have no liability for providing health care coverage or for paying health care expenses after such employee terminates coverage . . . ." except as provided in Article VIII, Section 8. *Id.* The HIA provisions for Category B Retirees which specifically absolve BorgWarner from vested retiree health care obligations are in stark contrast to the guarantees for Category A Retirees. The fact that Category A Retirees (i.e., "the Class") are not specifically covered by similar language of non-vesting as the Category B Retirees is evidence that their benefits are vested. See *Bender,* 681 F.3d at 263.

In 1992, the parties agreed to a window period extending to March 12, 1995 for retirees to elect the same health benefits as pre-1993 retirees or elect the Managed Care Plan negotiated in 1992. (See Article VIII, Section 1.B; Dkt. 102 Ex. 5 PL Ex. 19 p. 5; Ex. 6 PL Ex. 23 p. 5) In the 2005 contract, the parties agreed to a 13 month window period after the contract went into effect to allow active employees to retire before May 1, 2006 and receive the better healthcare benefits provided under the 2000 HIA, rather than the reduced level of healthcare benefits negotiated in the 2005 HIA. (Dkt. #102 Exs. 13, 14, PL Exs. 46, 47) A similar window period allowing employees to lock in better benefits under a prior contract if they retire by a date certain has been found to be evidence that the benefits are vested. See *Bender,* 683 F.3d at 263; *Jensen v. S.I.P.C.O., Inc.,* 38 F.3d 945, 951 (8th Cir. 1994).

### D.     Extrinsic Evidence Supports a Finding The Benefits Are Vested.

The 1989 and 1995 Retirement Income Booklets specifically provide that "Group Insurance at Retirement" will be continued and that DTP "pays the full cost of such coverage for 'retirees and their eligible dependents' according to the terms of the Health Insurance Agreement."  (Dkt. #102 Exs. 22, 23, PL Ex. 8 p. 17; Ex. 24 p. 17)

Retirement summaries BorgWarner provided to employees upon application for retirement are filled with references to the tie between the survivor pension option and a surviving spouse's lifetime eligibility for company-paid insurance.  (Dkt. #102 Exs. 24, 25, 26, PL Exs. 9, 22, 55) Similar documents in *Maurer v. Joy Technologies*, 212 F.3d 907, 918 (6th Cir. 2000); *Policy v. Powell Pressed Steel Co.,* 770 F.2d 609, 615 (6th Cir. 1985); and *Yard-Man*, 716 F.2d at 1481 were found to be evidence of vesting.

BorgWarner Benefit Manager Nuerge, in a September 1999 memo, specifically contrasted the difference between Category A Retirees who "would get Company provided Life & Health coverages" with Category B Retirees who were ***not*** entitled to "Company provided Life or Health coverages."  (Dkt. #102 Ex. 27 PL Ex. 28) BorgWarner Human Resource Director Kohler's letter to retirees in 1998 stated that if an employee was retired before March 12, 1998, "benefits will be determined under the Plan as it existed at the time of retirement or termination."  (Dkt. #102 Ex. 3

French Dep. Ex. 8, Ex. A) This is more extrinsic evidence that BorgWarner knew the benefits were vested.

DTP's course of conduct also is evidence of a lifetime commitment to provide the same benefits to Class Members. The 1989 HIA expired in 1992, but up until 2006 (when DTP first attempted to change retiree healthcare benefits), DTP continued to provide the exact same benefits to employees who retired under the 1989 HIA. The 1992 and 1995 HIAs expired in 1998, but BorgWarner continued the same benefits for retirees until 2006.

## II. BorgWarner's Claim That Plaintiffs' Retiree Health Care Benefits Are Not Vested Is Without Merit.

### A. The Self-Serving "Agreements to Disagree" Do Not Negate the Plain Language of Article VIII of the HIAs.

The fact that both parties made self-serving statements as to whether retiree health care benefits were vested in 1990, and again in 2009 in the Plant Shutdown agreement, is immaterial. (Dkt. #102 Ex. 21 p. 16; Dkt. #112 Res. Ex. 1) To allow one party to nullify an agreement based on an after-the-fact self-serving claim would end contract law as we know it. Moreover, neither the 1990 ACME Agreement nor the Plant Shutdown Agreement was an agreement that related to the duration of retiree health care benefits -- those provisions are in Article VIII of the HIAs. The ACME Agreement's and Plant Shutdown Agreement's "agreement to disagree" have no bearing on whether the HIAs at issue provide for vested retiree health care. Under

-7-

BorgWarner's reading, the fact that the Company claimed the benefits are not vested, prejudices the Plaintiffs' position that the benefits are vested. The ACME Agreement's and the Plant Shutdown Agreement's plain language is exactly the opposite -- *neither* party's position on the duration of benefits was prejudiced by the agreements to disagree.

