UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLARD L. SLOAN, EUGENE J.
WINNINGHAM, and JAMES L.
KELLEY,

              Plaintiffs,

        v.

BORGWARNER INC.,
BORGWARNER DIVERSIFIED
TRANSMISSION PRODUCTS
INC., and BORGWARNER
FLEXIBLE BENEFITS PLANS,

              Defendants.

Case 2:09-cv-10918-PDB-MKM

U.S. District Judge Paul D. Borman

U.S. Mag. Judge Mona K. Majzoub

## BORGWARNER'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF VESTING

Elisa Angeli Palizzi (P52088)
(angeli@millercanfield.com)
Miller, Canfield, Paddock and Stone,
P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
313.496.7635
313.963.6420 fax

Bobby R. Burchfield
(bburchfield@mwe.com)
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8000
202.756.8087 fax

*Attorneys for BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................1

FACTUAL BACKGROUND .............................................................................2

ARGUMENT ..................................................................................................5

I.     THE EXPRESS LANGUAGE OF THE PARTIES' CONTRACTS
     PROVIDES *NO* AGREEMENT ON THE ISSUE OF VESTING.................7

     A.    The Agreements To Disagree Between BorgWarner DTP, the
          UAW, and Local 287 Demonstrate No Agreement To Vest
          Benefits.................................................................................7

     B.    Retiree Health Benefits Ran From One Health Insurance
          Agreement to the Next and, Therefore, Were Not Vested....................8

     C.    The Summary Plan Description Embedded in the Contract
          Disclaims Any Notion That Retiree Health Benefits Are Vested........10

     D.    Subsequent Changes to Benefits of Existing Retirees Shows the
          Parties Understood the Benefits Were Not Vested. ............................11

II.    PLAINTIFFS' ATTEMPTS TO MANUFACTURE AN
    AGREEMENT TO VEST FROM OTHER PARTS OF THE
    CONTRACT FAIL. ....................................................................................11

     A.    No Inference of Vesting Is Permissible From the Mere Linkage
          of Eligibility for Health Benefits to Receipt of a Pension. .................12

     B.    It Is Unreasonable To Infer Retiree Health Benefits Are
          Unlimited Because the HIAs Place Limits on Other Benefits............12

     C.    How BorgWarner Treated Future Hires Under the 1992 HIA
          and Retirees Under the 2005 HIA Has No Bearing on Whether
          Plaintiffs' Benefits Are Vested.............................................13

III.   EXTRINSIC EVIDENCE IS IRRELEVANT. .............................................14

CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Bender v. Newell Window Furnishings, Inc.*,
    725 F. Supp. 2d 642 (W.D. Mich. 2010), *aff'd*, 681 F.3d 253 (6th Cir. 2012) ........................................................................................................13

*Bender v. Newell Window Furnishings, Inc.*,
    681 F.3d 253 (6th Cir. 2012)........................................................5, 8

*Cole v. ArvinMeritor, Inc.*,
    549 F.3d 1064 (6th Cir. 2008)........................................................10

*Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*,
    520 U.S. 510 (1997)........................................................5

*Int'l Union, UAW v. Yard-Man, Inc.*,
    716 F.2d 1476 (6th Cir. 1983)........................................................6

*Linville v. Teamsters Misc. Workers Union, Local 284*,
    206 F.3d 648 (6th Cir. 2000)........................................................6, 12

*Maurer v. Joy Techs., Inc.*,
    212 F.3d 907 (6th Cir. 2000)........................................................5

*Noe v. Polyone Corp.*,
    520 F.3d 548 (6th Cir. 2008)........................................................12

*Serrano v. Jones & Laughlin Steel Co.*,
    790 F.2d 1279 (6th Cir. 1986)........................................................14

*Yolton v. El Paso Tenn. Pipeline Co.*,
    435 F.3d 571 (6th Cir. 2006)........................................................6

*Reese v. CNH America LLC*,
    574 F.3d 315 (6th Cir. 2009)........................................................2, 5

*Reese v. CNH America LLC*,
    694 F.3d 681 (6th Cir. 2012)........................................................2

**Statutes**

ERISA § 201, 29 U.S.C. § 1051 (2006)....................................................................5

Fed. R. Evid. 401 ...................................................................................................15

Fed. R. Evid. 402 ...................................................................................................15

