UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WILLARD L. SLOAN, EUGENE J. WINNINGHAM, and JAMES L. KELLEY, | |
| Plaintiffs, | Case 2:09-cv-10918-PDB-MKM |
| v. | U.S. District Judge Paul D. Borman |
| BORGWARNER INC., BORGWARNER DIVERSIFIED TRANSMISSION PRODUCTS INC., and BORGWARNER FLEXIBLE BENEFITS PLANS, | U.S. Mag. Judge Mona K. Majzoub |
| Defendants. | |

## BORGWARNER'S STATEMENT REGARDING *TACKETT* AND ITS IMPACT ON THIS CASE

Elisa Angeli Palizzi (P52088)
(angeli@millercanfield.com)
Miller, Canfield, Paddock and Stone, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
313.496.7635
313.963.6420 fax

Bobby R. Burchfield
(bburchfield@mwe.com)
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
McDermott Will & Emery LLP
600 13th Street, Northwest
Washington, D.C. 20005
202.756.8000
202.756.8087 fax

*Attorneys for BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

BorgWarner hereby responds to the Court's call for a statement summarizing its "view of the impact that *Tackett* may have on this Court's prior summary judgment ruling" and how it "anticpate[s] proceeding in this matter in light of the *Tackett* decision." (R. 136, Order 1–2.) In short, *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015), reshaped the Sixth Circuit's vesting jurisprudence and, on the summary judgment record before the Court, makes clear that summary judgment for BorgWarner is appropriate. Accordingly, BorgWarner proposes that the parties submit supplemental summary judgment briefing addressing how *Tackett* does (or does not) affect this Court's summary judgment rulings on vesting. *See Sloan v. BorgWarner, Inc.*, 1 F. Supp. 3d 743, 753–76 (E.D. Mich. 2014) (R. 127, Op. & Order 14–53); (*see also* R. 133, Order 5 ("[T]he Court's summary judgment ruling . . . assuredly will be affected, one way or the other, by the Supreme Court's resolution of the vesting issue in *Tackett*.")).

## I. *TACKETT* REPUDIATED *YARD-MAN* AND ALL RULES OF CONSTRUCTION DERIVED FROM IT.

In *Tackett*, the Supreme Court of the United States unanimously[*] vacated and remanded the Sixth Circuit's decision that the retirees' benefits in that case

---

[*] All nine justices joined the opinion in *Tackett*. Justice Ginsburg expressly joined that opinion and concurred; she did not merely "concur in the result." A concurrence that joins the opinion of the Court carries no formal precedential weight and, to the extent it departs from the majority opinion, the majority opinion governs. *See, e.g.*, *Int'l Union, UAW v. Winters*, 385 F.3d 1003, 1011–12 (6th Cir.

(footnote continued on next page)

were vested. But the Court did much more than merely vacate and remand *Tackett*. The Court expressly rejected the *Yard-Man* inference and all the rules of contract construction that have grown up around it. First, the Court carefully reviewed the reasoning of the *Yard-Man* decision itself, noting its determinations that the "will provide" language "was ambiguous," that inclusion of provisions for terminating active employees' coverage contrasted with the absence of provisions for terminating coverage for the retirees, that a promise deemed applicable to some but not all retirees was "illusory," and that the "context" of retiree health benefits made them "status benefits" unlikely to be left to future negotiations. 135 S. Ct. at 934.

Then, the Supreme Court discussed decisions following *Yard-Man* and the additional rules of construction that have evolved, including holdings that the phrase "will continue to provide" benefits unambiguously vests benefits, that a general durational clause " '*says nothing*' " about the duration of retiree benefits, and that provisions tying eligibility for retiree health benefits to receipt of pension

---

2004) (refusing to apply principles in concurring opinion, the author of which concurred in the majority opinion). When "an individual justice's vote is not needed to form a majority, the meaning of a majority opinion is to be found within the opinion itself because the gloss that an individual [j]ustice chooses to place upon it is not authoritative." *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 310 (3d Cir. 2013) (internal quotation marks omitted). Justice Ginsburg's suggestion that certain rules of construction might survive is inconsistent with the opinion of the Court, and consequently is owed no deference.

benefits indicate that retiree health benefits are vested. *Id.* at 934–35 (quoting with emphasis *Noe v. PolyOne Corp.*, 520 F.3d 548, 555 (6th Cir 2008)).

