# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| WILLARD L. SLOAN, EUGENE J. WINNINGHAM, and JAMES L. KELLEY,<br><br>                 Plaintiffs,<br><br>    v.<br><br>BORGWARNER INC., BORGWARNER DIVERSIFIED TRANSMISSION PRODUCTS INC., and BORGWARNER FLEXIBLE BENEFITS PLANS,<br><br>                 Defendants. | Case 2:09-cv-10918-PDB-MKM<br><br>U.S. District Judge Paul D. Borman<br><br>U.S. Mag. Judge Mona K. Majzoub |

## DEFENDANTS' SUPPLEMENTAL BRIEF
## REGARDING *TACKETT* AND ITS IMPACT ON THIS CASE

Elisa Angeli Palizzi (P52088)
MILLER, CANFIELD, PADDOCK
  AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone :  (313) 496-7635
Facsimile:  (313) 963-6420
epalizzi@millercanfield.com

Bobby R. Burchfield
  *Counsel of Record*
Nikesh Jindal
David M. Barnes
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC  20006
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
bburchfield@kslaw.com
njindal@kslaw.com
dbarnes@kslaw.com

*Counsel for BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ...............................................................................1

BACKGROUND .................................................................................2

ARGUMENT .....................................................................................5

I.    THE SUPREME COURT REJECTED THE RULES OF
      CONTRACT CONSTRUCTION SET FORTH IN *YARD-MAN* AND
      ITS PROGENY. ...........................................................................6

II.   THE SUPREME COURT SET FORTH "CORRECT LEGAL
      PRINCIPLES" THAT GOVERN THIS CASE. ...........................................7

III.  THE SUPREME COURT'S DECISION REQUIRES ENTRY OF
      SUMMARY JUDGMENT FOR DEFENDANTS. .........................................9

      A.    *Tackett* Makes Clear That the CBAs and HIAs Did Not Create
            Vested Benefits ......................................................................9

      B.    *Tackett* Repudiated the Legal Basis for a Vesting
            Determination. .....................................................................11

CONCLUSION .................................................................................15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*,
  521 U.S. 203 (1997) ...................................................4

*B.H. ex rel. Hawk v. Easton Area Sch. Dist.*,
  725 F.3d 293 (3d Cir. 2013) (en banc)............................5

*EEOC v. K-Mart Corp.*,
  796 F.2d 139 (6th Cir. 1986) (per curiam)......................4

*Golden v Kelsey-Hayes Co. (In re Golden)*,
  73 F.3d 648 (6th Cir. 1996)........................................14

*Int'l Union v. Winters*,
  385 F.3d 1003 (6th Cir. 2004).....................................5

*International Union, United Automobile, Aerospace, & Agricultural
  Implement Workers of America (UAW) v. Yard-Man, Inc.*,
  716 F.2d 1476 (6th Cir. 1983).....................................1

*Litton Fin. Printing Div., A Div. of Litton Bus. Sys., Inc. v NLRB*,
  501 U.S. 190 (1991) ...................................................8

*M & G Polymers USA, LLC v. Tackett*,
  135 S. Ct. 926 (2015) .......................................... passim

*Noe v. PolyOne Corp.*,
  520 F.3d 548 (6th Cir. 2008)........................................6

*Reese v. CNH America LLC*,
  574 F.3d 315 (6th Cir. 2009)........................................3

*Reese v. CNH America LLC*,
  694 F.3d 681 (6th Cir. 2012)........................................3

*Sloan v. BorgWarner, Inc.*,
  1 F. Supp. 3d 743 (E.D. Mich. 2014)....................... passim

*Sprague v. General Motors Corp.*,
  133 F.3d 338 (6th Cir. 1998) (en banc)............................7

*United States v. Anglin*,
  601 F.3d 523 (6th Cir. 2010)........................................4

*Windstream Corp. v. Da Gragnano*,
  757 F.3d 798 (8th Cir. 2014)......................................14

## INTRODUCTION

On February 27, 2014, this Court denied both parties' cross-motions for summary judgment concerning whether the applicable CBAs and Health Insurance Agreements ("HIA") intended to vest (or not) retiree health benefits. *See Sloan v. BorgWarner, Inc.*, 1 F. Supp. 3d 743 (E.D. Mich. 2014) (R. 127). This Court determined that the agreements contained several "indicia of an intent to not vest," but that these considerations did not entitle BorgWarner[1] to summary judgment because there were other "indicia recognized by the Sixth Circuit as indicative of an intent to vest." *Id.* at 775. The Court based its vesting analysis on *International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America (UAW) v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), and decisions following it.

