UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLARD L. SLOAN, EUGENE J.
WINNINGHAM, and JAMES L. KELLEY,
on behalf of themselves and a similarly
situated class,

Case No. 09-cv-10918
Hon. Paul D. Borman
Magistrate Mona K. Majzoub

                   Plaintiffs,

v.

**Class Action**

BORGWARNER, INC., BORGWARNER
FLEXIBLE BENEFITS PLANS and
BORGWARNER DIVERSIFIED
TRANSMISSION PRODUCTS, INC.,

                  Defendants.

| | |
|---|---|
| David R. Radtke (P47016) | Bobby R. Burchfield |
| Roger J. McClow (P27170) | KING & SPALDING LLP |
| Patrick J. Rorai (P65091) | 1700 Pennsylvania Avenue, N.W. |
| McKNIGHT, McCLOW, | Washington, D.C. 20006 |
| CANZANO, | 202-626-5524; fax 202-626-3737 |
| SMITH & RADTKE, P.C. | bburchfield@kslaw.com |
| 400 Galleria Officentre, Suite 117 | |
| Southfield, MI 48034 | Elisa Angeli Palizzi (P52088) |
| 248-354-9650; fax 248-354-9656 | MILLER, CANFIELD, PADDOCK |
| dradtke@kmsmc.com | & STONE, P.L.C. |
| rmcclow@kmsmc.com | 150 W. Jefferson Avenue, Suite 2500 |
| prorai@kmsmc.com | Detroit, MI 48226 |
| | 313-496-7635; fax 313-963-6420 |
| *Attorneys for Plaintiffs* | angeli@millercanfield.com |
| | |
| | *Attorneys for Defendants* |

**PLAINTIFFS' RESPONSE BRIEF
TO DEFENDANT'S SUPPLEMENTAL BRIEF
REGARDING *TACKETT* AND ITS
IMPACT ON THIS CASE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   THE SUPREME COURT'S OPINION IN *TACKETT* DOES NOT
      REQUIRE THE COURT TO GRANT SUMMARY JUDGMENT
      FOR DEFENDANTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    This Court Applied Ordinary Principles of Contract
            Law Because It Reviewed Express Contractual
            Language.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    This Court Applied Ordinary Principles of Contract
            Law Because It Examined Extrinsic Record Evidence
            After Finding the Express Contractual Language
            Ambiguous... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    This Court Did Not Rely on the *Yard-Man* Inference
            Rejected by *Tackett*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.    Contrary to BorgWarner's Assertion, *Tackett* Did
            Not Reset the Law Regarding Vesting of Retiree
            Health Care Benefits... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            1.    BorgWarner incorrectly asserts that general
                  durational clauses end all benefits on
                  termination of the CBA even when evidence
                  evinces a contrary intent.. . . . . . . . . . . . . . . . . . . . . . . . . 6

            2.    BorgWarner incorrectly asserts that explicit
                  lifetime language is the only way a party
                  can show an intent to vest.. . . . . . . . . . . . . . . . . . . . . . . . 7

            3.    This Court's previous rejection of BorgWarner's
                  arguments on the reservation of rights language in
                  the Summary Plan Description and the so-called
                  "Agreement to Disagree" language in the 1990 ACME
                  agreement are unaffected by the *Tackett* Decision.. . . . . . . . . 9

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

*Del Valle v. BellSouth Telcomms., Inc.*,
200 Fed. Appx. 528 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ins. Co. v. Dutcher*, 95 U.S. 269 (1877). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*International Union, United Automobile, Aerospace &*
*Agricultural Implement Workers of America v. Yard-Man, Inc.*,
716 F.2d 1476 (6th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991). . . . . . . . . . . . . . . . . . 7, 8

*M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926 (2015). . . . . . . . . . . . . *Passim*

*Price v. Bd. of Trustees of Ind. Laborer's Pension Fund*,
632 F.3d 288 (6th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rodriguez-Abreu v. Chase Manhattan Bank*,
986 F.2d 580 (1st Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sprague v. Gen. Motors Co.*, 133 F.3d  388 (6th Cir. 1988). . . . . . . . . . . . . . . . . 8

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*,
559 U.S. 662 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Zanghi v. Freightcar Am., Inc.*, No. 3:13-cv-146, at 46
(W.D. Pa. Mar. 30, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

## I.    __INTRODUCTION__

Defendants, BorgWarner, Inc., BorgWarner Diversified Transmission Products, Inc. and BorgWarner Flexible Benefits Plans (hereinafter "Defendants" or "BorgWarner") Supplemental Brief inaccurately claims that the Supreme Court's decision in *M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926 (2015) not only did away with the inference in favor of vesting set forth in *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), but swept away many contract interpretation rules used in determining whether a collectively bargained agreement vests retiree health care benefits.  The Defendants' claim about the breadth of the Supreme Court's decision in *Tackett* is exaggerated and contrary to the Court's holdings.   If Defendants' interpretation of the *Tackett* decision was accurate, then the Supreme Court would have simply ruled in favor of the employer in that case, rather than remanding the case to the Sixth Circuit Court of Appeals.

