UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLARD L. SLOAN, EUGENE J.
WINNINGHAM, JAMES L. KELLEY,
on behalf of themselves and a similarly
situated class,

                  Plaintiffs,

        v.

BORGWARNER, INC.,
BORGWARNER FLEXIBLE
BENEFITS PLANS and
BORGWARNER DIVERSIFIED
TRANSMISSION PRODUCTS, INC.,

                  Defendants.

Case 2:09-cv-10918-PDB-MKM

U.S. District Judge Paul D. Borman

U.S. Mag. Judge Mona K. Majzoub

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and
BorgWarner Flexible Benefits Plans—referred to collectively as "BorgWarner" for
convenience—request summary judgment on Plaintiffs' claims that BorgWarner is
obligated to provide them with vested, lifetime, inalterable retiree health care
benefits and that changes made to their benefits on May 1, 2009 breach that
obligation. *See* Fed. R. Civ. P. 56(a). As explained more fully in the following
brief in support, there are no material facts in dispute and BorgWarner is entitled to
judgment as a matter of law on Plaintiffs' claims. Most importantly, Plaintiffs

cannot prevail on their claims because they cannot demonstrate that the agreements between BorgWarner DTP and their union contained any clear and express language creating a right to vested benefits. *See M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 937 (2015). Alternatively, as more fully addressed in earlier summary judgment submissions, the undisputed evidence demonstrates that the changes BorgWarner DTP made to Plaintiffs' health care benefits on May 1, 2009 were reasonable and permissible, even if the benefits were vested. *See Reese v. CNH America LLC*, 694 F.3d 681 (6th Cir. 2012); *Reese v. CNH America LLC*, 574 F.3d 315, 324-27 (6th Cir. 2009). If nothing else, BorgWarner is entitled to partial summary judgment on Plaintiffs' claims for class-wide money damages. Under the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, class-wide damages are unavailable to this plaintiff class, which was certified under Federal Rule of Civil Procedure 23(b)(1) and (b)(2) and *not* Rule 23(b)(3). 131 S. Ct. 2541, 2557 (2011).

In accordance with Eastern District of Michigan Rule of Civil Procedure 7.1(a), counsel for BorgWarner conferred by telephone with counsel for Plaintiffs on October 9 regarding this motion, explaining its legal and factual basis. Plaintiffs do not concur in BorgWarner's motion.

2

Respectfully Submitted,

/s Bobby R. Burchfield

Elisa Angeli Palizzi (P52088)
MILLER, CANFIELD, PADDOCK
  AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone :  (313) 496-7635
Facsimile:  (313) 963-6420
epalizzi@millercanfield.com

Bobby R. Burchfield
  *Counsel of Record*
Nikesh Jindal
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC  20006
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
bburchfield@kslaw.com
njindal@kslaw.com

*Counsel for BorgWarner Inc., BorgWarner Diversified*
*Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

Dated: October 9, 2015

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WILLARD L. SLOAN, EUGENE J. WINNINGHAM, JAMES L. KELLEY, on behalf of themselves and a similarly situated class, | Case 2:09-cv-10918-PDB-MKM |
| Plaintiffs, | U.S. District Judge Paul D. Borman |
| v. | U.S. Mag. Judge Mona K. Majzoub |
| BORGWARNER, INC., BORGWARNER FLEXIBLE BENEFITS PLANS and BORGWARNER DIVERSIFIED TRANSMISSION PRODUCTS, INC., | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Elisa Angeli Palizzi (P52088)
MILLER, CANFIELD, PADDOCK
  AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone :  (313) 496-7635
Facsimile:  (313) 963-6420
epalizzi@millercanfield.com

Bobby R. Burchfield
  *Counsel of Record*
Nikesh Jindal
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC  20006
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
bburchfield@kslaw.com
njindal@kslaw.com

*Counsel for BorgWarner Inc., BorgWarner Diversified Transmission Products
Inc., and BorgWarner Flexible Benefits Plans*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

CONCISE STATEMENT OF THE ISSUES PRESENTED................................. iv

CONTROLLING AUTHORITY FOR THE RELIEF SOUGHT ..........................v

INTRODUCTION ........................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................3

PROCEDURAL HISTORY AND DECISION ......................................................8

STANDARD OF REVIEW ................................................................10

ARGUMENT ..................................................................................11

I.      THE SUPREME COURT'S DECISION REQUIRES ENTRY OF
        SUMMARY JUDGMENT FOR DEFENDANTS........................................11

        A.      The CBAs and HIAs Contain No Language, Much Less Clear
                Language, Necessary To Vest Benefits. ...............................13

        B.      Multiple Contractual Provisions Preclude Vesting. ...........................16

        C.      The "Correct Legal Principles" Set Forth In *Tackett* Further
                Undermine Vesting...............................................................21

II.     BORGWARNER DTP'S CHANGES TO THE RETIREE HEALTH
        CARE BENEFITS ARE OTHERWISE PERMISSIBLE. ...........................24

III.    AT A MINIMUM, PLAINTIFFS CANNOT RECOVER CLASS-
        WIDE DAMAGES IN THIS CLASS ACTION. ...........................................24

CONCLUSION ................................................................................25

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*B.H. ex rel. Hawk v. Easton Area Sch. Dist.*,
   725 F.3d 293 (3d Cir. 2013) (en banc) ............................................................12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................10

*Golden v. Kelsey-Hayes Co.*,
   73 F.3d 648 (6th Cir. 1996) ............................................................................10

*Golden v. Kelsey-Hayes Co.*,
   954 F. Supp. 1173 (E.D. Mich. 1997) ............................................................10

*Int'l Union v. Winters*,
   385 F.3d 1003 (6th Cir. 2004) ........................................................................12

*Int'l Union, UAW v. Kelsey-Hayes Co.*,
   No. 11-cv-14434, 2015 WL 5460631 (E.D. Mich. Sept. 17, 2015) ................16

