UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLARD L. SLOAN, EUGENE J.
WINNINGHAM, and JAMES L. KELLEY,
on behalf of themselves and a similarly
situated class,

                Plaintiffs,

v.

BORGWARNER, INC., BORGWARNER
FLEXIBLE BENEFITS PLANS and
BORGWARNER DIVERSIFIED
TRANSMISSION PRODUCTS, INC.,

                Defendants.

Case No. 09-cv-10918
Hon. Paul D. Borman
Magistrate Mona K. Majzoub

**Class Action**

_____

David R. Radtke (P47016)
Roger J. McClow (P27170)
Patrick J. Rorai (P65091)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
400 Galleria Officentre, Suite 117
Southfield, MI   48034
248-354-9650; fax 248-354-9656
dradtke@michworklaw.com
rmcclow@michworklaw.com
prorai@michworklaw.com

*Attorneys for Plaintiffs*

Bobby R. Burchfield
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, D.C.   20006
202-626-5524; fax 202-626-3737
bburchfield@kslaw.com

Elisa Angeli Palizzi (P52088)
MILLER, CANFIELD, PADDOCK
& STONE, P.L.C.
150 W. Jefferson Avenue, Suite 2500
Detroit, MI 48226
313-496-7635; fax 313-963-6420
angeli@millercanfield.com

*Attorneys for Defendants*

_____

## PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

CONCISE STATEMENT OF ISSUES PRESENTED .............................................. v

I.    INTRODUCTION ........................................................................ 1

II.   LEGAL ANALYSIS ...................................................................... 2

    A.    The *Tackett* Decision .......................................................... 2

    B.    Indicia of Intent to Vest Retiree Health Care
          Benefits in the HIA .......................................................... 8

        1.  The Tie Between Retiree Health Care Benefits and
             Receipt of a Pension .................................................. 9

        2.  The Durational Limits on Employee Benefits in
             Contrast to Retiree Health Care Benefits is Evidence
             of Vesting ............................................................... 11

        3.  The Negotiation of Explicitly Non-Vested Retiree
             Health Care Benefits for Category B Retirees is
             Evidence of Vested Benefits for Category A Retirees ............. 12

    C.    The General Duration Clause in the HIAs Is Not
          Evidence of a Lack of Vesting .............................................. 14

    D.    The Decision in *Tackett* Does Not Change the Court's
          Conclusion That There is a Genuine Issue of Material Fact ............. 15

    E.    The Issues Raised by BorgWarner Do Not Require
          Summary Judgment ........................................................ 16

III.    THE ISSUE OF WHETHER THE CHANGES BORGWARNER
        MADE TO CLASS MEMBERS' RETIREE HEALTH CARE
        BENEFITS HAS BEEN HELD IN ABEYANCE BY THE
        COURT ....................................................................................................16

IV.     THE INCIDENTAL DAMAGES SOUGHT BY PLAINTIFFS
        ARE RECOVERABLE ON A CLASS-WIDE BASIS .................................17

V.      CONCLUSION ...........................................................................................19

## TABLE OF AUTHORITIES

*Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir. 1998) ...........................18

*Bender v. Newell Window Furnishings, Inc.,* 681 F.3d 253 (6th Cir. 2012) ...........13

*Brooklyn Life Ins. Co. of New York v. Dutcher,* 95 U.S. 269 (1877) .......................3

*Cole v. Arvin Meritor, Inc.,* 515 F.Supp.2d 791 (E.D. Mich. 2006).......................15

*Jensen v. S.I.P.C.O., Inc.,* 38 F.3d 945 (8th Cir. 1994) ..........................................14

*Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190 (1991)..........................................6

*M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926 (2015) ....................................2

*Moore v. Menasha Corp.,* 690 F.3d 444 (6th Cir. 2012)........................................11

*Noe v. Poly One Corp.,* 520 F.3d 548 (6th Cir. 2008)............................................12

*Nolde Brothers, Inc. v. Bakery Workers,* 430 U.S. 243 (1977) ................................6

*Reese v. CNH Industrial N.V.,* 2015 WL 6865964
(E.D. Mich. 11/09/2015) ...........................................................................................7

*Sprague v. General Motors Corp.,* 133 F.3d 388 (6th Cir. 1998) ...........................5

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*,
559 U.S. 662 (2010)..................................................................................................3

*UAW v. Kelsey-Hayes,* 2015 U.S. Dist. LEXIS 124411
(E.D. Mich. September 17, 2015)..............................................................................7

*UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983) ..........................................2

*Underwood v. City of Chicago,* 779 F.3d 461 (7th Cir. 2015) ..................................4

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) .........................................17

*Yolton v. El Paso Tennessee Pipeline Co.,* 435 F.3d 571 (6th Cir. 2006) ...............12

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.    Whether this Court should reverse its prior decision denying Defendants' Motion for Summary Judgment because of the Supreme Court's decision in *M&G Polymers, USA, LLC v. Tackett,* 135 S.Ct. 96 (2015).

