UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WILLARD L. SLOAN, EUGENE J. WINNINGHAM, JAMES L. KELLEY, on behalf of themselves and a similarly situated class,<br><br>     Plaintiffs,<br><br>  v.<br><br>BORGWARNER, INC., BORGWARNER FLEXIBLE BENEFITS PLANS and BORGWARNER DIVERSIFIED TRANSMISSION PRODUCTS, INC.,<br><br>     Defendants. | Case 2:09-cv-10918-PDB-MKM<br><br>U.S. District Judge Paul D. Borman<br><br>U.S. Mag. Judge Mona K. Majzoub |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| Elisa Angeli Palizzi (P52088)<br>MILLER, CANFIELD, PADDOCK<br> AND STONE, P.L.C.<br>150 West Jefferson, Suite 2500<br>Detroit, Michigan 48226<br>Telephone : (313) 496-7635<br>Facsimile: (313) 963-6420<br>epalizzi@millercanfield.com | Bobby R. Burchfield<br> *Counsel of Record*<br>Nikesh Jindal<br>KING & SPALDING LLP<br>1700 Pennsylvania Ave., NW<br>Washington, DC  20006<br>Telephone:  (202) 737-0500<br>Facsimile:  (202) 626-3737<br>bburchfield@kslaw.com<br>njindal@kslaw.com |

*Counsel for BorgWarner Inc., BorgWarner Diversified Transmission Products
Inc., and BorgWarner Flexible Benefits Plans*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................ ii

**I.  *TACKETT* AND THE CONTRACTS UNDERMINE VESTING**...................2

**II. PLAINTIFFS' ARGUMENTS FOR VESTING ARE FLAWED.** .................5

**III. *WAL-MART* PRECLUDES PLAINTIFFS' DAMAGES CLAIM**.................6

**CERTIFICATE OF SERVICE**...........................................................................

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allison v. Citgo Petroleum Corp.*,
　151 F.3d 402 (5th Cir. 1998) ...................................................................................7

*Celotex Corp. v. Cantrell*,
　477 U.S. 317 (1986) ..................................................................................................2

*Int'l Union, UAW v. Yard-Man, Inc.*,
　716 F.2d 1476 (6th Cir. 1983) ..........................................................................*passim*

*Litton Fin. Printing Div. v. NLRB*,
　501 U.S. 190 (1991) ..................................................................................................4

*M&G Polymers USA LLC v. Tackett*,
　135 S. Ct. 926 (2015) ........................................................................................*passim*

*Nolde Brothers Inc. v. Bakery Workers*,
　430 U.S. 243 (1977) ..................................................................................................4

*Reese v. CNH Industrial N.V.*,
　2015 WL 6865964 (E.D. Mich. Nov. 9, 2015) ........................................................2

*Sprague v. General Motors Corp.*,
　133 F.2d 388 (6th Cir. 1998) ...............................................................................2,3

*Wal-Mart Stores, Inc. v. Dukes*,
　131 S. Ct. 2541 (2011) ..........................................................................................6, 7

*Yolton v. El Paso Tenn. Pipeline Co.*,
　435 F.3d 571 (6th Cir. 2006) ....................................................................................5

**Statutes**

ERISA ............................................................................................................................3

**Other Authorities**

Rule 23(b)(1) and (b)(2) ................................................................................................6

BorgWarner's opening brief confirmed this Court's view that *M&G Polymers USA LLC v. Tackett,* 135 S. Ct. 926 (2015), "undeniably has changed, at least to some degree, the legal landscape on the issue of lifetime vesting of retiree health benefits in this Circuit." Order at 2 [R. 145]. Indeed, "[t]o suggest that *Tackett* has no significant bearing on the Court's [February 27, 2014 decision] . . . is simply untenable." In its 2014 decision, this Court determined that the "interpretive 'thumb on the scale' in favor of vesting" mandated by the prior legal regime offset BorgWarner's strong evidence countering vesting, *id.*, and denied the cross motions for summary judgment because the vesting issue was effectively in equipoise. Now that *Tackett* has removed that interpretive weight and inferences, Plaintiffs can point to nothing in the agreements that fulfills their burden of proving vesting. Moreover, the language of the agreements precludes vesting.

In response, Plaintiffs continue to rely on inferences repudiated in *Tackett*. They argue that the record contains just enough to avoid summary judgment for BorgWarner, although they now concede the record is insufficient to support summary judgment for Plaintiffs. In particular, they contend that the purported "tying" of retiree health insurance benefits to pension benefits supports vesting, even though the Supreme Court twice rejected that reasoning in *Tackett*. They also contend that the existence of specific durational limits for some benefits but not for retiree health benefits suggests the retiree health benefits are vested, but *Tackett* also rejected that argument. Finally, they contend that denial of *any* retiree health benefits for later-hired employees must mean that the company agreed to provide

*lifetime* benefits for Plaintiffs.  As shown below, this argument, too, is inconsistent with *Tackett* and illogical.