### B. Exhibit A of the HIAs Is Evidence of Vesting.

Defendants also claim the Termination of Coverages provision in Exhibit A, Section M.2 to the HIAs means retiree health care benefits terminate when the HIA terminates. This contention is rebutted by the evidence set forth above that the benefits were vested. Defendants' tortured reading of the provision turns the Section's actual meaning on its head. Exhibit A, Section M.2 of the HIAs *supports* Plaintiffs' position because it states when an active employee retires or an active employee or retiree dies, their right to health care benefits is set forth in the *continuation provision* of the HIAs. (Dkt. #102 Ex. 2 p. 65-66; Ex. 5 p. 72-73; Ex. 6 p. 74-75) The HIAs' continuation provision for retirees and surviving spouses of retirees is Article VIII, which provides that health care benefits continue as long as the retiree or surviving spouse receives a pension.

### C. Under Controlling Precedent, SPDs Cannot Modify Vested Benefits.

Defendants claim that the Company-issued SPDs provide it with a unilateral right to terminate, change or modify retiree health care benefits. This contention is

-8-

contradicted by the SPD's plain language. Here, the SPDs specifically provide that the health care plan is maintained pursuant to a CBA and an HIA. (Dkt. #102 Ex. 2 p. 121; Ex. 5 p. 130; Ex. 6 p. 132) The SPD also explicitly states that the termination individual insurance coverage must be in accordance with the HIA. *Id.* Therefore, the SPDs are specifically qualified by the parties' collectively bargained HIAs and the provisions of the HIAs govern all coverages and exclusions.

In *Bender, Reese, Prater* and *McCoy*, the Sixth Circuit found that similar reservation of rights language in SPDs were not sufficiently unqualified to vitiate collectively bargained language to the contrary. The same is true here.

### III. The HIAs Require Mutual Consent to Make Changes in Benefits.

The Court has indicated that even if the benefits are vested, the holdings in *Reese I* and *Reese II* allows the Defendant to make "reasonable" changes to the benefits. Plaintiffs respectfully request that the Judge reconsider this view. Recent cases have distinguished the holdings in *Reese I* and *Reese II* where the parties contractually agreed that retiree health care changes can only be made by mutual consent.

In *Moore v. Menasha Corp.,* 690 F.3d 444, 459 (6th Cir. 2012), *cert. denied* 133 S.Ct. 1643 (2013) the Sixth Circuit held:

> By offering vested healthcare coverage to the retired employees and their spouses, and by agreeing that the CBAs could only be modified on the

-9-

> signed, mutual consent of the parties, [Menasha] waived its ability to unilaterally alter or terminate Plaintiffs' healthcare coverage.

*Moore* continued:

> Our finding does not wholly foreclose Defendant from adjusting coverage; rather, it simply underscores the procedure Defendant must follow in order to do so. *Id.*

That procedure, *Moore* held, permits changes only "by mutual agreement of the parties." *Id*. Absent "mutual agreement" to changes, the Sixth Circuit held, vested retirement benefits are "forever unalterable." *Id.* at 458-459.

In *Hargrove v. EaglePicher Corp.*, 852 F. Supp.2d 851, 855-856 (E.D. Mich. 2012), the CBAs provided that "current benefits" at retirement were not to be "terminated, modified, etc. without union consent." The employer's unilateral changes -- grounded on the employer's "mistaken reliance on a supposed 'reasonableness' standard derived from" *Reese I* -- violated ERISA and the CBAs. *Id.*

Likewise, *United Steelworkers v. Kelsey-Hayes*, 2013 U.S. Dist LEXIS 58352 (E.D. Mich. 2013), held the employer's unilateral changes violated ERISA and the CBAs. (Dkt. #120 Ex. 1) *United Steelworkers* factually distinguished *Reese I* -- "the CBAs in *Reese* contained no mutual consent restrictions" -- finding that the CBAs, like the CBAs in *Moore*, "mandate mutual agreement as opposed to the unilateral modification" and that the employer's ostensibly "reasonable" changes were wrongfully imposed without the retirees' consent and without union agreement. *Id.* at *9.