## INTRODUCTION

This Court's order of August 23, 2013, correctly acknowledges that BorgWarner[1] has two independent routes to summary judgment, and requests supplemental briefing on one of those routes: whether Plaintiffs' retiree health benefits are vested. If not vested, BorgWarner may alter those benefits at will, and the changes at issue in this case are well within its unilateral prerogative. Both the language of ERISA and the law of this circuit make very clear that welfare benefits, such as the retiree health benefits at issue here, are *not* vested by statute, but rather may be vested only if the parties agree to vest them. A demand by the union for vesting met by refusal of the employer is plainly not sufficient. While it is true that the Sixth Circuit has devised a web of complex rules in the *Yard-Man* line of decisions to infer the vesting of collectively bargained retiree health benefits, these rules of construction come into play *only if* the collective bargaining agreement is *ambiguous* on the issue of vesting. In this case, the undisputed evidence is that the UAW and BorgWarner confirmed in writing, both at the beginning and at the end of the class period, that they ***did not agree*** on the issue of vesting. This "agreement to disagree" precludes vesting as a matter of law, and

---

[1] "BorgWarner" refers to the three related defendants sued in this case by Plaintiffs: BorgWarner Diversified Transmission Products Inc., the entity for which Plaintiffs worked and from which they retired; BorgWarner Inc., the indirect parent of BorgWarner DTP; and BorgWarner Flexible Benefits Plans, the ERISA plan responsible for Plaintiffs' health benefits.

resort to the inferential rules of *Yard-Man* is neither necessary nor legally

appropriate. Accordingly, summary judgment for BorgWarner on the vesting issue

is warranted.[2]

## FACTUAL BACKGROUND

In autumn 1989, disputes between BorgWarner DTP and the UAW and

Local 287 over retiree health benefits strained the parties' collective bargaining

relationship sufficiently that the organized workers struck for seven weeks. The

resolution of the strike included two agreements that control the outcome in this

case.

On October 27, 1989, the parties entered, but did not execute until 1992, a

new CBA and a new Health Insurance Agreement. (R. 95, Defs.' Mot. SUMF ¶ 1.)

These agreements contained three features material to the parties' present dispute.

*First*, although retirees received health benefits under the HIA, nowhere in the

CBA or HIA is an express agreement to vest retiree health benefits. (*Id.* ¶¶ 1–4.)

*Second*, the HIA—under which retiree health benefits were to be provided—

contained a *specific* expiration date, September 12, 1992, and the clarification that

the HIA could be terminated (or continued) in the same manner as could the CBA.

---

[2] BorgWarner reserves its position that summary judgment is also warranted because the changes made are in full compliance with the standards in *Reese v. CNH America LLC*, 574 F.3d 315, 324–27 (6th Cir. 2009), as further explained in *Reese v. CNH America LLC*, 694 F.3d 681 (6th Cir. 2012).

(*Id.* ¶ 1.) The CBA, in turn, allowed for termination of the agreement in writing by either party within sixty days of the expiration date. (*Id.*) *Third*, the HIA also contained a "Summary Information Description" with agreed-upon language regarding the "future of the plan": while BorgWarner DTP "expects and intends to continue the plan indefinitely," it "reserves the right to modify, amend, suspend or terminate the Plan or Group Policies." (*Id.* ¶ 3.) In other words, retiree health benefits ran from contract to contract and nothing in the agreements promised otherwise.

On September 27, 1990—*before* final versions of CBA and HIA were executed in 1992—BorgWarner DTP, the UAW, and Local 287 entered the Agreement on Modification and Extension of Existing Labor Contract ("the ACME Contract"), which extended the 1989 CBA and HIA until March 11, 1995. The ACME Contract addressed *directly* the vesting of retiree health benefits:

> This agreement does not prejudice the union's position that current retirees *have* lifetime vested benefits nor the DTP Muncie Plant's position that current retirees *do not have* lifetime vested benefits.

(*Id.* ¶ 6 (emphasis added).) In essence, at the outset of the period under which members of the plaintiff class retired, the parties acknowledged their *disagreement on vesting* and memorialized it in a signed contract.