Following this review, the Supreme Court repeatedly made clear that it rejected "the inferences applied in *Yard-Man* and its progeny." *Id.* at 935; *see also id.* at 933 (the *Yard-Man* "inferences conflict with ordinary principles of contract law"); *id.* at 936 ("[T]he Court of Appeals [in *Tackett*] misapplied other traditional principles of contract law . . . ."). Because the Sixth Circuit in *Tackett* had relied upon the "context" of negotiations and on "the tying of eligibility for health care benefits to receipt of pension benefits" as indicating vesting, the Supreme Court "rejected [those] *Yard-Man* inferences as inconsistent with ordinary principles of contract law," and vacated the decision. 135 S. Ct. at 937. In short, *none* of the rules of construction in *Yard-Man* or its progeny survive.

## II. *TACKETT* SETS FORTH ORDINARY RULES OF CONTRACT CONSTRUCTION THAT GOVERN THIS CASE.

The Supreme Court also set forth rules of construction that must now govern construction of CBAs, including:

- "Parties . . . can and do voluntarily agree to make retiree benefits a subject of mandatory collective bargaining," *id.* at 936;

- Congress determined in ERISA that "retiree health care benefits are not a form of deferred compensation," *id.*;

- The rule that general durational clauses do not govern retiree health benefits "distort[s] the text of the agreement and conflict[s] with the

3

principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties," *id.*;

- The illusory contract doctrine does not apply if some but not all retirees obtain a promised benefit, *id.*;

- It is a "traditional principle that courts should not construe ambiguous writings to create lifetime promises," *id.*;

- It is also a "traditional principle that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement,'" *id.* at 937 (quoting *Litton Fin. Printing Div., Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 207 (1991)); and

- "[W]hen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life," *id.* at 937.

At least as significant as these rules of construction is the contrast drawn by the Supreme Court between its *disapproval* of the *Yard-Man* inference favoring vesting for collective bargaining agreements and its *approval* of the Sixth Circuit's decision disfavoring vesting for non-collectively bargained contracts. It quoted with approval *Sprague v. General Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998): " 'Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; *the intent to vest must be found in the plan documents and must be stated in clear and express language.*' " 135 S. Ct. at 937 (emphasis added). The Court reiterated later that " 'a collective-bargaining agreement [may] provid[e] *in explicit terms* that certain

4

benefits continue after the agreement's expiration.' " *Id.* (quoting with alteration *Litton*, 501 U.S. at 207) (emphasis added).

Thus, the rules of construction governing this case are no longer to be found in *Yard-Man* and the decisions that followed it, which this Court employed previously. Rather, the governing rules are set forth in *Tackett*, and the new rules of construction dictate a result in this case different from the one reached last year.

\* \* \*

Accordingly, BorgWarner respectfully urges the Court to accept simultaneous fifteen-page briefs from the parties addressing the impact of *Tackett* on the summary judgment ruling, followed ten days later by seven-page replies. BorgWarner further urges the Court to suspend all other deadlines while the Court reconsiders summary judgment in light of *Tackett*.

| | |
|---|---|
| Dated: March 4, 2015 | Respectfully submitted, |
| | s/Joshua David Rogaczewski |
| Elisa Angeli Palizzi (P52088) | Bobby R. Burchfield |
| (angeli@millercanfield.com) | (bburchfield@mwe.com) |
| Miller, Canfield, Paddock and Stone, P.L.C. | Joshua David Rogaczewski |
| 150 West Jefferson, Suite 2500 | (jrogaczewski@mwe.com) |
| Detroit, Michigan 48226 | McDermott Will & Emery LLP |
| 313.496.7635 | 600 13th Street, Northwest |
| 313.963.6420 fax | Washington, D.C. 20005 |
| | 202.756.8000 |
| | 202.756.8087 fax |

*Attorneys for BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

5

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2015, I electronically filed the foregoing **BorgWarner's Statement Regarding *Tackett* and Its Impact on This Case** with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

s/Joshua David Rogaczewski
Joshua David Rogaczewski
(jrogaczewski@mwe.com)
McDermott Will & Emery LLP
600 13th Street, Northwest
Washington, D.C. 20005
202.756.8000
202.756.8087 fax