On January 26, 2015, however, the Supreme Court swept away *Yard-Man* as well as all rules of construction that have grown out of it. *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015). The Supreme Court set forth new rules of construction that now govern the determination of whether retiree health benefits are vested. Because the Supreme Court has overruled the very inferences that this

---

[1] "BorgWarner" refers to the three related defendants sued in this case by Plaintiffs: BorgWarner Diversified Transmission Products Inc., the entity for which Plaintiffs worked and from which they retired; BorgWarner Inc., the indirect parent of BorgWarner DTP; and BorgWarner Flexible Benefits Plans, the ERISA plan responsible for Plaintiffs' health benefits.

1

Court relied on as "indicative of an intent to vest," and because application of the new rules of construction to the terms of the collectively-bargained agreements show that the benefits are not vested as a matter of law, summary judgment for BorgWarner is now appropriate.

## BACKGROUND

This litigation is based on collective bargaining agreements that were entered into between BorgWarner DTP and the UAW in 1989 and extended over the next two decades. *Sloan*, 1 F. Supp. 3d at 747. Following the shutdown of BorgWarner's DTP plant in Muncie, Indiana on May, 1 2009 and the termination of the collective bargaining relationship between the company and the Union, BorgWarner modified the health benefits of persons who retired after October 27, 1989—the effective date of the 1989 HIA—to mirror benefits provided to salaried employees. *Id.* at 752. Plaintiffs brought suit claiming that these changes were unlawful because retirees were entitled to lifetime vested health benefits under the CBAs and HIAs.

Following discovery and the parties' submission of cross-motions for summary judgment, this Court issued an opinion addressing the issue of whether the retiree health benefits were vested as a matter of law.[2] The Court

---

[2] BorgWarner also sought summary judgment even if the benefits were vested because the changes were made in full compliance with the standards in *Reese v.*

*footnote continued on next page*

acknowledged several "indicia" in the agreements that weighed against vested rights. *Id.* at 775. First, the Court cited the termination provision in the HIA—unchanged from 1989 through 2009—"specifically refer[ring] to retiree benefits," indicating that the obligation to provide these benefits ceased when the HIA expired. *Id.* Second, the Court noted the reservation of rights ("ROR") language in the 1989 HIA allowing BorgWarner to "modify, amend, suspend or terminate the Plan or the Group [Plan] Policies." *Id.* at 749, 764, 775. Notably, this language was "part of the formally executed agreement" and "was reviewed and not objected to by the Union prior to the formal execution of the HIA in which it appears." *Id.* at 775. The Court also acknowledged the "agreement to disagree" language contained in the 1990 ACME which set forth "the union's position that current retirees have lifetime vested benefits" and BorgWarner's contrary position that "current retirees do not have lifetime vested benefits." *Id.* at 750, 763, 776.

On the other side of the ledger, the Court's opinion cited "indicia recognized by the Sixth Circuit as indicative of an intent to vest"—"(1) tying of pension and healthcare eligibility; (2) specific durational language as to certain non-retirees, (3) negotiation of less favorable benefits for future retirees while leaving existing

---

*CNH America LLC*, 574 F.3d 315, 324-27 (6th Cir. 2009) ("*Reese I*"), as further explained in *Reese v. CNH America LLC*, 694 F.3d 681 (6th Cir. 2012) ("*Reese II*"). The Court's opinion did "not address this secondary issue at this stage of the proceedings." *Sloan*, 1 F. Supp. 3d at 746 n.1.

retirees's benefits unchanged." *Id.* at 775. Taking into account all of these indicia, the Court determined that summary judgment was inappropriate for either side, and ordered that the case proceed to trial.[3]