This Court's Order denying the parties' Cross Motions for Summary Judgment did not rely upon the *Yard-Man* inference in denying Defendants' Motion. (Dkt. #127 *passim*)  The Court found that the Health Insurance Agreements ("HIAs") negotiated by the UAW and BorgWarner contained substantial contractual evidence and extrinsic evidence showing an intent to vest retiree health care benefits.  But, in analyzing the HIAs' terms and extrinsic evidence, this Court concluded that there was

a genuine issue of material fact as to whether retiree health care benefits were vested lifetime benefits. (Dkt. #127 pp. 19-24, 52-53) That decision is still correct, even after *Tackett*.

## II.   THE SUPREME COURT'S OPINION IN *TACKETT* DOES NOT REQUIRE THE COURT TO GRANT SUMMARY JUDGMENT FOR DEFENDANTS.

Courts must use ordinary contract law principles when interpreting CBAs. *See Tackett*, 135 S. Ct. at 933 ("We interpret [CBAs] . . . according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy").

Under ordinary contract law principles, the parties' intentions are controlling. *See Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 682 (2010).  To discern the parties' intentions, courts must look first at the contract language and second to extrinsic record evidence; courts must stick to this two-step approach and cannot rely on an inference that places a thumb on the scale for either side. *Tackett*, 135 S. Ct. at 933-35.

### A.   This Court Applied Ordinary Principles of Contract Law Because It Reviewed Express Contractual Language.

Under ordinary principles of contract law, courts must interpret CBAs by looking first and foremost to the written terms of the CBA itself. *See Tackett*, 135 S.Ct. at 933.  If the written terms of a contract are unambiguous, then courts must interpret the meaning of the contract in accordance with those express terms. (*Id.*)

("Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent").

Here, this Court understood and conformed to this principle. (Dkt. #127 pp. 15-16) After articulating the concept, this Court then followed it by reviewing the contract language to conclude there was an issue of fact as to whether BorgWarner agreed to provide vested lifetime retiree healthcare benefits to Plaintiffs. (*Id.* pp. 32-44)

> **B.    This Court Applied Ordinary Principles of Contract Law Because It Examined Extrinsic Record Evidence After Finding the Express Contractual Language Ambiguous.**

This Court applied ordinary principles of contract law because, after reviewing applicable HIAs and finding the language ambiguous as to whether the contract language was sufficient to vest the benefits, the Court then reviewed the extrinsic evidence. (*Id.* at 45-52) When contractual language does not show an express intent, traditional principles of contract law require courts to examine extrinsic evidence as the means for determining the parties' intent. *See Tackett*, 135 S. Ct. at 935 (explaining that a court may derive its assessment of likely behavior from record evidence); 135 S. Ct. at 938 (Ginsburg, J., concurring) ("[W]hen the contract is ambiguous, a court may consider extrinsic evidence to determine the intentions of the parties"); *Zanghi v. Freightcar Am., Inc.*, No. 3:13-cv-146, at 46 (W.D. Pa. Mar. 30,

2015) ("The parties' [CBAs] are ambiguous . . . . Thus, . . . the Court may look to extrinsic evidence to determine the intentions of the parties").

The concept that courts should use extrinsic record evidence as a means of discerning the parties' intent when the contract terms are ambiguous is not new; this concept has been a well-established principle of contract law for over 100 years. *See Ins. Co. v. Dutcher*, 95 U.S. 269, 273 (1877) ("There is no surer way to find out what the parties meant, than to see what they have done"); *Del Valle v. BellSouth Telcomms., Inc.*, 200 Fed. Appx. 528, 534-35 (6th Cir. 2006) (holding that the district court properly considered extrinsic record evidence to verify the parties' intent); *Rodriguez-Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 586 (1st Cir. 1993) ("If the language of the contract is ambiguous, we turn to surrounding circumstances, undisputed extrinsic evidence, to divine the parties' intent"); 11 Williston on Contracts §30:7 (4th ed.) (explaining that, when a written contract is ambiguous, "relevant extrinsic evidence of the parties' intent" should be considered).