*Int'l Union, UAW v. Yard-Man, Inc.*,
   716 F.2d 1476 (6th Cir. 1983) ................................................................ *passim*

*Litton Fin. Printing Div., A Div. of Litton Bus. Sys., Inc. v. NLRB*,
   501 U.S. 190 (1991) ........................................................................................14

*M&G Polymers USA, LLC v. Tackett*,
   135 S. Ct. 926 (2015) ............................................................................. *passim*

*Matsushita Elec. Indus v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................10

*Noe v. PolyOne Corp.*,
   520 F.3d 548 (6th Cir. 2008) ..........................................................................12

*Policy v. Powell Pressed Steel Co.*,
   770 F.2d 609 (6th Cir. 1985) ..........................................................................16

*Reese v. CNH America LLC*,
   574 F. 3d 315 (6th Cir. 2009) .....................................................................8, 24

*Reese v. CNH America LLC*,
   694 F. 3d 681 (6th Cir. 2012) .....................................................................8, 24

*Reese v. CNH Industrial N.V.*,
   No. 04-cv-70592, 2015 WL 5679827 (E.D. Mich. Sept. 28, 2015) .......... 15, 16

*Sloan v. BorgWarner Inc.*,
    1 F. Supp. 3d 743 (E.D. Mich. 2014) ....................................................... *passim*

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ............................................................. 14

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .................................................................. 25

*Witmer v. Acument Global Techs., Inc.*,
    No. 08-cv-12795, 2011 WL 2111899 (E.D. Mich., May 26, 2011) ................ 23

*Witmer v. Acument Global Techs., Inc.*,
    694 F.3d 774 (6th Cir. 2012) ..................................................... 19, 20

**Rules**

Fed. R. Civ. P. 23 ................................................................................. 25

Fed. R. Civ. P. 56 ................................................................................. 10

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1.       Following the Supreme Court's decision in *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015), which eliminated all inferences favoring vesting based on *International Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), are Plaintiffs' retiree health care benefits vested and unalterable for life if the agreements providing them did not contain clear and express language providing for vested benefits, and, in fact, specifically authorized BorgWarner DTP to modify or eliminate retiree benefits at the company's discretion, had specific durational clauses and acknowledged the lack of any agreement to vest?

2.       Did BorgWarner DTP breach any obligation to Plaintiffs when, on May 1, 2009, it changed Plaintiffs' retiree health care benefits to provide them with benefits that were (a) reasonably commensurate with what they had before, (b) modified to reflect changes in health care, and (c) mirrored the benefits provided to other BorgWarner employees and in the market generally?

3.       Can the plaintiff class—which was certified pursuant to Federal Rule of Civil Procedure 23(b)(1) and (b)(2) but not Rule 23(b)(3)—recover class-wide damages to compensate them for their individualized injuries?

iv

## CONTROLLING AUTHORITY FOR THE RELIEF SOUGHT

Federal Rule of Civil Procedure 56

*M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015)

## INTRODUCTION

On August 7, 2015, this Court vacated its earlier decision denying both parties' motions for summary judgment concerning whether Plaintiffs have vested, unalterable health benefits for life. (R. 145). *See Sloan v. BorgWarner Inc.*, 1 F. Supp. 3d 743 (E.D. Mich. 2014) (R. 127). The Court correctly noted that the Supreme Court's unanimous decision in *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015), "undeniably has changed . . . the legal landscape on the issue of lifetime vesting of retiree healthcare benefits in this Circuit." (R. 145, Order 2).

The rules of contract construction set forth in *Tackett* confirm that Plaintiffs' benefits are not vested as a matter of law.[1] *Tackett* instructs courts to look for "clear and express" language indicating an intent to vest retiree benefits. 135 S. Ct. at 937 (internal quotation marks omitted). In this case, Plaintiffs can point to no such language and that inability standing alone is sufficient to defeat vesting. *Tackett* further instructs that a court may not infer that silence in a contract creates a lifetime benefit, nor should it construe an ambiguous contract to create a lifetime promise.

---

[1] Plaintiffs represent a class of union-represented employees who retired from BorgWarner DTP between October 7, 1989 and February 22, 2009, and their surviving spouses. (R. 56, Op. & Order 2, 13). Plaintiffs were represented in collective bargaining by the International Union, United Automotive, Aerospace and Agricultural Implement Workers of America ("UAW") and its Local 287.

In fact, the agreements at issue here contain multiple provisions that *preclude* any claim to vested benefits under *Tackett*'s rules of construction. *First*, the Health Insurance Agreements ("HIAs"), which provided Plaintiffs with retiree health care benefits, contain specific termination dates on which all health care benefits—including those provided to retirees—terminated if not extended. The Collective Bargained Agreements ("CBAs") also have general durational clauses, which must be respected. *See Tackett,* 135 S. Ct. at 936 (rejecting decisions "requiring a contract to include a specific durational clause . . . to prevent vesting"). The most recent CBA and HIA ended without a replacement in April 2009, and at that time Plaintiffs' contractual right to benefits also ended. *Second*, the HIAs contain reservation of rights language allowing BorgWarner[2] to "'modify, amend, suspend or terminate the Plan or the Group [Plan] Policies,'" *Sloan*, 1 F. Supp. 3d at 749. This provision gives BorgWarner the right to modify or eliminate retiree benefits at the company's discretion. *Finally*, the parties *twice*—in 1990 at the beginning of the class period and in 2009 at the end of the class period—executed agreements confirming the *lack* of any agreement to vest retiree health care benefits. This "agreement to disagree" language further

---

[2] "BorgWarner" refers to the three related defendants sued in this case by Plaintiffs: BorgWarner Diversified Transmission Products Inc., the entity for which Plaintiffs worked and from which they retired; BorgWarner Inc., the indirect parent of BorgWarner DTP; and BorgWarner Flexible Benefits Plans, the ERISA plan responsible for Plaintiffs' health benefits.