       Plaintiffs answer: "No."

## I.     __INTRODUCTION__

Defendants' Motion for Summary Judgment is based an over-broad misreading of the impact of the Supreme Court's decision in *M&G Polymers USA, LLC v. Tackett.* In *Tackett*, the Supreme Court held that the question of whether retiree health care benefits are vested under a collective bargaining agreement must be determined applying ordinary principles of contract law, in accordance with the parties' intentions and based on affirmative evidentiary support, rather than unproven suppositions about likely behavior in collective bargaining. Defendants claim that in order for Plaintiffs to prevail they must demonstrate the collectively bargained Health Insurance Agreements (HIAs) show by clear and express language a vested right to retiree health care benefits. This contention is contrary to the teachings of *Tackett* and has been rejected by other courts and judges in analyzing its meaning.

This Court previously found that the language in the HIAs and the extrinsic evidence is ambiguous, and therefore, a trial on the merits is necessary to ascertain the whether the benefits are vested. That holding is unchanged by *Tackett*. Defendants' Motion should be denied and this case set for trial.

## II.   LEGAL ANALYSIS

### A.   The *Tackett* Decision

On February 27, 2014, this Court issued an Opinion and Order denying the parties' cross motions for summary judgment on the issue of vesting.   The Court found there was an intractable ambiguity in the contract language in the HIAs negotiated by BorgWarner and UAW Local 287 between 1989 and 2009. Given the ambiguity of the relevant HIA language, the Court looked to the extrinsic evidence offered by the parties and concluded genuine issues of material fact existed as to the parties' intent to vest retiree health care benefits.   As a result, the Court found that summary judgment was not appropriate for either party and the issue of whether Plaintiffs' health care benefits were vested must be decided at trial.

Subsequently, in *M&G Polymers USA, LLC v. Tackett,* 135 S.Ct. 926 (2015), the Supreme Court issued a decision rejecting the so-called *Yard-Man* inference set forth in *UAW v. Yard-Man, Inc.,* 716 F.2d 1476 (6th Cir. 1983).   Rather than relying upon an inference to determine whether retiree health care benefits were vested, the Court required the use of ordinary contract principles in ascertaining the intent of the parties as to the duration of retiree health care benefits.   135 S.Ct. at 935.

–2–

The Court stated at the outset of its decision in *Tackett* that "[i]n this endeavor, as with any other contract, the parties' intentions control."   *Id.* at 933; quoting from *Stolt-Nielsen S.A. v. Animal Feeds International Corp.*, 559 U.S. 662, 682 (2010).   The Court further instructed that the intent of the parties must be determined by record evidence.   *Id.* at 945.

The concurrence in *Tackett* stated:

> Under the 'cardinal principle' of contract interpretation, 'the intention of the parties, to be gathered from the whole instrument, must prevail.'   11 R.   Lord Williston on Contracts §30:2, p.   27 (4th Ed.   2012) ("Williston").   To determine what the contracting parties intended, a court must examine the entire agreement in light of relevant industry-specific customs, practices, usages, and terminology.   *Id.,* §30:14, at 55-58.   When the intent of the parties is unambiguously expressed in the contract, that expression controls, and the court's inquiry should proceed no further.   *Id.*, §30:6, at 98-104.   But when the contract is ambiguous, a court may consider extrinsic evidence to determine the intentions of the parties.   *Id.*, §30:7, at 16-124.

135 S.Ct. at 937-38 (Ginsburg, J., concurring); see also *Brooklyn Life Ins. Co. of New York v. Dutcher,* 95 U.S. 269, 273 (1877) ("there is no surer way to find out what the parties meant than to see what they have done.")