Plaintiffs have come forward with no probative evidence to meet their burden of proving vesting.  *See Celotex Corp. v. Cantrell*, 477 U.S. 317, 322 (1986) (summary judgment for Defendant if Plaintiff cannot prove an essential element of its case).  Accordingly, summary judgment for BorgWarner on the vesting issue is warranted.

**I.     *TACKETT* AND THE CONTRACTS UNDERMINE VESTING.**

It is Plaintiffs' burden to prove their benefits are vested, R. 147, Def. Br. at 10.  *Tackett* states that "'an employer's commitment to vest such benefits is not to be inferred lightly; the intent to vest must be found in the plan documents and must be stated in clear and express language.'" 135 S. Ct. at 937 (quoting *Sprague v. General Motors Corp.*, 133 F.2d 388, 400 (6th Cir. 1998)).  The plan documents must evidence a "clear manifestation of intent" not only to confer the benefit, but also to vest it.  *Id.* at 936 (quoting *Int'l Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1481 n.2 (6th Cir. 1983)).[1]

---

[1]   Justice Ginsburg's concurring opinion has no precedential weight, especially to the extent it conflicts with the unanimous Opinion of the Court.  *See* Def. Br. at 12 n.4.  Judge Duggan's decision granting reconsideration in *Reese v. CNH Industrial N.V.*, 2015 WL 6865964 (E.D. Mich. Nov. 9, 2015), now on appeal to the Sixth Circuit, misconstrued *Tackett* and improperly relied on Justice Ginsburg's concurring opinion.  Judge Duggan's latest opinion recognizes that *Tackett* effected a significant change in the law.

Plaintiffs concede the pertinent contracts contain no language meeting either of these requirements. Rather, they construe *Tackett* as stating only that a court must use "ordinary contract principles" to determine vesting. *See, e.g.*, Pls. Opp. at 2, 3 [R. 151]. But they misquote the Court, which required reference to "ordinary principles of contract law, *at least when those principles are not inconsistent with federal labor policy*." 135 S. Ct. at 933 (emphasis added). This admonition followed a lengthy paragraph emphasizing the explicit Congressional decision not to mandate vesting of welfare benefits, giving employers freedom "under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Id.* Clear language is necessary to overcome this Congressional policy.

Plaintiffs also assert that the Court's quotation of *Sprague* merely "underscores *Yard-Man's* deviation from ordinary contract law." This makes no sense. The Court cited *Sprague* to contrast the Sixth Circuit's treatment of vesting for non-collectively-bargained plans with its treatment of vesting for collectively-bargained plans. The Court's plain message is that the Sixth Circuit erred by distinguishing the two situations; having repudiated the rules of interpretation set forth in *Yard-Man* for collectively-bargained plans, the only reasonable reading is that the Court *approved* the rules set forth in *Sprague*. Further, the next paragraph of *Tackett* states "we have already recognized that 'a collective-bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the

3

agreement's expiration.'" *Id*. at 937 (citation omitted).[2] The Court further confirmed that explicit language is necessary for vesting by emphasizing the "traditional principle that courts should not construe ambiguous writings to create lifetime promises," *id*. at 936, "when a contract is silent as to duration of retiree benefits a court may not infer that the parties intended those benefits to vest for life," *id*. at 937, and that courts must give effect to general duration clauses, *id*. at 937.

    Next, Plaintiffs claim that *Tackett* "plainly contemplated" evidence about industry custom and usage. To the contrary, in the quoted language the *Tackett* Court was criticizing *Yard-Man* for creating presumptions favoring vesting based on "no record evidence indicating that employers and unions in that industry customarily vest retiree benefits," and then extending those presumptions "indiscriminately across industries." 135 S. Ct. at 935. This hardly mandates a broad-based trial about industry custom in every vesting case. Such a broad inquiry would undermine the Court's holding and rules of construction set forth in the Opinion. In any event, Plaintiffs have come forward with no evidence of industry custom, and thus, have not carried their burden.

---

[2]  The Court quoted *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 207 (1991). The quoted passage addressed whether employees laid off after expiration of the CBA had a right to enforce their seniority protections in the expired CBA; the Court held that those protections did *not* survive expiration. Plaintiffs cite other language from *Litton*, as well as *Nolde Brothers Inc. v. Bakery Workers*, 430 U.S. 243 (1977), relating to different issues. If the Court had intended to quote other language from *Litton*, it would have done so.