In *Zino v. Whirlpool Corp.*, 2013 U.S. Dist. LEXIS 121750 (N.D. Ohio 2013), the court recognized that *Reese* "is not a case of general application." (Ex. 1 at *26-27) *Zino* noted that central to *Reese* was "[c]ompelling evidence" that "the parties did not perceive the relevant CBAs as establishing fixed, unalterable benefits," reflected in negotiation of the "material alteration" -- "the imposition of a 'managed care' program upon all retirees, past and future." *Id.* *Zino* noted, too, that *Reese* "did not mention the existence of any CBA provision" -- like the one in Zino -- "requiring changes to be made with the mutual assent of both parties." *Zino* reiterated: "*Reese* is, therefore, wedded to the facts of that case."

Here, the HIAs, like in *Moore, United Steelworkers* and *Hargrove*, contain mutual agreement provisions limiting BorgWarner's ability to make unilateral changes in benefits. More specifically, the HIAs state:

> A. . . . If, as a result of such [federal or state] laws, the level of benefits provided for any group of employees (including retired employees), or surviving spouses, or their dependents, is generally lower than the corresponding level of benefits hereunder, the Company upon ***mutual agreement*** with the Union shall provide a plan of benefits which are supplementary to the benefits provided by law to the extent necessary to make total benefits as nearly comparable as practicable to the benefits provided hereunder with such contributions by employees (including retired employees) or surviving spouses as are ***mutually determined*** to be consistent with the contributions specified hereunder.
>
> B. The provisions of Paragraph A above to the contrary notwithstanding and upon ***mutual agreement*** with the Union, the Company, if such laws permit, may substitute a plan of benefits

-11-

> for the benefits provided by such laws and modify the applicable provisions of this Agreement to the extent and in the respect necessary to secure the approval of such substitution from the appropriate governmental authority. The Company may make such plan available to employees, (including retired employees) or surviving spouses and their dependents and require from them such contributions as are ***mutually determined*** to be consistent with the contributions established hereunder. (emphasis added)

(Dkt. #102 Ex. 2, p. 15; Ex. 5, p. 13-14; Ex. 6, p. 13-14)

Therefore, this case should be viewed under the precedent set in *Moore*, and followed by this court in *United Steelworkers* and *Hargrove*, so that if the benefits here are found vested, they may not be unilaterally changed by BorgWarner.

## IV.     Conclusion

For the above-stated reasons, Plaintiffs respectfully request that this Honorable Court enter summary judgment as to liability in their favor.

          Respectfully submitted,

          McKNIGHT, McCLOW, CANZANO,
          SMITH & RADTKE, P.C.

          By: /s/ *David R. Radtke*
             DAVID R. RADTKE (P47016)
             ROGER J. McCLOW (P27170)
             PATRICK J. RORAI (P65091)
             Attorneys for Plaintiffs
             400 Galleria Officentre, Suite 117
             Southfield, MI  48034
             248-354-9650
             dradtke@michworklaw.com
             rmcclow@michworklaw.com
             prorai@michworklaw.com

Dated: September 16, 2013

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will serve it upon:

Bobby R. Burchfield                        Elisa Angeli Palizzi
Joshua D. Rogaczewski

                          Respectfully submitted,

                          McKNIGHT, McCLOW, CANZANO,
                          SMITH & RADTKE, P.C.

                          By:  /s/ *David R. Radtke*
                              DAVID R. RADTKE (P47016)
                              ROGER J. McCLOW (P27170)
                              PATRICK J. RORAI (P65091)
                              Attorneys for Plaintiffs
                              400 Galleria Officentre, Suite 117
                              Southfield, MI 48034
                              248-354-9650; Fax: 248-354-9650
                              dradtke@michworklaw.com
                              rmcclow@michworklaw.com
                              prorai@michworklaw.com

P:\RHC Cases\BorgWarner\2009 MI Lawsuit\Pleadings\Supp SummJudgment-BRF.wpd