Consistent with the terms of the CBA and HIA, BorgWarner DTP, the UAW, and Local 287 agreed in subsequent collective bargaining negotiations to continue

the HIA—including its retiree health benefits—through a new expiration date. (*Id.*
¶¶ 7–8.) These continuations sometimes altered the benefits provided by the HIA to
already-retired participants. In 1992, the parties pre-committed to an annual
escalator of the plan's deductibles and stop-loss limits through 2002. (*Id.* ¶ 7.) In
2000, the parties extended the escalator beyond 2002, and pre-2000 retirees were
not protected from the change. (*Id.*) Further, in 1998, the parties agreed to increase
prescription drug copayments by forty percent, and many pre-1998 retirees were
not protected from this change. (*Id.* ¶ 8.) None of the subsequent changes impacted
the three features of the 1989 CBA and HIA discussed above (pp. 2–3) (except, of
course, for the specific expiration date). (*Id.*¶ 5.)

On February 26, 2009, the parties ended their collective bargaining
relationship and entered a shutdown agreement for BorgWarner DTP's plant in
Muncie, Indiana. Echoing their 1990 ACME Contract the parties confirmed their
continuing *disagreement* about vesting:

> The Company and the Union *have a dispute* with respect to the nature
> of the Company's obligation to provide post-retirement health care
> benefits to employees who retired prior to February 23, 2009 and their
> dependents. *Nothing in this Plant Shutdown Agreement affects the
> parties' rights or positions with regard to that dispute.*

(*Id.* ¶ 9 (emphasis added).) The shutdown agreement terminated the then-existing
CBA and HIA on April 24, 2009. (*Id.*)

On May 1, 2009, BorgWarner modified the health benefits of persons who retired after October 27, 1989—the effective date of the 1989 HIA—to mirror benefits provided to salaried employees. (*Id.* ¶ 10.)

## ARGUMENT

Unlike pension benefits, retiree health benefits do not vest unless the parties agree that the benefits will vest. *See* ERISA § 201(1), 29 U.S.C. § 1051(1) (2006); *Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 514 (1997) ("ERISA . . . specifically exempts 'employee welfare plans' from its stringent vesting requirements."). In short, "vesting of retiree welfare benefits is a matter of contractual agreement." *Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 261 (6th Cir. 2012); *see also Reese*, 574 F.3d at 321 ("purely a matter of contract"); *Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 914 (6th Cir. 2000) ("[T]he parties must agree to vest a welfare benefit plan."). Plaintiffs themselves acknowledge: "[T]he issue of whether [retiree health benefits] are vested is dependent on the bargain struck by the parties." (R. 102, Pls.' Mot. 11.) A union's *demand* for vested retiree benefits is of no effect unless and until the employer *agrees* to vested benefits.

The Sixth Circuit has erected a clear method for discerning whether the parties agreed to vest retiree health benefits. *First*, "the court should look first to the explicit language of the collective bargaining agreement for clear

5

manifestations of intent" to vest. *Int'l Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983). *Second*, if the CBA is ambiguous on the issue of vesting, "the court may look to other words and phrases in the collective bargaining agreement for guidance." *Id.* at 1480. *Finally*, and if all else fails, the Court can look to extrinsic evidence. *See Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 579 (6th Cir. 2006) ("When ambiguities exist, courts may look to . . . other extrinsic evidence.").[3]

It is evident from Plaintiffs' submissions that their case for vesting relies exclusively on the second and third steps of the *Yard-Man* framework. As a matter of law, the Court must never reach step two of the *Yard-Man* inference process, because the express language of the agreements (i.e., step one) compels a finding that the parties did not agree to vest retiree health benefits. It would be difficult to imagine a case in which the employer has been more clear in its refusal to agree to vesting.

---

[3] BorgWarner submits that the *Yard-Man* inference is unjustified in *any* context. It is particularly inapplicable here because the parties explicitly disagreed about vesting. *See Linville v. Teamsters Misc. Workers Union, Local 284*, 206 F.3d 648, 651 (6th Cir. 2000) (inferences inapplicable when inconsistent with contract's language).

I.   **THE EXPRESS LANGUAGE OF THE PARTIES'
     CONTRACTS PROVIDES *NO* AGREEMENT ON THE ISSUE
     OF VESTING.**

Unlike most of the situations considered in this circuit, the parties in this
case documented in signed contracts *not* an *agreement*, but a *disagreement*, on
vesting of retiree health benefits. That undisputed fact, standing alone, compels
summary judgment in BorgWarner's favor.