The Court subsequently stayed the case pending the Supreme Court's decision in *Tackett*, accurately predicting that the Supreme Court's decision "will likely require this Court to revisit its summary judgment ruling and may require a different analysis that could affect the ultimate resolution of this case." (R. 134, Order 2). Now, in the aftermath of the *Tackett* decision, the Court has ordered this supplemental briefing to address its impact on the Court's prior ruling. (R. 139).[4]

_____

[3] The Court determined that extrinsic evidence "point[ed] in both directions." *Id.* at 776 (internal quotation marks omitted).

[4] The Court's reconsideration of its earlier decision in light of *Tackett* is entirely appropriate. The law of the case doctrine does not apply when an intervening decision of a superior court undercuts the basis of the court's prior ruling. *See EEOC v. K-Mart Corp.*, 796 F.2d 139, 146 (6th Cir. 1986) (per curiam) (rejecting argument that prior decision was law of the case and explaining that "[w]hatever weight" prior decision was entitled "it clearly cannot control as opposed to an opposite view expressed in final language by the United States Supreme Court in a similar case"). As the Supreme Court has explained, the law of the case doctrine is "not absolute" and when intervening decisions suggest the case would be decided differently under current law, adhering to the prior ruling "would undoubtedly work a 'manifest injustice' such that the law of the case doctrine does not apply." *Agostini v. Felton*, 521 U.S. 203, 236 (1997); *see also United States v. Anglin*, 601 F.3d 523, 527 (6th Cir. 2010) (similar).

## ARGUMENT

In *Tackett*, the Supreme Court unanimously[5] vacated and remanded the Sixth Circuit's decision that the retirees' benefits in that case were vested.   In its Opinion, the Court repudiated the rules of contract construction that had grown out of the *Yard-Man* decision.   Next, the Court set forth appropriate rules of construction to govern vesting determinations and remanded for application of "the correct legal principles" set forth in its decision.  135 S. Ct. at 937.

Applying those principles here compels entry of summary judgment for BorgWarner.  The various "indicia of an intent to not vest" discussed by this Court in its prior decision apply with even greater force following *Tackett* and preclude vesting as a matter of law.  In contrast, the "indicia recognized by the Sixth Circuit as indicative of an intent to vest" were squarely rejected by *Tackett* as "inconsistent with ordinary principles of contract law," 135 S. Ct. at 937.  In short, the weight on the "vesting" side of the scale has been removed, and the weight on the "no

---

[5] All nine justices joined the Opinion of the Court.  Justice Ginsburg expressly joined the Opinion and concurred; she did not merely "concur in the result."  A concurrence that joins an opinion of the Court carries no formal precedential weight and to the extent that it departs from the majority, the majority's opinion governs.  *See, e.g.*, *Int'l Union v. Winters*, 385 F.3d 1003, 1011-12 (6th Cir. 2004) (refusing to apply principles in concurring opinion, the author of which concurred in the majority opinion).  When "an individual justice's vote is not needed to form a majority, the meaning of a majority opinion is to be found within the opinion itself because gloss that an individual [j]ustice chooses to place upon it is not authoritative."  *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 310 (3d Cir. 2013) (en banc) (internal quotation marks omitted).

vesting" side of the scale has been increased.   Following *Tackett*, summary
judgment for Defendants on the vesting issue is appropriate.

## I.   THE SUPREME COURT REJECTED THE RULES OF CONTRACT CONSTRUCTION SET FORTH IN *YARD-MAN* AND ITS PROGENY.

In *Tackett*, the Supreme Court comprehensively reviewed, and rejected, the
rules of construction adopted by the Sixth Circuit in *Yard-Man* and its progeny.
The Court first reviewed the reasoning of the *Yard-Man* decision itself.  It noted
the *Yard-Man* court's determinations that the "will provide" language "was
ambiguous," that inclusion of provisions for terminating active employees'
coverage contrasted with the absence of provisions for terminating coverage for the
retirees, that a promise deemed applicable to some but not all retirees was
"illusory," and that the "context" of retiree health benefits made them "'status'
benefits" which were unlikely to be left to future negotiations.  135 S. Ct. at 934.