Here, the Court found the extrinsic evidence "pointed in different directions," so that testimony was necessary to discern the meaning of the extrinsic evidence. (Dkt. #127 p. 52)

### C.   This Court Did Not Rely on the *Yard-Man* Inference Rejected by *Tackett*.

This Court applied ordinary principles of contract law because it completed the two-step approach discussed above without relying on the *Yard-Man* inference. The

Supreme Court held in *Tackett* that courts cannot, when confronted with ambiguous contractual language and a dearth of extrinsic record evidence, rely on the inference approved of in *Yard-Man*. *See* 135 S. Ct. at 935 (vacating the Sixth Circuit's ruling because it was based on the *Yard-Man* inference that placed a thumb on the scale in favor of vesting). Specifically, the Supreme Court stated: "[T]he Sixth Circuit sided with the retirees, relying on its conclusion in [*Yard-Man*] that retiree health care benefits are unlikely to be left up to future negotiations. We . . . conclude that such reasoning is incompatible with ordinary principles of contract law." *Id.*

The *Yard-Man* court created and applied an inference in favor of vesting because the contractual language at issue was ambiguous and there was no extrinsic evidence of intent on which to rely. 716 F.2d at 1480. Faced with an ambiguous CBA and no extrinsic evidence, the Sixth Circuit relied on the inference as a tie-breaker. *Id.* at 1482 ("[I]t is unlikely that such benefits, which are typically understood as a form of delayed compensation . . . , would be left to the contingencies of future negotiations").

Here, this Court, like in *Yard-Man*, found the HIA language ambiguous (as was the extrinsic evidence), but unlike *Yard-Man,* it did not rely on an inference to find the benefits vested. In fact, here the Court implicitly rejected the *Yard-Man* inference in ordering a trial when it found the contract language ambiguous. The denial of Plaintiffs' Motion in the face of ambiguities in the contract language and extrinsic

evidence belies BorgWarner's claim that the Court relied upon the *Yard-Man* inference in denying its Motion.

### D.  Contrary to BorgWarner's Assertion, *Tackett* Did Not Reset the Law Regarding Vesting of Retiree Health Care Benefits.

BorgWarner mischaracterizes *Tackett* as resetting the law on vesting of retiree healthcare benefits. (Dkt. #141 pp. 7-9)  As part of this mischaracterization, BorgWarner sets forth a number of purported "rules of construction that must now govern construction of CBAs." (*Id.* pp. 8-9)  These alleged rules are not rules at all, and most of them do not even bear any relation to this case.  Two of these "rules," however, require further discussion.

### 1.  BorgWarner incorrectly asserts that general durational clauses end all benefits on termination of the CBA even when evidence evinces a contrary intent.

First, BorgWarner incorrectly asserts that a general durational clause will end all benefits on termination of the CBA even when evidence demonstrates an intent to continue those benefits. (*Id.* p. 8)  In reality, because the parties' intent is dispositive for contract interpretation, if evidence shows an intent to continue the retiree benefits beyond the life of the agreement, then courts are obligated to adhere to that intent. *See Tackett*, 135 S. Ct. at 937 (explaining that, while contractual obligations might usually cease upon termination of a CBA, such a principle "does not preclude the conclusion that the parties intended to vest lifetime benefits for retirees").

Indeed, as a general rule, the expiration of a CBA will not end obligations accrued under the contract that have not yet been satisfied. (*Id.*) (holding that a CBA may provide that certain benefits continue after the agreement's expiration) (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991)); *Litton,* 501 U.S. at 206-07 (holding that post-expiration rights may arise from the terms of the CBA and that whether obligations survive a contract's expiration is determined by contract interpretation). Thus, in *Litton,* which was cited to and approved by the *Tackett* decision, the Supreme Court explained that a CBA's expiration does not end "obligations already fixed under the contract but as yet unsatisfied." 501 U.S. at 206. In the Supreme Court's words: "Rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement." *Id.* at 207.

### 2.    BorgWarner incorrectly asserts that explicit lifetime language is the only way a party can show an intent to vest.

BorgWarner incorrectly asserts that, if a contract is silent as to the duration of retiree benefits, then courts are not allowed to find that the parties intended those benefits to vest for life. (Dkt. #141 p. 13)

Contractual obligations (such as lifetime vesting) may arise due to the express *or implied* terms of the agreement. *Tackett*, 135 S. Ct. at 937-38 (Ginsburg, J., concurring) ("[N]o rule requires clear and express language in order to show that parties intended health-care benefits to vest. Constraints upon the employer after the expiration date of a [CBA] . . . may . . . arise from implied terms of the expired

-7-

[CBA]") (internal quotation marks and citation omitted); *Litton*, 501 U.S. at 206-07 (holding that post-expiration rights may "arise from the express *or implied* terms of the agreement itself") (emphasis added).