2

underscores that the UAW and BorgWarner never agreed to vest retiree health benefits.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The undisputed material facts are correctly set forth in the Court's earlier opinion, *Sloan*, 1 F. Supp. 3d at 747-52, and are summarized below.

1.   Pursuant to a series of CBAs and HIAs entered between 1989-2009, BorgWarner provided health care benefits to the UAW-represented employees and retirees from its "'Diversified Transmission Products'" plant in Muncie, Indiana. *Id.* at 747. Although Plaintiffs retired at different times, the relevant language concerning health care coverage was consistent among each of the CBAs and HIAs. *Id.*

2.   The 1989 CBA and accompanying HIA brought to an end a seven-week strike that had been prompted by disputes about health care benefits, including in significant part "BorgWarner's desire to reduce its retiree [health] benefit liabilities." *Id.*

3.   Article 16 of the 1989 CBA stated:

This agreement shall remain in full force and effent [sic] until September 12, 1992 and thereafter from year to year, unless either party shall give notice in writing at least sixty (60) days in advance of September 12, 1992, or any anniversary thereafter of its desire to terminate the Agreement.

3

*Id.* at 748 (quoting R. 97-3, Defs.' Mot. Ex. 15, Ex. 1, art. 16, § 1).  This

durational clause remained unchanged (except for the relevant termination

date) through each of the successive bargaining agreements.  *Id.*

      4.     The 1989 HIA contained a similar durational clause that also

remained unchanged in future agreements (except for the relevant termination

date):

> On September 12, 1992, this Agreement may be terminated, modified, changed or continued in the same manner as provided in Article Sixteen of the aforesaid Collective Bargaining Agreement between the parties hereto dated October 27, 1989.

*Id.* at 749 (quoting R. 96-1, Defs.' Mot. Ex 1, 1989 HIA, art. 12).

      5.     Exhibit A to the 1989 HIA specified that termination of retiree health

benefits would occur under certain circumstances, including the termination of the

HIA:

> <u>Termination of Coverages Provided Under Exhibit A</u>:  The coverages provided under this Exhibit A terminate on the date that:
> . . .
> (e)    the Agreement is terminated.

*Id.* at 749 (quoting R. 96-1, Defs.' Mot. Ex. 1, 1989 HIA App. A, Ex. A.,

§ 2(M))(2)).  This termination provision remained unchanged through each

of the subsequent iterations of the HIA.

      6.     Article VIII of the 1989 HIA defined eligibility for health care

benefits in relevant part:

> Presently retired employees and an employee who retires under the
> Retirement Income Program Agreement on or after December 1, 1989
> . . . shall be entitled to the life insurance, Managed Care, basic
> hospitalization/surgical/medical, prescription drug, major medical,
> substance abuse, vision, human organ/tissue transplant, and Medical
> Case Management coverages and procedures, as set forth in Exhibits
> A, C, D, E, F, and H, . . . .

*Id.* at 748 (quoting R. 96-1, Defs.' Mot. Ex. 1, 1989 HIA art. 8, § 1(A)).

7.     Article VIII also specified that certain surviving spouses, including

those receiving pension benefits, would be eligible to receive health care benefits

but would lose that right upon remarriage.  *Id.*  Article VIII remained unchanged

through each of the subsequent iterations of the HIA.  *Id.*

8.     The 1989 HIA contained an agreed "Summary Description

Information," which explained the "Future of the Plan":

> Although [BorgWarner DTP] expects and intends to continue the Plan
> indefinitely, it reserves the right to modify, amend, suspend or
> terminate the Plan or the Group Policies therein in accordance with
> the provisions of the Health Insurance Agreement.

*Id.* at 749 (quoting R. 96-1, Defs.' Mot. Ex. 1, 1989 HIA App. A, Ex. A, at p. 121).

This reservation of rights ("ROR") language, which remained unchanged in each

successive version of the HIA, was "included within the consecutively-paginated

. . . HIA . . . before the signature page on that document" and was "part of the

formally executed agreement."  *Id.* at 749, 775.  In addition, the ROR provision

"was reviewed and not objected to by the Union prior to the formal execution of

the HIA in which it appears."  *Id.* at 775.

9.     Although the HIA was not formally executed until December 10, 1992, both sides complied with the CBA and HIA throughout its term.  *Id.* at 749.

10.     On September 27, 1990, BorgWarner DTP, the UAW, and Local 287 executed an Agreement on Modification and Extension of Existing Labor Contract (the "ACME Contract") extending the 1989 CBA and HIA until March 11, 1995. *Id*. at 749-50.  In a "Letter of Understanding" attached to the ACME Contract, the parties acknowledged their disagreement concerning whether retiree health benefits were vested:  "'This agreement does not prejudice the union's position that current retirees have lifetime vested benefits nor the DTP Muncie Plant's position that current retirees do not have lifetime vested benefits.'"  *Id*. at 750 (quoting R. 96-2, Defs. Mot. Ex. 2, p. 7, Ex. 3).

11.     The parties made changes to the HIA in 1992, 1995, 1998, 2000, and 2005—including increasing deductibles and co-pays for both existing and future retirees, *see id.* at 751—but at no point in time were changes made to Article VIII, the HIA's general durational clause (except for updating the termination date), termination provisions, or the "Future of the Plan" (ROR) language.  *Id*. at 750.

12.     Under the 1992 HIA, employees hired after December 31, 1992 were deemed "Category B Retirees" and received a Retiree Health Account to which BorgWarner made hourly contributions.  *Id.* at 751.  Category B retirees are not part of the lawsuit or the certified class.  *Id*. at 750.