BorgWarner contends that in order for Plaintiffs to show that the retiree health care benefits are vested, clear and express language of vesting is required. This is incorrect.   In *Tackett,* the Court held that retiree health care benefits under CBAs must be determined using ordinary principles of contract law, in accordance

–3–

with the parties' intentions, based on "affirmative evidentiary support." *Id.* at 935.

As the concurring opinion stated, without disagreement from the majority, "[c]ontrary to M&G's assertion, [citation omitted] no rule requires 'clear and express' language in order to show that parties intended health-care benefits to vest." *Id.* at 938.[1]

The Court plainly contemplated the introduction of evidence to show the intention of the parties where contract language is not clear and unambiguous by authorizing the reliance on "known customs or usages in a particular industry to determine the meaning of a contract" as long as they are supported by evidence. *Id.* at 935.   Such evidence would be unnecessary if the Court's opinion required retiree claims of vesting to be shown by clear and express language. *Tackett* also allowed for the introduction of extrinsic evidence if the contract language is ambiguous.   *Id* at 938 (Ginsburg, J. concurring)

---

[1]  See also post-*Tackett* decision in *Underwood v. City of Chicago,* 779 F.3d 461 (7th Cir. 2015).

Moreover, there also would have been no reason for the Court to remand *Tackett* if the decision held that explicit language was required or held the general duration clauses always control.   The CBAs in *Tackett* had general duration clauses and an inexplicit term providing that retirees who receive a pension "will receive" company contributions toward health benefits.   *Id.* at 931-932.

When the Court in *Tackett* said that a court "should not construe ambiguous writings to create lifetime promises," and that if a contract "is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life," it meant only that if the contract is ambiguous or silent about duration ***and*** there is no evidence showing that the parties intended to create vested rights, a court should not put a thumb on the scales and infer vesting.   *Id.* at 936.   When the Court stated that "a clear manifestation of intent" is required "before conferring a benefit or obligation," it did not require clear ***language*** of vesting; only that there must be record evidence showing that the parties intended to confer that benefit. *Id.*

BorgWarner's claim that *Tackett's* citation of *Sprague v. General Motors Corp.,* 133 F.3d 388 (6th Cir. 1998) was an endorsement that the clear and express language rule in *Sprague* was now applicable in CBA cases is wrong.   Reading the Supreme Court's passage carefully, it is clear that all the Court actually stated about *Sprague* was that the "different treatment" of CBAs and non-collectively

bargained plans "underscores *Yard-Man's* deviation from ordinary contract law." 135 S.Ct. at 937.   Moreover, it would be inconsistent with the core themes of the *Tackett* opinion to conclude that the Court intended to require "clear and express" language in CBA cases -- otherwise there would be no need for the extensive discussion of the need for record evidence of the parties' intent and of industry customer and usage.   See also, *Reese,* Ex. 1 at p. 5.

Although it is generally true that contractual obligations cease, in the ordinary course upon termination of a CBA, it is equally true that the expiration of a contract does not release the parties from obligations that are fixed under the contract but have not been satisfied.   *Litton Financial Printing Div. v. NLRB,* 501 U.S. 190 (1991).   The *Tackett* Court acknowledged this axiom in stating the general principle "does not preclude the conclusion that the parties intended to vest lifetime benefits for retirees."   *Id.* at 937.

It is important to note that the *Tackett* Court did not change the holding in *Litton* or the decision that *Litton* is built on -- *Nolde Brothers, Inc. v. Bakery Workers,* 430 U.S. 243 (1977).   In *Nolde,* the Court ordered an employer to arbitrate claims for severance pay arising from a post-expiration plant closing, even though there was no explicit post-expiration obligation in the CBA. 430 U.S. at 252-53.

On November 9, 2015, Judge Duggan issued a decision in *Reese v. CNH Industrial N.V.,* 2015 WL 6865964 (E.D. Mich. 11/09/2015). (Ex.1) Judge Duggan's decision reconsidered his prior decision granting summary judgment for the defendant, and instead granted summary judgment for the plaintiffs. BorgWarner relies on Judge Duggan's original decision granting summary judgment for the defendant.   (Dkt. #147, pp. 15-16) Judge Duggan's order granting summary judgment for the plaintiffs in *Reese* found that *Tackett* did not create new rules for construing collective bargaining agreements, but simply rejected the *Yard-Man* inferences and reaffirmed that CBAs are to be interpreted according to the ordinary principles of contract law. (Ex. 1 at p. 3.)