"Vesting" means that "someone already retired under a particular CBA continues to receive the benefits provided therein despite the expiration of the agreement itself." *Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 581 (6th Cir. 2006). But, as Plaintiffs concluded, their benefits were renegotiated from contract to contract, such that they derived their benefits from the HIA currently in effect rather than the one in effect when they retired. (Defs. Br. 6, SUMF para 11).[3] This is antithetical to "vesting," as are the specific durational limits on the benefits, *id.* at 16-17,[4] the general duration clauses, *id.* at 18, and the two "agreement[s] to disagree," *id.* at 19-21. In short, the evidence defeating vesting is undisputed and compelling.

## II. PLAINTIFFS' ARGUMENTS FOR VESTING ARE FLAWED.

None of Plaintiffs' three arguments in favor of vesting survived *Tackett*. *First*, they rely on the so-called "tying" of health benefits to pension benefits. Pls. Opp'n 10. But *Tackett* twice addressed, and twice rejected this argument. 135 S. Ct. at 935, 936-37; *see also* Defs. Br. 22. Moreover, the contractual provision here (quoted at Defs. Br. 4-5), speaks to "*entitlement*" to health benefits (i.e., eligibility), but says nothing about the *duration* of those benefits. *See* R. 96-1, 1989 HIA art. 8 § 1(A). This eligibility language ensures that Plaintiffs who retire

---

[3] Plaintiffs acknowledge that they incurred increased deductibles and stop losses, in successive HIAs, underscoring that benefits were not vested and unchangeable. *See* Pls. Opp'n 15.

[4] The contract provides that "[t]he coverages provided under this Exhibit A terminate on the date . . . the Agreement is terminated." (R. 96-1, Defs.' Mot. Ex. 1., 1989 HIA, App. A, Ex. A, § 2(M)(2)).

5

*during* the agreement and are eligible for a pension will receive health benefits *until expiration of the agreement*. It says nothing about duration of health benefits beyond the CBA.

*Second*, Plaintiffs argue that specific durational limits on other benefits, and the absence of specific limits on retiree health benefits, indicate an intent to vest. Pls. Opp'n 11. As shown (Defs. Br. 17, 23), *Tackett* expressly rejected this argument. Moreover, the effect of the specified time limits for other benefits is to *remove* them from the general durational limit. The absence of a specific limit for retiree benefits means that they *remain subject* to that general limit.

Finally, Plaintiffs claim that an agreement denying health benefits to later-hired employees when they retire somehow suggests that Plaintiffs were promised lifetime vested benefits. Pls. Opp'n 12-14. Plaintiffs again rely on inferences repudiated in *Tackett*. More pointedly, the agreements provide that later-hired employees lose all health benefits the day they retire regardless of how much time remains on the CBA, whereas Plaintiffs were to continue receiving benefits for the *duration of that existing CBA*. This distinction says nothing about whether health benefits for Plaintiffs extend *beyond* the relevant CBAs and HIAs.

## III.  *WAL-MART* PRECLUDES PLAINTIFFS' DAMAGES CLAIM.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) held that Rule 23(b)(1) and (b)(2) classes are inappropriate vehicles for awarding individualized damages on a class-wide basis. Plaintiffs note that the Court left open the prospect that such classes might obtain "monetary relief [that is] incidental to the injunctive

or declaratory relief." *Id.* at 2557. But that is not this case.[5] To recover damages here, each class member would need to prove that his or her individual out of pocket spending was above the amounts that he or she would have spent without the plan changes. Trial on those issues would not be "incidental," but would "predominate" over the injunctive relief.[6]

                                                                 Respectfully Submitted,

                                                                 /s Bobby R. Burchfield

| | |
|---|---|
| Elisa Angeli Palizzi (P52088) | Bobby R. Burchfield |
| MILLER, CANFIELD, PADDOCK |   *Counsel of Record* |
|  AND STONE, P.L.C. | Nikesh Jindal |
| 150 West Jefferson, Suite 2500 | KING & SPALDING LLP |
| Detroit, Michigan 48226 | 1700 Pennsylvania Ave., NW |
| Telephone : (313) 496-7635 | Washington, DC 20006 |
| Facsimile: (313) 963-6420 | Telephone: (202) 737-0500 |
| epalizzi@millercanfield.com | Facsimile: (202) 626-3737 |
| | bburchfield@kslaw.com |
| | njindal@kslaw.com |

*Counsel for BorgWarner Inc., BorgWarner Diversified Transmission Products Inc., and BorgWarner Flexible Benefits Plans*

---

[5] The Court did not approve *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), but construed it as allowing "damages that flow directly from liability to the class *as a whole*" and as not requiring "additional hearings to resolve the disparate merits of each individual's case." 131 S. Ct. at 2560.

[6] Plaintiffs are correct (Pls. Opp'n 16-17) that the Court decided to address the vesting issues first, and then address, if necessary, whether the changes in benefits were reasonable.

7

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

/s Bobby R. Burchfield
Bobby R. Burchfield