A.   **The Agreements To Disagree Between BorgWarner DTP, the
     UAW, and Local 287 Demonstrate No Agreement To Vest Benefits.**

At both the beginning (1990) and the end (2009) of the class period, the
parties entered agreements that demonstrated the lack of an agreement to vest. The
1990 ACME Contract contains a "Joint Letter of Agreement on Post-Retirement
Benefit Liabilities" that states: "This agreement does not prejudice the union's
position that current retirees *have* life-time vested benefits nor [BorgWarner
DTP's] position that current retirees *do not have* lifetime vested benefits." (R. 95,
Defs.' Mot. SUMF ¶ 6 (emphasis added).) This disagreement precludes a finding
of an agreement to vest, which is required for Plaintiffs to prevail. And over the
next two decades, the parties never resolved this disagreement. Rather, in the 2009
Plant Shutdown Agreement, the parties confirmed it: "The Company and the Union
have a dispute with respect to the nature of the Company's obligation to provide
post-retirement health care benefits to employees who retired prior to February 23,
2009." (*Id.* ¶ 9.) BorgWarner DTP cannot be said to have agreed to vest retiree

7

health benefits when its contracts with the UAW and Local 287 explicitly disavow such an agreement.

Recognizing that it is their burden to show "contractual agreement" on vesting, *Bender*, 681 F.3d at 261, Plaintiffs try to refute this critical "agreement to disagree" language in the contracts by claiming that it is an "after-the-fact self-serving" provision and can have no implications for current retirees. (R. 112, Pls.' Opp'n 4.) But the provision was first executed by BorgWarner DTP, the UAW, and Local 287 in *1990*, before the parties even executed the 1989 HIA in *1992*. The provision was thus a clear and unambiguous statement to the UAW and Local 287 that BorgWarner did not agree to vest retiree health benefits.[4] This is, as they say, the ball game. No agreement, no vesting.

### B.   Retiree Health Benefits Ran From One Health Insurance Agreement to the Next and, Therefore, Were Not Vested.

The structure of the HIAs throughout the class period also demonstrates the lack of vested retiree health benefits. In each HIA, the parties agreed that Plaintiffs' retiree health benefits terminated when that HIA expired unless renewed in a subsequent agreement. In language unchanged from 1989 through 2009, each HIA

---

[4] Plaintiffs also ask the Court to rely on an earlier, *unsigned* version of the contract addendum. But it is rudimentary that the signed contract would supersede prior drafts. Moreover, the testimony Plaintiffs cite on this point (R. 112, Pls.' Opp'n 3) shows only that BorgWarner *received* the earlier version, not that BorgWarner *agreed* with it.

stated that upon expiration they could be *terminated* by either party with sixty

days' written notice. (R. 95, Defs.' Mot. SUMF ¶¶ 1, 4–5.) When the 1989, 1992,

1995, 1998, and 2000 HIAs expired, they were in fact *replaced* with subsequent

contracts that specified, sometimes with alterations, the benefits for existing

retirees. (*See id.* ¶¶ 7–8.) Contrary to vesting situations in which retirees receive

their benefits forever under the contract in place when they retired, here their

benefits evolved from contract to contract. When the Plant Shutdown Agreement in

2009 terminated the 2005 HIA, there was no replacement HIA. (*Id.* ¶ 9.)

Consequently, since 2009, no active contract provides Plaintiffs' health benefits.[5]

Unlike contracts in the retiree health benefit cases cited by Plaintiffs (R. 112,

Pls.' Opp'n 6–7), the HIAs provided expressly that "[t]he coverages provided

under this Exhibit A terminate on the date . . . the Agreement is terminated." (*E.g.*,

R. 96 Ex. 1, 1989 HIA app. A Ex. A § 2(M)(2).) "Exhibit A" specifically included

retiree health benefits, and therefore the termination provision applied to retirees as

well as active employees. (*Id.*) Moreover, because the HIAs tied the termination of

retiree health benefits to the termination of the HIA providing them, BorgWarner

---

[5] Plaintiffs claim that if the benefits were not vested, BorgWarner could have modified them at any time from 1989 to 2009. (R. 112, Pls.' Opp'n 4.) That is inaccurate. The CBAs and HIAs were in effect continuously during the class period. Only in 2009 did the final HIA expire without replacement, at which time BorgWarner made the modifications to Plaintiffs' benefits at issue here.

DTP was contractually obligated to provide retiree health benefits only as long as an extant HIA required it. *Cf. Cole v. ArvinMeritor, Inc.*, 549 F.3d 1064, 1071 (6th Cir. 2008) (general durational clause must be tied to retiree health benefits for it to limit them). Thus, when the Plant Shutdown Agreement terminated the 2005 HIA in 2009, BorgWarner's contractual obligation to provide health benefits to Plaintiffs ceased, and any benefits provided after that point are at BorgWarner's discretion.