Next, the Court discussed decisions following *Yard-Man* and the additional
rules of construction that have evolved, including holdings that "will continue to
provide" unambiguously vests benefits, that a general durational clause " 'says
*nothing*' " about the duration of retiree benefits, and that provisions tying
eligibility for retiree health benefits to pension benefits indicate that retiree health
benefits are vested.  *Id*. at 934-35 (quoting with emphasis *Noe v. PolyOne Corp.*,
520 F.3d 548, 555 (6th Cir. 2008)).

Following this review, the Court repeatedly made clear that it rejected "the

inferences applied in *Yard-Man* and its progeny." *Id.* at 935; *see also id.* at 933 (the *Yard-Man* "inferences conflict with ordinary principles of contract law"); *id.* at 936 ("[T]he Court of Appeals [in *Tackett*] misapplied other traditional principles of contract law . . . ."). Because the Sixth Circuit in *Tackett* had relied upon the "context" of the negotiations and on "the tying of eligibility for health care benefits to receipt of pension benefits" as indicating vesting, the Supreme Court "rejected [those] *Yard-Man* inferences as inconsistent with ordinary principles of contract law," and vacated the decision. *Id.* at 932, 937. In short, *none* of the rules of construction in *Yard-Man* or its progeny survive.

## II.   THE SUPREME COURT SET FORTH "CORRECT LEGAL PRINCIPLES" THAT GOVERN THIS CASE.

In contrast to the Supreme Court's strong *disapproval* of the *Yard-Man* inferences favoring vesting for collective bargaining agreements is its *approval* of the Sixth Circuit's decision disfavoring vesting for non-collectively bargained contracts. It quoted *Sprague v. General Motors Corp.*: " 'Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; *the intent to vest must be found in the plan documents and must be stated in clear and express language.*' " 135 S. Ct. at 937 (quoting 133 F.3d 338, 400 (6th Cir. 1998) (en banc)) (emphasis added). As the Court explained, the point of the contrast between *Yard-Man* and *Sprague* was to "underscore[] *Yard-Man*'s deviation from ordinary principles of contract law."

135 S. Ct. at 937.  In the next three sentences, the Court directly addressed the vesting of benefits in collective bargaining agreements, invoking the "traditional principle that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.' "  *Id.* (quoting *Litton Fin. Printing Div., A Div. of Litton Bus. Sys., Inc. v NLRB*, 501 U.S. 190, 207 (1991)).  As the High Court put it, " 'a collective-bargaining agreement [may] provid[e] *in explicit terms* that certain benefits continue after the agreement's expiration.' "  *Id.* at 937 (quoting *Litton*, 501 U.S. at 207).

The Supreme Court also set forth additional rules governing the construction of CBAs, including:

- The rule that general durational clauses do not govern retiree health benefits "distort[s] the text of the agreement and conflict[s] with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties," *id.* at 936;

- The illusory contract doctrine does not apply if some but not all retirees obtain a promised benefit, *id.*;

- It is a "traditional principle that courts should not construe ambiguous writings to create lifetime promises," *id.*;

- "[W]hen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for

8

life," *id.* at 937.

Thus, the rules of construction that govern this case are no longer to be found in *Yard-Man* and the decisions that followed it. Rather, the "correct legal principles" are set forth in the Supreme Court's decision in *Tackett*, and these principles make clear that Plaintiffs' retiree health benefits are not vested.

## III.   THE SUPREME COURT'S DECISION REQUIRES ENTRY OF SUMMARY JUDGMENT FOR DEFENDANTS.

### A.   *Tackett* Makes Clear That the CBAs and HIAs Did Not Create Vested Benefits

This Court's prior decision cited multiple provisions of the CBAs and HIAs that indicated "an intent to not vest" benefits." *Sloan*, 1 F. Supp. 3d at 775. For these and other reasons, *Tackett* confirms that Plaintiffs' benefits are not vested as a matter of law under the terms of the agreements. As a threshold matter, *Tackett* instructs courts to look for "clear and express language" indicating an intent to vest retiree benefits. (*See* pp. 7 above). Plaintiffs have cited no such language because the agreements contain no such language. This omission is sufficient to defeat vesting.