Said differently, *Tackett* teaches that contractual ambiguity cannot be resolved by a judicially mandated inference and that courts must instead look to actual evidence to determine the parties' intent to vest. *See Tackett*, 135 S. Ct. at 937. Thus, in *Tackett*, the contract at issue lacked a specific durational clause for retiree benefits, and the Supreme Court nevertheless remanded the case to allow the Sixth Circuit to apply ordinary rules of contract law. (*Id.*) If the Supreme Court believed that an express term granting lifetime benefits was necessary, then the absence of one in *Tackett* would have been dispositive and there would have been no reason to remand the case. (*Id.*)

BorgWarner supports its misreading of *Tackett* by relying on *Sprague v. Gen. Motors Co.*, 133 F.3d 388 (6th Cir. 1988). But *Tackett* does not hold that the standard enunciated in *Sprague* applies to the interpretation of CBAs. 135 S. Ct. at 937. Rather, *Tackett* merely notes the standard's inconsistency with the *Yard-Man* inference. (*Id.*) *See also Price v. Bd. of Trustees of Ind. Laborer's Pension Fund*, 632 F.3d 288, 294 (6th Cir. 2011) (finding the *Yard-Man* inference inapplicable to disability pension benefits *and* that *Sprague* does not apply to collectively bargained benefits).

-8-

      **3.**     **This Court's previous rejection of Borgwarner's arguments on the reservation of rights language in the Summary Plan Description and the so-called "agreement to disagree" language in the 1990 ACME Agreement are unaffected by the *Tackett* decision.**

In this Court's Order denying Defendants' Motion for Summary Judgment, it rejected Defendants' argument that the reservation of rights clause in the Summary Plan Description proved that the benefits were not vested. Instead, the Court found that the reservation of rights clause in the Summary Plan Description presented a contractual ambiguity which created a genuine issue of material fact. (Dkt. #127 pp. 41-42)

The Court also properly rejected BorgWarner's argument that the "agreement to disagree" in the 1990 ACME Agreement was dispositive that the parties did not intend the retiree health care benefits to vest. (*Id.* p. 52) As this Court stated:

> The 'agreement to disagree' is an unequivocal statement by BorgWarner beginning in 1989, or two decades before the shutdown of the Muncie plant, denying that the 1989 CBA and HIA obligated to provide health care benefits to these Plaintiffs for life and an equally strong statement by the Union that it interpreted the 1989 [CBA and HIA] . . . controlling collectively bargained language differently. Again, the extrinsic evidence does little to clarify the parties' intent in executing the 1990 ACME agreement, necessitating further development of these facts at trial.

(*Id.*)

The holding in *Tackett* has no impact on the Court's finding that "agree to disagree" language in the 1990 ACME Agreement was not dispositive on the issue of vesting.

## III.   <u>CONCLUSION</u>

What the Supreme Court in *Tackett* directed the Sixth Circuit to do on remand is precisely what this Court did in denying the Cross Motions for Summary Judgment: Apply ordinary principles of contract law to determine whether the parties' CBA created a vested right to retiree benefits without reliance on an inference in favor of either side.

Here, the Court reviewed the facts in the light most favorable to each of the non-moving parties, and using ordinary contract law principles, found the contract language ambiguous and that the extrinsic evidence "point[ed] in both directions." The *Yard-Man* inference was simply not relevant to this decision.  Thus, this Court's holding is consistent with *Tackett* and should not be reversed.  This case should be set for trial.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: *<u>/s/ David R. Radtke</u>*
   DAVID R. RADTKE (P47016)
   ROGER J. McCLOW (P27170)
   PATRICK J. RORAI (P65091)
   Attorneys for Plaintiffs
   400 Galleria Officentre, Suite 117
   Southfield, MI  48034
   248-354-9650
   dradtke@michworklaw.com
   rmcclow@michworklaw.com
Dated: June 4, 2015   prorai@michworklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will serve it upon:

Bobby R. Burchfield                                    Elisa Angeli Palizzi


Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.


By: /s/ David R. Radtke
   DAVID R. RADTKE (P47016)
   ROGER J. McCLOW (P27170)
   PATRICK J. RORAI (P65091)
   Attorneys for Plaintiffs
   400 Galleria Officentre, Suite 117
   Southfield, MI  48034
   248-354-9650
   dradtke@michworklaw.com
   rmcclow@michworklaw.com
   prorai@michworklaw.com

P:\RHC Cases\BorgWarner\2009 MI Lawsuit\Pleadings\Resp to PL Tackett Brief.wpd