6

13.    The 2005 HIA included a reduction in benefits and monthly contributions for future retirees and specified that Category A Retirees, those employees hired before January 1, 1993, could choose to retire between April 2005 and May 1, 2006, and receive the same benefits available under the 2000 HIA. *Id.* at 751.

14.    On February 26, 2009, following the expiration of the 2005 HIA by its own terms, BorgWarner DTP, the UAW, and Local 287 executed a Plant Shutdown Agreement, permanently closing the Muncie plant and terminating the parties' CBA and HIA on April 24, 2009. *Id.* at 752. Echoing the 1990 ACME contract, the parties agreed:

> The Company and the Union have a dispute with respect to the nature of the Company's obligation to provide post-retirement health care benefits to employees who retired prior to February 23, 2009 and their dependents. Nothing in this Plant Shutdown Agreement affects the parties' rights or positions with regard to that dispute.

*Id.* (quoting R. 96-17, Defs.' Mot. Ex. 11, Plant Shutdown Agreement, art. 9, § B(2)).

15.    On May 1, 2009, BorgWarner modified the health benefits of persons who retired after October 27, 1989—the effective date of the 1989 HIA—to mirror benefits provided to salaried employees. *Id.* at 752. In response, Plaintiffs brought this suit claiming that these changes were unlawful because retirees were entitled to lifetime vested health benefits under the CBAs and HIAs.

7

## PROCEDURAL HISTORY AND DECISION

Following discovery and the parties' submission of cross-motions for summary judgment, this Court issued a decision on February 27, 2014 addressing the issue of whether the retiree health benefits were vested as a matter of law.[3]  The Court acknowledged several "indicia" in the agreements that weighed against vested rights.  *Sloan*, 1 F. Supp. 3d at 775.  First, the Court cited the termination provision in the HIA—unchanged from 1989 through 2009—"specifically refer[ring] to retiree benefits," indicating that the obligation to provide these benefits ceased when the HIA expired.  *Id*.  Second, the Court noted the ROR language in the 1989 HIA—also unchanged through 2009—allowing BorgWarner to "'modify, amend, suspend or terminate the Plan or the Group [Plan] Policies.'"  *Id*. at 749, 764, 775.  Third, the Court acknowledged the "'agreement to disagree'" language contained in the 1990 ACME which set forth "'the union's position that current retirees have lifetime vested benefits'" and BorgWarner's contrary position that "'current retirees do not have lifetime vested benefits.'"  *Id.* at 750, 763, 776.

On the other side of the ledger, the Court relied on "indicia recognized by the Sixth Circuit as indicative of an intent to vest"—"(1) tying of pension and

---

[3]  After consulting the parties, the Court decided to address the vesting issues first, and to address later, if necessary, whether the changes implemented by BorgWarner meet the standards set forth in *Reese v. CNH America LLC*, 574 F. 3d 315 (6th Cir. 2009) ("*Reese I*") and *Reese v. CNH America LLC*, 694 F. 3d 681 (6th Cir. 2012) ("*Reese II*").  *See* Part II below.

healthcare eligibility; (2) specific durational language as to certain non-retirees; (3) negotiation of less favorable benefits for future retirees while leaving existing retirees's benefits unchanged." *Id*. at 775.

Weighing all these indicia, the Court determined that summary judgment was inappropriate for either side, and ordered that the case proceed to trial.

The Court subsequently stayed the case pending the Supreme Court's decision in *Tackett*, accurately predicting that the Supreme Court's decision "will likely require this Court to revisit its summary judgment ruling and may require a different analysis that could affect the ultimate resolution of this case." (R. 134, Order 2). In the aftermath of the *Tackett* decision, the Court ordered supplemental briefing to address its impact on the Court's prior ruling. (R. 139).

Following this briefing, the Court issued an order on August 7, 2015 vacating its earlier decision. (R. 145, Order). The Court noted that "[w]ithout question," it "rel[ied] on [*Yard-Man*] and its progeny" in its earlier decision. *Id*. at 1-2. Although Plaintiffs argued that "*Tackett* has no impact on this Court's summary judgment ruling," the Court rejected that position as "simply untenable." *Id*. at 1, 2. The Court noted that the "mandate of *Yard-Man*, reinforced for years in its progeny, [required] that courts must place an interpretive 'thumb on the scale' in favor of vesting and grant retirees the benefit of multiple 'inferences' in favor of lifetime vesting." *Id*. at 2. *Tackett*, however, "undeniably has changed . . . the

9

legal landscape on the issue of lifetime vesting of retiree healthcare benefits in this Circuit," and "require[s] the Court to revisit in earnest its summary judgment ruling." *Id.* at 1, 2. The Court instructed the parties, if they chose to move for summary judgment, "to submit entirely new summary judgment briefs, responses and replies, adapting their arguments to the mandate of *Tackett*." *Id.* at 3.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once BorgWarner has demonstrated that no genuine issues of material fact are in dispute, "the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial." *Golden v. Kelsey-Hayes Co.*, 954 F. Supp. 1173, 1182 (E.D. Mich. 1997); *accord Matsushita Elec. Indus v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (same).

Even before *Tackett*, the law was settled that retirees have the burden of proving entitlement to vested welfare benefits. *See, e.g.*, *Sloan*, 1 F. Supp. 3d at 755; *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 656 (6th Cir. 1996). Summary judgment against Plaintiffs is required if they cannot "make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

10

## ARGUMENT

**I.   THE SUPREME COURT'S DECISION REQUIRES ENTRY OF SUMMARY JUDGMENT FOR DEFENDANTS.**

At the end of its detailed and exhaustive opinion denying the cross motions for summary judgment on vesting, this Court summarized its reasoning:

> In summary, several of the indicia recognized by the Sixth Circuit as indicative of an intent to vest are present here, i.e.[,] (1) tying of pension and healthcare eligibility, (2) specific durational language as to certain non-retirees, (3) negotiation of less favorable benefits for future retirees while leaving existing retirees'[] benefits unchanged. However, there are also indicia of an intent to not vest.  First, the termination provisions of the HIA specifically refer to retiree benefits, i.e.[,] section 2(M)(2)(e), and each of the Exhibits of the HIA, many of which address specifically retiree healthcare benefits, incorporate this same termination provision. . . . Further, despite Plaintiffs' protestation that the language of the [Reservation of Rights] was not negotiated, the ROR in this case appears in the HIA, as part of the formally executed agreement and before the final signature page. . . . Finally, the Court concludes that a reading of the plain language of the 1990 ACME "agreement to disagree" is not dispositive of either side's claim in this fight.