Judge Duggan also found that the absence of clear and express language addressing retiree health care benefits "does not necessarily compel the conclusion that the parties lack the intent for those benefits to vest and that a "clear and express" requirement "strays from the ordinary principles that *Tackett* instructs courts to apply" to CBAs. Judge Duggan further stated that a CBA's obligations "may arise from its express or ***implied*** terms."   (Ex. 1 at pp. 4-5 (citations omitted); emphasis in the original). Judge Duggan also found that a CBA's general duration clauses do not "dictate automatically" that health care is not vested and the parties' intention is "determined by looking at the contract as a whole." See also, *International Union, UAW v. Kelsey-Hayes Company*, 2015 U.S. Dist. LEXIS

–7–

124411 (E.D. Mich. September 17, 2015). He explained that the pension agreement has a duration clause but "no one contends that the Company's obligation to provide pension benefits ceased upon the expiration of the agreement." (Ex. 1 at pp. 3, 8-9, 11 citations omitted)

The *Reese* decision also stated that "lack of a clear manifestation of the parties' intent" in a CBA does not "negate the possibility there was ambiguity regarding their intent" and the long-standing principles of contract interpretation instruct, "where a contract is ambiguous, extrinsic evidence may resolve that ambiguity." (Ex. 1 p. at 6 n. 1.) Ambiguity may be shown by reading "a contract as a whole." Also, CBA terms "tying eligibility for retiree health insurance benefits to eligibility for pension benefits" and "specific durational clauses for other benefits but not pension and retiree health insurance benefits" are evidence of vesting. (Ex. 1 at 7-10.) Finally, Judge Duggan found that courts may "rely on" the "elaboration of 'ordinary contract principles'" in the concurrence in *Tackett.* (Ex. 1 at 3-4 (citations omitted))

**B. Indicia of Intent to Vest Retiree Health Care Benefits in the HIA**

In denying Defendants' Motion for Summary Judgment, this Court found that the HIAs contained several indicia of an intent to vest. 1 F.Supp. 3d at 775. First, the receipt of retiree health care benefits was tied to the receipt of pension benefits -- which is a lifetime vested benefit. *Id.* Second, the HIAs contained a

number of provisions in which the parties agreed to specific durational limitations on health care benefits for non-retirees (such as in the case of active employees on leave and surviving spouses), but the HIAs contain no corresponding specific duration on retiree health care benefits. *Id.* at 767-68.   Third, the parties negotiated for less favorable benefits for future retirees while leaving existing retirees' benefits unchanged. *Id.* at 771, 775.

### 1.   The Tie Between Retiree Health Care Benefits and Receipt of a Pension.

BorgWarner's claims that the collectively bargained provision tying the receipt of retiree health care benefits to the receipt of pension benefits should simply be ignored in determining whether the retiree health care benefits are vested. (Dkt. #147 p. 22) This reading would render *Tackett's* instruction to interpret CBAs according to ordinary contract principles meaningless.   In the *Tackett* concurrence, Justice Ginsberg stated that:

> Because the retirees have a vested, lifetime right to a monthly pension . . . a provision stating that retirees 'will receive' health-care benefits if they are 'receiving a monthly pension' is relevant to this examination. . . ." So is a 'survivor benefits' clause instructing that if a retiree dies, her surviving spouse will 'continue to receive [the retiree's] health-care benefits . . . until death or remarriage.'

(135 S. Ct.. at 938)

In *Reese,* the district court analyzed the defendants' claim that *Tackett* rendered a tie between the receipt of retiree health care benefits to the receipt of pension benefits meaningless.   In rejecting the argument, the court stated:

> All that *Tackett* holds or suggests is that a court may not **infer** from such tying language that the parties intended retiree health care benefits to vest.   Such language does not lose all significance, however.   In other words, *Tackett* does not hold that courts must ignore language that under *Yard-Man* and its progeny inferred an intent to vest.   To the contrary, *Tackett* advises courts to apply 'ordinary principles of contract law [,]'.   135 S.Ct. at 933; and under those principles, 'the intention of the parties' is 'gathered from the **whole instrument** . . . .' *Id.* at 937. [Ginsburg, J., concurring] (emphasis added)

> When the relevant agreements were negotiated, the parties were aware that pension benefits vest for the life of the retiree.   See, e.g., *Shaw v.   Delta Airlines, Inc.,* 463 U.S. 85, 89 (1983) (citing 29 U.S.C. §§1051-1086) explaining that ERISA "imposes participation, funding, and vesting requirements on pension plans").   By tying eligibility for retiree health insurance benefits to eligibility for pension benefits, the parties may have been expressing their intent for health insurance benefits to survive for the same duration.   In other words, so long as an individual is eligible to receive a pension benefit, he or she continues to be eligible for retiree health insurance benefits promised in the agreements.