   **C.    The Summary Plan Description Embedded in the Contract Disclaims Any Notion That Retiree Health Benefits Are Vested.**

   The 1989 HIA contained a summary of its terms, including language regarding the "future of the plan" that further demonstrates no agreement to vest by reserving BorgWarner's right to "modify, amend, suspend, or terminate the Plan or the Group Plan Policies." (R. 95, Defs.' Mot. SUMF ¶ 3.) The UAW and Local 287 extensively reviewed and signed the 1989 HIA containing this "future of the plan" language (R. 108, Defs.' Opp'n SAF ¶ 2), demonstrating the parties' mutual understanding that retiree health benefits were not vested and could be eliminated or modified by BorgWarner DTP. Unlike summary plan descriptions addressed in

10

cases cited by Plaintiffs, here the language is *in the HIAs* that were negotiated and executed by the parties. It is a part of a binding contract.[6]

### D. Subsequent Changes to Benefits of Existing Retirees Shows the Parties Understood the Benefits Were Not Vested.

Finally, the 1998 and 2000 HIAs reduced the health benefits of persons who had already retired without consent of those retirees. These reductions included increased co-pays for prescription drug benefits in 1998 and the extension of an annual five-percent increase of network deductibles in 2000. (R. 95, Defs.' Mot. ¶¶ 7–8.) Even if, as Plaintiffs contend, their benefits were also improved in certain respects in these subsequent agreements, all the changes—reductions and enhancements—undermine Plaintiffs' claim that the benefits are inalterable.

## II. PLAINTIFFS' ATTEMPTS TO MANUFACTURE AN AGREEMENT TO VEST FROM OTHER PARTS OF THE CONTRACT FAIL.

Faced with an express agreement to disagree on vesting, Plaintiffs attempt to cobble an agreement to vest from various other parts of the HIAs. The Court need not consider these arguments because, as shown, none of them can overcome the

---

[6] Plaintiffs also invoke the rule that a summary plan description "cannot retroactively cancel or modify the negotiated agreements." (R. 102, Pls.' Mot. 16–18.) This rule is irrelevant to this case, however, because, as Plaintiffs concede, the reservation-of-rights language is "in the HIAs" themselves, and not in separate SPDs. (*Id.* at 17.)

unambiguous disclaimer of any agreement to vest. In any event, Plaintiffs simply read the provisions on which they rely for far more than they are worth.

### A. No Inference of Vesting Is Permissible From the Mere Linkage of Eligibility for Health Benefits to Receipt of a Pension.

Plaintiffs' principal argument for vesting is that the HIAs condition eligibility for retiree health benefits to eligibility for a pension. (R. 102, Pls.' Mot. 12–14.) To be clear, the provision on which Plaintiffs rely says *only* that an employee who retires is eligible for retiree health benefits. (*See* R. 96 Ex. 1, 1989 HIA art. 8, § 1(A).) It says nothing about the *duration* of those benefits, and it says nothing about whether the benefits can be changed by BorgWarner.

Whatever inferential value the tying of health benefits to pensions has when the contracts are silent on vesting, there is *no* inferential value when the parties have elsewhere disclaimed—as in this case—any agreement to vest. *Linville*, 206 F.3d at 650–51; *see also Noe v. Polyone Corp.*, 520 F.3d 548, 566 (6th Cir. 2008) (Sutton, J., concurring in part and dissenting in part) ("No case, to my knowledge, holds that tying language alone suffices to permit retirees to fend off summary judgment—much less to mandate that the benefits vested as a matter of law.").

### B. It Is Unreasonable To Infer Retiree Health Benefits Are Unlimited Because the HIAs Place Limits on Other Benefits.

Plaintiffs also seek to infer vesting based on the durational limits on certain benefits for surviving spouses and active employees on layoff or on leave. (R. 102,

12

Pls.' Mot. 14–16.) Such an inference, however, is impossible here, because the

HIAs *did* impose specific durational limitations on retiree health benefits. "The

coverages provided under this Exhibit A [which includes the very benefits

Plaintiffs point to] terminate on the date . . . the Agreement is terminated." (R. 96

Ex. 1, 1989 HIA app. A Ex. A § 2(M)(2).) The authorities on which Plaintiffs rely,

therefore, are inapplicable here. *See, e.g.*, *Bender v. Newell Window Furnishings,*

*Inc.*, 725 F. Supp. 2d 642, 658 (W.D. Mich. 2010) (explaining that the durational

clauses "[did] not specifically refer to the retiree benefits" and did not

"unambiguously and expressly limit the duration of retirees benefits"), *aff'd*, 681

F.3d 253 (6th Cir. 2012). Even if an inference was possible, it could not trump the

express agreement to disagree.