Moreover, as this Court correctly recognized, the HIAs here contained a separate provision that imposed specific durational limitations on retiree health benefits. *Sloan*, 1 F. Supp. 3d at 749; (R. 96-1, Ex. 1, 1989 HIA App. A, Ex. A, § 2(M)(2)) ("The coverages provided under this Exhibit A terminate on the date

. . . the Agreement is terminated."). Prior law required enforcement of such a specific durational clause. *Id.* at 758-59.

But *Tackett* provides further grounds to deny vesting as a matter of law. The CBAs and HIAs also had general durational clauses. *Id.* at 749-52 (describing the contractually specified lengths of the 1989, 1990, 1992, 1995, 1998, 2000, and 2005 agreements).[6] The Supreme Court addressed—and rejected—decisions "requiring a contract to include a specific durational clause . . . to prevent vesting." 135 S. Ct. at 936. A refusal to recognize general durational clauses "distort[s] the text of the agreement and conflict[s] with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties." *Id*.

Second, the Reservation of Rights language allowing BorgWarner to "modify, amend, suspend or terminate the Plan or the Group [Plan] Policies," *Sloan*, 1 F. Supp. 3d at 750, also precludes Plaintiffs' claim for vested benefits. As noted by this Court, this language was in the 1989 HIA as "part of the formally executed agreement," "was reviewed and not objected to by the Union prior to the formal execution of the HIA in which it appears," and "could be deemed sufficient

---

[6] *See, e.g.*, 1995 CBA (R. 97-6, Defs.' Mot. Ex. 15, Ex. 2, art. 16, § 1 ("This agreement shall remain in full force and effect until March 12, 1998 and thereafter from year to year, unless either party shall give notice in writing at least sixty (60) days in advance of March 12, 1998, or any anniversary thereafter of its desire to terminate the Agreement.")).

to have put the Union on notice that if it believed its benefits to be vested, it ought to have registered a significant protest." *Id.* at 775. Accordingly, this provision reflects an agreement by the parties reserving to BorgWarner the right to modify or eliminate retiree benefits at the company's discretion.

Third, the "agreement to disagree" language defeats vesting. The 1990 ACME restated the Union's belief that retiree health benefits were vested and BorgWarner's contrary "position that current retirees do not have lifetime vested benefits" (R. 95, Defs. Mot. SUMF ¶ 6). The parties reiterated their disagreement two decades later in the 2009 Plant Shutdown Agreement. *Id.* ¶ 9 ("The Company and the Union have a dispute with respect to the nature of the Company's obligation to provide post-retirement health care benefits to employees who retired prior to February 23, 2009."). By disavowing any agreement between the parties about the intent to vest benefits, this provision underscores that the UAW and BorgWarner never agreed to vest retiree health benefits.

## B.   *Tackett* Repudiated the Legal Basis for a Vesting Determination.

*Tackett* sets forth  several "correct legal principles" that further confirm the benefits at issue here are not vested. When this Court denied Defendants' motion for summary judgment, however, it found the issue in equipoise based upon certain "indicia recognized by the Sixth Circuit as indicative of an intent to vest." *Sloan*, 1 F. Supp. 3d at 775. The Supreme Court unequivocally rejected the inferences

11

derived from *Yard-Man* and its progeny, including those applied by the Court here, and made clear that all inferences favoring vesting are eliminated. *Tackett*, 135 S. Ct. at 932, 937.