*Sloan*, 1 F. Supp. 3d at 775-76.  Weighing the inferences then-mandated by *Yard-Man* and its progeny against the explicit contractual provisions cited by BorgWarner, the Court held that summary judgment was not appropriate for either side.

*Tackett* changed all this.  In its unanimous opinion,[4] the Supreme Court repudiated the rules of contract construction that had grown out of the *Yard-Man* decision.  The Court reviewed *Yard-Man's* rulings that provisions for terminating active employees' coverage and the absence of provisions for terminating retirees' coverage suggested vesting, that a promise deemed applicable to some but not all retirees was "illusory," and that the "context" of retiree health benefits made them "'status' benefits" which were unlikely to be left to future negotiations.  135 S. Ct. at 934.  The Supreme Court also discussed the additional rules of construction that evolved after *Yard-Man*, including holdings that a general durational clause "'*says nothing*'" about the duration of retiree benefits, and that provisions tying eligibility for retiree health benefits to pension benefits indicate that retiree health benefits are vested.  *Id.* at 934-35 (quoting *Noe v. PolyOne Corp.*, 520 F.3d 548, 555 (6th Cir. 2008)).

---

[4] All nine justices joined the Opinion of the Court.  Justice Ginsburg expressly joined the Opinion and concurred; she did not merely "concur in the result."  A concurrence that joins an opinion of the Court carries no precedential weight and to the extent that it departs from the majority, the majority's opinion governs.  *See, e.g.*, *Int'l Union v. Winters*, 385 F.3d 1003, 1011-12 (6th Cir. 2004) (refusing to apply principles in concurring opinion, the author of which concurred in the majority opinion).  When "an individual justice's vote is not needed to form a majority, the meaning of a majority opinion is to be found within the opinion itself because the gloss that an individual [j]ustice chooses to place upon it is not authoritative."  *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 310 (3d Cir. 2013) (en banc) (internal quotation marks omitted).

Following this review, the Court repeatedly made clear that it rejected "the inferences applied in *Yard-Man* and its progeny," *id.* at 935, as "inconsistent with ordinary principles of contract law," *id*. at 937.   In place of these incorrect *Yard-Man* inferences, the Court set forth rules of construction to govern vesting determinations and remanded for application of those "correct legal principles." *Id.*  Without question, *Tackett* "change[d] . . . the legal landscape on the issue of lifetime vesting of retiree healthcare benefits in this Circuit."  (R. 145, Order 2). The Supreme Court addressed and rejected each of the "indicia recognized by the Sixth Circuit as indicative of an intent to vest" cited by this Court in its February 27, 2014 decision.  In contrast, the "indicia of an intent to not vest" discussed by this Court continue to apply,  *Sloan*, 1 F. Supp. 3d at 775, and are enhanced by the "correct legal principles" set forth in the Supreme Court's decision.  135 S. Ct. at 937.  In short, *Tackett* removed all weight on the "vesting" side of the scale, and materially increased the weight on the "no vesting" side of the scale.  Summary judgment for Defendants on the vesting issue is now appropriate.

### A.    The CBAs and HIAs Contain No Language, Much Less Clear Language, Necessary To Vest Benefits.

In *Tackett*, the Supreme Court noted that *Yard-Man* required proof of a "clear manifestation of intent" to *confer* retiree health benefits, but did *not* require such a showing to establish the lifetime *duration* of those benefits.  135 S. Ct. at 936-37.  It also contrasted the *Yard-Man* line of cases with *Sprague v. General*

13

*Motors Corp.*, which held that the "intent to vest must be found in the plan documents and must be stated *in clear and express language*."  *See id.*at 937 (quoting 133 F.3d 388, 400 (6th Cir. 1998) (emphasis added)).  Although *Sprague* itself did not involve a CBA, just three sentences later the *Tackett* Court confirmed that "'a *collective-bargaining* agreement [may] provid[e] in *explicit terms* that certain benefits continue after the agreement's expiration.'"  *Id.* (quoting *Litton Fin. Printing Div., A Div. of Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 207 (1991) (modifications in original; emphasis added)).

This passage confirms and builds upon the other principles of construction set forth by the *Tackett* Court.  CBAs, the Court reminded, must be interpreted "according to ordinary principles of contract law, at least *when those principles are not inconsistent with federal labor policy*."  135 S. Ct. at 933 (emphasis added). Congress made a decision in ERISA that welfare benefits like those at issue here will not vest in the absence of an agreement, and this federal labor policy must be respected in construing labor contracts.  *Id.* at 936.  It is also a "traditional principle that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.'"  *Id.* at 937.  Further, "[a] court[] should not construe ambiguous writings to create lifetime promises," *id.* at 936, and "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life," *id.* at 937.  These

14

inter-related principles—cessation of benefits in the ordinary course when the CBA expires, rejection of both *silence* and *ambiguity* as a basis for lifetime benefits, and the requirement of a "clear manifestation of intent" to vest expressed in "clear and express language"—mean that Plaintiffs must point to explicit language to prove vesting.  This principle of contract construction makes common sense.  If the parties truly agree that a benefit will last for life, then they should be clear about it.