Ex. 1 at pp. 7-8.

The tie between the receipt of pension benefits and health care benefits is evidence of an intent to vest.   What would another purpose for tying the benefits together unless it related to the duration of retiree health care benefits?   If the

–10–

retiree health care benefits were to expire at the conclusion of the HIA, then there was no need to reference pension benefits. There also was no need for the parties to include a separate provision for retiree health care benefits in the HIA.   If retiree health care benefits, like active employee health care benefits, expired at the end of the HIA, the parties could have had a single health care provision for active employees and retirees.   They did not do so because the duration of retiree health care benefits, unlike active employee health care benefits, were intended to last beyond the duration of the HIAs.

### 2.   The Durational Limits on Employee Benefits in Contrast to Retiree Health Care Benefits is Evidence of Vesting.

There are also numerous provisions in the HIA with specific durational limits.   1 F.Supp. at 767-68   These provisions with specific durational clauses juxtaposed with the provisions regarding retiree health care benefits for Category A retirees also indicate and intent to vest.   In Article VIII of the HIAs, are benefits were granted to surviving spouses as long as they were eligible for a lifetime pension or until remarriage.   *Id.* at 767[2]   The Sixth Circuit consistently held that the inclusion of specific durational limitations in some provisions, but not others, suggests that benefits not so specifically limited were intended to survive the expiration of the contract. *Id.*   *Moore v. Menasha Corp.,* 690 F.3d 444, 458

---

[2] The Court found it would be an untenable construction of the HIA to find that the surviving spouses of retirees were entitled to lifetime benefits, but the retirees were not.   *Id.*

(6th Cir. 2012); *Noe v. Poly One Corp.,* 520 F.3d 548, 562-63 (6th Cir. 2008);

*Yolton v. El Paso Tennessee Pipeline Co.,* 435 F.3d 571, 581-82 (6th Cir. 2006);

*Reese*, Ex. 1 at pp. 7-10.   The recognition that specific durational limits for some

benefits and not retiree health care benefits is not a *Yard-Man* inference, but a tool

used for contract interpretation.   See Ex. 1 pp. 7-10.

> ### 3.   The Negotiation of Explicitly Non-Vested Retiree Health Care Benefits for Category B Retirees is Evidence of Vested Benefits for Category A Retirees.

The HIAs specifically set forth which benefits the retirees and surviving

spouses are entitled to receive upon retirement and the benefits which retirees are

***not*** entitled to receive upon retirement.

Beginning in the 1992 HIA, the parties divided retirees into Category A

retirees and Category B retirees. 1 F.Supp 3d at 750-51. Category A retirees were

further divided into three subgroups -- (1) pre-1993 retirees; (2) elective retirees;

and (3) post-March 11, 1995 retirees. *Id*. Each of these Category A subgroups were

entitled to specific benefits described in exhibits A, B, C, D, E, F and H of the

1992 (and 1995) HIA.   *Id.*

For Category B retirees, the parties specifically agreed that BorgWarner had

no liability for retiree health care expenses upon retirement. *Id.* at 750, 771. Similar

language for Category A retirees is not in the HIAs.   The specific language

declaring that Category B retirees had non-vested retiree health care benefits

juxtaposed with the guarantee that Category A retirees and surviving spouses were

entitled to retiree health care benefits described in the exhibits to the HIA as long as they were receiving a pension (or until remarriage for surviving spouses), is powerful evidence that Category A retirees have vested benefits. *Id.* at 771.

In the 1992 HIA, the parties also negotiated a provision that gave Category A retiree that retired between January 1, 1993 and March 11, 1995 the option of locking into the pre-PPO plan or locking into the PPO plan negotiated in 1992. This gave active employees a window period to continue in the pre-PPO plan up until March 11, 1995. *Id.* at 750-51.