### C.   How BorgWarner Treated Future Hires Under the 1992 HIA and Retirees Under the 2005 HIA Has No Bearing on Whether Plaintiffs' Benefits Are Vested.

Finally, Plaintiffs contend that the 1992 HIA's treatment of "Category B

retirees"—individuals who were hired after 1992—and the fact that certain

"grandfathered employees" could retire at the start of the 2005 HIA but receive the

benefits described in the 2000 HIA demonstrate vesting. (R. 102, Pls.' Mot. 15–

16.) But the fact that the 1992 and 2005 HIAs allowed for two sub-groups of

retirees—one of which (the Category B retirees) contains *no* class members—has

no connection to whether Plaintiffs' benefits are vested.

13

The Category B retirees had not yet been *hired* when BorgWarner DTP and the UAW agreed in 1992 that these future hires would not be eligible for company-paid retiree health benefits. (R. 96 Ex. 3, 1992 Tent. Health Agmt. Ex. C at 1.) It defies logic to infer—as Plaintiffs do—that because future hires would not get *any* retiree health benefits that the then-existing employees would get benefits *vested for life*. And it is true that the unions and BorgWarner agreed that certain employees who retired after the 2005 HIA became effective could avail themselves of the more generous benefits provided in the 2000 HIA, but both the 2000 and 2005 HIAs are subject to the 1990 "agreement to disagree" and the durational limitations set forth in each HIA. Again, the express "agreement to disagree" and specific durational language forecloses the inferences advocated by Plaintiffs.

## III.   EXTRINSIC EVIDENCE IS IRRELEVANT.

As a matter of law, consideration of extrinsic evidence would be improper in this case because there is *no* ambiguity in the 1990 or 2009 agreements to disagree or in any of the other provisions related to the duration of benefits under the HIA. *See Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279, 1288–89 (6th Cir. 1986) ("[W]here the meaning of the clause in question is clear, no construction is necessary."); *id.* (extrinsic evidence creates no issue of fact when contract language is clear). Plaintiffs' extrinsic evidence is ineligible for consideration by the Court.

14

In any event, almost all of the evidence relied upon by Plaintiffs—a pre-1989 "retirement summary," a 1987 "position statement," and a 1987 draft insurance booklet (R. 102, Pls.' Mot. 19–20)—*pre-dates* the contracts at issue in this case and is irrelevant. *See* Fed. R. Evid. 401, 402. And none of the extrinsic evidence from the class period (R. 102, Pls.' Mot. 18–19, 20) describes Plaintiffs' benefits as lasting forever or being free forever (R. 108, Defs.' Opp'n 16–18). None of the extrinsic evidence supports a finding of vesting in this case.

## CONCLUSION

For the reasons set forth above, as well as those presented in its earlier summary judgment submissions, BorgWarner urges the Court to find Plaintiffs' retiree health benefits are not vested and enter summary judgment for BorgWarner.

Dated: September 16, 2013                   Respectfully submitted,

                                           s/Joshua David Rogaczewski
Elisa Angeli Palizzi (P52088)              Bobby R. Burchfield
(angeli@millercanfield.com)                (bburchfield@mwe.com)
Miller, Canfield, Paddock and Stone,       Joshua David Rogaczewski
P.L.C.                                     (jrogaczewski@mwe.com)
150 West Jefferson, Suite 2500             McDermott Will & Emery LLP
Detroit, Michigan 48226                    The McDermott Building
313.496.7635                               500 North Capitol Street, Northwest
313.963.6420 fax                           Washington, D.C. 20001
                                           202.756.8000
                                           202.756.8087 fax

*Attorneys for BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2013, I electronically filed the

foregoing **BorgWarner's Supplemental Brief in Support of Its Motion for**

**Summary Judgment** with the Clerk of the Court using the ECF system which will

send notification of such filing to all ECF participants.

s/Joshua David Rogaczewski
Joshua David Rogaczewski
(bburchfield@mwe.com)
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
202.756.8195
202.591.2757 fax