First, this Court's prior decision cited to the "tying of pension and healthcare eligibility," *Sloan*, 1 F. Supp. 3d at 775, as "indicative of an intent to vent" because the relevant language in the HIA was "largely indistinguishable from that found by the Sixth Circuit in *Golden*, *Yolton*, *Noe* and other cases to indicate an intent to vest health benefits." *Id.* at 766. In *Tackett*, the Supreme Court twice addressed, and twice rejected, the notion that contractual language "tying" of eligibility for health benefits to eligibility for pension benefits provided a basis for vesting. 135 S. Ct. at 935, 937. It did so first in its review of general rules of contract construction that have grown out of *Yard-Man*. *Id.* at 935. It did so again in the final section of the Opinion when it specifically rejected the Sixth Circuit's reliance on the tying analysis in *Tackett* as a reason to disregard the generational limit in the CBA in that case. *Id.* at 937.

Second, citing *Yard-Man* and its progeny for support, this Court noted that the "specific durational language as to certain non-retirees," and the absence of these same specific limitations for retirees, supported an inference of vesting as to retiree health benefits. *Sloan*, 1 F. Supp. 3d at 759, 775. The Supreme Court addressed and rejected the inference of vesting from benefit termination provisions

12

applicable to laid-off employees and surviving spouses and dependents, but not applicable to retirees. *Tackett*, 135 S. Ct. at 935, 937 (stating that the Court rejected *all* "inferences applied in *Yard-Man* and its progeny" as well as all rules of "contract interpretation" in that line of Sixth Circuit decisions).[7]  Creation of one tier of benefits for laid off workers and another for retirees is not, in any way, inconsistent with limiting both sets of benefits to the term of the contract.  Prior retirees may obtain more generous benefits than later retirees—while the contract is in effect. *Tackett* makes clear there is nothing "illusory" about that. *Id.* at 936.

Third, this Court cited to the "negotiation of less favorable benefits for future retirees while leaving existing retirees's benefits unchanged" as the final indicia of an intent to vest.  *Sloan*, 1 F. Supp. 3d at 775.  *Tackett* teaches that an intent to vest benefits must be "clear" and "explicit" in order to rebut the traditional principle that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement."  135 S. Ct. at 937 (internal quotation marks omitted).  The treatment of future retirees says nothing about whether health benefits for existing retirees extend beyond the scope of the CBAs

---

[7] Justice Ginsburg's suggestion that the tying provision, as well as the "survivor benefits" clause, may have some relevance to the vesting analysis, *see* 135 S. Ct. at 938 (Ginsburg, J., concurring), lacks any precedential weight. *See supra* at note 5.

and HIAs.[8]

Because the retirees bear the burden of proving vesting,[9] and because the Supreme Court has held their purported evidence of vesting to be legally insufficient, a trial would serve no purpose. Thus, the evidence precluding vesting is undisputed and summary judgment for Defendants is appropriate.

---

[8] Although the Court in its prior ruling considered extrinsic evidence and found it inconclusive, *Sloan*, 1 F. Supp. 3d at 776, there is no need to consider this evidence in the aftermath of *Tackett*. As noted above, the agreements contain express durational limits, as well as the ROR language and the "agreement to disagree" provision, and contain no other countervailing indication that the health benefits are intended to vest.

[9] *See, e.g.*, *Golden v Kelsey-Hayes Co. (In re Golden)*, 73 F.3d 648, 656 (6th Cir. 1996) (retirees, not the employer, has the burden on the vesting question); *Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 803 (8th Cir. 2014) ("The burden is on the retiree or union to prove vesting language[] exists in the plan documents." (internal quotation marks omitted)).

## CONCLUSION

For the reasons set forth above, BorgWarner urges the Court to find Plaintiffs' retiree health benefits are not vested and to enter summary judgment for BorgWarner.

Respectfully Submitted,

/s Bobby R. Burchfield

Elisa Angeli Palizzi (P52088)
MILLER, CANFIELD, PADDOCK
  AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone :  (313) 496-7635
Facsimile:  (313) 963-6420
epalizzi@millercanfield.com

Bobby R. Burchfield
  *Counsel of Record*
Nikesh Jindal
David M. Barnes
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC  20006
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
bburchfield@kslaw.com
njindal@kslaw.com
dbarnes@kslaw.com

*Counsel for BorgWarner Inc., BorgWarner Diversified
Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

15

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2015, I electronically filed the foregoing Supplemental Brief with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.


/s Bobby R. Burchfield
Bobby R. Burchfield