On September 28, 2015, U.S. District Judge Patrick J. Duggan entered summary judgment for the employer in *Reese v. CNH Industrial N.V.*, No. 04-cv-70592, 2015 WL 5679827 (E.D. Mich. Sept. 28, 2015).  Following *Tackett*, Judge Duggan wrote that "for a court to conclude that the parties intended to confer lifetime benefits for retirees, it must find both that the parties intended to confer retiree benefits, as well as a clear manifestation of intent from the contract language that they intended to confer them for life; courts may not infer that the parties intended to confer lifetime benefits based simply on the fact that retiree benefits were conferred."  *Id.* at *6.  He continued:  "Regardless of whether *Tackett* requires 'clear and express' language to show an intent to confer lifetime benefits, *the Court believes, at a minimum, that a court must find a clear manifestation of intent, evinced in the language of the contract*, before concluding that the parties intended to confer lifetime benefits."  *Id.* at *10 (emphasis added).  Finding no

15

such clear manifestation of intent in the CBA, Judge Duggan entered summary

judgment for CNH Industrial.[5]

　　　As this Court pointed out, "Plaintiffs have not produced a document

generated in connection with the 1989 CBA or HIA, or any subsequent iteration

thereof, where such an explicit promise [of lifetime vested benefits] was made."

*Sloan*, 1 F. Supp. 3d at 774.  Under *Tackett*, that absence, standing alone, defeats

Plaintiffs' claims for vested benefits.

### B.　　Multiple Contractual Provisions Preclude Vesting.

　　　Moreover, the agreements contain several provisions that are fundamentally

inconsistent with vested benefits.  *First*, as this Court correctly recognized, the

---

[5] Days earlier, U.S. District Judge George Caram Steeh granted plaintiffs' motion
for summary judgment in *International Union*, *UAW v. Kelsey-Hayes Co.*,
concluding that "the parties' intent [to confer lifetime benefits] was clearly
manifested in the language of the 1998 CBA and the Plant Closing Agreement,"
No. 11-cv-14434, 2015 WL 5460631, at *8 (E.D. Mich. Sept. 17, 2015).  Although
reciting certain rules of construction set forth in *Tackett*, the *Kelsey-Hayes* decision
does not elucidate how its decision is consistent with those rules.  In particular the
court relied on language in the CBA that the benefits of a person retiring "shall be
continued" as indicating vesting, *id.* at *7, but did not reconcile this ruling with
*Tackett's* rejection of "will continue to provide" as evidence of vesting.  *Tackett*,
135 S. Ct. at 934 (quoting *Policy v. Powell Pressed Steel Co.*, 770 F.2d 609, 615
(6th Cir. 1985)); *id.* at 935 (rejecting "the inferences applied in *Yard-Man* and its
progeny").  The court also noted that "it would be illogical" for the Closing
Agreement  "to provide retirees health care benefits since some employees only
became eligible for such benefits by retiring at the plant closing," 2015 WL
5460631 at *7.  But the Court failed to reconcile this ruling with *Tackett's* rejection
of *Yard-Man's* reasoning that granting benefits to some retirees but not all was
"illusory" for any retirees that did not benefit.  *Tackett*, 135 S. Ct. at 936 ("If [a
promise] benefits some class of retirees, then it may serve as consideration for the
union's promises.").

HIAs here contain a provision that imposes specific durational limits on retiree health benefits. *Sloan*, 1 F. Supp. 3d at 749; (R. 96-1, Defs.' Mot. Ex. 1., 1989 HIA, App. A, Ex. A, § 2(M)(2)) ("The coverages provided under this Exhibit A terminate on the date . . . the Agreement is terminated."). Invoking "the interpretive principles applied in this Circuit," however, this Court ruled that "specific limitations on benefits for spouses and other non-retired employees, *in the absence of a finding of express anti-vesting contractual language*, suggest an inference of vesting of retiree health care benefits." *Sloan*, 1 F. Supp. 3d at 768 (emphasis added). *Tackett* rejected the suggestion that "express anti-vesting language" is required to *defeat* vesting, and instead required just the opposite— "clear and express language" to *prove* vesting. [6]

Moreover, *Tackett* explicitly considered and rejected *Yard-Man*'s inference that termination clauses for spouses and non-retirees suggest vested benefits for retirees. 135 S. Ct. at 933, 934. Indeed, *specific* termination clauses for certain groups serve the purpose of removing those groups from the *general* termination clauses. If the retirees are not subject to a specific termination clause, the logical conclusion is that they remain subject to the general clause, *not* that their benefits

---

[6] *See Sloan*, 1 F. Supp. 3d at 756 ("express, unambiguous contractual language disclaiming an intent to vest"; "explicit contractual terms cutting off benefits"); *id.* at 765-66 ("express anti-vesting contractual language").

last forever.  *See id*. at 937 (traditional principles that contractual obligations cease when the contract ends).

The CBAs and HIAs also had general durational clauses.  *Sloan*, 1 F. Supp. 3d at 749-52 (describing the contractually specified lengths of the 1989, 1990, 1992, 1995, 1998, 2000, and 2005 agreements).[7]  Under *Tackett*, these *general* durational clauses also preclude vesting.  The Supreme Court addressed—and rejected—decisions "requiring a contract to include a specific durational clause . . . to prevent vesting."  135 S. Ct. at 936.  The Court expressly rejected the *Yard-Man* principle refusing to recognize general durational clauses, explaining that the principle "distort[s] the text of the agreement and conflict[s] with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties."  *Id.*  Thus, the specific *and* general durational clauses undermine Plaintiffs' vesting claim.