In April 2005, the parties negotiated modifications and revisions to the 2000-2006 HIA. The 2005 HIA expired on April 30, 2009 and included a reduction in the level of health care benefits and monthly contributions for future retirees. *Id*. at 751. The parties negotiated a provision that hourly retirement eligible employees (who were hired before January 1, 1993) could retire in the 13 month window between April 2005 and May 1, 2006 with the same benefits that were in the 2000 HIA -- which included no retiree monthly contribution and the better benefit levels. *Id.*

In *Bender v. Newell Window Furnishings, Inc.,* 681 F.3d 253, 263 (6th Cir. 2012), in 1993, the union and the company negotiated an end to health insurance benefits for future retirees beginning in January 1994, but included a window period where active employees could retire before January 1, 1994 and have guaranteed vested health coverage. The Sixth Circuit found the window period

was evidence of vested retiree health care benefits.   *Id.* at 263.   See also *Jensen v. S.I.P.C.O., Inc.,* 38 F.3d 945, 951 (8th Cir. 1994).

### C.   The General Duration Clause in the HIAs Is Not Evidence of a Lack of Vesting.

BorgWarner argues that because the HIAs have general durational clauses, the *Tackett* decision requires a finding that the benefits are not vested. BorgWarner claims that a lack of a durational limit for retiree health care benefits leaves those benefits subject to the HIAs' general duration clause.

First, the premise of this argument is incorrect.   The HIAs have a durational clause for retiree health care benefits.   For retirees, it is co-existent with the receipt of pension benefits.   For surviving spouses, the duration is co-existent with the receipt of pension benefits or until remarriage.   These clauses directly relate to the duration of retiree health care benefits and trump the HIAs' general duration clause.

Second, all collectively bargained agreements have duration clauses. Looking solely at the duration clause in determining whether retiree health care benefits is a misreading of *Tackett.*   (See Ex. 1 pp. 3, 8-9, 11.) In *Tackett,* the Court stated the parties' intent is dispositive in contract interpretation questions. 135 S.Ct. at 933.   In order to determine the parties' intent, this Court must look at the entire instrument and not rely on a single provision while ignoring other provisions that show the parties' intent as it relates to retiree health care benefits. Once the Court determines the parties' intent, it must adhere to that intent. *Id.* at

937. (explaining that, while contractual obligations might cease upon the termination of the CBA, such a principle "does not preclude the conclusion that the parties intended to vest lifetime benefits for retirees.")

### D. The Decision in *Tackett* Does Not Change the Court's Conclusion That There Is a Genuine Issue of Material Fact.

Plaintiffs submitted additional evidence that the benefits were vested. This includes evidence that the annual deductibles and stop-loss limits negotiated in the 1992 and 1995 HIAs extended beyond the terms of those agreements which shows that the benefits negotiated for Category A retirees were going to continue to be in place even after the HIAs expired -- i.e. that the negotiated benefits were vested. See *Cole v. Arvin Meritor, Inc.,* 515 F.Supp.2d 791, 801 (E.D. Mich. 2006)

For Category A non-PPO retirees (pre-1993 retirees), prescription drug deductibles stayed the same until BorgWarner's unilateral changes on ***May 1, 2009***, while Category A PPO retirees (generally post-March 11, 1995 retirees) had their deductibles increased by the negotiated amounts on the dates agreed upon by the parties. (Ex. 2 pp. 3, 5-6, 12-15) In the 1998 HIA, the parties agreed to an improved drug plan for active employees and retirees, but there was no change in the prescription drug deductible for Category A non-PPO retirees. (Ex. 2, p. 3) This also shows the benefits were locked in and vested for Category A retirees based on their subgroup.

**E.      The Issues Raised by BorgWarner Do Not Require Summary
         Judgment.**

The issue related to whether the summary plan description was a separate
document from the HIA or was negotiated as part of the HIA was not an issue in
*Tackett.*    Therefore, this Court's earlier finding that there was an issue of material
fact as to the SPD's impact remains. 1 F.Supp.3d at 769    This Court also correctly
decided that the "agreement to disagree" in the 1990 ACME Agreement and the
Plant Closing Agreement was not dispositive on either side's claim. *Id.* at 775.
That remains the case after *Tackett.*    Finally, the termination provision in the
exhibits to the HIAs remains ambiguous and evidence presented at a trial is
necessary.    *Id.* at 766.