*Second*, the Reservation of Rights language allowing BorgWarner to "modify, amend, suspend or terminate the Plan or the Group [Plan] Policies," *Sloan*, 1 F. Supp. 3d at 764, 775; (R. 96-1, Ex. 1, 1989 HIA, App. A, Ex. A, at p. 121), also precludes Plaintiffs' claim for vested benefits.  As noted by this Court,

---

[7]  *See, e.g.*, 2005 CBA (R. 97-13, Defs.' Mot. Ex. 15, Ex. 5, art. 15, § 1 ("This agreement shall remain in full force and effect until April 24, 2009 and thereafter from year to year, unless either party shall give notice in writing at least sixty (60) days in advance of April 24, 2009, or any anniversary thereafter of its desire to terminate the Agreement.")).

18

this language was in the HIA as "part of the formally executed agreement," "was reviewed and not objected to by the Union prior to the formal execution of the HIA in which it appears," and "could be deemed sufficient to have put the Union on notice that if it believed its benefits to be vested, it ought to have registered a significant protest." *Id.* at 775.  Citing the Sixth Circuit's decision in *Witmer v. Acument Global Techs., Inc.*, 694 F.3d 774, 777 (6th Cir. 2012), that a similar ROR provision defeated vesting, this Court recognized that "an important distinction must be maintained between a decision to continue health care benefits beyond the life of an existing agreement and a promise to provide those benefits for a lifetime, without change." *Sloan*, 1 F. Supp. 3d at 762.[8]  Nevertheless, the Court found an ambiguity in the ROR regarding "whether this ROR constitutes an 'unqualified reservation-of-rights' made 'without regard for existing or future CBAs.'" *Id.* at 769.  Under *Tackett,* however, it is the retirees' burden to show a right to lifetime benefits, not the employer's burden to show an unqualified right to terminate the benefits.

*Third*, the "agreement to disagree" language defeats vesting.  The 1990 ACME stated the Union's belief that retiree health benefits were vested and BorgWarner's contrary "'position that current retirees do not have lifetime vested

---

[8]  The Court also recognized that "future oriented promises of benefits," such as the ten-year schedule of deductibles and stop losses that the parties agreed to in 1992, are "not inherently inconsistent with reserving the right to retract that promise as *Witmer* demonstrates." *Sloan*, 1 F. Supp. 3d at 771.

benefits.'" *Id.* at 750; (R. 95, Defs. Mot. SUMF ¶ 6). The parties reiterated their

disagreement two decades later in the 2009 Plant Shutdown Agreement. *Id.* at 752;

(R. 95, Defs. Mot. SUMF ¶ 9, "'The Company and the Union have a dispute with

respect to the nature of the Company's obligation to provide post-retirement health

care benefits to employees who retired prior to February 23, 2009.'"). The Court

recognized that this provision "unambiguously utilized 'language that is

incompatible with a promise to create vested, unchangeable benefits.'" *Sloan*, 1 F.

Supp. 3d at 775 (quoting *Witmer*, 694 F.3d at 776). Against the background of

Sixth Circuit law requiring "express, unambiguous contractual language

disclaiming an intent to vest" to defeat vesting, *id.* at 756, this Court deemed the

provision ambiguous, *id*. at 775. Under *Tackett*, however, all inferences favoring

vesting are stripped away, and this language explicitly disavowing any agreement

on vesting underscores that the UAW and BorgWarner *never agreed* to vest retiree

health benefits, even if the UAW insisted on vesting.[9]

---

[9] Notably, the 1998 and 2000 HIAs reduced the health benefits of persons who had
already retired without consent of those retirees. These reductions included
"increase[d] prescription drug costs for existing retirees who were participating in
the network plan" in 1998, and the extension of an "annual five-percent increase of
deductibles and stop losses" in 2000. *Sloan*, 1 F. Supp. 3d at 764. Although
benefits  were improved in certain respects in these subsequent agreements, all the
changes—reductions and enhancements—confirm that the benefits were not vested
and unchangeable, but subject to continued negotiation.

20

Simply put, the express contractual language of the agreements defeats any claim of vesting based on the rules of construction set forth in *Tackett*. [10]

### C. The "Correct Legal Principles" Set Forth In *Tackett* Further Undermine Vesting.

When this Court denied Defendants' motion for summary judgment, it weighed certain "indicia recognized by the Sixth Circuit as indicative of an intent to vest" against the undisputed evidence negating vesting. *Sloan*, 1 F. Supp. 3d at 775. The Supreme Court unequivocally rejected those indicia, and eliminated all inferences favoring vesting. *Tackett*, 135 S. Ct. at 932, 937. Although Plaintiffs argued that the "*Yard-Man* inference[s] were simply not relevant to this decision," (R. 144, Pls.' Resp. Br. 10), the Court correctly dismissed that argument as "simply untenable," citing to the many "[e]xamples of the Court's references to and applications of the *Yard-Man* principles [that] abound in its opinion." (R. 145, Order 2).

Indeed, the Supreme Court addressed each *Yard-Man* indicia cited by the Court and rejected each one. First, this Court's prior decision cited to the "tying of

---

[10] There is no need to consider extrinsic evidence in the aftermath of *Tackett* because the agreements contain express durational limits, the ROR language, and the "agreement to disagree" provision, and contain no other countervailing indication that the health benefits are intended to vest. However, to the extent that the Court considers this evidence, it is noteworthy that at least some employees received an insurance checklist when they retired expressly stating "that '[c]urrently the premiums' for [their] health care benefits were being paid by the Company but that [their] health care '[b]enefits [were] subject to future contract negotiations.'" *Sloan*, 1 F. Supp. 3d at 774 (citing R. 109-7, Defs.' Resp. Ex. 32).