**III.    THE ISSUE OF WHETHER THE CHANGES BORGWARNER
         MADE TO CLASS MEMBERS' RETIREE HEALTH CARE
         BENEFITS HAS BEEN HELD IN ABEYANCE BY THE COURT.**

On August 23, 2013, this Court issued an Order that it would rule on the
issue of vesting prior to a ruling on whether the unilaterally implemented changes
to retiree health care benefits for Class Members was lawful if the benefits were
vested.    See Dkt. #123 Plaintiffs informed the Court back in 2012 that additional
discovery would be necessary on the issue of whether the retiree health care benefit
changes were "reasonably commensurate" or whether the holding in *Reese v. CNH
America LLC,* 574 F.3d 315 (6th Cir. 009) and *Reese v. CNH America LLC,* 694
F.3d 681 (6th Cir. 2012) were applicable in this case.    Pursuant to the Court's

August 23, 2013 Order, the only issue before this Court is whether the benefits are vested.

## IV. THE INCIDENTAL DAMAGES SOUGHT BY PLAINTIFFS ARE RECOVERABLE ON A CLASS-WIDE BASIS.

In 2009, Plaintiffs filed a Motion for Class Certification under Rules 23(b)(1) and (b)(2).  Defendants opposed Plaintiffs' attempt to certify the class under those rules based on Plaintiffs' request for monetary damages.  In the Opinion and Order granting Plaintiffs' Motion for Class Certification, the Court rejected Defendants' argument that the incidental monetary relief sought by Plaintiffs defeated certification under Rule 23(b)(1) and (b)(2).   (Dkt. #56, pp. 8-13)

Now, Defendants' claim that Plaintiffs cannot recover class-wide damages in this class action because of the holding in *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011).   Defendants' claim is wrong.   In *Dukes*, the plaintiffs sought a judgment against Wal-Mart for back pay, injunctive and declaratory relief and punitive damages on behalf of themselves and a nationwide class of 1.5 million female employees because of Wal-Mart's alleged discrimination against women in violation of Title VII of the Civil Rights Act of 1964. The Court held that the certification of the plaintiff class was not consistent with Rule 23(a) of the Federal Rules of Civil Procedure.   The Court also found that the employees' claims for back pay was improperly certified because where monetary relief was not

incidental to injunctive or declaratory relief, so Rule 23(b)(2) was not appropriate because the certification failed to comply with the Due Process Clause.   The Court explicitly stated it was not deciding whether there were any forms of "incidental" monetary relief that were consistent with the interpretation of Rule 23(b)(2). 131 S. Ct. at 2560.   The Court specifically cited *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir. 1998) in stating that it was not deciding whether any forms of incidental monetary relief were consistent with Rule 23(b)(2). *Id.*   Here, this Court relied, in part, on *Allison* in granting Plaintiffs' Motion for Class Certification.    *Allison* is still good law and the Class Certification is proper.

Defendants' claim that Plaintiffs and the Class are not entitled to class-wide damages as a matter of law in a Motion for Summary Judgment is inappropriate. This Court has certified the Class with the understanding of all the relief that Plaintiffs seek.

## V.     **CONCLUSION**

For the reasons stated herein, the Plaintiffs respectfully request that the Court deny Defendants' Motion for Summary Judgment and set this matter for trial.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: */s/ David R. Radtke*
    DAVID R. RADTKE (P47016)
    ROGER J. McCLOW (P27170)
    PATRICK J. RORAI (P65091)
    Attorneys for Plaintiffs
    400 Galleria Officentre, Suite 117
    Southfield, MI    48034
    248-354-9650
    dradtke@michworklaw.com
    rmcclow@michworklaw.com
Dated: November 23, 2015    prorai@michworklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will serve it upon:

Bobby R. Burchfield                          Elisa Angeli Palizzi

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: */s/ David R. Radtke*
       DAVID R. RADTKE (P47016)
       ROGER J. McCLOW (P27170)
       PATRICK J. RORAI (P65091)
       Attorneys for Plaintiffs
       400 Galleria Officentre, Suite 117
       Southfield, MI   48034
       248-354-9650
       dradtke@michworklaw.com
       rmcclow@michworklaw.com
       prorai@michworklaw.com

P:\RHC Cases\BorgWarner\2009 MI Lawsuit\Pleadings\PLs Resp to DEFs MSJ\Resp to DEFs MSJ.wpd