21

pension and healthcare eligibility," *Sloan*, 1 F. Supp. 3d at 775, as "indicative of an intent to vest" because the relevant language in the HIA was "largely indistinguishable from that found by the Sixth Circuit in *Golden*, *Yolton*, *Noe* and other cases to indicate an intent to vest health benefits." *Id.* at 766. The language at issue states: "Presently retired employees and an employee who retires under the Retirement Income Program Agreement on or after December 1, 1989, . . . *shall be entitled* to" the benefits at issue. *Id.* at 748 (quoting R. 96-1, 1989 HIA art. 8, § 1(A)).[11] In *Tackett*, however, the Supreme Court twice addressed, and twice rejected, the notion that contractual language "tying" eligibility for health benefits to eligibility for pension benefits provided a basis for vesting. 135 S. Ct. at 935, 937. It did so first in its review of general rules of contract construction that have grown out of *Yard-Man*. *Id.* at 935. It did so again in the final section of the Opinion when it specifically rejected the Sixth Circuit's reliance on the tying analysis in *Tackett*. *Id.* at 937. (*See* R. 145, Order 2, noting the "multiple 'inferences' in favor of lifetime vesting" that no longer apply).

---

[11]   Notably, this language speaks to "entitlement" (*i.e.*, eligibility), but says nothing about duration. Thus, even if language stating that "retirees will receive health benefits *for as long* as they receive a pension" were sufficient, the language at issue here falls well short. Justice Ginsburg's suggestion that the tying provision, as well as the "survivor benefits" clause, may have some relevance to the vesting analysis, *see* 135 S. Ct. at 938 (Ginsburg, J., concurring), is inconsistent with the opinion of the Court, and lacks precedential weight. *See supra* at note 4.

Second, citing *Yard-Man* and its progeny for support, this Court noted that the "specific durational language as to certain non-retirees," and the absence of these same specific limitations for retirees, supported an inference of vesting as to retiree health benefits. *Sloan*, 1 F. Supp. 3d at 759, 775; *see also id.* at 768.  The Supreme Court addressed and rejected the inference of vesting from benefit termination provisions applicable to laid-off employees and surviving spouses, but not applicable to retirees. *Tackett*, 135 S. Ct. at 935, 937 (stating that the Court rejected *all* "inferences applied in *Yard-Man* and its progeny" as well as all rules of "contract interpretation" in that line of Sixth Circuit decisions).  As shown (pp. 17-18), the lack of a specific durational limit for retirees leaves them subject to the general durational clause.

Third, this Court cited to the "negotiation of less favorable benefits for future retirees while leaving existing retirees'[] benefits unchanged" as the final indicia of an intent to vest, *Sloan*, 1 F. Supp. 3d at 775.  The treatment of future retirees says nothing about whether health benefits for existing retirees extend beyond the scope of the CBAs and HIAs.  Indeed, as this Court recognized, *id.* at 762 (citing *Witmer v. Acument Global Techs., Inc.*, No. 08-cv-12795, 2011 WL 2111899, at *6 (E.D. Mich., May 26, 2011)), an employer's failure to change or terminate current benefits does not prove vesting.

## II.  BORGWARNER DTP'S CHANGES TO THE RETIREE HEALTH CARE BENEFITS ARE OTHERWISE PERMISSIBLE.

As set forth in BorgWarner's previous motion for summary judgment, (R. 95, Defs. Mot. SUMF ¶¶ 16-19), the undisputed evidence demonstrates that the changes made by BorgWarner DTP were made in full compliance with the standards in *Reese v. CNH America LLC*, 574 F.3d 315, 324-27 (6th Cir. 2009) ("*Reese I*"), as further explained in *Reese v. CNH America LLC*, 694 F.3d 681 (6th Cir. 2012) ("*Reese II*").  Indeed, Plaintiffs' benefits following the 2009 changes were "'reasonably commensurate'" with the pre-change benefits, the changes were "'reasonable in light of changes in health care,'" and the changed benefits are "roughly consistent with the kinds of benefits provided to current employees." *Reese II*, 694 F.3d at 685; *Reese I*, 574 F.3d at 324-27.  The Court's opinion, however, did "not address this secondary issue at this stage of the proceedings." *Sloan*, 1 F. Supp. 3d at 746 n.1.  If the Court decides that BorgWarner is not entitled to summary judgment on the issue of vesting, BorgWarner requests summary judgment on this alternative basis, or, at least, allow for additional briefing on these issues.

## III.  AT A MINIMUM, PLAINTIFFS CANNOT RECOVER CLASS-WIDE DAMAGES IN THIS CLASS ACTION.

BorgWarner also demonstrated why it is entitled to partial summary judgment on Plaintiffs' claims for class-wide money damages.  (R. 95, Defs. Mot.

24

SUMF ¶ 19).  Under the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, class-wide damages are unavailable to this plaintiff class, which was certified under Federal Rule of Civil Procedure 23(b)(1) and (b)(2) and *not* Rule 23(b)(3).  131 S. Ct. 2541, 2557 (2011).  If its motion is not otherwise granted, BorgWarner requests judgment on this issue or the opportunity for further briefing.

## CONCLUSION

For the reasons set forth above, BorgWarner urges the Court to find Plaintiffs' retiree health benefits are not vested and to enter summary judgment for BorgWarner.

Respectfully Submitted,

/s Bobby R. Burchfield

| | |
|---|---|
| Elisa Angeli Palizzi (P52088) | Bobby R. Burchfield |
| MILLER, CANFIELD, PADDOCK | *Counsel of Record* |
|   AND STONE, P.L.C. | Nikesh Jindal |
| 150 West Jefferson, Suite 2500 | KING & SPALDING LLP |
| Detroit, Michigan 48226 | 1700 Pennsylvania Ave., NW |
| Telephone :  (313) 496-7635 | Washington, DC  20006 |
| Facsimile:  (313) 963-6420 | Telephone:  (202) 737-0500 |
| epalizzi@millercanfield.com | Facsimile:  (202) 626-3737 |
| | bburchfield@kslaw.com |
| | njindal@kslaw.com |

*Counsel for BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

/s Bobby R. Burchfield
Bobby R. Burchfield